IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | | |
|---|---|---|
| JASON HARPER and GINA HARPER, on behalf of themselves and all others similarly situated, | : : : | |
| | : | Case No. |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| LG ELECTRONICS USA, INC., a New Jersey corporation, | : : | CLASS ACTION COMPLAINT |
| | : | |
| Defendant. | : | JURY TRIAL DEMANDED |
| | : | |

Plaintiffs Jason Harper and Gina Harper, residing at 2830 Alliance Avenue, Sarasota, Florida 34321 (the "Plaintiffs") by and through their attorneys, on behalf of themselves and on behalf of all others similarly situated (the "Class"), allege as follows upon personal knowledge, and as to all other matters upon information and belief.

## DEFINITIONS

1.     As used herein, the phrase "Defective Washing Machines" shall refer to any of the front load washing machines manufactured, produced, assembled, distributed and/or sold by the Defendant, LG Electronics USA, Inc. (the "Defendant or "LG") that are subject to the Mold and Mildew Problems complained of herein.

2.    As used herein, the phrase "Mold and Mildew Problems" shall refer to the formation of mold, mildew, must, and other odiferous and unsightly compounds on the inside of the Defective Washing Machines.

## NATURE OF THE CASE

3.    This is a class action lawsuit brought by Plaintiffs on behalf of themselves and all others similarly situated who purchased one or more Defective Washing Machine suffering from the Mold and Mildew Problems.  Defendant's high-end, front load washing machines are sold at large retail stores throughout the United States.  Defendant manufactures approximately thirty-three (33) different models of front load washing machines. On its website, LG describes itself as a "global technology leader and pioneer in home appliance convergence, providing customers with exceptional value and convenience."   In the three (3) month quarterly period ending in September of 2007 alone, LG recorded over $6.2 billion in sales revenue.

4.    On April 25, 2006, the Plaintiffs purchased a Defective Washing Machine that was manufactured by LG.  Due to a design defect, within weeks after Plaintiffs' purchase of the Defective Washing Machine, they began noticing the formation of mold and mildew, both on the interior of their front load washing machine and in clothes that they had put through their washing machine.

5.    The Plaintiffs have run bleach and other cleaning products through their washing machine in an attempt to cleanse it of the Mold and Mildew Problems.  Plaintiffs even had an LG repair person come to their house in attempt

to fix the problem.   Unfortunately, all of Plaintiffs' efforts to rid their washing machine of the Mold and Mildew Problems have been unsuccessful.

6.      Plaintiffs' experiences with the Mold and Mildew Problems in their LG washing machine are by no means outlying or isolated occurrences.  Indeed, several consumer gripe websites are replete with postings from consumers from all over the United States complaining about the Mold and Mildew Problems that they have experienced using Defendant's Defective Washing Machines.

7.      The Mold and Mildew Problems in the Defective Washing Machines create a genuine nuisance.  In addition to being unsightly and odiferous, mold and mildew on the inside of a washing machine can damage clothes and other items.  Furthermore, many people are allergic to mold and mildew.  Needless to say, the Mold and Mildew Problems also substantially decrease the value of these washing machines.

8.      To be sure, the existence of this common design defect in Defendant's Defective Washing Machines resulting in the formation of Mold and Mildew Problems means that Defendant's Defective Washing Machines are not merchantable and do not serve the purpose for which they were purchased by Plaintiffs and members of the Class (*i.e.,* they do not actually or properly clean clothes). As a result, Plaintiffs and Class members have paid more for these high-end washing machines than they otherwise would have if they had been aware that the Defective Washing Machines were predisposed to causing the Mold and Mildew

Problems.   As such, Plaintiffs and Class members have suffered a real and cognizable economic injury.

9.     Defendant's actions in selling the Defective Washing Machine Products without disclosing this material defect, and in failing to issue a recall or otherwise promptly taking appropriate corrective action to repair and/or replace Defective Washing Machines with this known defect were negligent, reckless and in breach its statutory and common law duties, and express and implied warranties to its customers.  Those actions were a proximate cause of injury to the Plaintiffs and the Class members.

