James C. Shah
Natalie Finkelman Bennett
Nathan C. Zipperian
Shepherd, Finkelman, Miller & Shah, LLP
475 White Horse Pike
Collingswood, NJ 08107
Telephone: (856) 858-1770
Facsimile: (856) 858-7012
jshah@sfmslaw.com
nfinkelman@sfmslaw.com
nzipperian@sfmslaw.com

**DOCUMENT ELECTRONICALLY FILED**

**Counsel for Plaintiffs and the Class**

**(Additional Counsel appear on the signature page)**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **IN RE LG FRONT LOAD WASHING** | : | |
| **MACHINE CLASS ACTION** | : | Case No. 2:08-cv-00051-FSH-MAS |
| **LITIGATION** | : | |
| | : | |

## <u>CONSOLIDATED AMENDED COMPLAINT</u>

Plaintiffs, Ralph Ashe ("Ashe"), Lyla Boone ("Boone"), Jill Burke ("Burke"), Mark Cook

("Cook"), Paula Cook-Sommer ("Sommer"), Richard Demski ("Demski"), Marcia Figueroa

("Figueroa"), Mike Franko ("Franko"), Glenn and Lori Grosso ("Grosso"), Cheryl Harder

("Harder"), Jason and Gina Harper ("Harper"), Cristen Irving ("Irving"), Cindy Launch

("Launch"), Edward Manzello ("Manzello"), James and Wendy McClure ("McClure"), Jill

Olejniczak ("Olejniczak"), Kim Scalise ("Scalise"), Ann Trethewey ("Trethewey"), Nancy

Vanasse ("Vanasse"), and Jonathan and Carolyn Zimmerman ("Zimmerman") by and through

1

their undersigned counsel, on behalf of themselves and all other persons and entities similarly

situated, allege the following facts and claims upon knowledge as to matters relating to

themselves and upon information and belief as to all other matters and, by way of this

Consolidated Amended Complaint ("Complaint"), aver as follows:

## INTRODUCTION

1.      Plaintiffs bring this class action on behalf of themselves and all others similarly

situated against Defendant, LG Electronics USA, Inc. ("Defendant" or "LG"), seeking damages

and injunctive relief for the proposed Classes as defined herein.

2.      This action is brought to remedy violations of applicable law in connection with

Defendant's design, manufacture, sale and servicing of its Front-Loading Automatic Washers

(the "Washing Machines" or "Machines").  The Machines have inherent design defects that cause

them to (a) accumulate mold, mildew or  similar residue within the Washing Machines; (b)

produce foul and noxious odor that escapes from the Washing Machines; (c) produce mold,

mildew and/or foul odor on clothes washed in the Machines; and (d) be unusable for the ordinary

purpose which the Washing Machines were sold.

3.      Plaintiffs assert claims on behalf of themselves and a nationwide class under the

New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* ("CFA") or,  in the alternative, state

law claims under other similar consumer protection statutes of other states.  Plaintiffs also assert

claims on behalf of themselves and a nationwide class for violation of the Magnuson-Moss

Warranty Act, 15 U.S.C. §2301, *et seq.* ("Magnuson-Moss Act"), and claims on behalf of

themselves and a nationwide class for breach of express and implied warranty and unjust

enrichment  under New Jersey law, and, in the alternative, under the laws of the states of

2

purchase.

## THE PARTIES

### PLAINTIFFS

4.    Plaintiff Ashe is a citizen of New Jersey, and resides in Thorofare, New Jersey. On or about October 23, 2005, Plaintiff purchased a LG Washing Machine from a Home Depot store in New Jersey and took delivery of the Machine on or about October 30, 2005. Within one year of delivery, Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Washing Machine.

5.    Plaintiff Boone is a citizen of California and resides in Redding, California. In or about December 2005, Plaintiff purchased a LG Washing Machine in California and took delivery of the Machine on or about January 2, 2006. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine after only seven months of use. Plaintiff promptly contacted LG concerning the problem with the mold, mildew and/or foul odors in her Machine.

6.    Plaintiff Burke is a citizen of New York and resides in Manorville, New York. Plaintiff purchased a LG Washing Machine in New York in May 2005. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine) within approximately one year of purchase. In approximately July 2006, the Machine produced mold, mildew and/or foul odors on a regular basis. Plaintiff arranged for the repair of her Washing Machine pursuant to her extended warranty in February 2007. The repair person was unable to fix the Machine so that the mold, mildew and/or foul odors would not return.

7.    Plaintiff Cook is a citizen of Colorado and resides in Littleton, Colorado. Plaintiff purchased an LG Washing Machine in Colorado in November 2007. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine after only about five washes. Plaintiff promptly contacted LG, and notified LG again on at least three occasions concerning the problem with the mold, mildew and/or foul odors in his Machine. An LG representative also came to Plaintiff's home in response to his complaints with his Machine.

8.    Plaintiff Cook-Sommer is a citizen of Colorado and resides in Golden, Colorado. Plaintiff purchased an LG Washing Machine in Colorado in July 2006. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine after only six months of use. Plaintiff promptly contacted Home Depot concerning the problem with the mold, mildew and/or foul odors in her Machine.

9.    Plaintiff Demski is a citizen of Florida and resides in Bradenton, Florida. On or about August 19, 2006, while residing in Wisconsin, Plaintiff purchased a LG Washing Machine in Wisconsin and took delivery of the Machine on or about September 2, 2006. Within two months of delivery and while residing in Wisconsin, Plaintiff began to experience mold, mildew and/or foul odors accumulation in the Washing Machine and on clothes and other items washed in the Machine. Plaintiff contacted LG concerning the problem with the mold, mildew and/or foul odors in his Machine in March 2007.

10.    Plaintiff Figueroa is a citizen of New York and resides in New York. In or about February 2005, Plaintiff purchased an LG Washing Machine in New York. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes

4

and other items washed in the Machine no later than approximately eight months after she purchased the Machine. Plaintiff contacted LG concerning the mold, mildew and/or foul odors in her Machine in or about April 2006.

11.    Plaintiff Franko is citizen of Ohio and resides in Broadview Heights, Ohio. In or about June 2006, Plaintiff purchased an LG Washing Machine from a Home Depot in Ohio. Shortly after purchasing the Machine, Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine. Plaintiff promptly contacted Home Depot concerning the mold, mildew and/or foul odors in the Machine.

12.    Plaintiffs Grosso are citizens of Michigan and reside in Grosse Pointe Woods, Michigan. On or about July 19, 2006, Plaintiffs purchased an LG Washing Machine from Best Buy in Michigan and took delivery of the Machine on July 22, 2006. Plaintiffs began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine after several months of use of the Machine. Plaintiffs promptly notified Best Buy about the mold, mildew and/or foul odors in the Machine.

13.    Plaintiff Harder is a citizen of Ohio and resides in Batavia, Ohio. On May 6, 2007, Plaintiff purchased a LG Washing Machine from a Best Buy store in Ohio, and took delivery of the Machine shortly thereafter. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items she had put through the Machine within two months of delivery. Plaintiff contacted LG several times in late Summer/early Fall 2007 concerning the problem with the mold, mildew and/or foul odors in her Machine.

14.    Plaintiffs Harper are citizens of Florida and reside in Sarasota, Florida. On or about April 25, 2006, Plaintiffs purchased an LG Washing Machine in Florida and took delivery on May 20, 2006. Plaintiffs began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine within one month of using the Machine. Plaintiffs contacted LG concerning the mold, mildew and/or foul odor problem. In response, LG sent out a repairperson, who was unable to resolve the problem. Plaintiffs subsequently called LG again to complain and left a voicemail message, to which they never received a response.

15.    Plaintiff Irving is a citizen of Connecticut and resides in Ridgefield, Connecticut. On or about July 23, 2006, Plaintiff purchased an LG Washing Machine at a Home Depot store in Connecticut and took delivery of the Machine within a few days. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine within a few months of delivery. Plaintiff promptly contacted LG several times concerning the problem with the mold, mildew and/or foul odors in the Machine.

16.    Plaintiff Launch is a citizen of Florida and resides in Santa Rosa Beach, Florida. On or about June 29, 2006, Plaintiff purchased an LG Washing Machine in Florida and took delivery of the Machine on or about July 1, 2006. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine after several months of use of the Machine. On or about January 25, 2008, Plaintiff wrote to LG advising LG of her problems concerning the mold, mildew and/or foul odors in her Machine. The next day, Plaintiff called LG concerning the problems with her Washing Machine.