10.     Plaintiffs, on behalf of themselves and the Class, seek damages, injunctive relief, reasonable attorneys' fees, and costs against Defendant.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is diversity of citizenship between the named Plaintiffs and members of the proposed Class and Defendant. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this Judicial District.   Defendant, a New Jersey

corporation that maintains its headquarters in the geographic region covered by this Court, regularly and systematically conducts business in New Jersey and in this Judicial District, and the misconduct of Defendant alleged herein took place in this Judicial District, as well as elsewhere in New Jersey. Moreover, the Defendant lists the address of its United States Headquarters located at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey on its website as a Support Services contact for Home Appliances.

## THE PARTIES

### The Plaintiffs

13.     The Plaintiffs jointly purchased an LG front load washing machine, Model Number WM2277HS, from a Home Depot store on April 25, 2006 for $1014.82. Almost immediately after it was delivered on May 20, Plaintiffs began noticing mold and mildew on the interior of their washing machine.  Mold and mildew residue has also appeared in Plaintiffs' clothes as a result of being "cleaned" in their washing machine.  Plaintiffs have also noticed black spots that have appeared on some of their clothes after being run through their LG washing machine.  Plaintiffs have incurred monetary and non-monetary damages as a result of Defendant's conduct complained of herein.

### The Defendant

14.     Defendant LG Electronics USA, Inc. is a New Jersey corporation that maintains its headquarters at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.  LG Electronics USA, Inc. has done business throughout the United States

and in the State of New Jersey at all times relevant to this lawsuit.  LG Electronics USA, Inc. is the North American subsidiary of LG Electronics, Inc., a Korean corporation.

15.    Defendant is in the business of manufacturing and selling consumer electronics, mobile communications, and home appliances, including front load washing machines. Defendant's front load washing machines are advertised, marketed, and distributed in the State of New Jersey and throughout the United States.

16.    From its headquarters in Englewood Cliffs, New Jersey, Defendant markets, warrants and sells Defective Washing Machine Products directly and through its distributors throughout the United States, including this Judicial District.

## FACTUAL ALLEGATIONS

### Defendant LG Electronics USA and its Defective Washing Machines

17.    Defendant LG Electronics USA, Inc. holds itself out to the public as a manufacturer of safe, cutting-edge, and easy-to-use home appliances, including washing machines.   Defendant is in the business of manufacturing, producing, distributing, and/or selling washing machines throughout the United States.

18.    Defendant has manufactured, produced, and/or distributed front load washing machines for several leading retailers in the United States, including Home Depot, Sears, Best Buy, and other large retail chains.

19.     Defendant manufactures thousands of washing machines each year, a substantial portion of which are sold or offered for sale in New Jersey. Upon information and belief, Defendant has sold, either directly or indirectly, thousands of its Defective Washing Machines nationwide and in the State of New Jersey.

20.     Defendant makes numerous express warranties about the quality of its washing machines.  For example, the Defendant claims that its Digital Appliance Division (of which front load washing machines are key products) "creates innovative products that improve people's daily lives in countries around the globe." Defendant also advertises that it's front load washing machines are superior for their "clean and convenient washing at the touch of a button," and that customers get the "benefit of good washing performance with minimal damage to your wash." Defendant also makes statements in the front load washing machine owner's manuals such as:

    a)  "Washing ball enhances the wash performance and reduces damage to the clothing. The jets spray and help tumble clothes to enhance washing performance while maintaining fabric care."

    b)  "This front load washer requires longer cycle time and gets clothes much cleaner, yet is more gentle on the fabrics, than top load washers."

21.     In conjunction with each sale, the Defendant marketed, advertised and warranted that the Defective Washing Machines were fit for the ordinary purpose for which such goods were used and were free from defects, or at a minimum would not accumulate mold, mildew, and emit associated odors.

22.     Upon information and belief, Defendant manufactured and distributed the Defective Washing Machines intending that consumers would purchase them, regardless of the place of purchase or the location in which customers would use them. The Defective Washing Machines were placed into the stream of commerce and were distributed, offered for sale and sold to Plaintiffs, Class members, and other purchasers in New Jersey and elsewhere in the United States.

23.     Defendant intended for customers to believe its statements and representations about its Washing Machines and to trust that its high-end washing machines were and are of first-rate quality.