17.    Plaintiff Manzello is a citizen of New York and resides in Shoreham, New York. In or about October 2006, Plaintiff purchased an LG Washing Machine in New York. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine almost immediately after using the Machine. Plaintiff called the LG service line about the mold, mildew and/or odor problems almost immediately after purchasing the Machine.

18.    Plaintiffs McClure are citizens of Texas and reside in Cypress, Texas. In or about August 2006, Plaintiffs purchased an LG Washing Machine in Texas. Plaintiffs began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine within four to six months. Plaintiffs contacted LG on several occasions concerning the mold, mildew and/or foul odor problem in the Machine.

19.    Plaintiff Olejniczak is a citizen of Texas and resides in Fulshear, Texas. In or about January 2006, Plaintiff purchased an LG Washing Machine in Texas and took delivery of the Machine on January 25, 2006. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine after approximately three to four months of use of the Machine. Plaintiff contacted LG on several occasions concerning the mold, mildew and/or foul odor problems.

20.    Plaintiff Scalise is a citizen of Illinois and resides in Huntley, Illinois. In or about June 2005, Plaintiff purchased an LG Washing Machine in Illinois. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine within a year of using the Machine. Plaintiff promptly contacted LG concerning the mold, mildew and/or foul odors in her Machine.

21.    Plaintiff Trethewey is a citizen of Pennsylvania and resides in Downingtown, Pennsylvania. On or about October 6, 2007, Plaintiff purchased an LG Washing Machine at a Home Depot store in Pennsylvania, and took delivery of the Machine within approximately two weeks. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine within five months of delivery. Plaintiff promptly complained to LG concerning the mold, mildew and/or foul odors in her Machine.

22.    Plaintiff Vanasse is a citizen of Massachusetts and resides in Clinton, Massachusetts. In or about February 2006, Plaintiff purchased an LG Washing Machine in Massachusetts. Plaintiff began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine after about two months of using the Machine. Plaintiff promptly contacted LG on at least four occasions concerning the mold, mildew and/or foul odor problem in the Machine.

23.    Plaintiffs Zimmerman are citizens of North Carolina and reside in Hickory, North Carolina. In or about December 2006, Plaintiffs purchased an LG Washing Machine in North Carolina. On or around March 2007, Plaintiffs began to experience mold, mildew and/or foul odor accumulation in the Washing Machine and on clothes and other items washed in the Machine. Plaintiffs contacted LG concerning the mold, mildew and/or foul odor problem in the Machine. LG put in service orders for three separate companies, only two of which showed up and the third stated that it had "stopped selling and fixing LG machines because there were so many problems." When the service visits failed to stop the mold, mildew and/or foul odors, Plaintiffs called LG several times and left messages about the problems. LG, however, never

8

returned their calls. In January 2008, Plaintiffs finally succeeded in contacting LG, only to be told that the warranty had expired, and LG would not fix the Machine.

24.    Each of the Plaintiffs named above purchased a LG Washing Machine and used it for its intended purpose, and in a manner consistent with its intended use. At the time of the Plaintiffs' purchases, LG failed to disclose that the Washing Machines were defective, as evidenced by the fact that Plaintiffs experienced and continue to experience mold, mildew and/or foul odors in their Machines and on clothing and other items washed in their Machines.

25.    In response to the various notices from the Plaintiffs to LG regarding the defects in their Washing Machines and the mold, mildew and/or foul odor problems, LG personnel, LG's retailers, and LG's repairmen made form or "canned" responses. For example, LG proposed, *inter alia*: running double rinse cycles with each load; wiping down the gasket, door and inside of the Washing Machines after each use; wiping the inside of the stainless steel drum with a washcloth after use of the Washing Machine; running empty loads with bleach and baking soda through the Machine; wiping the seal of the Machines; cleaning the filter of the Machines; running vinegar through the Machines; leaving the door open after each wash (despite the obvious danger to children and inconvenience in tight spaces normally associated with laundry rooms); running the sanitary cycle all the time; using only a teaspoon of laundry detergent; running Clorox through the Machines; using the product Whirlout; cleaning the rubber seal on a regular basis with Fantastik®; switching from liquid High Efficiency ("HE") detergent to powdered HE detergent; hand-drying the Machines out after each use; running weekly hot water cycles and wiping the gasket with bleach and hot water after every use of the Machine; using sanitizer; running back-to-back empty-load cycles of water and bleach; draining the Machines

9

through the drain plug; and refraining from using liquid fabric softener (even in LG Machines
that have a compartment specifically for liquid fabric softener).

26.     Tellingly, neither the mold, mildew and/or foul odor problems nor the alleged
"solutions" were set forth in Plaintiffs' Owner's Manuals that accompanied the LG Machines.
Moreover,  none of these alleged "solutions" methods stopped the mold, mildew and/or foul odor
problems that plague Plaintiffs' and Class Members' LG Washing Machines.

27.     As a result of the mold, mildew and/or foul odor problems, Plaintiffs collectively
have been forced to endure, *inter alia*, mold, mildew and/or foul odors in their Machines and on
their clothes and other items.

**DEFENDANT**

28.     LG is a Delaware corporation and maintains its principal place of business at
1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, where it employs approximately
400 people and concentrates its base of operations.  LG is a wholly-owned subsidiary of LG
Korea.  LG manufactures thousands of washing machines each year, a substantial portion of
which are sold or offered for sale in New Jersey.  LG has sold, either directly or indirectly,
thousands of its defective Washing Machines nationwide and in the State of New Jersey.

29.     LG's New Jersey office serves as the headquarters for its design, marketing and
sales in the United States and provides all sales support.  Upon information and belief, all
corporate decisions regarding the Washing Machines, and the representations and acts of
concealment which are the subject of this lawsuit were directed by, or emanated from, LG
representatives working in New Jersey or directly reporting to superiors situated in New Jersey.
In addition, upon information and belief, LG's investigation regarding the defective Washing

Machines primarily was undertaken by personnel working from and within New Jersey.

30.     Several different teams of LG employees who are involved in and are

knowledgeable about the marketing and advertising of LG's Washing Machines, including LG's

product development, marketing, training and public relations groups, are located in New Jersey

and all documents related to these functions are located in New Jersey.  Members of these teams

in New Jersey who will likely be material witnesses in this case include the following:

| Name | Corporate Title | Position: "Digital Appliances Division" |
|---|---|---|
| Kang, Jung Hoon | Manager | Sales Engineer |
| Kavanaugh, Tim | Director | Director, Merchandising |
| Lee, Tae Jin | Manager | Product Manager for Laundry Washers |
| Martella, Janine | Manager | Category Merchandising Manager |
| Park, David | Assistant | Market Analyst |
| Soh, Jinwon | Manager Sr. Manager | Product Planning |
| Weinstock, John | Vice President | Vice President, Marketing |

31.     In addition to the New Jersey LG personnel, the LG Korea-based personnel that

are involved in matters relevant to this action routinely travel to LG's New Jersey headquarters,

participate in LG's activities there and are expected to continue to travel to New Jersey.

### JURISDICTION AND VENUE

32.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)

because the matter in controversy, upon information and belief, exceeds $5,000,000, exclusive of

interest and costs, and this is a class action in which certain of the Class members and Defendant

are citizens of different states.

33.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, because

Defendant is a resident of this judicial district and does business throughout this district, and a

substantial part of the events or omissions giving rise to Plaintiffs' claims took place within this

district.

## FACTUAL BACKGROUND

### Facts Common To The Class

34.    Defendant LG Electronics USA, Inc. holds itself out to the public as a manufacturer of safe, cutting-edge, and easy-to-use home appliances, including washing machines. Defendant is in the business of manufacturing, producing, distributing, and/or selling washing machines throughout the United States.

35.    Defendant has manufactured, produced, and/or distributed front-loading washing machines for several leading retailers in the United States, such as Home Depot, Sears and Best Buy.

36.    LG provided Plaintiffs and each owner of the subject Washing Machines with a one-year factory warranty for parts and labor, a two-year factory warranty for the electronic control board, a seven-year factory warranty for the drum motor, and a lifetime warranty for the stainless steel drum. LG's express warranty provides coverage for repairs to correct any Washing Machine defect related to materials or workmanship occurring during the warranty period. Under this warranty, LG was obligated, *inter alia*, to repair the defect at no charge. Defendant has these same obligations with respect to Plaintiffs and all Class members, but has failed to satisfy these obligations.

37.    LG intended for customers to believe its uniform statements about its Washing Machines and to trust that its high-end Washing Machines were and are of first-rate quality (compared with other machines) for washing and cleaning clothing and protecting clothing fabrics, despite LG's knowledge that these statements were misleading due to its omission of

12

material facts about defects in its Machines.