24.     Upon information and belief, Defendant is aware of the Mold and Mildew Problem and has been for some time. Plaintiffs and many members of the Class have alerted Defendant of the Mold and Mildew Problem by complaining to Defendant directly and/or to Defendant's authorized dealerships and service persons. Indeed, many members of the Class have posted their experiences with the Defective Washing Machines on the Internet:

> a)  Internet Posting: "We bought the LG 4WM2277HW washer and dryer on 5/6/06. From the first week on, our clothes have smelled. As all the other complaints I've read, there is always a sour and moldy smell not only inside the washer but also permeating our clothes. Bleach, vinegar, baking soda, every brand of HE laundry soap, Febreeze…NOTHING makes the clothes smell good."
>
> b)  Internet Posting: "We purchased an LG washer & dryer in February 2006. We first noticed a smell shortly after they were installed and the odor became increasingly worse. We contacted

the repair service and were advised that this was a common problem with the LG washer. We were told to clean the trap and run a bleach load once a week. What a joke, it didn't work. I contacted customer service at LG and was told to run a bleach load once a week and clean the trap. Also to leave the door open. I informed them that we were doing that and it made no difference. I also told them that there was a black mold on the door seal. They said just wipe it off with a bleach rag."

c) <u>Internet Posting</u>: "My washer was under warranty. So I called for service because I had a mildew odor and what appeared to be mildew on the front rubber part of the washing machine (on the inside of the machine). The service man told me to run cycles with hot water and bleach once a week. I did this for six months – every week, as instructed. It HAS NOT made a difference. Our clothes continue to stink and the mildew has yet to go away!!!!"

d) <u>Internet Posting</u>: "I have an LG front loader washer. I loved this appliance with all my heart until the gunky and smelly mold/mildew build-up began. Now I am always trying to wipe up and it always comes back. LG customer service told me that the manual says to dry the gasket after each use. First, why should I have to? Second, the manual doesn't say this. What the manual says, in a tiny section, is to keep it dry to maintain a proper seal. Nowhere does it warn that if I don't keep it dry after each use I will have gross, smelly and unhealthy mold or mildew in my home."

e) <u>Internet Posting</u>: "I have had my washer for 2 yrs. A few months after I purchased it I also noticed a foul odor. For the past year the awful smell has become unbearable. I have contacted LG several times, spoke to many supervisors and even contacted the store it was purchased from and complained, to let them know not to

recommend this washer. Nothing was done with anyone. All LG did was tell me the whole routine I need to do weekly to get rid of the smell. So now I use bleach in the drum and let a cycle go through without anything in it, run the towels through a whole cycle without any detergents then run it again with very little detergent, because the repair men claim I was adding too much soap, and that is the reason why I get that musty odor. I also wipe the gasket with water and bleach. I also drain the hose at the bottom of washer from excess water. After doing all of this my towels still smell awful. My kids will not use the towels anymore because the terrible odor comes off on our skin."

f)  <u>Internet Posting</u>: "Our LG is awful too. We have been told to use vinegar, dishwasher soap, borax, not to use fabric softener, even though there's a compartment for it. I'm not strong enough to pull that gasket forward to clean it and besides why should I, I bought this expecting less work and it's much more to keep the damn thing from molding up. I just washed my daughters face with a facecloth and it smelled so moldy it was unreal."

g)  <u>Internet Posting</u>: "I purchased an LG Front Loading Washing Machine. Since I purchased this washer, all my clothes (especially towels) stink like a musty mold smell. There are similar complaints all over the internet. I've called customer service multiple times, the last call resulting in someone putting me on hold for 32 minutes only to be disconnected. I'm tired of being told to clean the seal with bleach and vinegar; it doesn't work nor should I have to do this after each load. I have kept the seal clean after every load."

25.    Upon information and belief, LG has even verified to its technicians at training seminars - by physically opening up the washing machines - that its front

loading washing machines are predisposed to the formation of mold and mildew. Upon information and belief, LG has recommended that its technicians use a product called Whirl Out to cleanse the washing machines of mold and mildew, but has not disclosed this to Plaintiffs and members of the Class.  It is unclear whether products like Whirl Out are actually effective in permanently and completely ridding the washing machines of the Mold and Mildew Problems but, to the extent that they are, Defendant should be required to provide these solutions to Plaintiffs and Class members free of charge.