38.     In conjunction with each sale, Defendant warranted that the defective Washing Machines were fit for the ordinary purpose for which such goods were used and were free from defects.

39.     LG has concealed material facts regarding the Washing Machines, including design defects, which cause mold, mildew and/or foul odors to accumulate within the Washing Machines, escape from the Machines if the doors to the Machines are left open, and contaminate clothes washed in the Machines. These defects render the Machines to be unusable for the ordinary purpose for which they were advertised, marketed and sold.

40.     Upon information and belief, the stainless steel drums (which come with a lifetime warranty), among other things, play a role in the accumulation of mold, mildew and/or foul odor within the Washing Machines, by *inter alia*, not fully or properly draining in connection with each and every wash cycle. Also playing a role in the accumulation of mold, mildew and/or foul odors is the door seal, which, among other things, does not fully or properly drain. Furthermore, while offering the Washing Machines for sale to the general public, Defendant was aware of a defect with the stainless steel drum and/or door seal and that none of the proposed solutions it offered Plaintiffs and Class members would adequately remedy the defects, and has succeeded in effectively profiting by failing and refusing to correct the defects in the Washing Machines.

41.     LG was in exclusive possession of this information about any potential defects, which were material to Plaintiffs and Class members, and LG had a duty, under all of the circumstances, to disclose the defects to Plaintiffs and Class members. Nevertheless, LG has

13

failed and refused to warn its customers of the serious defects inherent in the Washing Machines or to warn them regarding the problems and that they have a material likelihood of encountering regarding mold, mildew and/or foul odors due to the defects; and instead, LG has sat silent while consumers purchased and continue to purchase its defective Machines.

42.    LG has also refused, and continues to refuse, to effectively remedy the problems and defects inherent in the Machines.

43.    Furthermore, LG failed to cure the defect, long since known, through application of appropriate engineering of LG front load washers, tooling in the manufacturing process, and/or use of a reasonable alternative design.

44.    In light of LG's knowledge of the problems associated with, and the serious nature of the defects at issue, LG knew, or should have known, that it was selling the Washing Machines to consumers with a value that was substantially diminished.

45.    Plaintiffs and Class members reasonably expected that the Washing Machines would not contain design defects that would substantially impair the Machines' performance and use. Plaintiffs and Class members also reasonably expected that the Machines would not require extensive and expensive repairs (or the purchase of extended or third party warranties to continuously attempt to fix problems inherent in the Washers) as a result of the defects, which defects were known to LG at the time of sale. If LG had not misrepresented and concealed material information regarding the defective nature of the Washing Machines, Plaintiffs and other members of the Class would not have purchased the Machines at premium prices, and on the terms offered.

46.    LG also has profited, either directly or indirectly, by concealing the nature of the

14

defects because LG has been able to convince a large number of consumers to purchase the

Washing Machines and to pay LG for repair services (from which LG earns a profit) to address

the problems arising from the defects at issue -- even though LG has no effective remedy for the

defects, and has in fact profitted by failing and refusing to correct the defects in the Washing

Machines.

47.    As a result of LG's deceptive conduct and material concealments, as well as LG's

other misconduct described in this Complaint, Plaintiffs and the Class bought thousands of the

Washing Machines and have suffered -- and continue to suffer -- injury as a result of the

defective nature of these Washing Machines, and not resulting from the ordinary course of usage

by Plaintiffs and Class members.

48.    As described above, LG is aware of the mold, mildew and/or foul odor problems

at issue in this case, and has been for some time.  Plaintiffs and many members of the Class have

alerted Defendant to the mold, mildew and/or odor problems by complaining to Defendant

directly and/or to Defendant's authorized dealerships and service persons.  Indeed, many

members of the Class have posted their experiences with the defective Washing Machines on the

Internet, including, but not limited to, postings appearing in two on-line forums: http://www.dld

123.com/ci&a/index.php?cid=443; and

http://www.consumeraffairs.com/homeowners/lg_washing_machine.html.

49.    During 2007, at LG's customer call center in Northern Alabama, service

representatives each fielded dozens of calls on a daily basis regarding mold, mildew and/or odor

accumulation in the Washing Machines.  The complaints were not limited to one model of the

Washing Machines but, instead, related to all LG's front-loading Machines, and these complaints

15

(regarding mold, mildew and/or foul odor in the Washing Machines) were, by far, the most common complaints received by LG customer service representatives of all electronic products sold by LG in the United States. Upon information and belief, LG acknowledged internally that the defects causing this mold, mildew and/or foul odor accumulation related to, *inter alia*, defects in the Washing Machines' stainless steel drums and door seals, among other things, which resulted in its failing to drain properly, and that LG had no effective way to repair or remedy the defects in the Machines. Even if LG did offer a repair under its limited warranty (as opposed to the lifetime warranty pertinent to the stainless steel drum) for customers under certain circumstances, this repair "effort" did not meet or fulfill LG's warranty obligations because the "repair" failed to remedy the defect and the Machines still continued to accumulate mold, mildew and/or odor. Despite its legal obligations, LG has not and will not consider any refunds of any kind to customers affected by this pervasive problem. Finally, while recognizing the scope and magnitude of the problems caused by the defects, both internally and at conferences with salespeople and national outlets such as Best Buy, LG consistently has denied to the consuming public the scope and magnitude of the problems caused by these defects.

50.     Upon information and belief, LG has even verified to its technicians at training seminars - by physically opening up the washing machines - that its front-loading Washing Machines are predisposed to the formation of mold, mildew and/or odor.

51.     Upon information and belief, LG is aware that large numbers of Washing Machines sold nationwide through Home Depot alone suffered from these mold, mildew and/or odor problems. Moreover, LG representatives have admitted to persons employed by Best Buy that the Machines suffer from these problems.

52.     During 2006 and 2007, a large percentage of returns of LG front-loading Washing Machines (perhaps as many as 50%) were returned to LG due to mold, mildew and/or odor problems.

53.     LG failed to adequately design and/or test the Washing Machines to ensure that they were and are free from material defects. Before these models even reached the market, LG knew, or was reckless in not knowing, that they: (a) contained inherent defects; and (b) were not of merchantable quality or fit for their ordinary purpose.

54.     To this day, Defendant continues to conceal material information from users, consumers, and the public, through its customer service representatives, that: (a) the Washing Machines are inherently defective; and (b) the Washing Machines are not of merchantable quality or fit for their ordinary purpose.

**New Jersey's Substantive Law Applies To The Proposed Nationwide Class**

55.     New Jersey's substantive laws apply to the proposed Nationwide Class, as defined herein, because Plaintiffs properly bring this Complaint in this District. Further, a number of actions were originally filed in this District.

56.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Nationwide Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by each Plaintiff and all Class members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

57.     Defendant's United States headquarters and principal place of business is located

17

in New Jersey. LG also owns property and conducts substantial business in New Jersey, and

therefore New Jersey has an interest in regulating Defendant's conduct under its laws.

Defendant's decision to reside in New Jersey and avail itself of New Jersey's laws renders the

application of New Jersey law to the claims herein constitutionally permissible.

58.    New Jersey is also the location where Plaintiff Ashe and a significant number of

Class members were injured by virtue of the misconduct alleged herein. Plaintiff Ashe resides in

New Jersey and bought his Washing Machine in New Jersey. A substantial number of members

of the proposed Nationwide Class also reside in New Jersey and bought LG Washing Machines

in New Jersey.

59.    New Jersey is also the State from which Defendant's alleged misconduct

emanated. This conduct similarly injured and affected all Plaintiffs and Class members residing

in the United States. For instance, Defendant's marketing efforts relating to LG's Washing

Machines were created and orchestrated from its headquarters in New Jersey. More specifically,

New Jersey has the following significant contacts to the claims of Plaintiffs and Class members:

a.    LG's New Jersey office serves as the headquarters for its marketing and

sales in the United States and provides all sales support;

b.    Upon information and belief, all corporate decisions regarding the

Washing Machines, and the representations and acts of concealment which are the subject of this

lawsuit were directed by, or emanated from, LG representatives working in New Jersey or

directly reporting to superiors situated in New Jersey;

c.    Several different teams of LG employees who were involved in and are

knowledgeable about the marketing and advertising of LG's Washing Machines, including LG's

18

product development, marketing, training and public relations groups, are located in New Jersey and all documents related to these functions are located in New Jersey;

        d.     Furthermore, upon information and belief, all customer complaints received at LG's customer call centers were and are forwarded to LG representatives working in New Jersey, who in turn dictate the scripted responses that are to be given to complaining customers; and

        e.     In addition to the New Jersey LG personnel, the LG Korea-based personnel that are involved in matters relevant to this action routinely travel to LG's New Jersey headquarters and are expected to continue to travel to New Jersey.