26.    Defendant LG Electronics USA manufactured, marketed, advertised, warranted and sold, either directly or through their authorized distribution channels, the Defective Washing Machines suffering from the Mold and Mildew Problems alleged herein.

### The Mold and Mildew Problems in
### Plaintiffs' Washing Machines

27.    On April 25, 2006, the Plaintiffs purchased the LG WM2277HS Model Front Loading Washing Machine from a Home Depot store in Florida.   Plaintiffs quickly noticed that the washing machine emitted an odorous foul smell and was producing mold and mildew.

28.    Plaintiffs have run bleach and mildew cleaner through their washing machine in an attempt to get rid of the mildew and mold on the interior of the washing machine.  Plaintiffs called Defendant when they first became aware of the Mold and Mildew Problem. In response, Defendant sent out a repairperson who was unable to satisfactorily correct the problem. Plaintiffs then called Defendant a

second time to complain and left a voice-mail message expressing their dissatisfaction. To this date, Plaintiffs have not yet received a response from Defendant.   Notwithstanding these efforts, the overwhelming mold and mildew stench in the Plaintiffs' washing machine persists.

29.   Plaintiffs have only used HE (high efficiency) detergent in their LG washing machine.   According to the Owner's Manual for Plaintiff's washing machine, "HE detergents are formulated specifically for front load washers and contain suds reducing components."   The Defective Washing Machines contain compartments for detergent and liquid fabric softener.   Plaintiff's Owner's Manual for their LG front load washer provides that "liquid or powdered detergent may be used" in the washing machine.

30.   The Mold and Mildew Problems appear to be especially persistent when using liquid HE (high efficiency) detergents (in comparison to the use of powder HE detergent).   The repairperson with whom Ms. Harper spoke advised her that she should discontinue using the liquid HE and should use only powder HE instead.   The repairperson told her that the liquid HE detergent has a tendency to "gum up" the parts in the washer.

31.   Plaintiffs have continued to experience the Mold and Mildew Problems even after they switched to using powder HE detergents exclusively.

32.   Notwithstanding Defendant's knowledge that the Mold and Mildew Problems are especially persistent with liquid HE detergent, they have represented to Plaintiffs and members of the Class in the Owner Manuals for the Defective

Washing Machines that both liquid and powdered HE detergent are suitable for use in the Defective Washing Machines.

**CLASS ACTION ALLEGATIONS**

33.     Plaintiffs bring this suit as a class action on behalf of themselves and on behalf of all others similarly situated ("the Class") pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3).   Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.  Plaintiffs seeks to represent the following Class:

> All persons in the United States who purchased and/or who own any of the Defective Washing Machines that are subject to the Mold and Mildew Problems.

34.     In the alternative, and only in the event that the Court determines that New Jersey law shall not be applied to the claims of all Class members regardless of where they reside, Plaintiffs seek certification of the following sub-class:

> All persons who purchased, in the State of Florida, any of the Defective Washing Machines that are subject to the Mold and Mildew Problems.

35.     This action has been brought and may be properly maintained as a class action for the following reasons:

a.     <u>Numerosity</u>:  Members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains thousands and perhaps tens of thousands of members.  Defendant has manufactured and distributed

thousands of Defective Washing Machines throughout the United States. The Class is therefore sufficiently numerous to make joinder impracticable, if not impossible.   The precise number of Class members is unknown to Plaintiffs, but upon information and belief can be readily determined from Defendant's records.

b.   <u>Common Questions of Law and Fact</u>:  Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

i.   Whether Defendant violated the New Jersey Consumer Fraud Act;

ii.   Whether Defendant violated the Florida Deceptive and Unfair Trade Practices Act;

ii.   Whether the New Jersey Consumer Fraud Act can be applied to the claims of all members of the putative Class;

iii.   Whether Defendant breached express and/or implied warranties relating to the sale of its Defective Washing Machines;

v.   Whether the requirements of Rule 23 are satisfied, and if so, the appropriate nature of any Class-wide relief; and

vi.   Whether Plaintiffs and Class members are entitled to restitution, and if so, the appropriate amount.