      60.     The application of New Jersey's laws to the Nationwide Class is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiffs and the proposed Nationwide Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

      61.     In the alternative, the Court may apply the substantive law of the States where the named Plaintiffs reside and/or bought their Washing Machines:  California, Colorado, Connecticut, Florida, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas and Wisconsin.

## CLASS ACTION ALLEGATIONS

      62.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Rule 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

      63.     The Class that Plaintiffs seek to represent is defined as follows:

      **Nationwide Class:**

All persons or entities residing in the United States who purchased, not for resale, a Washing Machine ("Class").

64.    In the alternative to the claims asserted on behalf of the Class, Plaintiffs also bring this action on behalf of the following Sub-Classes, as more fully set forth below and to the extent appropriate:

**Sub-Classes:**

**California:** All Class members who purchased a Washing Machine in the State of California and who purchased the Machine for primarily personal, family or household purposes as defined by California Civil Code § 1791(a).

**Colorado:** All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Colorado.

**Connecticut:** All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Connecticut.

**Florida**: All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Florida.

**Illinois**: All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Illinois.

**Massachusetts:** All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Massachusetts.

**Michigan:** All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Michigan.

**New Jersey**: All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in New Jersey.

**New York**: All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in New York.

**North Carolina:** All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in North

Carolina.

**Ohio:** All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Ohio.

**Pennsylvania:** All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Pennsylvania.

**Texas**: All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in Texas.

**Wisconsin:** All Class members who purchased a Washing Machine for primarily personal, family or household purposes, and not for resale, in the State of Wisconsin.

Excluded from the Class and Sub-Classes ("Classes") are Defendant, its affiliates, employees, officers and directors, persons or entities that distribute or sell the Washing Machines, the Judge(s) assigned to this case, and the attorneys of record in this case. Plaintiffs reserve the right to amend the Class and Sub-Class definitions if discovery and further investigation reveals that the Class should be expanded or otherwise modified.

65.    **Numerosity/Impracticability of Joinder**: The members of the Classes are so numerous that joinder of all members would be impracticable. The proposed Classes include thousands of members. The precise number of Class members can be ascertained by reviewing documents in Defendant's possession, custody and control.

66.    **Commonality and Predominance**: There are common questions of law and fact which predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, include, but are not limited to the following:

(a)    Whether the Washing Machines are defective;

(b)    Whether LG knew that the Washing Machines were and are defective;

21

(c)    Whether LG omitted and concealed material facts from its communications and disclosures to Plaintiffs and the Classes regarding the defects inherent in the Washing Machines;

(d)    Whether LG has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the Machines;

(e)    Whether New Jersey law can and should be applied to the Nationwide Class;

(f)    Whether LG violated various state consumer protection statutes;

(g)    Whether LG breached its warranty and/or extended warranties;

(h)    Whether LG breached its implied warranties;

(i)    Whether LG has been unjustly enriched;

(j)    Whether, as a result of LG's conduct, Plaintiffs and the Classes have suffered damages; and if so the appropriate amount thereof; and

(k)    Whether, as a result of LG's misconduct, Plaintiffs and the Classes are entitled to equitable relief and/or other relief, and, if so, the nature of such relief.

67.    **Typicality**: The representative Plaintiffs' claims are typical of the claims of the members of the Class and, as applicable, each respective Sub-Class. Plaintiffs and all Class members have been injured by the same wrongful practices in which LG has engaged. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and, as applicable, members of the Sub-Classes, and are based on the same legal theories.

68.    **Adequacy**: Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests

which are contrary to or conflicting with the Classes.

69.    **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are likely in the millions of dollars, the individual damages incurred by each Class member resulting from LG's wrongful conduct are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, LG has acted or refused to act on grounds generally applicable to the Classes and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

70.    Plaintiffs do not anticipate any difficulty in the management of this litigation.

71.    Defendant has, or has access to, address information for the Class members, which may be used for the purpose of providing notice of the pendency of this action.

**Notice To Attorneys General Of Action**

72.    A copy of this Complaint shall be mailed to the Attorneys General,

Administrators, Commissioners, or other officers, as required by law, and upon and at the time

of the filing of the Complaint pursuant to: N.J.S.A. § 56:8-20, and Tex. Bus. & Com. Code §

l7501(a)(1).

**FIRST CAUSE OF ACTION**
**Asserted On Behalf Of The Nationwide Class Against LG,**
**And Alternatively, On Behalf of The New Jersey Sub-Class Against LG**
**(Violations Of New Jersey Consumer Fraud Act ("CFA") (N.J.S.A. § 56:8-1 *et seq*.))**

73.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

74.    Plaintiffs, other members of the Class, and LG are "persons" within the meaning

of the CFA.

75.    Plaintiffs and other members of the Class are "consumers" within the meaning of

the CFA.

76.    At all relevant times material hereto, LG conducted trade and commerce in New

Jersey and elsewhere within the meaning of the CFA.

77.    The CFA is, by its terms, a cumulative remedy, such that remedies under its

provisions can be awarded in addition to those provided under separate statutory schemes.

78.    LG has engaged in deceptive practices in the sale of the defective front-loading

Washing Machines including: (1) selling Washing Machines with a design flaw that causes mold,

mildew and/or foul odor to occur with normal use and/or created a substantial risk that mold,

mildew and/or foul odor would occur with normal use; and (2) intentionally failing to disclose

and/or concealing this known defect and risk.

79.    LG consciously omitted to disclose material facts to Plaintiffs and other members

24

of the Class with respect to the defects that cause mold, mildew and/or odor to occur with normal use and/or creates a substantial risk that mold, mildew and/or odor would occur with normal use.

80.   LG's unconscionable conduct described herein included the omission and concealment of material facts concerning the Washing Machines.

81.   LG intended that Plaintiffs and the other members of the Class rely on the acts of concealment and omissions, so that Plaintiffs and other Class members would purchase the Washing Machines.

82.   Had LG disclosed all material information regarding the Washing Machines to Plaintiffs and other members of the Class, they would not have purchased the Machines.

83.   The foregoing acts, misrepresentations, omissions and unconscionable commercial practices caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to repair and replace the Washing Machines and diminution in value of the Washing Machines, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

84.   Application of the CFA to all Class members located throughout the country, regardless of their state of residence, is appropriate as described herein and because, *inter alia*:

   a.   LG controlled and directed their nationwide sales operations and support operations from New Jersey;

   b.   LG's marketing operations and decisions, including the decisions as to how to advertise, promote and sell Washing Machines, were made in New Jersey and Defendant's sales and marketing personnel all are based here;

   c.   LG's principal place of business is located in New Jersey;

25

d.     The majority of significant employees of LG are based in New Jersey, and the LG Korea-based personnel relevant to this action routinely travel to LG's New Jersey headquarters and are expected to continue to do so;

e.     The majority of significant documents of LG are located in New Jersey;

f.     The facts and circumstances of this case bestow numerous contacts with the State of New Jersey so as to create a state interest in applying the CFA to LG, thereby making application of New Jersey law to the entire Class appropriate.

85.     Alternatively, Plaintiff Ashe seeks all available remedies on behalf of himself and the New Jersey Sub-Class.

**SECOND CAUSE OF ACTION**
**Asserted On Behalf Of Nationwide Class Against LG**
**(Violations Of Magnuson-Moss Act (15 U.S.C. §§ 2301-2312) --Written Warranty)**

86.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

87.     LG's Washing Machines are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

88.     Plaintiffs and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3), and utilized the Washing Machines for personal and household use and not for resale or commercial purposes.

89.     Defendant is a "warrantor" and "supplier" as those terms are defined by 15 U.S.C. § 2301(4) and (5).

90.     Defendant provided Plaintiffs and Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

91.     In its capacity as a warrantor, and by the conduct described herein, any attempt by Defendant to limit the express warranties in a manner that would exclude coverage of the defective Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Washing Machines is null and void.

92.     All jurisdictional prerequisites have been satisfied.

93.     By Defendant's conduct as described herein, including Defendant's knowledge of the defective Washing Machines and its action, and inaction, in the face of that knowledge Defendant has failed to comply with its obligations under its written and implied promises, warranties, and representations.