These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class.

     c.   <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class since Plaintiffs purchased a Defective Washing Machine as did each member of the Class.  Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent class members.

     d.   <u>Adequacy</u>:  Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class that they seek to represent; they have retained counsel competent and highly experienced in complex class action litigation; and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

     e.   <u>Superiority</u>:  A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual

issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

f.      Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole; and

g.      In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATIONS OF THE NEW JERSEY
### CONSUMER FRAUD ACT

36.     Plaintiffs and the Class incorporate by reference each proceeding and succeeding paragraph as though fully set forth at length herein.

37.     Plaintiffs and members of the Class are consumers who purchased one or more Defective Washing Machines for personal, family or household use.

38.     New Jersey has enacted its Consumer Fraud Act, N.J.S.A. §§ 56:8-1 *et seq.*, to protect consumers against unfair, deceptive or fraudulent business practices, unfair competition and false advertising. Other states have enacted similar consumer protection provisions. New Jersey and other states throughout the nation also provide consumers with a private right of action under these statutes.

39.     Defendant is and has been a corporate citizen of the state of New

Jersey throughout the class period. Defendant has also conducted a significant amount of business in New Jersey. Moreover, Defendant advertises a New Jersey address to service support requests via its website.

40.     In violation of the New Jersey Consumer Fraud Act, Defendant has affirmatively misrepresented and knowingly concealed, suppressed and failed to disclose material facts with the intent that others rely upon such concealment and deception in connection with its production, manufacture, and/or sale of the Defective Washing Machines.

41.     The conduct of Defendant, as set forth above, constitutes unfair, fraudulent and/or deceptive trade practices prohibited under the New Jersey Consumer Fraud Act.

42.     As a result of Defendant's unfair, fraudulent and/or deceptive trade practices, Plaintiffs and members of the Class have suffered an ascertainable loss of monies and/or property.

**COUNT II**
**VIOLATIONS OF THE FLORIDA DECEPTIVE AND**
**UNFAIR TRADE PRACTICES ACT**

43.     Plaintiffs and the Class incorporate by reference each proceeding and succeeding paragraph as though fully set forth at length herein.

44.     Florida state law – specifically, FLA. STAT. § 501.201, *et seq.* – prohibits deceptive and unfair trade practices.

45.     Defendant's acts of selling the Defective Washing Machines without disclosing the Mold and Mildew Problems constitute a deceptive act that is likely to

mislead consumers.

46.     Plaintiffs and Class members have been aggrieved and have suffered an injury as a result of Defendant's deceptive practices.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**

47.     Plaintiffs and the Class repeat and incorporate by reference each and every paragraph of this complaint as though fully set forth at length herein.

48.     Defendant expressly warranted that the Defective Washing Machines would, *inter alia*, actually work to clean clothes.   Defendant also expressly warranted that both liquid and powder HE detergents were suitable for use in its Defective Washing Machines.

49.     Defendant breached these express warranties because, as a result of the Mold and Mildew Problems, the Defective Washing Machines do not effectively clean clothes, and are not suitable for the use of liquid HE detergents.

50.     Plaintiffs provided Defendant with notice of its breach of express warranties within a reasonable time after discovering that breach. Specifically, Plaintiffs called Defendant when they first became aware of the Mold and Mildew Problem. In response, Defendant sent out a repairperson who was unable to satisfactorily correct the problem. Plaintiffs then called Defendant a second time to complain and left a voice-mail message expressing their dissatisfaction. To this date, Plaintiffs have not yet received a response from Defendant.

51.     As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members have been injured and are therefore entitled to

damages.

## COUNT IV
## BREACH OF THE IMPLIED WARRANTY
## OF MERCHANTABILITY

52.     Plaintiffs and the Class repeat and incorporate by reference each and every paragraph of this complaint as though fully set forth at length herein.

53.     As manufacturers and/or distributors of the Defective Washing Machine Products, Defendants are "merchants," within the meaning of the New Jersey commercial code governing the implied warranty of merchantability.

54.     The Defective Washing Machines are "goods" as defined by the New Jersey commercial code provisions governing the implied warranty of merchantability.

55.     Implied in the sale of the Defective Washing Machines is a warranty of merchantability that requires, *inter alia*, that the Washing Machines pass without objection in the trade and are fit for the ordinary purposes for which Washing Machines are used.