94.     As a result of Defendant's breach of express warranties, Plaintiffs and Class members are entitled to revoke their acceptance of the Washing Machines, obtain damages and equitable relief, and obtain attorneys' fees and costs pursuant to 15 U.S.C. § 2310.

## THIRD CAUSE OF ACTION
### Asserted On Behalf Of The Nationwide Class Against LG, And Alternatively, On Behalf Of Each Sub-Class Against LG Pursuant To State Law
### (Breach Of Express Warranty)

95.     Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

96.     Plaintiffs seek to recover for LG's breach of express warranty under the laws of the State of New Jersey.

97.     LG warranted all of the Washing Machines against defects in material or workmanship at a time when it knew that these Machines suffered from a serious defect and, nevertheless, continued to market and sell these Machines with this express warranty.

98.    LG also sold extended warranties to Plaintiffs and some members of the Class even though it had no intention of remedying the serious defects in material and workmanship inherent in the Machines and has continued to market and sell extended warranties with respect to the Machines despite the serious defects in the Washing Machines.

99.    LG further warranted the stainless steel drums for their lifetime.

100.    LG is obligated under the terms of its express warranty to repair and/or replace the defective Machines sold to Plaintiffs and the Class.

101.    LG has breached its express warranties, as set forth above, including its extended warranties, by supplying the Washing Machines in a condition which does not meet the warranty obligations undertaken by LG and by failing to repair or replace the defect and/or defective parts, including the stainless steel drum, inherent in the Machines.

102.    LG has received sufficient and timely notice of the breaches of warranty alleged herein. Despite this notice and LG's knowledge, LG refuses to honor its warranty, even though it knows of the inherent defect in the Washing Machines.

103.    In addition, LG has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines.

104.    Plaintiffs have given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so.

105.    LG has failed to provide to Plaintiffs or the Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that LG expressly warranted when it sold the Washing Machines to Plaintiffs and members of the Class.

106.    As a result of LG's breach of warranty, Plaintiffs and the Classes have suffered

damages in an amount to be determined at trial.

107.    Alternatively, Plaintiffs seek to recover for LG's breach of express warranty under

the substantially similar laws of the states of purchase, specifically: California (Song-Beverly

Act, Civil Code §1790 *et seq.*), Colorado (C.R.S.A. §4-2-313), Connecticut (C.G.S.A. §42a-2-

313), Florida (F.S.A. §672.313), Illinois (810 ILCS 5/2-313), Massachusetts (M.G.L.A. 106 §2-

313), Michigan (Michigan Uniform Commercial Code, § 440.2313), New Jersey (N.J.S.A.

12A:2-313), New York (New York Uniform Commercial Code §2-313), North Carolina

(N.C.G.S.A. §25-2-313), Ohio (Ohio Rev. Code §1302.26), Pennsylvania (13 Pa. C.S.A. §2313),

Texas (Tex. Bus. & Com. Code Ann. §2-313) and Wisconsin (W.S.A. §402.313).

### FOURTH CAUSE OF ACTION
**Asserted On Behalf Of The Nationwide Class Against LG, And Alternatively, On
Behalf Of Each Sub-Class Against LG Pursuant To State Law
(Breach Of Implied Warranty Of Merchantability)**

108.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

109.    Plaintiffs seek to recover for LG's breach of implied warranty under the laws of

the State of New Jersey.

110.    Defendant's implied warranty of merchantability accompanied the sale of the

Washing Machines to Plaintiffs and members of the Class.

111.    LG is a merchant in the sale of the Washing Machines to Plaintiffs and the Class

members. LG manufactures, markets and sells the Washing Machines. LG provided Plaintiffs

and the Class members with an implied warranty that the Washing Machines were merchantable

and fit for the ordinary purposes for which they were sold. The Washing Machines are not fit for

the ordinary purpose of cleaning clothing and other articles, because, *inter alia*, the Washing

Machines are defective in that they contain design defects that cause the Washing Machines to

accumulate mold, mildew and/or foul odors within the Washing Machines and to produce a

moldy odor that permeates consumers' homes and clothing. Accordingly, clothing is not cleaned

in the Machines.

112.    The alleged defects are so basic that they render the Washing Machines unfit for

the ordinary purpose of cleaning clothing and other articles.

113.    LG knew or had reason to know that Plaintiffs and the Class members purchased

the Washing Machines to effectively wash their clothing and other articles.

114.    The Washing Machines do not conform to the promises and affirmations

uniformly issued by Defendant in its sales materials and warranties.

115.    Plaintiffs and the Class members have used the Washing Machines for their

intended and ordinary purpose of cleaning clothing and other articles.

116.    Plaintiffs and the Class members have performed each and every duty required

under the terms of the warranties, except as may have been excused or prevented by the conduct

of Defendant or by operation of law in light of Defendant's unconscionable conduct.

117.    Plaintiffs and the Class members have provided sufficient and timely notice to

Defendant regarding the problems they experienced with the Washing Machines and,

notwithstanding such notice, Defendant has failed and refused to offer Plaintiffs and the Class

members an effective remedy.

118.    In addition, Defendant has received, on information and belief, thousands of

complaints and other notices from consumers advising them of the defects associated with the Washing Machines.

119.    By virtue of the conduct described herein, Defendant breached the implied warranty of merchantability.

120.    Plaintiffs and the Class members have been damaged as a direct and proximate result of LG's breach of the implied warranty.

121.    Alternatively, Plaintiffs seek to recover for LG's breach of implied warranty, warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, 2301(7), 2310, and the substantially similar laws of the states of purchase, specifically:  California (Song-Beverly Act, Civil Code §1790 *et seq.*), Colorado (C.R.S.A. §4-2-314), Connecticut (C.G.S.A. §42a-2-314), Illinois (810 ILCS 5/2-314), Massachusetts (M.G.L.A. 106 §2-314), Michigan (Michigan Uniform Commercial Code, § 440.2314), New Jersey (N.J.S.A. 12A:2-314), New York (New York Uniform Commercial Code §2-314), Ohio (tortious breach of warranty), Pennsylvania (13 Pa. C.S.A. §2314), Texas (Tex. Bus. & Com. Code Ann. §2-314) and Wisconsin (W.S.A. §402.314).

### FIFTH CAUSE OF ACTION
**Asserted On Behalf Of The Nationwide Class Against LG, And Alternatively, On Behalf Of Each Sub-Class Against LG Pursuant To State Law**
**(Unjust Enrichment)**

122.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

123.    In the alternative, LG has been unjustly enriched by the purchases of the Washing Machines by Plaintiffs and the Class members.

31

124.    Plaintiffs seek to recover for LG's unjust enrichment under the law of the State of New Jersey.

125.    Plaintiffs and the Class members unknowingly conferred a benefit on LG of which LG had knowledge since LG was aware of the defective nature of the Washing Machines and the problems that plagued them, but failed to disclose this knowledge and misled Plaintiffs and the Class members regarding the nature and quality of the Washing Machines while profiting from this deception.

126.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit LG to retain the benefit of these profits that it unfairly has obtained from Plaintiffs and the Class members.

127.    Plaintiffs and the Class members, having been damaged by LG's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of LG to their detriment.

128.    Alternatively, Plaintiffs and the Class members seek to recover for LG's unjust enrichment under the substantially similar laws of the states of purchase, specifically:  California, Colorado, Connecticut, Florida, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Texas and Wisconsin.

## SIXTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The California Sub-Class Against LG
### (Unfair Competition Law (Bus. & Prof. Code §17200 *et seq*.)

129.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

130.    Plaintiff Boone asserts this cause of action on behalf of herself and the California

Sub-Class.

131.    Defendant has engaged in unfair, unlawful, and fraudulent business practices as set forth above.

132.    By engaging in the above-described acts and practices, Defendant has committed one or more acts of unfair competition within the meaning of Business and Professions Code §17200 *et seq.*

133.    Defendant's acts and practices have deceived and/or are likely to deceive members of the consuming public and the Class.

134.    LG knowingly sold Plaintiff Boone and the California Sub-Class and other consumers Washing Machines with design defects that have rendered the Machines essentially unusable for the purposes for which they were sold.

135.    The injury to consumers by this conduct is greatly outweighed by any alleged countervailing benefit to consumers or competition under all of the circumstances. Moreover, in light of LG's exclusive knowledge of the defects, the injury is not one that Plaintiff Boone and members of the California Sub-Class could have reasonably avoided.

136.    Defendant's acts and practices are unlawful because they violate Civil Code §§1668, 1709 and 1710. Defendant's acts and practices are also unlawful because they violate the Song-Beverly Act, Civil Code § 1790 *et seq.* and California Commercial Code § 2313.