56.     Defendant impliedly represented and warranted that the Defective Washing Machines were fit for the ordinary purposes for which such goods are used, *i.e.*, cleaning clothes.

57.     Defendant breached this implied warranty because the Defective Washing Machine Products possessed Mold and Mildew Problems, which substantially reduced and/or prevented the Washing Machines from cleaning clothes properly.

58.     Plaintiffs provided Defendant with notice of its breach of warranties within a reasonable time after discovering that breach. Specifically, Plaintiffs called Defendant when they first became aware of the Mold and Mildew Problem. In response, Defendant sent out a repairperson that was unable to satisfactorily correct the problem. Plaintiffs then called Defendant a second time to complain and left a voice-mail message explaining their dissatisfaction. To this date, Plaintiffs have not yet received a response from Defendant.

59.     All Defective Washing Machine Products were manufactured and distributed with the same Mold and Mildew Problems and were, therefore, not of merchantable quality at the time that they were distributed into the stream of commerce by Defendant.

60.     As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured and are therefore entitled to damages.

<u>COUNT V</u>
**UNJUST ENRICHMENT**

61.     Count V is being plead in the alternative to Counts I through IV.

62.     Defendant caused the Defective Washing Machines to be distributed in the stream of commerce with knowledge that the Machines would be purchased by consumers who possessed a reasonable expectation that the Washing Machines would be free from material defects such as the Mold and Mildew Problems.

63.     Plaintiffs and Class members paid a premium price for Defective Washing Machines that Defendant represented as being top-of-the-line products, thereby conferring a tangible economic benefit upon the Defendant.

64.     Defendant has further benefited, directly or indirectly, by avoiding the costs associated with correcting the Mold and Mildew Problems, making repairs, and recalling the Defective Washing Machine Products.

65.     Defendant has and continues to retain that economic benefit at the expense of Plaintiffs and Class members.

66.     Principles of equity and good conscience make it unjust for Defendant to retain the benefit conferred on it by consumers of the Defective Washing Machines, and Defendant should be required to pay Plaintiffs and Class members for this benefit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request, on behalf of themselves and members of the Class, that this Court:

A.     determine that the claims alleged herein may be maintained as a class action under Rule 23(a), (b)(2), and/or (b)(3) of the Federal Rules of Civil Procedure, and issue order certifying the Class as defined above;

B.     award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiffs and Class members are entitled;

C.     award pre-judgment and post-judgment interest on such monetary relief;

D.     grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires orders Defendant to:

    i.  cease and desist from the sale of its Defective Washing

        Machine Products;

    ii.  make appropriate, accurate, and complete disclosures in its

        Owner Manuals and other materials regarding the Mold and

        Mildew Problems;

    iii. establish an appropriate program to inspect, repair, and replace

        the Defective Washing Machines; and

    iv. to disgorge all profits made as a result of its sales of the

        Defective Washing Machine Products;

E.     award reasonable attorney's fees and costs; and

F.     grant such further and other relief that this Court deems appropriate.


DATED:  January 4, 2008

                      Respectfully submitted,

              By:  CHIMICLES & TIKELLIS LLP


                      *//s// Joseph G. Sauder*
                      Joseph G. Sauder (JS 5756)
                      Daniel B. Scott (DS 5228)
                      Benjamin F. Johns (BJ 9832)
                      361 West Lancaster Avenue
                      Haverford, PA 19041
                      Tel:   610-642-8500
                      Fax:  610-649-3633


                      *Counsel for Plaintiffs*

*Of Counsel:*

Steven A. Schwartz
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA 19041
Tel:    610-642-8500
Fax:    610-649-3633

SCOTT + SCOTT, LLP
Arthur L. Shingler III
600 B Street, Suite 1500
San Diego, CA  92101
Tel.: 619-233-4565
Fax: 619-233-0508

David R. Scott
108 Norwich Avenue
P.O. Box 192
Colchester, CT 06415
Tel.: 860-537-5537
Fax.: 860-537-4432

Beth Kaswan
29 West 57th Street
New York, NY 10019
Tel:    212-223-6444
Fax:    212-223-6334

*Counsel for Plaintiffs*