137.    Plaintiff Boone, on behalf of herself and the California Sub-Class, seeks an order of this Court awarding restitution, disgorgement, injunctive relief and all other relief allowed under Section 17200 *et seq.*, plus interest, attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
**Asserted, In The Alternative, On Behalf Of The California Sub-Class Against LG**
**The Song-Beverly Act - Breach Of Express Warranty**
**(Violations Of Civil Code § 1790 _et seq._)**

138.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

139.    Plaintiff Boone asserts this cause of action on behalf of herself and the California Sub-Class.

140.    As an express warrantor and manufacturer, LG had certain obligations under the Song-Beverly Act, and, in particular, Civil Code §1793.2(b) and (d), to conform the Washing Machines to the express warranty.

141.    LG has been unable to conform the Washing Machines to the express warranty after a reasonable number of attempts at repair. Defendant is, therefore, required to either pay damages or reimburse the buyer the purchase price and incidental damages pursuant to Civil Code §§ 1793.2(d) and 1794.

142.    Defendant knew of its obligations under its warranty to pay for a new Machine, as needed, caused by the defect described herein. However, LG has willfully refused to pay for a new Machine as required under the warranty. LG is, therefore, liable for not only damages, but also a civil penalty pursuant to Civil Code § 1794.

## EIGHTH CAUSE OF ACTION
**Asserted, In The Alternative, On Behalf Of The California Sub-Class Against LG**
**The Song-Beverly Act - Breach Of Implied Warranty**
**(Violations Of Civil Code § 1790 _et seq._)**

143.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

144.    Plaintiff Boone asserts this cause of action on behalf of herself and the California Sub-Class.

145.    LG was a merchant in the sale of the Washing Machines to Plaintiff Boone and the Sub-Class members.

146.    By operation of law, LG provided Plaintiff Boone and the members of the California Sub-Class with an implied warranty of merchantability in the sale and lease of the Washing Machines.

147.    Plaintiff Boone's Washing Machine and the Machines purchased by members of the California Sub-Class are not fit for the ordinary purposes for which such Machines are used, because the defects cause the Machines to, among other things, produce and accumulate mold, mildew and/or odor, thereby seriously impairing the use and functionality of the Machines in a manner that does not meet the reasonable expectations of Plaintiff Boone or any other purchaser of the Machines. Thus, the Machines do not operate as they should when used for their ordinary purposes, and the manner in which the defective Machines do perform is so deficient and below a minimum level of quality so as to render them unfit for their ordinary use and purpose.

148.    By failing to repair the Washing Machines and by failing to replace the Washing Machines as needed, LG has breached the implied warranty of merchantability.

149.    Plaintiff Boone and the members of the California Sub-Class have been damaged as a result of LG's breach of the implied warranty.

150.    Plaintiff Boone and the members of the California Sub-Class are entitled to the remedies provided by California Civil Code § 1794.

## NINTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The Colorado Sub-Class Against LG
### (Violation Of Colorado Consumer Protection Act ("CCPA"), C.C.P.A. § 6-1-101, *et seq*.)

151.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

152.    LG's business acts and practices alleged herein constitute unfair, unconscionable and/or deceptive methods, acts or practices under the CCPA.

153.    At all relevant times hereto, Plaintiffs Cook and Cook-Sommer ("Colorado Plaintiffs") were "persons" under the CCPA.

154.    At all relevant times hereto, LG was a "person" engaged in "trade or commerce" under the CCPA and its actions and inactions significantly impact the public as consumers of LG Washing Machines.

155.    Under all of the circumstances set forth, LG's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

156.    The foregoing acts, omissions and practices proximately caused Colorado Plaintiffs and other members of the Colorado Sub-Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to replace the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

## TENTH CAUSE OF ACTION
### Asserted, In the Alternative, On Behalf Of The Connecticut Sub-Class Against LG
### (Violations Of Connecticut Unfair Trade Practices Act ("CUTPA"),
### Conn. Gen. Stat. Ann. § 42-110a, *et seq*.)

157.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

158.    The Connecticut Unfair Trade Practices Act prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a).

159.    CUTPA explicitly provides for a private cause of action for anyone who has suffered an ascertainable loss of money or property as a result of the use or employment of a method, act, or practice prohibited by CUTPA.  Conn. Gen. Stat. Ann. § 42-110g.

160.    LG knowingly concealed, suppressed and failed to disclose material facts in connection with its marketing and sale of the Defective Washing Machines.

161.    LG's conduct, as set forth above, constitutes an unfair method of competition and/or unfair and/or deceptive acts and practices prohibited under CUTPA.

162.    As a result of such conduct, Plaintiff Irving and other members of the Connecticut Sub-Class have suffered an ascertainable loss of monies and/or property.

163.    Plaintiff Irving and other members of the Connecticut Sub-Class are entitled to compensatory damages, as well as costs and reasonable attorneys' fees pursuant to Conn. Gen. Stat. Ann. § 42-110g(d).

164.    Plaintiff Irving and other members of the Connecticut Sub-Class are also entitled to punitive damages because LG's conduct reveals a reckless indifference to the rights of others and/or an intentional and wanton violation of those rights.

### ELEVENTH CAUSE OF ACTION
#### Asserted, In The Alternative, On Behalf Of The Florida Sub-Class Against LG
(Violation Of Florida's Deceptive And Unfair Trade Practices Act,
F.S.A., 501.201 *et seq.* ("FDUTPA"))

165.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if

fully set forth herein.

166.    At all relevant times, Plaintiffs Harpers and Launch ("Florida Plaintiffs") and all members of the Florida Sub-Class were consumers within the meaning of FDUTPA.

167.    At all relevant times hereto, LG engaged in trade and/or commerce within the meaning of FDUTPA.

168.    The practices of Defendant violate FDUTPA for, *inter alia*, one or more of the following reasons:

    a.    LG omitted and concealed material facts from its communications and disclosures to Florida Plaintiffs and all members of the Florida Sub-Class regarding the defects inherent in the Washing Machines; and

    b.    LG knew, or was reckless in not knowing, that its statements about the Washing Machines were false and/or misleading due to the omission of material facts.

169.    By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

170.    The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

171.    Had LG disclosed all material information regarding the Washing Machines to Florida Plaintiffs and all of the members of the Florida Sub-Class, they would not have purchased the Washing Machines.

172.    The foregoing acts and practices proximately caused Florida Plaintiffs and other members of the Florida Sub-Class to suffer actual damages in the form of, *inter alia*, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines, and

are entitled to recover such damages, together with appropriate exemplary damages, attorneys'

fees and costs of suit.

### TWELFTH CAUSE OF ACTION
**Asserted, In The Alternative, On Behalf Of The Illinois Sub-Class Against LG
(Violation Of Illinois Consumer Fraud And Deceptive Practices Act, ("CFDPA")
Ill. Comp. Stat. Ann. 505/1 *et seq.*, 510/1 *et seq.*)**

173.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

174.    At all relevant times, Plaintiff Scalise and all members of the Illinois Sub-Class

were consumers within the meaning of CFDPA.

175.    At all relevant times hereto, LG engaged in trade and/or commerce within the

meaning of CFDPA.

176.    Despite knowing that the Washing Machines are manufactured and sold with an

inherent defect, as described herein, that causes mold, mildew and/or odor to accumulate within

the Washing Machines, produces a moldy odor that permeates consumers' homes if the doors to

the Washing Machines are left open, and produces mold, mildew and/or odor on clothes washed

in the Machines, when it markets and sells the Machines, LG uniformly represents to customers

and the general public that the Machines are free from defects and will perform in the manner

and for the purpose for which they are intended.

177.    Under all circumstances, LG's representations and/or omissions regarding the

defects in the Washing Machines were misleading and deceptive, and LG intentionally made

these misleading and deceptive representations and/or omissions (while knowing they were

deceptive and misleading) for the sole purpose of deceiving Plaintiff Scalise and members of the

Illinois Sub-Class.  Defendant intended that Plaintiff Scalise and members of the Illinois Sub-

Class rely on LG's deceptive and misleading practice.

178.    LG's conduct was unfair and deceptive and constituted an improper concealment, suppression or omission of material facts, in violation of the CFDPA's prohibition against unfair business practices.

179.    LG violated the CFDPA's prohibition against misrepresenting and omitting material information during commercial transactions, as well as the CFDPA's prohibition against unfair business practices.

180.    LG's misconduct, including the misrepresentations and/or concealment of the defective condition of the Machines, as described in this Complaint, took place in the course of trade or commerce in Illinois, and arose out of transactions that occurred at one or more of its retail outlets in Illinois.

181.    As a direct and proximate result of LG's violations of the CFDPA, Plaintiff Scalise and other members of the Illinois Sub-Class suffered damages, in the form of, *inter alia*, monies spent to repair the Washing Machines and/or diminution in value of the Washing Machines.

## THIRTEENTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The Michigan Sub-Class Against LG (Violation Of Michigan Consumer Protection Act ("MCPA"), ( M.C.L.A. § 445.901 *et seq.*)

182.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

183.    At all relevant times hereto, Plaintiffs Grosso and the members of the Michigan Sub-Class  were "persons" and LG was a "person" engaged in "trade or commerce" under the MCPA.

184. Plaintiffs Grosso purchased their Washing Machine primarily for personal, family and household purposes.

185. The practices of Defendant violate MCPA for, *inter alia*, one or more of the following reasons:

a. LG engaged in unconscionable commercial practices in failing to reveal material facts and information about the Washing Machines, which did, or tended to, mislead Plaintiffs and the Class about facts that could not reasonably be known by the consumer;

b. LG failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

c. LG intended that Plaintiffs Grosso and the members of the Michigan Sub-Class rely on their omissions, so that Plaintiffs Grosso and the members of the Michigan Sub-Class would purchase the Washing Machines; and

d. Under all of the circumstances, LG's conduct in employing these unfair and deceptive trade practices was malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

186. LG's violation of the MCPA did not result from a *bona fide* error notwithstanding the maintenance of procedures reasonably adopted to avoid the violations alleged herein.

187. The foregoing acts, omissions and practices proximately caused Plaintiffs Grosso and the members of the Michigan Sub-Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to repair or replace the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

### FOURTEENTH CAUSE OF ACTION
### Asserted, In The Alternative, On Behalf Of The New York Sub-Class Against LG
### (Violations Of Section 349 Of New York General Business Law:
### Deceptive Acts And Practices)

188.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

189.    Plaintiffs Burke, Figueroa, and Manzello ("New York Plaintiffs") and the members of the New York Sub-Class are consumers in New York who purchased the Washing Machines and bring this action pursuant to NY GBL §349.

190.    LG has engaged in deceptive practices in the sale of the defective front loading washing machines including: (1) selling washing machines with a design flaw that caused mold, mildew and/or odor to occur with normal use and/or created a substantial risk of this; and (2) failing to disclose and/or concealing this known defect and risk.

191.    The unfair and deceptive trade acts and practices of LG have directly, foreseeably and proximately caused damages and injury to New York Plaintiffs and the other members of the New York Sub-Class.

### FIFTEENTH CAUSE OF ACTION
### Asserted, In The Alternative On Behalf Of The North Carolina Sub-Class Against LG
### (Violations Of North Carolina's Unfair And Deceptive Trade Practices Act ("NCUDTPA"),
### N.C. Gen. Stat. § 75.1-1)

192.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

193.    North Carolina's Unfair and Deceptive Trade Practices Act prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." LG's business acts and practices alleged herein are a violation of the statute and affected commerce within the meaning of NCUDPTA.

194.    The purchase of LG Washing Machines by Plaintiffs Zimmerman and the North Carolina Sub-Class as described herein constitute transactions in commerce within the meaning of NCUDTPA.

195.    The practices of Defendant violate the NCUDTPA for, *inter alia*, one or more of the following reasons:

      a.    LG failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner;

      b.    LG caused Plaintiffs Zimmerman and the members of the North Carolina Sub-Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

      c.    LG failed to disclose material facts regarding the defect in the Washing Machines and omitted material facts related to the defect in its marketing and sale of the Washing Machines;

      d.    LG intended that Plaintiffs and the other members of the Class rely on their conduct and material omissions, so that Plaintiffs and other Class members would purchase the Washing Machines.

196.    LG omitted and concealed material facts from its communications and disclosures to Plaintiffs Zimmerman and all members of the North Carolina Sub-Class regarding the defects inherent in the Washing Machine.

197.    LG's acts and omissions had a tendency or capacity to deceive Plaintiffs Zimmerman and the North Carolina Sub-Class.

198.    Plaintiffs Zimmerman and the North Carolina Sub-Class were injured by reason of Defendant's acts and omissions.

199.    LG's conduct as described herein was unfair, deceptive, in violation of public

policy, and substantially injurious to Plaintiffs Zimmerman and the North Carolina Sub-Class.

200.    Plaintiffs Zimmerman and the North Carolina Sub-Class have suffered actual

damages in the form of, *inter alia* monies spent to repair or replace the Washing Machines and/or

diminution in value of the Washing Machines, and are entitled to recover such damages, together

with appropriate exemplary damages, attorneys' fees, and costs of suit.

### SIXTEENTH CAUSE OF ACTION
### Asserted, In the Alternative, On Behalf Of The Pennsylvania Sub-Class Against LG
### (Violation Of Pennsylvania Unfair Trade Practices And Consumer Protection
### Laws ("UTPCPL"), 73 Pa.C.S.A. §§ 201-1, *et seq*)

201.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully

set forth herein.

202.    LG is a manufacturer, marketer, seller and/or distributor of the Washing

Machines.

203.    The conduct alleged above constitutes unfair methods of competition or unfair or

deceptive acts or practices in violation of Section 201-2(4)(v),(vii), (xiv) and (xxi) of the

UTPCPL, 73 Pa.C.S.A. §§ 201-1, *et seq*.

204.    The UTPCPL applies to the claims of Plaintiff Ann Trethewey and the other

members of the Pennsylvania Sub-Class because the conduct which constitutes violations of the

UTPCPL by the Defendant occurred within the Commonwealth of Pennsylvania.

205.    Plaintiff Trethewey and the other members of the Pennsylvania Sub-Class are

consumers who purchased Washing Machines and did so primarily for personal, family or

household purposes within the meaning of 73 Pa.C.S.A. § 201-9.2.

206.    LG used and employed unfair methods of competition and/or unfair or deceptive

acts or practices within the meaning of 73 Pa.C.S.A. §§ 201-2 and 201-3. Such unfair methods of competition and/or unfair or deceptive acts or practices include, but are not limited to the following:

a.    Failing to comply with any written guaranty or warranty given to the buyer at, prior to, or after a contract for the purchase of goods or services was made (§ 201-2(4)(xiv)) (LG failed to comply with the written warranties set forth above); and

b.    Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding (§ 201-2(4)(xxi)) (LG deceptively created the likelihood of confusion or misunderstanding about the quality of the Washing Machines and LG's intention to honor its warranties with respect to the Washing Machines).

207.    LG knew or should have known that the Washing Machines were defective, would fail prematurely, were not suitable for use, and otherwise were not as warranted and represented by LG.

208.    LG's concealments, omissions, deceptions and conduct were likely to deceive and likely to cause misunderstanding and/or in fact caused Plaintiff Trethewey and the other members of the Pennsylvania Sub-Class to be deceived and to misunderstand the suitability of the Washing Machines for use and LG's intent to honor its warranties.

209.    LG intended that Plaintiff Trethewey and the other members of the Pennsylvania Sub-Class would rely on its misrepresentations, concealment, warranties, deceptions and/or omissions.

210.    Plaintiff Trethewey and the other members of the Pennsylvania Sub-Class have been damaged as a proximate result of LG's violations of the UTPCPL and have suffered actual, ascertainable losses by virtue of having purchased the Washing Machines.

211.    As a direct and proximate result of LG's violations of the UTPCPL as set forth above, Plaintiff Trethewey and the other members of the Pennsylvania Sub-Class have suffered an ascertainable loss of money and are therefore entitled to relief, including damages, plus triple damages, costs and attorney's fees under Section 201-9.2 of the UTPCPL.

### SEVENTEENTH CAUSE OF ACTION
**Asserted, In The Alternative, On Behalf Of The Texas Sub-Class Against LG
(Violation of Texas' Deceptive Trade Practices-Consumer Protection Act ("DTPA"),
§ 17.41, _et seq._)**

212.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

213.    At all relevant times, Plaintiff Olejniczak and the members of the Texas Sub-Class were consumers within the meaning of DTPA.

214.    At all relevant times hereto, LG engaged in trade and/or commerce within the meaning of DTPA.

215.    The practices of Defendant violate DTPA for, _inter alia_, one or more of the following reasons:

a.    LG omitted and concealed material facts from its communications and disclosures to Plaintiff Olejniczak and the members of the Texas Sub-Class regarding the defect inherent in the Washing Machines;

b.    LG made false and/or misleading statements of material fact regarding the Washing Machines, which statements were likely to deceive the public;

c.    LG knew, or was reckless in not knowing, that its statements about the Washing Machines were false and/or misleading;

d.    LG represented that a guarantee or warranty confers or involves rights or

remedies which it does not have;

       e.     LG represented that the Washing Machines had sponsorship, approval, characteristic uses and benefits that they did not have; and

       f.     LG represented that the Washing Machines were of a particular standard, quality or grade, when they were not.

216.    By the conduct described herein, Defendant has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce.

217.    The representations and omissions by Defendant were likely to deceive reasonable consumers and a reasonable consumer would have relied on these representations and omissions.

218.    Had LG disclosed all material information regarding the Washing Machines to Plaintiff Olejniczak and the members of the Texas Sub-Class, they would not have purchased the Washing Machines.

219.    The foregoing acts and practices proximately caused Plaintiff Olejniczak and the members of the Texas Sub-Class to suffer actual damages in the form of, *inter alia*, monies spent to repair or replace the Washing Machines and/or diminution in value of the Washing Machines, and are entitled to recover such damages, together with appropriate exemplary damages, attorneys' fees and costs of suit.

### EIGHTEENTH CAUSE OF ACTION
### Asserted, In the Alternative, On Behalf Of The Wisconsin Sub-Class Against LG
### (Violations Of Wisconsin Deceptive Trade Practices Act, ("WDTPA")
### Wis. Stat. Ann. § 100.18, *et seq.*)

220.    Plaintiffs repeat and reallege the allegations of the preceding paragraphs as if fully set forth herein.

221.    LG made, published, disseminated, circulated, and/or placed before the public, and/or caused to be made, published, disseminated, circulated, or placed before the public, advertisements, announcements, statements and representations to the public relating to the purchase, sale, hire, and use of its Washing Machines, that contained assertions, representations and statements of fact concerning the qualities and characteristics of such products.

222.    Such advertisements, announcements, statements and representations were made, published, disseminated, circulated, and/or placed before the public pursuant to LG's intent: 1) to sell, distribute and increase the consumption of its Washing Machines; and/or 2) to induce the public to enter into contracts and/or obligations relating to the purchase, sale, hire, use or lease of its Washing Machines.

223.    LG's aforementioned assertions, representations and statements of fact concerning the qualities and characteristics of its Washing Machines were untrue, deceptive and misleading, in violation of the WDTPA.

224.    LG's assertions, representations and statements of fact concerning the qualities and characteristics of its Washing Machines were untrue, deceptive and misleading because they misrepresented and concealed, suppressed and failed to disclose facts concerning defects in its products that cause the formation of mold, mildew and/or odor within such products.

225.    LG's untrue, deceptive and misleading assertions, representations and statements of fact concerning the qualities and characteristics of its Washing Machines materially induced Plaintiff Demski and other members of the Wisconsin Sub-Class to purchase LG's Washing Machines.

226.    Plaintiff Demski and other members of the Wisconsin Sub-Class suffered pecuniary loss as result of LG's untrue, deceptive and misleading assertions, representations and

statements of fact concerning the qualities and characteristics of its Washing Machines.

227. Plaintiff Demski and other members of the Wisconsin Sub-Class are entitled to damages equal to their pecuniary loss and costs, including reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class and, where applicable, the Sub-Classes, pray for judgment against Defendant granting the following relief:

a. An order certifying this case as a class action and appointing Plaintiffs' counsel to represent the Class and the Sub-Classes;

b. Restitution and disgorgement of all amounts obtained by LG as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

c. All recoverable compensatory and other damages sustained by Plaintiffs and the Class and Sub-Classes;

d. Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class and Sub-Classes in the maximum amount permitted by applicable law;

e. An order (1) requiring LG to immediately cease its wrongful conduct as set forth above; (2) enjoining LG from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering LG to engage in a corrective notice campaign; and (4) requiring LG to refund to Plaintiffs and all members of the Class the funds paid to LG for the defective Washing Machines;

f. Statutory pre-judgment and post-judgment interest on any amounts;

g. Payment of reasonable attorneys' fees and costs as may be allowable under applicable law; and

h.    Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action so triable.

May 6, 2008                              Respectfully submitted,

                                         /s/James C. Shah
                                         James C. Shah
                                         Natalie Finkelman Bennett
                                         Nathan C. Zipperian
                                         SHEPHERD, FINKELMAN, MILLER &
                                         SHAH, LLP
                                         475 White Horse Pike
                                         Collingswood, NJ 08107
                                         Telephone:  (856) 858-1770
                                         Facsimile:  (856) 858-7012
                                         jshah@sfmslaw.com
                                         nfinkelman@sfmslaw.com
                                         nzipperian@sfmslaw.com

                                         Steven A. Schwartz
                                         Daniel B. Scott
                                         Alison R. Gabe
                                         CHIMICLES & TIKELLIS, LLP
                                         One Haverford Centre
                                         361 West Lancaster Avenue
                                         Haverford, PA 19041
                                         Telephone:  (610) 642-8500
                                         Facsimile:  (610) 649-3633
                                         stevenschwart@chimicles.com
                                         danielscott@chimicles.com
                                         arg@chimicles.com

                                         Oren Giskan
                                         Catherine E. Anderson

50

Darnley D. Stewart
GISKAN SOLOTAROFF & ANDERSON LLP
11 Broadway- Suite 2150
New York, NY 10004
Telephone: (212) 847-8315
ogiskan@gslawny.com
canderson@gslawny.com
dstewart@gslawny.com

Paul M. Weiss
George K. Lang
FREED & WEISS, LLC
111 West Washington Street, Suite 1331
Chicago, IL 60602
Telephone: (312) 220-0000
paul@freedweiss.com
george@freedweiss.com

James E. Miller
Patrick A. Klingman
Karen M. Leser-Grenon
SHEPHERD FINKELMAN MILLER &
SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100
Facsimile: (860) 526-1120
jmiller@sfmslaw.com
pklingman@sfmslaw.com
kleser@sfmslaw.com

Ronald S. Kravitz
Matthew Borden
LINER YANKELEVTTZ SUNSHINE
& REUENSTREIF LLP
199 Fremont Street, 20th Floor
San Francisco, CA 94105-2255
Telephone: (415) 489-7700
Facsimile: (415) 489-7701
rkravitz@linerlaw.com
mborden@linerlaw.com

Michael Boni
BONI & ZACK LLC

51

15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone:  (610) 822-0200
Facsimile:  (610) 822-0206
mboni@bonizack.com

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone:  (215) 553-7980
jshub@seegerweiss.com

Arthur L. Shingler, III
Hal Cunningham
SCOTT & SCOTT, LLP
600 B. Street, Suite 1500
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508
ashingler@scott-scott.com
hcunningham@scott-scott.com

Daniel R. Scott
SCOTT + SCOTT, LLP
108 Norwich Avenue
P.O. Box 192
Colchester, CT  06415
Telephone:  (860) 537-5537
Facsimile:  (860) 537-4432
drscott@scott-scott.com

Beth Kaswan
SCOTT + SCOTT, LLP
29 West 57th Street
New York, NY 10019
Telephone:  (212) 223-6444
Facsimile:  (212) 223-6334
bkaswan@scott-scott.com

Marc Bradley Kramer

LAW OFFICES OF MARC B.
KRAMER, P.C.
150 JFK Parkway, Suite 100
Short Hills, NJ 07078
Telephone: (973) 847-5924
Facsimile: (973) 847-6005
marcbkramer@cs.com

Jacqueline Sailer
MURRAY, FRANK & SAILER LLP
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892
jsailer@murrayfrank.com

Mark Schlachet
3637 South Green Road
Beachwood, OH 44122
Telephone: (216) 896-0714
Facsimile: (212) 514-6406
mschlachet@clevelandnet.com

James E. Cecchi
Lindsey H. Taylor
CARELLA BYRNE BAIN GILFILLAN
CECCHI STEWART & OLSTEIN, PC
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
ltaylor@carellabyrne.com

Richard J. Burke
RICHARD J. BURKE, LLC
1010 Market Street, Suite 650
St. Louis, MO 63101
Telephone: (314) 621-8647
rich@richardjburke.com

Robert K. Shelquist
LOCKRIDGE, GRINDAL & NAUEN, P.L.L.P.

53

100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
rkshelquist@locklaw.com

Brian Ruschel
925 Euclid Avenue, Suite 660
Cleveland, OH 44115
Telephone: (216) 621-3770
Facsimile: (216) 621-3771
bruschel@aol.com