# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

IN RE LG FRONT LOAD WASHING  :
MACHINE CLASS ACTION  :  Civil Action No. 2:08-cv-00051 (FSH/MAS)
LITIGATION  :
_____:

## PLAINTIFFS' OPPOSITION TO DEFENDANT LG ELECTRONICS USA, INC.'S MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

James C. Shah                              James E. Miller
Natalie Finkelman Bennett                  Patrick A. Klingman
Nathan C. Zipperian                        Karen M. Leser-Grenon
SHEPHERD, FINKELMAN,                       SHEPHERD, FINKELMAN,
 MILLER & SHAH, LLP                         MILLER & SHAH, LLP
475 White Horse Pike                       65 Main Street
Collingswood, NJ 08107                     Chester, CT 06412
Telephone:  (856) 858-1770                 Telephone:  (860) 526-1100

*Liaison Counsel for Plaintiffs*

Steven A. Schwartz                         Paul M. Weiss
Daniel B. Scott                            George K. Lang
Alison R. Gabe                             FREED & WEISS, LLC
CHIMICLES & TIKELLIS, LLP                  111 West Washington Street
One Haverford Centre                       Suite 1331
361 West Lancaster Avenue                  Chicago, IL 60602
Haverford, PA 19041                        Telephone:  (312) 220-0000
Telephone:  (610) 642-8500

Oren Giskan
Catherine E. Anderson
Darnley D. Stewart
GISKAN SOLOTAROFF &
 ANDERSON LLP
11 Broadway, Suite 2150
New York, NY 10004
Telephone:  (212) 847-8315

*Co-Lead Counsel for Plaintiffs*

(Additional Counsel Appear on Signature Page)

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................. 3

ARGUMENT ..................................................................................................................... 7

I.    LEGAL STANDARD ............................................................................................... 7

II.   NEW JERSEY LAW PROPERLY GOVERNS PLAINTIFFS' CLAIMS ............................. 8

      A.    A Choice Of Law Analysis Is Premature ..................................................... 8

      B.    There Is No Conflict Among New Jersey And The Other
            Interested States ........................................................................................... 9

      C.    The Choice Of Law Analysis Favors New Jersey Law ................................. 10

            1.    New Jersey Has The Strongest Interest In Having Its Law Apply ................. 12

                  a.    New Jersey Has A Strong Interest In Policing New
                        Jersey Businesses ........................................................... 12

                  b.    The New Jersey CFA Is One Of The Strongest
                        Consumer Protection Laws In The Nation ........................... 14

            2.    No Other State Has A Stronger Interest In Having Its Laws Apply ............. 14

III.  PLAINTIFFS HAVE SUFFICIENTLY STATED CLAIMS UNDER THE
      NEW JERSEY CONSUMER FRAUD ACT AS WELL AS OTHER
      STATE CONSUMER PROTECTION STATUTES ................................................ 18

      A.    Plaintiffs Have Alleged Their Consumer Fraud Claims
            With Sufficient Particularity ...................................................................... 19

      B.    Plaintiffs' Claims Under The Consumer Protection Statutes
            Of North Carolina, Colorado, Pennsylvania, and Texas Should
            Not Be Dismissed On The Basis Of Failure To Plead Reliance ................... 21

      C.    Plaintiffs Have Sufficiently Alleged A "Public Harm" And A
            "Consumer-oriented Act" ........................................................................... 25

      D.    Plaintiffs Have Stated A Claim For Unlawful Conduct Under The
            California Unfair Competition Law .............................................................. 25

i

1. Plaintiffs Have Sufficiently Alleged A Breach Of Express Warranty.................................................26

2. Plaintiffs Have Sufficiently Alleged A Violation Of The Song-Beverly Act .......................................27

E. The Doctrine Of Economic Loss Is Inapplicable To Plaintiff's Pennsylvania UTPCPL Claims ...........................28

F. Plaintiffs Satisfied The Notice Requirement Of The Texas Deceptive Trade Practices Act ...............................30

G. Plaintiffs Have Stated A Claim Under The Wisconsin Deceptive Trade Practices Act ...........................32

IV. PLAINTIFFS MAY PURSUE THEIR WARRANTY CLAIMS ...........................33

A. Plaintiffs Have Sufficiently Pled Claims For Breaches Of Express And Implied Warranties ...............................34

B. Plaintiffs Have Satisfied The Notice And Opportunity To Cure Requirements Of The MMWA ...........................35

CONCLUSION.................................................................38

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adlon Industrial, Inc. v. Don Myers & Associate*,
  517 F.2d 188 (5th Cir. 1975) ................................................................... 16

*Air Prods. Chems., Inc. v. Eaton Metal Prods. Co.,*
  256 F. Supp. 2d 329 (E.D. Pa. 2003) ...................................................... 29

*Alberti v. General Motors Corp.*,
  600 F. Supp. 1026 (D. D.C. 1985) ........................................................... 37

*Alberton v. Commonwealth Land Title Insurance Co.*,
  247 F.R.D. 469 (E.D. Pa. 2008) ............................................................... 22

*Allstate Insurance Co. v. Hague,*
  449 U.S. 302 (1981) .................................................................................. 13

*Barlow v. DeVilbiss Co.*,
  214 F. Supp. 540 (E.D. Wis. 1963) .......................................................... 35

*Bell Atlantic Corp. v. Twombly,*
  127 S.Ct. 1955 (2007) ................................................................................ 8

*Bioval Corp. Intern. v. Hoechst A.G.,*
  49 F.Supp.2d 750 (D.N.J. 1999) ............................................................... 8

*Boyes v. Greenwich Boat Works, Inc.,*
  27 F.Supp.2d 543 (D.N.J. 1998) ........................................................ 10, 12

*Braddock v. Orlando Reg'l Health Care System, Inc.,*
  881 F. Supp. 580 (M.D. Fla. 1995) .......................................................... 30

*Browne v. World Christian Church*,
  No. A-99-CA-784, 2001 U.S. Dist. LEXIS 6143 (W.D. Tex. March 6, 2001) .................. 24

*Carton v. Choice Point*,
  450 F. Supp. 2d 489 (D.N.J. 2006) .......................................................... 19

*Carton v. Choice Point*,
  482 F. Supp. 2d 533 (D.N.J. 2007) .......................................................... 19

*Christopher v. First Mutual Corp.*,
  No. 05-01149, 2006 U.S. Dist. LEXIS 2255 (E.D. Pa. Jan. 20, 2006) ....................... 19, 22

iii

*Clawans v. United States,*
  75 F. Supp. 2d 368 (D.N.J. 1999) ................................................................. 13

*Dal Ponte v. America Mortg. Express Corp.,*
  No. 04-2152, 2006 U.S. Dist. LEXIS 57675 (D.N.J. Aug. 17, 2006) ........................... *passim*

*Dastgheib v. Genentech, Inc.,*
  No. 04-1283, 2006 U.S. Dist. LEXIS 1546 (E.D. Pa. Jan. 13, 2006) ............................ 23

*Dewey v. Volkswagon AG.,*
  No. 07-2249, 2008 U.S. Dist. LEXIS 28077 (D.N.J. March 31, 2008) ........................ *passim*

*Drayton v. Pilgrim's Pride Corp.,*
  No. 03-2334, 2004 U.S. Dist. LEXIS 6691 (E.D. Pa. Mar. 21, 2004) ........................... 23

*Erie R.R. v. Tompkins,*
  304 U.S. 64 (U.S. 1938) ................................................................................ 30

*Foman v. Davis,*
  371 U.S. 178 (1962) .................................................................................... 38

*Grace Brothers, Ltd. v. Futro,*
  No. 06-00886, 2007 U.S. Dist. LEXIS 75989 (D. Colo., Oct. 12, 2007) ....................... 24

*Gusse v Damon Corp.,*
  470 F.Supp.2d 1110 (C.D. Cal. 2007) ............................................................. 26

*Heindel v. Pfizer, Inc.,*
  381 F. Supp. 2d 364 (D.N.J. 2004) ............................................................ 28, 29

*Hunt v. United States Tobacco Co.,*
  No. 06-1099, 2006 U.S. Dist. LEXIS 64960 (E.D. Pa. Sept. 11, 2006) ........................ 22

*In re Bridgestone/Firestone Tires Prods. Liab. Litig.,*
  288 F.3d 1012 (7th Cir. 2002) ...................................................................... 16

*In re Hypodermic Products Antitrust Litigation,*
  MDL No. 1730, 2007 U.S. Dist. LEXIS 47438 (D.N.J. June 29, 2007) ........................... 8

*Lundgren v. McDaniel,*
  814 F.2d 600 (11th Cir. 1987) ....................................................................... 30

*McCalley v. Samsung Electronics Am., Inc.,*
  No. 07-2141, 2008 U.S. Dist. LEXIS 28076 (D.N.J. March 21, 2008) ........................... 21

*McFadden v. Dryvit System,*
   No. 04-103, 2004 U.S. Dist. LEXIS 20604 (D. Or. Oct. 8, 2004) ...................................... 37

*McKissic v. Country Coach, Inc.,*
   No. 07-1488, 2008 U.S. Dist. LEXIS 15998 (M.D. Fla. Mar. 03, 2008) ............................ 35

*Mace v. Van Ru Credit Corporation,*
   109 F.3d 338 (7th Cir. 1997) ............................................................................................. 30

*Naporano Iron & Metal Co. v. American Crane Corp.,*
   79 F.Supp.2d 494 (D.N.J. 1999) ........................................................................................ 20

*O'Keefe v. Mercedes Benz USA,*
   214 F.R.D. 266 (E.D. Pa. 2003) ........................................................................................ 29

*Oppenheimer v. Prudential Sec., Inc.,*
   94 F.3d 189 (5th Cir. 1996) ............................................................................................... 32

*Pacholec v. Home Depot USA, Inc.,*
   No. 06-827, 2006 U.S. Dist. LEXIS 68976 (D.N.J. Sept. 25, 2006) ................................... 18

*Pack v. Damon  Corp.,*
   434 F.3d 810 (6th Cir. 2006) ............................................................................................. 34

*Payne v. Fujifilm U.S.A., Inc.,*
   No. 07-385, 2007 U.S. Dist. LEXIS 94765 (D.N.J. Dec. 28, 2007).................................... 18

*Peerless Wall and Window Coverings, Inc. v. Synchronics, Inc.,*
   85 F. Supp. 2d 519 (W.D. Pa. 2000), *aff'd,* 234 F.3d 1265 (3d Cir. 2000) ......................... 23

*Phillips v. County of Allegheny,*
   515 F.3d 224 (3d Cir. 2008) ................................................................................................ 8

*Prima v. Darden Restaurants, Inc.,*
   78 F.Supp.2d 337 (D.N.J. 2000) ........................................................................................ 10

*Radford v. Daimler Chrysler Corp.,*
   168 F.Supp.2d 751 (N.D. Ohio 2001) ................................................................................ 37

*Ramirez v. American Home Prods.,*
   No., C.A. B-03-155, 2005 U.S. Dist. LEXIS 40577 (S.D. Tex. Sept. 16, 2005).......... 31, 32

*Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.,*
   401 F.3d 123 (3d. Cir. 2005) ............................................................................................. 22

*Taylor v. JVC Ams. Corp.,*
   No. 07-4059, 2008 U.S. Dist. LEXIS 43215 (D.N.J. May 29, 2008) ............................. *passim*

v

*Twin Discount, Inc. v. Big Bud Tractor,*
    582 F. Supp. 208 (E.D. Wis. 1984) ..................................................................... 35

*Warriner v. Stanton,*
    475 F.3d 497 (3d Cir. 2007) ............................................................................... 9

*Werwinski v. Ford Motor Co.,*
    286 F.3d 661 (3d Cir. 2002) ........................................................................... 28-29

*Yvon v. Baja Marine Corp.,*
    495 F.Supp.2d 1179 (N.D. Fla. 2007) ............................................................... 34

*Zelyony v. Porsche Cars North America,*
    No. 08-20090, 2008 U.S. Dist. LEXIS 31439 (S.D. Ga., Apr. 16, 2008) ........... 34

## STATE CASES

*Arons v. Rite Aid Corp.,*
    No. BER-L-4641-03, 2005 WL 975462 (N.J. Super. Mar. 23, 2005) ................. 17

*Atkinson v Elk Corp.,*
    142 Cal. App. 4th 212 (2006) ........................................................................... 26

*B. Jeselsohn, Inc. v. Atlantic City,*
    70 N.J. 238 (1976) ........................................................................................... 14

*Bouverette v. Westinghouse Electric Corp.,*
    628 N.W.2d 86 (Mich. App. 2001) ................................................................... 35

*Burke v. Yingling,*
    446 Pa. Super. 16 (1995) ................................................................................. 29

*Burr v. Sherwin Williams Co.,*
    42 Cal.2d 682 (1954) ....................................................................................... 27

*Butkera v Hudson River Sloop Clearwater, Inc.,*
    300 N.J. Super. 550 (App. Div. 1997). ............................................................. 16

*Cal. Consumer Health Care Council v. Kaiser Foundation Health Plan, Inc.,*
    142 Cal.App.4th 21 (2006) ............................................................................... 26

*Century 21 Real Estate Corp. v. Hometown Real Estate Co.,*
    890 S.W.2d 118 (Tex. App. 1994) .................................................................... 15

*Commonwealth ex rel. Corbett v. Manson,*
    903 A.2d 69 (Pa. Commw. 2006) ..................................................................... 22

*Commonwealth v. Percudani,*
   825 A.2d 743 (Pa. Commw. 2003) ...................................................................... 22

*Cox v. Sears Roebuck & Co.,*
   138 N.J. 2 (1994) ............................................................................................... 20

*Cullen v. Valley Forge Life Insurance,*
   589 S.E.2d 423 (N.C. Ct. App. 2003) .............................................................. 23

*D'Agostino v. Johnson & Johnson, Inc.,*
   133 N.J. 516 (1993) ........................................................................................... 11

*Deemer v. Silk City Textile Machinery, Co,*
   193 N.J. Super. 643 (App. Div. 1984) .............................................................. 17

*Erny v. Estate of Merola,*
   171 N.J. 86 (2002) ............................................................................................. 11

*Fieldstone Co. v. Briggs Plumbing Products, Inc,*
   54 Cal. App. 4th 357 (1997) ............................................................................. 27

*Forbes v. The Par Ten Group,*
   394 S.E.2d 643 (N.C. Ct. App. 1990) .............................................................. 23

*Fu v. Fu,*
   160 N.J. 108 (1999) ........................................................................................... 16

*Fundin v. Chicago Pneumatic Tool Co.,*
   152 Cal. App. 3d 951 (1984) ............................................................................ 27

*Furst v. Einstein Moomjy, Inc.,*
   182 N.J. 1 (2004) ............................................................................................... 12

*Gantes v. Kason Corp.,*
   145 N.J. 478 (1986) ...................................................................................*passim*

*Gennari v. Weichert Co. Realtors,*
   148 N.J. 582 (1997) ........................................................................................... 20

*Goshen v. Mutual Life Insurance Co. of New York,*
   774 N.E.2d 1190 (N.Y. 2002) ........................................................................... 15

*Haggerty v. Cedeno,*
   279 N.J. Super. 607 (N.J. Super. 1995) ........................................................... 17

*Hall v. Walter*,
  969 P.2d 224 (Colo. 1998)..................................................................24

*Hauter v. Zogarts*,
  14 Cal.3d 104 (1975) ........................................................................26

*Heavner v. Uniroyal, Inc.*,
  63 N.J. 130 (1973)............................................................................17

*Hines v. Hash*,
  843 S.W.2d 464 (Tex. 1992) ......................................................... 31, 32

*Jim Walter Homes, Inc. v. Castillo*,
  616 S.W.2d 630 (Tex. App. 1981) .....................................................31

*Kaloti Enterprise, Inc. v. Kellogg Sales Co.*,
  699 N.W.2d 205 (Wis. 2005).............................................................33

*Kugler v. Romain*,
  58 N.J. 522 (1971)............................................................................14

*Leon v. Rite Aid Corp.*,
  340 N.J. Super. 462 (App. Div. 2001) .................................................14

*May Dep't Stores Co. v. State ex rel Woodard*,
  863 P.2d 967 (Colo. 1993).................................................................24

*McLamb v. T.P. Inc.*,
  619 S.E.2d 577 (N.C. Ct. App. 2005)..................................................23

*Mendelson v. General Motors Corp.*,
  432 N.Y.S.2d 132 (N.Y. Sup. Ct. 1980), *aff'd*, 441 N.Y.S.2d 410 (App. Div. 1981) ..........36

*New Mea Const. Corp. v. Harper*,
  203 N.J. Super. 486 (App. Div. 1985) .................................................14

*Novell v Migliaccio*,
  749 N.W.2d 544 (Wis. 2008)..............................................................33

*Ollerman v. O'Rourke Co.*,
  288 N.W.2d 95 (Wis. 1980)...............................................................33

*Pearce v. Am. Defender Life Ins. Co.*,
  343 S.E.2d 174 (N.C. 1986)...............................................................23

*Pirozzi v. Penske Olds-Cadillac-GMC, Inc.*,
  605 A.2d 373 (Pa. Super. 1992)..........................................................15

*Robertson v. Fleetwood Travel Trailers of Cal., Inc.*,
  144 Cal.App.4th 785 (2006) .................................................................................28

*Rowe v. Hoffman-La Roche, Inc.*,
  189 N.J. 615 (N.J. 2007) ......................................................................................11

*Schein, Inc. v. Stromboe*,
  102 S.W.3d 675 (Tx. 2002) ..................................................................................24

*Scott v. Blue Springs Ford Sales, Inc.*,
  215 S.W.3d 145, 184 (Mo. Ct. App. 2006) ..........................................................37

*Seafare Corp. v. Trenor Corp.*,
  363 S.E.2d 643 (N.C. App. 1988) ........................................................................15

*Seely v. White Motor Co.*,
  63 Cal.2d 9 (1965) ................................................................................................26

*Shoop v. DaimlerChrysler Corp.*,
  864 N.E.2d 785 (Ill. Ct. App. 2007) ....................................................................34

*Skeer v. EMK Motors, Inc.*,
  187 N.J. Super. 465 (App. Div. 1982) ..................................................................14

*Smith v. Alza Corp.*,
  400 N.J. Super. 529 (App. Div. 2008) ..................................................................15

*Smith v. Reinhart Ford*,
  68 Pa. D. & C.4th 432 (C.P. Lanc. 2002) .............................................................29

*Spence v. Three Rivers Builders & Masonry Supply, Inc.*,
  90 N.W.2d 873 (Mich. 1958) ...............................................................................34

*Star Houston, Inc. v. Kundak*,
  843 S.W.2d 294 (Tex. App. 1992) ........................................................................31

*Stuart v. Weisflog*,
  722 N.W.2d 766 (Wis. App. 2006) .......................................................................32

*Sunnyslope Grading Inc. v. Miller, Bradford & Risberg, Inc.*,
  437 N.W.2d 213 (Wis. 1989) ...............................................................................34

*Teitsworth v. Harley-Davidson, Inc.*,
  270 Wis.2d 146 (Wis. 2004) ................................................................................32

*Tenowich v. Sterling Plumbing Co.,*
   712 S.W.2d 188 (Tex. App. 1986) .......................................................................31

*Veazey, v. Doremus,*
   103 N.J. 244 (1986) ...........................................................................................16

*Weinberg v. Sun Co., Inc.,*
   777 A.2d 442 (Pa. 2001) ...................................................................................22

*Zeller v. Northrup King Co.,*
   370 N.W.2d 809 (Wis. App. 1985).....................................................................15

*Zwiercan v. General Motors Corp.,*
   No. 3235, 58 Pa. D.& C.4th 251 (Phila. C.P. 2002) ...................................... 23, 29

## DOCKETED CASES

*Olejniczak v. LG Electronics USA, Inc.,*
   No. 2:08-CV-01501-FSH-MAS (D.N.J.).............................................................31

## FEDERAL STATUTES

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ......................................*passim*

Federal Rule of Civil Procedure 9.........................................................................*passim*

Federal Rule of Civil Procedure 12.............................................................................26

Federal Rule of Civil Procedure 15.............................................................................38

Federal Rule of Civil Procedure 23.............................................................................30

## STATE STATUTES

Cal. Civ. Code § 1668 ...............................................................................................26

Cal. Commercial Code § 2313....................................................................................26

Cal. Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* ........... 25, 26

Fl. Deceptive & Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*.......................15

N.C. Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 ..............................23

N.J. U.C.C., N.J.S.A. § 12A:1-102 ...........................................................................14

N.J. Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq* ................................................*passim*

x

Pa. Unfair Trade Practices & Consumer Protection Law, 73 P.S. § 201-2, *et seq.* ..............*passim*

Song-Beverly Act, Cal. Civ. Code § 1790, *et seq.*................................................................ 7, 26, 27

Tex. Deceptive Trade Practices-Consumer Protection Act,
Tex. Bus. & Com. Code § 17.50, *et seq* ...................................................................................*passim*

Wis. Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.* ........................................... 32-33

## MISCELLANEOUS

RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § § 6, 145, 148, 188 ......................... 11, 12

RESTATEMENT (SECOND) OF CONFLICT OF TORTS, § 551.......................................................33

## INTRODUCTION

Plaintiffs[1] respectfully submit this Opposition to Defendant LG Electronics USA, Inc.'s ("LG" or "Defendant") Motion to Dismiss and Supporting Memorandum of Law ("LG Br."). LG seeks dismissal of some of the claims in Plaintiffs' Consolidated Amended Complaint ("Complaint" or "CAC"), and makes a myriad of arguments, which misconstrue the law on the relevant issues and the facts alleged in Plaintiffs' Complaint.

In their Complaint, Plaintiffs assert claims on behalf of themselves and a nationwide class of persons who purchased front-loading automatic washing machines ("Washing Machines" or "Machines") that were marketed and sold by LG, and that have a common drainage defect that causes the proliferation of mold, mildew and/or similar residue as well as foul and noxious odors within the Washing Machines and on clothing and other items washed in the Machines (collectively, "Mold Problems").  Plaintiffs assert claims under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* ("CFA"), Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, ("MMWA"), and for breach of express warranty, breach of implied warranty and unjust enrichment under New Jersey law (First - Fifth Causes of Action).[2]

As alleged in the Complaint, Plaintiffs and hundreds of Class members throughout the United States, from New Jersey to California, have experienced persistent and incurable Mold

---

[1] Plaintiffs include the following persons: Ralph Ashe, Lyla Boone, Jill Burke, Mark Cook, Paula Cook-Sommer, Richard Demski, Marcia Figueroa, Mike Franko, Glenn and Lori Grosso, Cheryl Harder, Jason and Gina Harper, Cristen Irving, Cindy Launch, Edward Manzello, James and Wendy McClure, Jill Olejniczak, Kim Scalise, Ann Trethewey, Nancy Vanasse, and Jonathan and Carolyn Zimmerman.

[2] Plaintiffs' bring, in the alternative, claims for breaches of express and implied warranties, unjust enrichment, and consumer fraud and deception under the laws of the states where Plaintiffs reside, specifically: California (Sixth - Eighth Causes of Action), Colorado (Ninth Cause of Action), Connecticut (Tenth Cause of Action),  Florida (Eleventh Cause of Action),  Illinois (Twelfth Cause of Action), Michigan (Thirteenth Cause of Action),  New York (Fourteenth Cause of Action), North Carolina (Fifteenth Cause of Action),  Pennsylvania (Sixteenth Cause of Action), Texas (Seventeenth

1

Problems.  They have deluged LG's customer service representatives with complaints, and otherwise informed LG of the Mold Problems by directly contacting LG's authorized dealers and service personnel. LG has even hosted training seminars, where it has physically demonstrated to its technicians that its Washing Machines are predisposed to Mold Problems. Despite this knowledge, LG has refused to:  1) warn Plaintiffs and the other Class members about the drainage defects and the resultant Mold Problems, 2) cure the defects and Mold Problems; or 3) provide Plaintiffs and Class members with a refund.  LG's sales staff are well aware of this defect, and yet continue to sell the Machines at a premium to thousands of Class members.

In its Motion to Dismiss, LG seeks to avoid liability to a nationwide class under New Jersey law by positing that New Jersey is not sufficiently interested in regulating the misconduct of its corporate citizens, since its misconduct also affects consumers in other states.  According to LG, New Jersey has no stake in thwarting fraudulent acts that emanate from within New Jersey, because other states are also concerned for the welfare of their citizens. LG shrugs off Plaintiffs' allegations that all of LG's corporate decisions concerning disclosures of the defect and Mold Problems to consumers, investigations into the defects, and orchestration of LG's customer service and public relations campaign concerning the Mold Problem occurred within New Jersey.  Through its conflict of laws arguments, LG asks the Court to let it off the hook with respect to states without representative plaintiffs, undertake an interpretation of the consumer protection statutes and law on breach of warranty and unjust enrichment of fourteen states and, ultimately, consider the propriety of certification of fourteen separate sub-classes.

As a backup, LG seeks to pick off as many other claims as it can, contending that Plaintiffs' MMWA claim and some of its alternative consumer protection and breach of warranty claims, under

---

Cause of Action), and Wisconsin (Eighteenth Cause of Action).

the laws of the states of purchase, should be dismissed for failure to comply with Rule 9(b) and for reasons specific to each cause of action.  In doing so, LG ignores the allegations in the Complaint and strains the applicable law to justify its desired outcome.  Even if LG prevailed on all fronts, it would still face a class action with fourteen putative sub-classes asserting state-specific claims for unjust enrichment and breaches of express and/or implied warranties.[3]  However, for the reasons stated herein, LG's liability should not be so limited, and New Jersey law should be applied in the first instance.

## FACTUAL BACKGROUND

**LG's Washing Machines & Warranties**. LG, a wholly-owned subsidiary of LG Korea, markets and sells thousands of front-loading automatic Washing Machines nationwide and in the State of New Jersey. (CAC at ¶ 28).  The Washing Machines have a common design defect that causes water not to fully drain after a wash cycle. (*Id.* at ¶¶ 2, 40).  This common defect causes Mold Problems, specifically the accumulation of mold, mildew and/or similar residue within the Washing Machines as well as foul and noxious odors within the Machines, in the owners' homes, and on clothing and other items washed in the Machines. (*Id.* at ¶ 2).  The defect renders the Machines unusable for the ordinary purpose for which they were advertised, marketed and sold.  (*Id.* at ¶¶ 38, 39).

LG issued standard and uniform warranties with each LG Washing Machine sold to Plaintiffs and Class members, including a one-year factory warranty for parts and labor, a two-year factory warranty for the electronic control board, a seven-year factory warranty for the drum motor, and a lifetime warranty for the stainless steel drum.  (*Id.* at ¶ 36).  LG's express warranty provides coverage for repairs to correct (at no charge) any Washing Machine defect related to materials or

---

[3] *See* Plaintiffs' Summary of Claims Challenged in LG's Motion to Dismiss, attached hereto as Appendix A.

workmanship occurring during the warranty period. (*Id.*).  In addition, LG impliedly warranted that the Washing Machines were fit for the ordinary purpose for which such goods were used and were free from defects. (*Id.* at ¶ 38).

   **Problems with the Washing Machines and LG's Knowledge.**  Plaintiffs allege that the stainless steel drums and the door seals cause, among other things, Mold Problems within the Washing Machines by, *inter alia*, not fully or properly draining in connection with each and every wash cycle.  (*Id.* at ¶ 40).  The Complaint alleges that LG failed to adequately design or test the Washing Machines to ensure that they were free from material defects, and that LG knew that they contained inherent defects and were not of merchantable quality or fit for their ordinary purpose. (*Id.* at ¶¶ 41, 53).  LG failed to cure the well-known defects, through application of appropriate engineering, tooling in the manufacturing process, or use of a reasonable alternative design.  (*Id.* at ¶ 43).

   Plaintiffs and many other members of the Class alerted LG to the Mold Problems by complaining to LG directly or to LG's authorized dealers and service persons.  (*Id.* at ¶ 48).  Indeed, hundreds of Class members have posted their experiences with the defective Washing Machines on the Internet.  (*Id.*).  LG's customer service employees are aware of the problems, as are LG's technicians and sales staff, and employees of Best Buy and Home Depot, two retailers that sell LG's Washing Machines.  (*Id.* at ¶¶ 49-52).  The Complaint alleges that LG verified to its technicians at training seminars - by physically opening up the Washing Machines - that the Machines are predisposed to Mold Problems.  (*Id.* at ¶ 50).  The Complaint also alleges that each service representative at LG's call center fielded dozens of calls on a daily basis regarding complaints of Mold Problems relating to all of LG's Washing Machines.  (*Id.* at ¶ 49).  The Complaint also alleges that during 2006 and 2007, a large percentage of returns of the Machines were due to Mold Problems.  (*Id.* at ¶ 52).

**LG's Silence.**  What did LG do in the face of this knowledge?  Nothing.  As alleged, LG has consistently denied the scope and magnitude of the problems caused by these defects.  (*Id.* at ¶ 54).  LG was in exclusive possession of this information about any potential defects, which were material to Plaintiffs and Class members, but failed and refused to warn its customers of the Machines' serious defects, and the material likelihood that they would encounter Mold Problems due to the defects.  (*Id.* at ¶¶ 41, 53, 54).  LG has also refused, and continues to refuse, to effectively remedy the problems and defects inherent in the Machines, and LG has not and will not consider refunds to customers affected by these pervasive problems.  (*Id.* at ¶ 42).  LG has profited by convincing consumers to purchase the Washing Machines at premium prices and to pay LG for repair services to address the problems arising from the defects at issue — even though LG has no effective remedy for the defects. (*Id.* at ¶¶ 44-46).

**Contacts with New Jersey.**  The Complaint alleges that LG's unlawful conduct occurred in New Jersey, to the detriment and injury of Class members in New Jersey and the United States.  (*Id.* at ¶¶ 28-31, 55-60, 84).  LG maintains its principal place of business in Englewood Cliffs, New Jersey, where it employs approximately 400 people.  (*Id.* at ¶¶ 28, 57).  LG manufactures thousands of Washing Machines each year, a substantial portion of which are sold or offered for sale in New Jersey.  (*Id.*).  LG's New Jersey office is the headquarters for its design and development, marketing and sales, sales support, training and public relations activities in the United States.  (*Id.* at ¶¶ 29, 30, 57, 59).  The Complaint alleges that corporate decisions regarding the Washing Machines, investigation regarding the defective Washing Machines, and the representations and acts of concealment which are the subject of this lawsuit were directed by LG employees in New Jersey. (*Id.* at ¶¶ 29, 59).  In addition, customer complaints received at LG's customer call centers are forwarded to LG representatives working in New Jersey, who in turn dictate the scripted responses that are to be given to complaining customers.  (*Id.* at ¶ 59).  In addition, the LG Korea-based personnel who

are involved in matters relevant to this action routinely travel to LG's New Jersey headquarters, participate in LG's activities there and are expected to continue to travel to New Jersey.  (*Id.* at ¶¶ 31, 59).

**Plaintiffs' Experiences.**  Each Plaintiff alleges that he or she purchased a LG Washing Machine and used it for its intended purpose and in a manner consistent with its intended use.  (*Id.* at ¶ 24).  Within a year of delivery of the Washing Machine, each Plaintiff alleges that he or she began to experience Mold Problems in the Washing Machine and on clothes and other items washed in the Machines.  (*Id.* at ¶¶ 4-23).  Plaintiffs attempted to obtain a resolution of these problems, by calling LG directly or by contacting the retailer from which they purchased the Washing Machine.  (*Id.* at ¶¶ 4-23).  Plaintiffs gave LG an opportunity to repair the Machines and to remedy its failures with respect to all of the warranties, but LG failed to do so.  (*Id.* at ¶¶ 4-23, 25, 26, 102-105, 116-118).  In response to the numerous notices from Plaintiffs to LG regarding the defects in their Washing Machines and the Mold Problems, LG offered form responses, and proposed any number of remedies, *none* of which stopped the Mold Problems that plague Plaintiffs' and Class members' LG Washing Machines.  (*Id.* at ¶¶ 25-26).

**Plaintiffs' Injury**.  LG intentionally failed to advise Plaintiffs and the other Class members that their Washing Machines contained these known defects, and continued to sell these expensive products, all the while touting them as of first-rate quality.  (*Id.* at ¶¶ 34-54).  Plaintiffs and the other Class members reasonably expected that their Washing Machines would not contain design defects that would substantially impair the Machines' performance and use, and that the Machines would not require extensive and expensive repairs, or the purchase of extended warranties to continuously attempt to fix problems.  (*Id.* at ¶ 45).  If LG had not misrepresented and concealed material information regarding the defective nature of the Washing Machines, Plaintiffs and the other members of the Class would not have purchased the Machines at premium prices, and on the terms

offered.  (*Id*.).  As a result of LG's conduct, Plaintiffs and the other Class members bought thousands

of the Washing Machines and have suffered -- and continue to suffer -- injury, and experience

damages.  (*Id.* at ¶ 47).

## ARGUMENT

LG seeks dismissal of some of Plaintiffs' consumer protection and warranty claims.

Plaintiffs' claims should not be dismissed for a number of reasons.  First, New Jersey law applies to

all of the claims of Plaintiffs and the Class.  LG's argument to the contrary is premature, and LG has

not shown the existence of any true conflicts or demonstrated that any other state has a stronger

interest than New Jersey.  Second, Plaintiffs have pled their consumer protection claims with

sufficient particularity and, in the event that New Jersey law does not apply to all Plaintiffs, satisfied

the requirements of the various consumer protection statutes, including the following: reliance under

North Carolina, Colorado, Texas and Pennsylvania law, to extent required; "public impact" and a

"consumer-oriented act" under Colorado, Connecticut and New York law; "unlawful" acts under

California law, including breach of express warranty under the Song-Beverly Act; inapplicability of

the economic loss doctrine to a claim under Pennsylvania law; notice under Texas law, to the extent

required; and actionable representations under Wisconsin law.  Third, Plaintiffs have satisfied any

privity requirements under Wisconsin, Illinois, and Michigan law applicable to claims for breach of

express and implied warranties, and alleged sufficient notice and an opportunity to cure under the

Magnuson-Moss Warranty Act.  For the reasons set forth below, this Court should deny LG's

various arguments for dismissal of these claims.

## I.      LEGAL STANDARD

A complaint should only be dismissed if the defendant meets its burden of showing that the

plaintiff has failed to plead grounds for entitlement to relief, identify facts that are suggestive enough to

render the claims plausible, and raise a reasonable expectation that discovery will reveal evidence in

support of the claims. *Taylor v. JVC Ams. Corp.*, No. 07-4059, 2008 U.S. Dist. LEXIS 43215, at **5-6

(D.N.J. May 29, 2008) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).  In deciding a

motion to dismiss, the court must assume that all of the factual allegations set forth in the complaint are

true and draw all reasonable inferences in favor of the plaintiff.  *Id.*; *Phillips v. County of Allegheny*, 515

F.3d 224, 233 (3d Cir. 2008).

## II.    NEW JERSEY LAW PROPERLY GOVERNS PLAINTIFFS' CLAIMS.

LG begins its attack on Plaintiffs' Complaint by suggesting, with minimal analysis, that New

Jersey law should not be applied to Plaintiffs' claims.  As detailed below, LG's position is

unsupportable, as LG has failed to demonstrate either the existence of true conflicts or that any state

has interests that are greater than those of New Jersey in a case involving the conduct of a company

that is headquartered in New Jersey.  Moreover, Plaintiffs have pled sufficient facts which preclude

any finding, particularly at this stage, that New Jersey law cannot be applied to their claims.

### A.    A Choice Of Law Analysis Is Premature.

Initially, Plaintiffs note that it is neither necessary nor appropriate for the Court to resolve

the choice of law issue at this nascent stage of the litigation.  As this Court has held, a court can and

should wait for a more fully developed factual record before making the important choice of law

determination, since "without discovery, this court would be hard pressed to adequately evaluate

even the sufficiency of the factual contacts with New Jersey involved in this case."  *Bioval Corp.*

*Intern. v. Hoechst A.G.,* 49 F. Supp. 2d 750, 776 (D.N.J. 1999); *see also In re Hypodermic Prods. Antitrust*

*Litig.,* MDL No. 1730, 2007 U.S. Dist. LEXIS 47438, at *62 (D.N.J., June 29, 2007) (denying, as

premature prior to class certification, dismissal of claims on basis that other state laws impose

additional requirements).

In *Taylor*, this Court ruled it could not make the choice of law determination at the motion

to dismiss stage, stating that "'[t]he governmental interest analysis is fact-intensive:  Each

8

choice-of-law case presents its own unique combination of facts-the parties' residence, the place and type of occurrence and the specific set of governmental interest-that influence the resolution of the choice-of-law issue presented.'" 2008 U.S. Dist. LEXIS 43215, at *21 (quoting *Warriner v. Stanton*, 475 F.3d 497, 500 (3d Cir. 2007)).  In its motion, LG has not acknowledged, much less attempted to address, this well-developed body of law. Moreover, LG failed to demonstrate why a choice of law analysis, which has consistently been held by this Court to be premature on a motion to dismiss, should be applied at this stage.

**B.   There Is No Conflict Among New Jersey And The Other Interested States.**

Since New Jersey is the forum state for this litigation, this state's choice-of-law rules apply. *Dewey v. Volkswagon AG.,* No. 07-2249, 2008 U.S. Dist. LEXIS 28077, at **20-21 (D.N.J. March 31, 2008).  New Jersey applies a flexible "governmental-interest" analysis to choice of law determinations, which "requires application of the law of the state with the greatest interest in resolving the particular issue that is raised in the underlying litigation."  *Gantes v. Kason Corp.*, 145 N.J. 478, 484 (1986).

Resolving a choice of law issue under this analysis is a two-step process.  *Dewey*, 2008 U.S. Dist. LEXIS 28077, at *21.  The first step is to determine whether an actual conflict of laws exists between the laws of New Jersey and the laws of the other jurisdictions.  *Gantes,* 145 N.J. at 484.  Any such conflict is to be determined on an issue-by-issue basis, not claim by claim.  *Id.*  Here, the full conflict of law analysis is not necessary, as LG has not demonstrated an actual conflict between New Jersey and the laws of the other interested states.

LG asserts, without analysis, that there is a conflict between New Jersey consumer fraud law and consumer fraud laws in a few selected states.  (LG Br. at 7-8).  While there are certainly areas in which the CFA may differ from the laws in other interested states, such differences are not relevant

to the present motion.[4]  A mere survey of laws, as LG has offered, does not demonstrate that any conflict exists, that a dismissal is warranted,  or even that a nationwide class might not be certifiable based on the allegations in the Complaint and the application of New Jersey law.[5]  Indeed, LG has not demonstrated that the marketing and sale of Washing Machines, which it knew were defective, would be legal under any state's consumer protection laws or that compliance with New Jersey law would lead it to violate a law of another state.[6]

Once the Court concludes that there is no conflict of laws relevant to LG's argument for dismissal, it need go no further in deciding to apply New Jersey law. *See Prima v. Darden Restaurants, Inc.*, 78 F. Supp. 2d 337, 345 (D.N.J. 2000).  Nevertheless, the choice of law analysis requires application of New Jersey law to all claims.

---

[4] As one Court noted, in applying New Jersey law:  "Both New Jersey and Pennsylvania wished to protect consumers and their statutes are in harmony in achieving that end.  Their differences do not represent competing or conflicting resolutions of a particular policy issue.  Rather they both reflect a legislative determination to attack the same evil."  *Boyes v. Greenwich Boat Works, Inc.*, 27 F. Supp. 2d 543, 548 (D.N.J. 1998).

[5] LG purports to establish a conflict by providing a brief survey of a few states where it believes Plaintiffs need to allege "reliance" or the "existence of a public impact," without offering any substantial distinction between them.  (LG Br. at 7-8).  LG also argues that its liability might be doubled in some jurisdictions and trebled in others or that Pennsylvania recognizes the economic loss doctrine and New Jersey does not.  (*Id.*).  However, LG does not demonstrate how the amount of recoverable damages or how a mechanical increase, in appropriate cases, of damages ascertained at trial poses any real conflict.

[6] Similarly, LG's purported "mini-tour" of one aspect of warranty law, whether privity is required to sustain a breach of warranty, is similarly flawed, because it fails to demonstrate any essential and meaningful conflicts.  (LG Br. at 8).  Indeed, as demonstrated below, Wisconsin and Illinois courts do permit a finding of privity, where required and under the type of facts pled herein, where there is an express warranty between the buyer and manufacturer.  Further, this Court has held that privity issues are not appropriate for resolution at the motion to dismiss stage.  *Dewey*, 2008 U.S. Dist. LEXIS 28077, at *44 n.17.

**C.      The Choice Of Law Analysis Favors New Jersey Law.**

If there is an actual conflict, the second step of the analysis is to determine the interest that

each state has in resolving the specific issue in dispute.  *Gantes*, 145 N.J. at 485.  The court must

"identify the governmental policies underlying the law of each state" and determine whether "those

policies are affected by each state's contacts to the litigation and to the parties."  *Id.*  The court then

must apply the law of "the state with the greatest interest in governing the particular issue."  *Rowe v.

Hoffman-La Roche, Inc.*, 189 N.J. 615, 621 (N.J. 2007) (internal citations omitted).  Under the

governmental interest analysis, "the qualitative, not quantitative, nature of the states' contacts

ultimately determines whether its law should apply."  *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J.

516, 526 (1993).

The New Jersey Supreme Court has held that in cases involving tort actions, which includes

consumer fraud, courts should evaluate the competing interests guided by the factors identified in

the RESTATEMENT (SECOND) OF CONFLICT OF LAWS.[7]  *See Erny v. Estate of Merola*, 171 N.J. 86, 95

(2002).  In applying Section 145 of the RESTATEMENT, courts should primarily consider "the

competing interests of the states," focusing upon "'what [policies] the legislature or court intended

to protect by having that law apply to wholly domestic concerns, and then, whether these concerns

---

[7] Section 145 lists several relevant factors to be taken into account: 1) the place where the injury
occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence,
nationality, place of incorporation, and place of business of the parties; and 4) the place where the
relationship, if any, between the parties is centered.  *Dewey*, 2008 U.S. Dist. LEXIS 28077, at *23
(citing REST. § 145).  In claims sounding in fraud, courts look to the following factors in Section
148(2) for additional guidance: "(a) the place ... where the plaintiff acted in reliance upon the
defendant's representations, (b) the place where the plaintiff received the representations, (c) the
place where the defendant made the representations, (d) the ... place of incorporation and place of
business of the parties ... (e) the place where a tangible thing which is the subject of the transaction
between the parties was situated at the time and (f) the place where the plaintiff is to render
performance under a contract which he has been induced to enter by the false representations of the
defendant.  *Id.*  (citing REST. § 148(2)).

will be furthered by applying that law to the multi-state situation.'"  *Id.*  (internal citations omitted). With respect to Plaintiffs' contract claims, the court considers the factors described in Section 188 of the RESTATEMENT.[8]  *Dewey,* 2008 U.S. Dist. LEXIS 28077, at **22-23.  These factors are to be evaluated "according to their relative importance with respect to the particular issue."  *Id.* at *22. This analysis demonstrates that New Jersey law should be applied to all of Plaintiffs' claims.

       1.     <u>New Jersey Has The Strongest Interest In Having Its Law Apply.</u>

New Jersey has a much stronger interest in having its law apply to this case than any other state.  This is primarily because New Jersey has a strong interest in policing the actions of its corporate citizens, such as LG, and because the CFA provides superior relief to consumers relative to its counterparts.

       *a.*     <u>*New Jersey Has A Strong Interest In Policing New Jersey Businesses.*</u>

New Jersey has a strong interest in regulating the activities of businesses that operate in New Jersey, in deterring fraudulent conduct, and in ensuring uniformity in warranties.  *Dal Ponte v. Am. Mortg. Express Corp.*, No. 04-2152, 2006 U.S. Dist. LEXIS 57675, at *20 (D.N.J. Aug. 17, 2006); *Gantes*, 145 N.J. at 497-98.  The CFA's remedies are not only designed to protect consumers, but "to punish the wrongdoer and to deter others from engaging in similar fraudulent practices."  *Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 12 (2004).  New Jersey "has a powerful incentive to insure that local merchants deal fairly with citizens of other states and countries."  *Boyes*, 27 F. Supp. 2d at 547.

---

[8] "'If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied' unless the principles stated in § 6 dictate a different result.  Section 188 offers various contacts for courts to consider in applying the principles of § 6 to contract issues, including: '(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.'  'These contacts are to be evaluated according to their relative importance with respect to the particular issue.'"  *Dewey,* 2008 U.S. Dist. LEXIS 28077, at *22 (citing REST.§§ 6, 188) (internal citations omitted).

New Jersey's interests are especially strong given this state's significant contacts to this litigation.  LG maintains its headquarters in Englewood Cliffs, where it employs over 400 people and concentrates its base of operations.  (CAC at ¶ 28).  All corporate decisions regarding the Washing Machines were made in New Jersey, and the investigation of the claims surrounding the defect, and receipt of and responses to complaints received at LG's customer service centers were all directed from here.  (*Id.* at ¶¶ 28-31, 55-60).  The marketing efforts for the Washing Machines were created and orchestrated in New Jersey and many of the product development, marketing, and training groups, as well as all documents related to those functions, are found here.  (*Id.* at ¶¶ 30, 59). LG made and disseminated its alleged fraudulent statements and omissions from its headquarters in New Jersey.[9]  (*Id.*).  These types of contacts have been found to be substantial in the choice of law analysis.  *See Dewey*, 2008 U.S. Dist. LEXIS 28077, at *25 & n.8 (locus of defendant's principal place of business, decisions and underlying transactions within forum substantial factors).

New Jersey's interest in deterrence is particularly strong where, as in this case, the illegal conduct emanates from a New Jersey business.  "[T]his State has a strong interest in encouraging the manufacture and distribution of safe products for the public and, conversely, in deterring the manufacture and distribution of unsafe products within the state."  *Gantes*, 145 N.J. at 490; *see also Clawans v. United States*, 75 F. Supp. 2d 368, 373 (D.N.J. 1999) ("New Jersey has a strong interest in preventing tortious misconduct by its domiciliaries").[10]  LG cannot demonstrate any contacts or any

---

[9] Plaintiffs anticipate that they will uncover evidence through discovery, showing that most, if not all, of the tortious conduct originated in and was directed from New Jersey.

[10] Moreover, it is constitutionally permissible to apply New Jersey law to the claims asserted, because a "significant aggregation of contacts" exists to make application of New Jersey law "neither arbitrary nor fundamentally unfair" to LG, which is headquartered and maintains its principal place of business in New Jersey.  *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981).  It should not be a surprise to LG that New Jersey has an interest in ensuring that LG, which is headquartered in this State, conducts itself in ways that do not trample the rights of consumers, wherever those consumers may happen to reside.

interests that outweigh those of New Jersey.

> b.     The New Jersey CFA Is One Of The Strongest Consumer Protection
>        Laws In The Nation.

The CFA "was intended to be 'one of the strongest consumer protection laws in the nation.'"  *New Mea Const. Corp. v. Harper*, 203 N.J. Super. 486, 502 (App. Div. 1985) (quoting *Skeer v. EMK Motors, Inc.*, 187 N.J. Super. 465, 471-73 (App. Div. 1982)).  The strength of the CFA demonstrates New Jersey's strong interest in protecting consumers from deception.  The CFA is not limited to combating fraud, but extends to prohibit "unlawful practices," which are defined to include "any unconscionable commercial practice."  N.J.S.A. 56:8-2.  Unconscionability under the CFA is "an amorphous concept obviously designed to establish a broad business ethic."  *Kugler v. Romain*, 58 N.J. 522, 543 (1971).  The CFA is not only aimed at con men; it is also "designed to promote the disclosure of relevant information to enable the consumer to make intelligent decisions in the selection of products and services."  *Leon v. Rite Aid Corp.*, 340 N.J. Super. 462, 471 ( App. Div. 2001).  Thus, the CFA was intended to prevent all manner of fraudulent and deceptive conduct.[11]

> 2.     No Other State Has A Stronger Interest In Having Its Laws Apply.

LG half-heartedly argues that Plaintiffs' home states have greater interests than New Jersey because: (1) Plaintiffs seek only "economic losses;" (2) the transactions purportedly occurred in their home states; and (3) it would purportedly be improper to award non-New Jersey residents more relief than could be available in their home states.  (LG Br. at 9-10).  Each of these contentions is contrary to the law in New Jersey.

New Jersey unquestionably has a strong interest in enforcing its laws, especially against a

---

[11] Similarly, the law of express and implied warranty in New Jersey was adopted to simplify, clarify and modernize the law governing commercial transactions and to harmonize that law with that of other jurisdictions.  N.J.S.A. § 12A:1-102; *B. Jeselsohn, Inc. v. Atlantic City,* 70 N.J. 238, 246 (1976).

New Jersey company.  Presumably other states, like New Jersey, enacted their consumer protection statutes to protect their citizens.  *Dal Ponte*, 2006 U.S. Dist. LEXIS 57675, at **17-18 (consumer fraud statutes are designed to protect consumers from fraud or compensate them if they are victims of fraud).  While the states may differ in the level of protection and the stringency of punishments their consumer fraud statutes offer, these "differences do not represent competing or conflicting resolutions of a particular policy issue. Rather [the laws] reflect a legislative determination to attack the same evil." *Id.* at *17.  Indeed, all the interested states uniformly seek to prevent fraudulent or deceptive practices and to protect consumers.[12]

The CFA affords citizens of other states, such as Plaintiffs herein, with stronger protections than its counterparts.  It would be illogical for any interested state to want its citizens' claims be adjudicated under a weaker law.  *Id.* at *18 (no reason why a plaintiff's home state would want to deprive them of greater protections of New Jersey law, especially from a New Jersey corporation); *Smith v. Alza Corp.,* 400 N.J. Super. 529, 552 (App. Div. 2008) (any interest Alabama may have in compensating its domiciliary is better served by the CFA, which mandates punitive damages).  There is no rational reason, and LG has not offered any, for any state to desire to deny its citizens full recovery, or to apply its consumer protection or warranty law in lieu of New Jersey's in this case.

Since LG cannot point to any *interests* that outweigh New Jersey's, it attempts to focus on LG's *contacts* with other states.  (LG Br. at 10).  However, the contacts suggested by the LG, such as the citizenship of Plaintiffs and where each purchased their Washing Machines, are simply not substantial or controlling in this action, which arises from LG's marketing and sale of a knowingly

---

[12] *See, e.g.*, Fla. Stat. Ann. § 501.202(2); *Goshen v. Mutual Life Ins. Co. of New York*, 774 N.E.2d 1190, 1196 (N.Y. 2002); *Century 21 Real Estate Corp. v. Hometown Real Estate Co.*, 890 S.W.2d 118, 130 (Tex. App. 1994); *Pirozzi v. Penske Olds-Cadillac-GMC, Inc.*, 605 A.2d 373, 375 (Pa. Super. 1992); *Seafare Corp. v. Trenor Corp.*, 363 S.E.2d 643, 653 (N.C. App. 1988); *Zeller v. Northrup King Co.*, 370 N.W.2d 809, 813-14 (Wis. App. 1985).

defective product from within New Jersey.  Many states can claim members of the proposed Class

as residents, including New Jersey, and these contacts are relevant to this case, as each state has an

interest in ensuring that its citizens are protected and compensated.  However, the interests of these

states would not be frustrated by the application of New Jersey law.  *See Dal Ponte*, 2006 U.S. Dist.

LEXIS 57675, at *18; *see also Fu v. Fu*, 160 N.J. 108, 122-23 (1999).

Further, by attempting to focus solely on the fact that Plaintiffs bought their Washing

Machines in the states where they reside, LG ignores the required balancing of interests (LG Br. at

9-11).  LG's argument is in direct conflict with New Jersey's flexible governmental interests test, and

instead simply attempts to resurrect the long dead *lex loci delicti* standard.  *See Veazey, v. Doremus,* 103

N.J. 244, 247 (1986) (and cases cited therein).[13]  Even in personal injury cases, the fact that the

location of an accident and domicile of the plaintiff lie in other states "may have to yield to the

policy interests of defendant's home state.  This is particularly so if the home state's policy is to

ensure the accountability in tort of its domiciliaries for the consequences of their negligent conduct."

*Butkera v Hudson River Sloop Clearwater, Inc.*, 300 N.J. Super. 550, 554 (App. Div. 1997).

In an attempt to persuade this Court that it should ignore precedent from the New Jersey

Supreme Court, LG relies primarily on four cases to support its argument that the situs of Plaintiffs'

state of residence (or the state in which the Washing Machines were purchased) forecloses the

application of New Jersey law to this case.  All of those cases, however, are easily distinguishable

from the instant action.

First, in contrast to the issues here, three of the four cases involved tort actions for personal

---

[13] The cases cited by LG in support of the application of the law where the harm occurred are
inapposite, as both choice of law determinations were made on a full record, at class certification or
after trial, and the forum states applied the *lex loci delicti* standard that has been rejected in New
Jersey.  *In re Bridgestone/Firestone Tire Prods. Liab. Litig..*, 288 F.3d 1012, 1016 (7th Cir. 2002) (reversing
class certification order and noting that forum was a *lex loci delicti* state); *Adlon Indus., Inc. v. Don Myers
& Assoc.,* 517 F.2d 188 (5th Cir. 1975) (on appeal after trial).

injury claims arising from accidents, and one involved the authenticity of prescription medication. *Deemer v. Silk City Textile Machinery, Co,* 193 N.J. Super. 643, 649 (App. Div. 1984) (wrongful death action); *Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 134 (1973) (personal injury action); *Haggerty v. Cedeno,* 279 N.J. Super. 607, 612 (N.J. Super. 1995) (personal injury action); *Arons v. Rite Aid Corp.*, No. BER-L-4641-03, 2005 WL 975462, at *22 (N.J. Super. Mar. 23, 2005) (prescription drugs).[14]  The nature of the claims asserted in those cases render them distinguishable because those cases implicated unique issues not present in this case involving defective Washing Machines.

   Second, the contacts of the defendants in those cases pale in comparison to LG's contacts here.  For example, in *Heavner*, there was no allegation that the defendant, a New Jersey corporation, took any action in New Jersey, and the case involved a plaintiff who bought a truck trailer, having one Uniroyal tire mounted on one wheel, from a third party in North Carolina, and an accident in North Carolina. 63 N.J. at 133; *see also Deemer*, 193 N.J. Super. at 649 (applying North Carolina law in wrongful death case brought on behalf of North Carolina decedent after accident in North Carolina while working on a machine manufactured by a company previously incorporated in New Jersey).[15] *Heavner* is also distinguishable in that the defendant in that case had a "virtual nonpresence" because its only contact with New Jersey was that it was incorporated in this State. *Gantes*, 145 N.J. at 488 (citing *Heavner*, 63 N.J. at 146).  In this case, it is alleged that LG has a significant presence in New

---

[14] *Arons* is distinguishable for the additional reason that unlike here, the choice of law analysis took place in connection with the manageability determination at the class certification stage, after the parties had the opportunity to conduct full discovery.  2005 WL 975462, at *22.

[15] Defendant's quote to *Deemer* is also unavailing, because the court in that case was examining the policies underlying the Product Liability Act, and in that context, found that the principal aim of a personal injury claim is to fairly compensate an injured party so that those interests were greater than those relating to the defect-free design of a product.  *Deemer*, 193 N.J. Super. at 649.  Here, the issue is the fraudulent conduct of a corporation with its principal place of business in New Jersey, and whose employees sold and serviced the Machines from New Jersey.  On such facts, New Jersey's interests are paramount.

Jersey and that the conduct that is at issue emanated from this state.[16] *See Dal Ponte*, 2006 U.S. Dist. LEXIS 57675, at *20.  These contacts militate in favor of the application of New Jersey law.

New Jersey not only has the most significant contacts with this dispute but also the most significant interest in the issues here.  These interests clearly will be advanced through the application of New Jersey's laws to this case.  *See id.* at **14-15; *Payne v. Fujifilm U.S.A., Inc.,* No. 07-385, 2007 U.S. Dist. LEXIS 94765, at **23-25 (D.N.J. Dec. 28, 2007).

## III. PLAINTIFFS HAVE SUFFICIENTLY STATED CLAIMS UNDER THE NEW JERSEY CONSUMER FRAUD ACT AS WELL AS OTHER STATE CONSUMER PROTECTION STATUTES.

As this Court has stated, "[a] court adjudicating a CFA claim must approach dismissal of said claim 'with hesitation.'"  *Dewey*, 2008 U.S. Dist. LEXIS 28077, at *49 (citations omitted).  Moreover, "less specificity is required when the complaint presents the claims of a [proposed] class."  *Pacholec v. Home Depot USA, Inc.*, No. 06-827, 2006 U.S. Dist. LEXIS 68976, at *4 (D.N.J. Sept. 25, 2006).  Notwithstanding these well-established standards, LG contends that Plaintiffs' statutory consumer fraud claims should be dismissed on the grounds that Plaintiffs have: 1) not satisfied Rule 9(b) of the Federal Rules of Civil Procedure; 2) not pled the necessary element of reliance as to four claims; 3) not alleged "public impact" or a "consumer-oriented act" as to three claims; 4) not pled "unlawful" acts under Cal. Unfair Competition Law; 5) only alleged economic loss, thereby precluding a Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") claim; 6) failed to allege statutory notice under the Texas Deceptive Trade Practices Act ("Texas DTPA"); and 7) failed to allege an actionable representation under the Wisconsin Deceptive Trade Practices Act

---

[16] Furthermore, in contrast to *Deemer* and *Heavner*, LG has not demonstrated that any state's laws would be frustrated by the application of New Jersey's consumer fraud or breach of warranty law. *Gantes,* 145 N.J. at  494-495 (distinguishing *Deemer*, where application of New Jersey law to claim of North Carolina resident against a manufacturer no longer in New Jersey held to "frustrate the policies of North Carolina's workers' compensation laws").

("Wisconsin DTPA").  (LG Br. at 11-18).  As set forth below, LG's contentions are either misplaced or dead wrong, and Plaintiffs' consumer fraud claims should be sustained.

### A.   Plaintiffs Have Alleged Their Consumer Fraud Claims With Sufficient Particularity.

LG argues that Plaintiffs' claims under the New Jersey CFA and the consumer statutes of nine other states do not comply with Rule 9(b).[17]  According to LG, Plaintiffs are required to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which it is charged."  (*Id.* at 14).  Plaintiffs have done so.[18] As set forth above and in the Complaint, Plaintiffs have specifically alleged that:

- LG knowingly sold defective products to Plaintiffs and the other Class members while simultaneously representing its Machines as being of superior quality (CAC at ¶¶ 37, 125);

- LG concealed material facts regarding the Washing Machines, including design defects, which cause Mold Problems. (*Id.* at ¶ 40);

- LG denied the Machines had problems when notified of such defects (*Id.* at ¶ 49);

- In response to numerous complaints from Plaintiffs, LG representatives offered nothing but illusory "solutions," none of which worked.  (*Id.* at ¶¶ 25, 26);

- "[N]either the mold, mildew and/or foul odor problems nor the alleged 'solutions' were set forth in Plaintiffs' Owner's Manuals that accompanied the LG Machines." (*Id.* at ¶ 26);

---

[17] The case that LG relies on (LG Br. at 12 & 14) in setting forth the standards with respect to the CFA*, Carton v. Choice Point*, 450 F. Supp. 2d 489 (D.N.J. 2006), was actually vacated upon reconsideration and plaintiff's claim under the CFA was reinstated. *See Carton v. Choice Point*, 482 F. Supp. 2d 533, 535 (D.N.J. 2007).

[18] Rule 9(b) does not apply to claims for deceptive conduct under Pennsylvania's UTPCPL catch-all provision, because the elements of common law fraud need not be pled for such claims.  *Christopher v. First Mutual Corp.,* No. 05-01149, 2006 U.S. Dist LEXIS 2255, at *9 (E.D. Pa. Jan. 20, 2006) ("If a plaintiff alleges deceptive conduct under the UTPCPL, however, he need not meet the traditional heightened pleading standard").  *Moreover,* LG does not argue that the consumer protection statutes of New York or Wisconsin (Fourteenth and Eighteenth Counts) are subject to Rule 9(b) or that Plaintiffs fail to satisfy the Rule as to their claims under those statutes.

- LG "even verified to its technicians at training seminars - by physically opening up the washing machines - that its front-loading Washing Machines are predisposed to the formation of mold, mildew and/or odor." (*Id.* at ¶ 50); and

- LG has profited by concealing the nature of the defects because LG has been able to convince a large number of consumers to purchase the Washing Machines, and to pay LG for repair services to address the problems arising from the defects at issue, although LG has no effective remedy for the defects. (*Id.* at ¶ 47).

Plaintiffs further allege the dates of their purchases; the states wherein they purchased their LG Washing Machines; the Mold Problems they experienced with their Machines; and the dates when they put LG on notice with respect to those problems. (*See, generally, id.* at ¶¶ 4-23).[19]

Accordingly, Plaintiffs have sufficiently put LG on notice of the "precise misconduct with which [it is] charged," and have thus satisfied Rule 9(b).[20]  *Dewey*, 2008 U.S. Dist. LEXIS 28077, at **48-50; *see*

---

[19] LG wrongly suggests that Plaintiffs' allegations that LG engaged in fraudulent and deceptive conduct are solely based upon "information and belief."  (LG Br. at 13).  Plaintiffs' allegations of LG's material omission and unconscionable business practices are based upon their personal experiences, including their recitation of the litany of "canned" responses concerning solutions that LG knew were ineffective.  (CAC at ¶¶ 4-26).  Plaintiffs also allege that: (i) "[d]uring 2007, at LG's customer call center in Northern Alabama, service representatives each fielded dozens of calls on a daily basis regarding mold, mildew and/or odor accumulation in the Washing Machines" with respect to "all LG's front-loading Machines"; (ii) "LG representatives have admitted to persons employed by Best Buy that the Machines suffer from these problems"; (iii) "[d]uring 2006 and 2007, a large percentage of returns of LG front-loading Washing Machines (perhaps as many as 50%) were returned to LG due to mold, mildew and/or odor problems"; and (iv) "many members of the Class have posted their experiences with the defective washing Machines on the Internet," including postings on two on-line forums.  (*Id.* at ¶¶ 48, 49, 50, 52 and 53).  These allegations satisfy Rule 9(b).

[20] Arguing that the Complaint should be dismissed because Plaintiffs fail to include "any specific statements that would cause one to justifiably rely on them, thereby causing injury to Plaintiff," and separately that "Plaintiffs fail to plead the existence of an unconscionable business practice with specificity under Fed.R.Civ.P. 9(b)," LG indicates that Plaintiffs need to allege *both* a misrepresentation and an unconscionable business practice in order to state a claim under the CFA.  (LG Br. at 15-16).  This misstates the law. As this Court noted in *Dewey*, the CFA does not "require an affirmative statement or representation.  A CFA claim may proceed based on allegations of an 'unconscionable commercial practice.'"  2008 U.S. Dist. LEXIS 28077, at *48; *see also Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 507 (D.N.J. 1999) ("The [CFA] is worded in the disjunctive, and requires only that Naporano prove that defendants committed one of the prohibited practices to sustain its claim.").  Indeed, the CFA does not require reliance, *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 607 (1997), and a practice can be unlawful even if no one has been misled or deceived. *Id.*; *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 16 (1994).  In any event, as set forth

20

*also McCalley v. Samsung Electronics America, Inc.*, No. 07-2141, 2008 U.S. Dist. LEXIS 28076, at \*\*24-25 (D.N.J. March 21, 2008) (plaintiffs adequately pled a CFA claim by alleging that Samsung marketed defective televisions as providing superior quality, and knowingly failed to disclose those defects in order to sell more televisions).

Finally, contrary to LG's contentions, Plaintiffs have adequately pled an "ascertainable loss" due to LG's violation of the CFA, as well as a "causal connection" between LG's violation and Plaintiffs' loss.  As set forth in the Complaint, "[i]f LG had not misrepresented and concealed material information regarding the defective nature of the Washing Machines, Plaintiffs and members of the Class would not have purchased the Machines on the terms offered."  (CAC at ¶ 46).  Moreover, LG's violations "caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to repair and replace the Washing Machines and diminution in value of the Washing Machines."  (*Id.* at ¶ 84).  This is sufficient to state a claim under the CFA. *See McCalley*, 2008 U.S. Dist. LEXIS 28076, at \*26 ("an adequate explanation of the causal relationship between the unlawful practice and ascertainable loss 'would include a statement by Plaintiff indicating…that Plaintiff would not have purchased the [product] had' Defendant identified the defect." (citation omitted)).

Accordingly, Plaintiffs' consumer protection claims satisfy the requirements of Rule 9(b) and should not be dismissed.

### B. Plaintiffs' Claims Under the Consumer Protection Statutes of North Carolina, Colorado, Pennsylvania, and Texas Should Not be Dismissed on the Basis of Failure to Plead Reliance.

LG wrongly contends that, if the CFA does not apply, Plaintiffs' consumer fraud claims under Pennsylvania, North Carolina, Texas and Colorado law must be dismissed because the

---

herein and in the Complaint, Plaintiffs have sufficiently alleged LG's unconscionable commercial practices beyond its clear breach of warranty.  (*See, e.g.*, CAC at ¶¶ 25, 26, 40, 47, 49, 50, 52 and 53).

Complaint fails to plead reliance.  (LG Br at 16).  Reliance is not required by the relevant provisions

of the consumer protection statutes of these states and, in any event, Plaintiffs have sufficiently

alleged reliance.

A plaintiff need not allege or prove the common law elements of fraud to establish a claim

for *deceptive* conduct under the catchall provision of the Pennsylvania UTPCPL, since the

Pennsylvania legislature amended the catch-all provision in 1996 to prohibit "deceptive" as well as

"fraudulent" conduct.[21]  73 P.S. § 201-2 (Historical and Statutory Notes, p. 20).  State and federal

courts expressly addressing the effect of the amendment have held that the addition of "deceptive"

conduct to the catchall provision was intended to eliminate the requirement of proving the elements

of common law fraud, including reliance.[22]  *See, eg., Commonwealth ex rel. Corbett v. Manson*, 903 A.2d

69, 74 (Pa. Commw. 2006) ("maintaining the pre-1996 requirement [of proving the common law

elements of fraud] would render the words 'or deceptive' redundant and superfluous, contrary to the

rules of statutory construction"); *Commonwealth v. Percudani*, 825 A.2d 743, 747 (Pa. Commw. 2003));

*Alberton v. Commonwealth Land Title Ins. Co.*, 247 F.R.D. 469, 481 (E.D. Pa. 2008) ("individualized

proof of justifiable reliance is no longer required" under the catchall provision for claims of

deceptive conduct); *Hunt v. United States Tobacco Co.*, No. 06-1099, 2006 U.S. Dist. LEXIS 64960, at

*6-7 (E.D. Pa. Sept. 11, 2006); *Christopher v. First Mut. Corp.*, No. 05-01149, 2006 U.S. Dist. LEXIS

---

[21] The Pennsylvania UTPCPL lists twenty subsections describing specific unfair or deceptive acts or practices, 73 P.S. § 201-2(4)(i-xx), as well as a "catchall" provision prohibiting engagement "in any other fraudulent *or deceptive* conduct which creates a likelihood of confusion or of misunderstanding."  73 P.S. § 201-2(4)(xxi) (emphasis added).

[22]  Neither case cited by LG (LG Br. at 16) analyzed the amendment of the catchall provision.  In *Weinberg v. Sun Co., Inc.*, the court did not discuss the effect of the 1996 amendment to the statute because the case was filed before the amendment came into effect. 777 A.2d 442 (Pa. 2001).  In *Santana Products, Inc. v. Bobrick Washroom Equipment, Inc.*, the court did not expressly hold that individual reliance was required under the catchall provision.  401 F.3d 123, 136 (3d. Cir. 2005).  In fact, the court only analyzed the UTPCPL insofar as was necessary to determine the appropriate statute of limitations to apply to a Lanham Act claim.

2255, at **9-10 (E.D. Pa. Jan. 20, 2006).[23] Plaintiffs allege the necessary elements of "deceptive" as well as fraudulent conduct sufficient to state a claim under the UTPCPL.

Similarly, reliance is not required under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (2001). Since the decision relied upon by LG, *Forbes v. The Par Ten Group*, 394 S.E.2d 643 (N.C. Ct. App. 1990), the Court of Appeals of North Carolina has definitively held that reliance is not required under the Act.[24] *Cullen v. Valley Forge Life Ins.*, 589 S.E.2d 423, 431 (N.C. Ct. App. 2003) ("the statutory language of N.C. Gen. Stat. § 75-1.1 [does not] require reliance in order to show causation," and since "actual deception is not an element necessary under N.C. Gen. Stat. § 75-1.1 . . . actual reliance is not a factor"); *see also Dastgheib v. Genentech, Inc.*, No. 04-1283, 2006 U.S. Dist. LEXIS 1546, at *27 (E.D. Pa. Jan. 13, 2006) ("reasonable reliance is not an element of a violation of the [DTPA] so long as the unfair or deceptive act proximately causes plaintiff's injury").

Furthermore, reliance is not required under all of the provisions of the Texas DTPA, Tex. Bus. & Com. Code Ann. § 17.50, *et seq*. Reliance is not an element of a claim alleging an

---

[23] Even if Plaintiffs are required to allege reliance, they are entitled to a presumption of reliance, since they alleged that LG's silence regarding the alleged defect was material to their decision to purchase the product. *Drayton v. Pilgrim's Pride Corp.*, No. 03-2334, 2004 U.S. Dist. LEXIS 6691, at *21 (E.D. Pa. Mar. 31, 2004); *Peerless Wall and Window Coverings, Inc. v. Synchronics, Inc.*, 85 F. Supp. 2d 519, 534 (W.D. Pa. 2000), *aff'd*, 234 F.3d 1265 (3d Cir. 2000). "[W]hen a duty to speak exists, reliance by the class Plaintiffs is implicit and is established by operation of law." *Zwiercan v. General Motors Corp.*, No. 3235, 58 Pa. D. & C. 4th 251, 264 (Phila. C.P. Sept. 11, 2002). LG's marketing of its Machines as high-end and of first-rate quality (CAC at ¶ 37) gave rise to a duty to disclose that the Machines suffered from a serious defect that causes Mold Problems (*Id.* at ¶ 39). *Drayton*, 2004 U.S. Dist. LEXIS 6691, at *21. Plaintiffs have alleged that LG knowingly concealed material information concerning the Machine's predisposition to Mold Problems, and that they would not have purchased the Machines if LG had disclosed these facts. (CAC at ¶ 45).

[24] In stating that both detrimental reliance and actual injury are required, *Forbes* misapplies *Pearce v. American Defender Life Insurance Co.*, 343 S.E.2d 174, 180 (N.C. 1986) (plaintiff must merely show actual injury and proximate causation to make out claim under the statute); *see also McLamb v. T.P. Inc.*, 619 S.E.2d 577, 593 (N.C. Ct. App. 2005) (solely relying upon *Forbes*).

"unconscionable action or course of action" under Section 17.50(a)(3).[25]  *Browne v. World Christian Church*, No. A-99-CA-784, 2001 U.S. Dist. LEXIS 6143, at *8 n. 3 (W.D. Texas, March 6, 2001). Here, Plaintiffs alleged that LG engaged in a course of action that was unconscionable by:  1) selling defective products to Plaintiffs and Class members; 2) denying that the Machines had problems when notified of such defects; and 3) offering so-called "solutions" to the problems knowing those solutions will not work, thereby causing Plaintiffs and the other Class members to incur further cost. (CAC at ¶¶ 25-26, 40, 47).

Finally, LG is also wrong in claiming that reliance is required under the Colorado Consumer Protection Act, C.R.S. 6-1-113, *et seq.*, ("CCPA").  Reliance is not an element of the claim for deceptive trade practices in violation of the CCPA. *May Dep't Stores Co. v. State ex rel. Woodard*, 863 P.2d 967, 973 n.9 (Colo. 1993) ("A claimant need not prove consumer reliance to establish an unfair or deceptive practice" (citation omitted)).  Rather, all the consumer is required to do is allege that the conduct has the "capacity or tendency to deceive" and a causal connection between the deceptive act and the consumer's injury.[26]  *Id.*; *Hall v. Walter,* 969 P.2d 224, 235 (Colo. 1998). Plaintiffs have alleged such a causal connection.  (CAC at ¶ 156).[27]

---

[25] The case cited by LG, *Schein, Inc. v. Stromboe*, merely held that reliance is an element for other DTPA violations.  102 S.W.3d 675, 693 (Tx. 2002).

[26] *Grace Bros., Ltd. v. Futro*, No. 06-00886, 2007 U.S. Dist. LEXIS 75989 (D. Colo., Oct. 12, 2007), cited by LG, is not to the contrary.  In denying plaintiffs' motion for summary judgment, the Court merely stated that "plaintiffs in part must prove they relied on defendants' misrepresentations *or* that there is a causal connection between the misrepresentations and the sale of the stock to the plaintiffs."  *Id.* at *8 (emphasis added).

[27] Even if Plaintiffs are required to allege reliance, they have done so.  The Complaint alleges that: 1) Plaintiffs and the Class "reasonably expected" that LG's Washing Machines "would not contain design defects that would substantially impair the Machines' performance and use" and "would not require extensive and expensive repairs (or the purchase of extended or third party warranties to continuously attempt to fix problems inherent in the Washers), which defects were known to LG at the time of the sale" (CAC at ¶ 46); 2) had LG *not* misrepresented and concealed material information regarding the defects inherent in the Machines, "Plaintiffs and other members of the Class would not have purchased the Machines on the terms offered" (*Id.*); 3) "LG has been able to

**C.**     **Plaintiffs Have Sufficiently Alleged A "Public Harm" And A "Consumer-oriented Act."**

LG's argument that the Complaint fails to plead a "consumer-oriented act" or a "public harm" is also unavailing. (LG Br. at 17-18).  While it may be true under Colorado, Connecticut and New York's consumer statutes, that a consumer fraud claim brought by a "single consumer" cannot sufficiently establish the requisite "public harm" (*Id.* at 17), this is not a simple breach of contract case brought by a single consumer.  To the contrary, numerous Plaintiffs from fourteen states have pled that LG engaged in a pattern and course of deceptive conduct that has impacted, and will continue to impact, thousands of consumers if not remedied.  (CAC at ¶¶ 4-23, 25-26, 36-55).  Plaintiffs has also alleged that many other Class members have complained directly to LG and on online forums about the same Mold Problems experienced by Plaintiffs, that LG was, and is, aware that the common drainage defect caused such problems and that more than one half of the Machines returned to LG were returned because of Mold Problems.  (*Id.* at ¶¶ 48-52*)*.  Given such compelling allegations, it is mystifying as to how LG could possibly argue that Plaintiffs have each merely suffered a "purely private wrong," and have failed to allege a significant impact on the consuming public.  (LG Br. at 18).

**D.**     **Plaintiffs Have Stated A Claim For Unlawful Conduct Under the California Unfair Competition Law.**

California Business & Professions Code § 17200 creates three distinct causes of action, and LG concedes that Plaintiffs have alleged valid causes of action for "unfair" and "fraudulent" business practices so that these claims are not at issue and the Plaintiffs' claims under the UCL will

---

convince a large number of consumers to purchase the Washing Machines and pay LG for repair services (from which LG earns a profit) to address the problems arising from the defects at issue – even though LG has no effective remedy for the defects, and has in fact profited by failing and refusing to correct the defects in the Washing Machines."   (*Id.* at ¶ 47).

proceed.[28] (LG Br. at 19-20). LG also concedes that "unlawful conduct" under Section 17200 can be

any violation of any statute or regulation.  (*Id.* at 20).  However, LG contends that Plaintiffs have

not pled any "unlawful" conduct.  For the reasons set forth below, LG is incorrect.[29]

1.   Plaintiffs Have Sufficiently Alleged a Breach of Express
Warranty.

Contrary to LG's arguments, the Complaint states a claim for breach of express warranty

under Cal. Commercial Code § 2313. LG's entire theory is based on lack of privity between Plaintiff

and LG. (LG Br. at 20)   However, "[p]rivity is not required for an action based upon an express

warranty" under California law.  *Hauter v. Zogarts*, 14 Cal. 3d 104, 114 n.8 (1975); *see also Seely v. White

Motor Co.,* 63 Cal.2d 9, 14 (1965) ("Since there was an express warranty to plaintiff in the purchase

order, no privity of contract was required").[30]

---

[28] Rule 12(b)(6) permits a defendant to seek dismissal of a "claim."  Defendants have cited no
authority for a court dismissing less than an entire cause of action as they are seeking to do as to
multiple causes of action.  For this reason alone, Defendant's motion should be denied.

[29] It is well settled that the unlawful prong of the UCL "borrows violations of other laws and treats
them as unlawful practices that the unfair competition law makes independently actionable."  *Cal.
Consumer Health Care Council v. Kaiser Found. Health Plan, Inc.*, 142 Cal. App. 4th 21, 27 (2006)
(citations omitted).  LG's representations, to consumers (1) regarding the quality and reliability of
the Machines and (2) that the Machines were not defective, were directly contrary to LG's omissions
(failure to disclose the defect) and give rise to claims under the UCL.  Furthermore, LG's inclusion
of terms that attempt to disclaim responsibility for selling defective goods, under the circumstances
alleged in Plaintiffs' Complaint (CAC at ¶ 91), violates Cal. Civ. Code § 1668, which prohibits
putting illegal terms into a contract, and was, likewise, unlawful.  As such, these alleged violations of
law give rise to a claim under the "unlawful" prong of the UCL.

[30] Although ignored by LG, the Song-Beverly Act does not require privity. *See* Cal. Civ. Code § 1792
(consumer goods accompanied by manufacturer's implied warranty of merchantability) and § 1794
(buyer can recover damages from manufacturer without regard for vertical privity); *Gusse v Damon
Corp.*, 470 F. Supp. 2d 1110, 1116 n.9 (C.D. Cal. 2007) (plain language of the Song-Beverly abolished
vertical privity); *Atkinson v Elk Corp.,* 142 Cal. App. 4th 212, 229 (2006) (manufacturer brought itself
into privity with ultimate consumer by extending express warranty, and it would be inconsistent to
recognize privity for breach of express quality warranties and to reach opposite conclusion in same
transaction for breach of implied warranty of merchantability).

Furthermore, the Complaint alleges that LG provided express warranties directly to Plaintiffs: "LG provided Plaintiffs and each owner of the subject Washing Machines with a one-year factory warranty for parts and labor, a two-year factory warranty for the electronic control board, a seven-year factory warranty for the drum motor, and a lifetime warranty for the stainless steel drum…. Under this warranty, LG was obligated, *inter alia*, to repair the defect at no charge.  LG has these same obligations with respect to Plaintiffs and all Class members but has failed to satisfy these obligations."  (CAC at ¶ 36.)  In this situation, where the defendant issued the ultimate consumer plaintiffs an express warranty, upon which plaintiffs reasonably relied (*Id.* at ¶¶ 45-46), "plaintiff's cause of action based on breach of express warranty does not require privity of contract with [defendant]."  *Fundin v. Chicago Pneumatic Tool Co.*, 152 Cal. App. 3d 951, 957 (1984) (citing *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 696 (1954)).  The cases cited by LG do not hold otherwise.[31]

        2.      <u>Plaintiffs Have Sufficiently Alleged a Violation of the Song-Beverly Act</u>.

LG argues that Plaintiffs' UCL and Song-Beverly Act claims should be dismissed because they have not satisfied the Act's requirements.  LG argues that Plaintiffs do not allege that Ms. Boone gave LG neither written notice of the problems with her Washing Machine, nor an opportunity to cure under Civil Code § 1793.2. (LG Br. at 27)  This argument fails for two reasons.

First, a consumer can maintain a cause of action under the Song-Beverly Act without complying with Civil Code § 1793.2, by alleging breach of an express warranty in the sale of consumer goods.  Civil Code § 1794(a) ("Any buyer of consumer goods who is damaged by a failure to comply with any obligation under this chapter **_or_** under an implied or express warranty or service

---

[31] Indeed, the cases cited by LG did not concern the Song Beverly Act, and one case cited by LG, *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, actually acknowledged an exception to privity requirement where, as in this case, plaintiffs rely on manufacturers' representation in labels or advertising materials.  54 Cal. App. 4th 357, 369 n.10 (1997).

contract may bring an action for the recovery of damages and other legal and equitable relief"
(emphasis added)).  Furthermore, Plaintiff Boone is entitled to reimbursement of the "cost of repairs
necessary to make the goods conform," not just replacement or reimbursement under Section
1793.2, as suggested by LG. *See* Cal. Civ. Code § 1794(b).

Second, the Complaint alleges that Plaintiff Boone did, in fact, give LG notice of the
problems, and that LG proposed various ineffective solutions.  (CAC at ¶¶ 5, 25-26, 48).  As LG
knows, Ms. Boone sent LG an email explaining the problems with her Washing Machine.  Ms.
Boone did not attempt to return her Machine to LG; she attempted to fix it herself, based on all of
the ineffective solutions LG recommended to her.[32]  (*Id.* at ¶¶ 25-26).  The requirements of Section
1793.2 were satisfied when LG "voluntarily elected" to have Ms. Boone "undertake repair efforts"
on her Machine. *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 805 (2006).
Moreover, the cases cited by LG are "lemon law" cases involving motor vehicles, and are factually
distinguishable from the facts of this case, where LG knowingly sold defective Washing Machines
and could not and did not fix the defect.  Therefore, Plaintiffs' California state law claims are all
properly pled.

    **E.**    **The Doctrine of Economic Loss is Inapplicable to Plaintiff's
Pennsylvania UTPCPL Claims.**

LG contends that Plaintiffs' claim for damages under the Pennsylvania UTPCPL is barred
by the doctrine of economic loss, citing *Werwinski v. Ford Motor Co.*, 286 F. 3d 661 (3d Cir. 2002) and
*Heindel v. Pfizer, Inc.*, 381 F. Supp. 2d 364 (D.N.J. 2004), which relied solely upon *Werwinski*. (LG Br.
at 22).  However, LG fails to address the raft of state and federal court decisions preceding and

---

[32] Moreover, on November 16, 2007, Plaintiff Boone sent LG a letter (Ex. A to the Declaration of
Karen M. Leser-Grenon "Leser-Grenon Decl.") alerting LG to the Mold Problems experienced by
herself and other owners of LG's Machines, and demanding that LG "correct, repair, replace or
otherwise rectify" the defect causing these problems.

following *Werwinski* that have rejected the application of this doctrine to UTPCPL claims brought by consumers for intentional fraud or deception.  Furthermore, LG ignores Plaintiffs' allegations of damage to other property.

In *O'Keefe v. Mercedes-Benz USA*, the court expressly rejected the reasoning of *Werwinski*, cited favorable state court precedent, and concluded that it did not "believe that the Pennsylvania Supreme Court would defy the overwhelming and unanimous precedence of its appellate and trial courts or the clear language of the UTPCPL and adopt the reasoning of a foreign federal court's unpublished decision applying Wisconsin state law."  214 F.R.D. 266, 277 (E.D. Pa. 2003) (noting that the *Werwinski* court made its decision without reference to Pennsylvania case law or statutory construction principles, and cited only one unpublished federal court opinion from Wisconsin in support of its holding).  The court logically concluded that the notion underlying the economic loss doctrine — that "'parties are free to allocate risks of negligence or defect [—] fails when one party is *intentionally* deceiving the other.'"[33]  *Id.* at 278 (quoting *Air Prods. Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329, 336 (E.D. Pa. 2003)) (emphasis added).

The purpose of the UTPCPL is to afford consumers a cause of action for fraudulent and deceptive conduct.  Allowing the economic loss doctrine to bar UTPCPL claims would eviscerate that purpose, effectively overruling the clear intent of the Pennsylvania legislature to afford consumers such a remedy.  *O'Keefe*, 214 F.R.D. at 278; *Smith v. Reinhart Ford*, 68 Pa. D. & C.4th 432, 437-38 (C.P. Lanc. 2002) (citing *Burke v. Yingling*, 446 Pa. Super. 16, 22 (1995)); *see also Zwiercan v. GMC*, 58 Pa. D. & C.4th 251, 269 (Phila. C.P. 2002).

---

[33] In *Heindel*, the court adopted the holding in *Werwinski* without meaningfully addressing the concerns raised in *O'Keefe*. 381 F. Supp. 2d at 385.  This Court should decline to do likewise, since "Pennsylvania's statutory construction statute clearly bars applying common law doctrine to overturn legislative acts enacted after September 1, 1937."  *O'Keefe*, 214 F.R.D. at 275 (citing Pa. Stat. Ann. tit. 1 §§ 1921, 1928(a)).

As LG acknowledges, the economic loss doctrine does not bar UTPCPL claims that allege damage to property other than the product itself.  (LG Br. at 22).  In this case, Plaintiffs alleged that the defect caused the growth of mold and mildew and foul odors on the clothes and other items that Plaintiffs, including Ms. Trethewey, washed in their Machines, that they tried the "solutions" offered by LG and that none of these "solutions" stopped the mold, mildew and foul odor problems experienced by Ms. Trethewey and the other Plaintiffs.  (CAC at ¶¶ 21, 25, 26).

> **F.     Plaintiffs Satisfied the Notice Requirement of The Texas Deceptive Trade Practices Act.**

LG's argues that Plaintiff Olejniczak's Texas DTPA claim cannot survive because Plaintiffs did not serve notice of their intent to bring a claim under Tex. Bus. & Com. Code Ann. § 17.505(a).  (LG Br. at 22-23).  This argument fails for two reasons.

First, Plaintiff Olejniczak was not required to provide notice in this federal action because of the purely procedural nature of the notice requirement.  The notice requirement in Section 17.505 of the DTPA is procedural and thus, has no effect in federal court.  *Erie R.R. v. Tompkins*, 304 U.S. 64 (U.S. 1938) (federal court sitting in diversity must apply relevant substantive rather than procedural state law requirements to state law claims).  In *Mace v. Van Ru Credit Corporation*, the Seventh Circuit Court of Appeals refused to dismiss an action when the plaintiff did not comply with a Wisconsin consumer protection statute's pre-suit notice requirement in a Rule 23 federal class action suit brought in diversity.  109 F.3d 338, 345-46 (7th Cir. 1997).  *See also Braddock v. Orlando Reg'l Health Care Sys., Inc.*, 881 F. Supp. 580, 583-84 (M.D. Fla. 1995) (Florida's 90-day pre-suit notice in medical malpractice claims in conflict with FRCP 3 and 4 (citing to *Lundgren v. McDaniel*, 814 F.2d 600, 606 (11th Cir. 1987)).  Here, as in the case of Wisconsin's and Florida's notice statutes, Texas' 60-day notice period is procedural, and should not have effect in federal court.

Second, Plaintiff Olejniczak's claim is subject to a statutory exception.  Notice is excused,

"[i]f the giving of 60 days' written notice is rendered impracticable by reason of the necessity of filing suit in order to prevent the expiration of the statute of limitations." [34]  Tex. Bus. & Com. Code § 17.505(b).  Plaintiff Olejniczak purchased her Washing Machine in or about January 2006 and took delivery of that Machine in Texas on January 25, 2006.  (Olejniczak Compl. at ¶ 17).[35]  The discovery rule under the DTPA provides that the statute of limitations runs from the date the plaintiff discovered or, in the exercise of reasonable diligence, should have discovered the occurrence of the false, misleading, or deceptive act or practice.  Tex. Bus. & Com. Code Ann. § 17.565.[36]  Here, Plaintiff began to experience Mold Problems in her washer approximately three to four months after delivery (*ie.*, approximately, April 25, 2006).  (CAC at ¶ 19; Olejniczak Compl. at ¶ 19).  Since there was a possibility that the applicable statute of limitations would run within the 60-day period, Olejniczak was statutorily excused from sending the notice.  The statute of limitations on her DTPA claim expired at the earliest on April 25, 2008.  Plaintiff filed the Olejniczak Action out of necessity on March 21, 2008, in order to protect the statute of limitations.  It would have been impracticable for Olejniczak to give 60-days' notice under the circumstances. [37]  Accordingly,

---

[34] Two of the cases upon which LG relies, *Hines v. Hash*, 843 S.W.2d 464 (Tex. 1992) and *Ramirez v. American Home Products*, No. C.A. B-03-155, 2005 U.S. Dist. LEXIS 40577, at **31-32 (S.D. Tex. Sept. 16, 2005) are inapposite because they do not implicate statutory exceptions to the DTPA notice requirement.

[35] *Olejniczak v. LG Electronics USA, Inc.*, No. 2:08-CV-01501-FSH-MAS, was filed in this District Court on March 21, 2008 ("Olejniczak Action").  The Olejniczak Action was later consolidated with this action.  (Consolidation Order, April 3, 2008).

[36] *See Tenowich v. Sterling Plumbing Co.*, 712 S.W.2d 188, 190 (Tex. App. 1986) (where the court held that the statute of limitations with respect to appellants' DTPA claim began to run when the appellants discovered the leaks in the pipes and realized there was a serious plumbing problem throughout the house); *Jim Walter Homes, Inc. v. Castillo*, 616 S.W.2d 630, 634 (Tex. App. 1981) (the statute of limitations for the plaintiff's DTPA claim based on a construction contract, began to run when the damages to the house actually began to show).

[37] In *Star Houston, Inc. v. Kundak*, the Court held that notice was satisfied "[s]ince there was a pleading and some evidence of probative value of compliance with the DTPA notice requirement via the impracticality exception."  843 S.W.2d 294, 297 (Tex. App. 1992).  Although the defendant received

Plaintiff was excused from giving notice.[38] Tex. Bus. & Com. Code § 17.505(b).

G.    **Plaintiffs Have Stated a Claim Under the Wisconsin Deceptive Trade Practices Act.**

LG's contention that Plaintiffs' complaint is merely an action based on "failure to disclose," and as such does not state an "assertion, representation, or statement of fact" under the Wisconsin DTPA is misguided (LG Br. at 23).[39]  The DTPA prohibits merchants from not only making a misrepresentation, but also an "assertion, representation or statement of fact which is untrue, deceptive or misleading."[40]  Wis. Stat. § 100.18.  Plaintiffs allege that LG has failed to disclose material defects to the public concerning its front loading Washing Machines, and that such disclosures were *necessary to make LG's representations concerning such products not misleading.* (CAC at ¶ 37).  Such representations include, but are not limited to, LG's statements that its high-end Washing

---

[38] written notice after the complaint was filed, the court held that the complaint would have been sufficient to alert defendant as to the statutory notice exception, and that the defendant was not harmed by in any way having notice of the claim for almost three years before trial.  *Id.*  Similarly here, LG has time to make a settlement offer due to the ample notice of Plaintiffs' DTPA claim prior to trial.

[38] In the alternative, Plaintiffs respectfully request leave to amend to formally plead the statutory exception to notice under the DTPA. "When notice is not provided, however, dismissal is not automatically warranted."  *Ramirez,* 2005 U.S. Dist. LEXIS 40577 at **29-30 (citing *Oppenheimer v. Prudential Sec., Inc.,* 94 F.3d 189, 194 (5th Cir. 1996)).  "Rather, when defendant timely requests abatement, the trial court must abate the proceedings for 60 days, allowing plaintiff an opportunity to cure this defect."  *Id.* at *30 (citing *Hines,* 843 S.W.2d at 467).

[39]  The case cited by LG, *Teitsworth v. Harley-Davidson, Inc.,* 270 Wis.2d 146 (Wis. 2004), for the proposition that omissions cannot form the basis of a DTPA claim, is distinguishable.  In dismissing the plaintiffs' fraud claims, the *Teitsworth* court found it relevant that the plaintiffs at issue suffered no real damage to the goods they purchased, and that the complaint was based merely on alleged "diminished value" because the goods have demonstrated a "propensity" for premature engine failure. *Id.* at 159-60.  Here, the Plaintiffs allege much more than a "propensity" for failure, as the design defects have caused them actual damage by rendering their Washing Machines essentially worthless because of mold, mildew, and foul odors.  (CAC at ¶¶ 27, 42, 44, 47).

[40] The trigger for liability under the DTPA is whether the seller makes statements that have a *propensity* to mislead.  *Stuart v. Weisflog,* 722 N.W.2d 766, 775 (Wis. App. 2006).  The broad remedial scope of the Wisconsin DTPA and its protective purpose are such that to eliminate or rectify a

Machines were and are of first-rate quality for washing and cleaning clothing and fabrics (*Id.* at ¶ 37), as well as representations that LG is a manufacturer of safe, cutting-edge and easy-to-use home appliances (*Id.* at ¶ 34).

When there is a duty to disclose a fact, the law has treated the failure to disclose that fact "as equivalent to a representation of the nonexistence of the fact." *Kaloti Enter., Inc. v. Kellogg Sales Co.*, 699 N.W.2d 205, 212 (Wis. 2005). A party has a duty to disclose facts that are necessary to prevent a "statement that is partial or incomplete [and] . . . purports to tell the whole truth and does not" from misleading the recipient. RESTATEMENT (SECOND) OF TORTS, § 551, Comment (g); *see also Ollerman v. O'Rourke Co.,* 288 N.W.2d 95, 100 (Wis. 1980) (adopting reasoning of REST. § 551). The representations made by LG about its Washing Machines were and are misleading to consumers who, unlike LG, lack the knowledge that such Machines are highly susceptible to developing Mold Problems. (CAC at ¶ 25).

## IV.    PLAINTIFFS MAY PURSUE THEIR WARRANTY CLAIMS.

LG wrongly contends that Plaintiffs' claims for breach of express and implied warranty must be dismissed.[41] The premise of this argument is that the claims are brought under the laws of the states where Plaintiffs live, but as demonstrated convincingly above, New Jersey law applies to all Plaintiffs' claims. LG apparently concedes, as it must, that the claims are properly pled under New Jersey law.[42] Instead, LG asserts that Plaintiffs' state law breach-of-warranty claims, under *four of the*

---

wrong, the traditional standards of proof may be relaxed if necessary. *Novell v Migliaccio*, 749 N.W.2d 544, 553-54 (Wis. 2008).

[41] LG does not seek dismissal of Plaintiffs' express and implied warranty claims under New Jersey law. Thus, if this Court determines that New Jersey law applies to all Plaintiffs and other Class members, this Court should reject, in their entirety, LG's arguments for dismissal of Plaintiffs' express and implied warranty claims.

[42] LG also implicitly concedes that the Plaintiffs raise cognizable breach-of-warranty claims for most of the sub-classes. *See* Appendix A, Plaintiffs' Summary of Claims Challenged in LG's Motion to Dismiss.

33

*fourteen states* alleged, must fail because they do not allege a privity of contract between LG and

Plaintiffs.  (LG Br. at 25-27).  LG also argues that Plaintiffs' claim for breach of express warranty

under the MMWA should be dismissed because Plaintiffs failed to provide LG with notice of breach

and an opportunity to cure the alleged defect.  (Id. at 28-29).  LG's arguments on these issues must

be rejected.

### A.   Plaintiffs Have Sufficiently Pled Claims for Breaches Of Express and Implied Warranties.

Assuming that New Jersey law does not apply to all Plaintiffs, LG contends that the express

and implied warranty claims of Plaintiffs Demski, Scalise, Grosso, Harper and Launch fail because

they do not allege privity of contract with LG, as purportedly required under the laws of Wisconsin,

Illinois, Michigan and Florida.[43]  (LG Br. at 25-27).

Plaintiffs have sufficiently alleged their express and implied warranty claims.[44] Wisconsin

courts permit a finding of privity under the facts pleaded herein, where there is a written warranty

between the ultimate buyer and a remote manufacturer.  *Sunnyslope Grading Inc. v. Miller, Bradford &*

*Risberg, Inc.*, 437 N.W.2d 213, 215 (Wis. 1989).  Furthermore, courts in Michigan and Illinois do not

require privity for *consumers* seeking to recover for breaches of implied warranty.  *Pack v. Damon*

*Corp.*, 434 F.3d 810, 819-20 (6th Cir. 2006) (privity not required for implied warranty under

Michigan law); *Spence v. Three Rivers Builders & Masonry Supply, Inc.*, 90 N.W.2d 873 (Mich. 1958).

*Shoop v. DaimlerChrysler Corp.*, 864 N.E.2d 785, 792 (Ill. Ct. App. 2007) (privity requirement "relaxed"

---

[43] LG only attacks the express warranty claim of Plaintiff Demski, under Wisconsin law, and the implied warranty claims of Plaintiffs Demski, Scalise, Grosso, Harper and Launch, under Wisconsin, Illinois, Michigan and Florida law, respectively.  As for the latter claim, Plaintiffs do not allege breach of implied warranty under Florida law, so they do not address LG's arguments herein.

[44] As a preliminary matter, "the issue of privity… involves issues of fact not appropriate for resolution at the motion to dismiss stage."  *Dewey*, 2008 U.S. Dist. LEXIS 28077, at *44 n.17; *see also Zelony v. Porsche Cars North Am.*, No. 08-20090, 2008 U.S. Dist. LEXIS 31439, at **5-6 (S.D. Fla., Apr. 16, 2008) (citing to *Yvon v. Baja Marine Corp.,* 495 F. Supp. 2d 1179, 1184 (N.D. Fla. 2007)).

where manufacturer extended written warranty).

In this case, Plaintiffs have sufficiently pled that LG issued a warranty aimed at Plaintiffs and every other ultimate purchaser of its Washing Machines (CAC at ¶ 97), and sold extended warranties to Plaintiffs and certain members of the Class (*Id.* at ¶ 98).  Moreover, Plaintiffs also pled that LG sent out repair persons to fix the Mold Problem in the Washing Machines owned by Plaintiffs Cook, Harper and Zimmerman.  (*Id.* at ¶¶ 7, 14, 23).  In doing so, LG acknowledged the existence of a warranty-based relationship between itself and consumers, including Plaintiffs and the other Class members.[45]

## B.   Plaintiffs Have Satisfied the Notice And Opportunity To Cure Requirements of The MMWA.

LG contends that Plaintiffs' MMWA written warranty claim should be dismissed because: two of the *twenty* Plaintiffs did not complain to anyone (which is incorrect); three of the *twenty* Plaintiffs gave notice to the retailer; and Plaintiffs did not give LG prelitigation notice of breach on behalf of the Class.[46]  (LG Br. at 29).  None of these contentions are correct, because LG misconstrues both the facts and law.

As alleged in the Complaint, *fifteen* of the twenty Plaintiffs provided notice *directly* to LG concerning the defect and resultant Mold Problems.  (CAC at ¶¶ 5, 7, 9, 10, 13-23, 25, 102, 103, 117,

---

[45] All of the cases cited by LG are distinguishable for several reasons.  First, none of the cited cases involved a class action involving a *consumer* plaintiff whose purchase of a defective product was accompanied with a manufacturer's warranty.  *Bouverette v. Westinghouse Electric Corp.,* 245 Mich.App. 391, 628 N.W. 2d 86 (Mich. App. 2001), merely held that the UCC did not apply to what was in essence a personal-injury action – *not* that privity is required for an implied-warranty claim under the Michigan UCC. *McKissic v. Country Coach, Inc.,* No. 07-1488, 2008 U.S. Dist. LEXIS 15998, at *1-2 (M.D. Fla., Mar. 03, 2008), is also inapplicable because it dealt with the sale of a *used* product accompanied with a warranty *disclaimer*, not the purchase of brand-new merchandise accompanied with a manufacturer's warranty.  Finally, *Twin Disc, Inc. v. Big Bud Tractor,* 582 F. Supp. 208, 215-16 (E.D. Wis. 1984) and *Barlow v. DeVilbiss Co.,* 214 F. Supp. 540, 543-44 (E.D. Wis. 1963) were rulings on motions for summary judgment, where discovery had been completed.

118).  In fact, nine of the Plaintiffs complained *multiple* times to LG, but LG failed to cure the Mold

Problems that plagued their Machines.  (*Id.* at ¶¶ 7, 13, 14, 15, 16, 18, 19, 22, 23).[47]

      LG also argues that Plaintiffs failed to notify LG that they were complaining about the

alleged defects in their Washing Machines on behalf of the Class before the filing of the Complaint.

(LG Br. at 29).  Plaintiffs satisfied this requirement through the filing of the Complaint on behalf of

the Class. Notice of breach of warranty on behalf of a class prior to the commencement of a class

action is "clearly not required" under the MMWA.  *Mendelson v. General Motors Corp.*, 432 N.Y.S.2d

132, 136-37 (N.Y. Sup. Ct. 1980) (denying motion to dismiss MMWA claim for failure to provide

prelitigation notice of breach of warranty under MMWA on behalf of a class), *aff'd*, 441 N.Y.S.2d

410 (App. Div. 1981); *accord Taylor*, 2008 U.S. Dist. LEXIS 43215, at *18 (pre-litigation notice of

breach of warranty not necessary under New Jersey warranty law).  Before filing a complaint,

plaintiffs need only ensure that "the warrantor is given a reasonable opportunity to cure the defect."

*Mendelson*, 432 N.Y.S.2d at 136.  In this case, Plaintiffs provide LG with ample opportunity to cure

the defect and Plaintiffs' Mold Problems caused by such defect.[48]

      LG argues, in passing, that Plaintiffs' "cure" allegations fail to satisfy the MMWA.  (LG Br.

at 29).  Plaintiffs satisfied this requirement of the MMWA because they not only alleged that LG had

---

[46] LG does not, however, challenge Plaintiffs' MMWA claim, in the alternative, for breach of
implied warranty (Fourth Cause of Action).

[47] LG incorrectly asserts that Plaintiffs Ashe and Burke failed to allege that they provided notice to
LG or anyone else.  (LG Br. at 29).  Plaintiff Ashe, a resident of New Jersey, provided notice to LG
through the filing of the Complaint.  As this Court recently held in *Taylor*, 2008 U.S. Dist. LEXIS
43215, at *18, pre-litigation notice of breach of warranty is not necessary under New Jersey warranty
law, to which the MMWA provides a private right of action.  Plaintiff Burke arranged for repair of
her Washing Machine pursuant to her extended warranty, which necessarily means that she provided
notice to the warrantor of the mold and mildew problems with her Machine.  (CAC at ¶ 6).

[48] Moreover, as noted earlier, Plaintiff Boone sent LG a letter (Ex. A to Leser-Grenon Decl.)
alerting LG to the Mold Problems experienced by herself and other owners of LG's Machines, and
demanding that LG cure the defect.  LG had a reasonable opportunity to cure this defect and
resultant problems for Plaintiffs and the other members of the Class, but has not done so.

a reasonable opportunity to cure the defect (CAC at ¶ 104), but that LG also had knowledge long before the time of sale that its Washing Machines had a defect, which caused the Mold Problems.[49] (*Id.* at ¶¶ 37, 43, 44, 45, 49, 53, 97, 142).  Under the MMWA, the opportunity to cure requirement can be met where "the manufacturer knew of the defects at the time of sale."  *McFadden v. Dryvit Sys.*, No. 04-103, 2004 U.S. Dist. LEXIS 20604, at *47 (D. Or. Oct. 8, 2004) (defendant had opportunity to cure because it knew of problems with its siding product, and developed a new product to address the defects but continued to sell the existing product); *see also Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751, 754 (N.D. Ohio 2001) (defendant automobile manufacturer knew of defective part at time of sale); *Alberti v. Gen. Motors Corp.*, 600 F. Supp. 1026, 1028 n 2 (D. DC. 1985) (same); *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 184 (Mo. Ct. App. 2006) (defendant had opportunity to cure because it knew, when vehicle sold to plaintiff, that vehicle had been in an accident).  In this case, Plaintiffs allege that LG knew about the alleged defects at the time of sale and long before (CAC at ¶¶ 37, 43, 44, 45, 49, 53, 97, 142), and that LG provided "form and 'canned' responses," which LG knew were ineffective in solving the Mold Problems from Plaintiffs' Machines.  (*Id.* at ¶¶ 25, 26).

Since Plaintiffs provided LG with notice of breach on behalf of the Class and provided LG with a reasonable opportunity to cure the defect and resultant Mold Problems, and because Plaintiffs otherwise state claims for breach of express and implied warranties under state law, they should be afforded the opportunity to litigate their MMWA claims.

---

[49] To the extent that LG argues that no Plaintiffs provided a reasonable opportunity to cure because they failed to provide LG at least two chances to remedy the defect, it ignores the allegations of the Complaint.  Plaintiffs clearly allege that, upon the requests of Plaintiffs Zimmermann, LG sent out at least two repair persons to cure the problem.  (CAC at ¶¶ 23).  In fact, a third repair company declined to come to Plaintiffs Zimmermann's house, stating "that it had 'stopped selling and fixing LG machines because there were so many problems.'"  (*Id.* at ¶ 23).  Plaintiffs also allege that Plaintiffs Harper contacted LG after LG had unsuccessfully "repaired" their Machines, but LG never sent a second repair person.  (*Id.* at ¶ 14).

## CONCLUSION

For the aforementioned reasons, this Court should deny LG's Motion to Dismiss Plaintiffs'

Consolidated Amended Complaint.[50]


Date:   July 28, 2008                              Respectfully submitted,


                                                   /s/ Daniel B. Scott
                                                   Steven A. Schwartz
                                                   Daniel B. Scott
                                                   Alison R. Gabe
                                                   CHIMICLES & TIKELLIS, LLP
                                                   One Haverford Centre
                                                   361 West Lancaster Avenue
                                                   Haverford, PA 19041
                                                   Telephone:  (610) 642-8500
                                                   Facsimile:  (610) 649-3633
                                                   stevenschwart@chimicles.com
                                                   danielscott@chimicles.com
                                                   arg@chimicles.com

                                                   *Co-lead Counsel for Plaintiffs*

                                                   James C. Shah
                                                   Natalie Finkelman Bennett
                                                   Nathan C. Zipperian
                                                   SHEPHERD, FINKELMAN, MILLER &
                                                   SHAH, LLP
                                                   475 White Horse Pike
                                                   Collingswood, NJ 08107
                                                   Telephone:  (856) 858-1770
                                                   Facsimile:  (856) 858-7012
                                                   jshah@sfmslaw.com
                                                   nfinkelman@sfmslaw.com
                                                   nzipperian@sfmslaw.com

---

[50] If the court nevertheless decides that additional facts should be pled, Plaintiffs request leave to file an amended complaint to correct any such deficiencies.  Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend shall be freely given unless there is undue delay, bad faith, futility of the amendment, or prejudice.  *Foman v. Davis,* 371 U.S. 178, 182 (1962).

James E. Miller
Patrick A. Klingman
Karen M. Leser-Grenon
SHEPHERD FINKELMAN MILLER &
SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone:  (860) 526-1100
Facsimile:  (860) 526-1120
jmiller@sfmslaw.com
pklingman@sfmslaw.com
kleser@sfmslaw.com

*Liaison Counsel for Plaintiffs*

Oren Giskan
Catherine E. Anderson
Darnley D. Stewart
GISKAN SOLOTAROFF & ANDERSON LLP
11 Broadway- Suite 2150
New York, NY 10004
Telephone:  (212) 847-8315
ogiskan@gslawny.com
canderson@gslawny.com
dstewart@gslawny.com

Paul M. Weiss
George K. Lang
FREED & WEISS, LLC
111 West Washington Street, Suite 1331
Chicago, IL 60602
Telephone:  (312) 220-0000
paul@freedweiss.com
george@freedweiss.com

39

James E. Miller
Patrick A. Klingman
Karen M. Leser-Grenon
SHEPHERD FINKELMAN MILLER &
SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone:  (860) 526-1100
Facsimile:  (860) 526-1120
jmiller@sfmslaw.com
pklingman@sfmslaw.com
kleser@sfmslaw.com

*Co-lead Counsel for Plaintiffs*

Ronald S. Kravitz
Matthew Borden
LINER YANKELEVTTZ SUNSHINE
& REUENSTREIF LLP
199 Fremont Street, 20th Floor
San Francisco, CA 94105-2255
Telephone:  (415) 489-7700
Facsimile:  (415) 489-7701
rkravitz@linerlaw.com
mborden@linerlaw.com

Michael Boni
BONI & ZACK LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone:  (610) 822-0200
Facsimile:  (610) 822-0206
mboni@bonizack.com

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone:  (215) 553-7980
jshub@seegerweiss.com

40

Arthur L. Shingler, III
Hal Cunningham
SCOTT & SCOTT, LLP
600 B. Street, Suite 1500
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508
ashingler@scott-scott.com
hcunningham@scott-scott.com

Marc Bradley Kramer
LAW OFFICES OF MARC B.
KRAMER, P.C.
150 JFK Parkway, Suite 100
Short Hills, NJ 07078
Telephone:  (973) 847-5924
Facsimile:  (973) 847-6005
marcbkramer@cs.com

Jacqueline Sailer
MURRAY, FRANK & SAILER LLP
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone:  (212) 682-1818
Facsimile:  (212) 682-1892
jsailer@murrayfrank.com

Mark Schlachet
3637 South Green Road
Beachwood, OH 44122
Telephone:  (216) 896-0714
Facsimile:  (212) 514-6406
mschlachet@clevelandnet.com

James E. Cecchi
Lindsey H. Taylor
CARELLA BYRNE BAIN GILFILLAN
 CECCHI STEWART & OLSTEIN, PC
5 Becker Farm Road
Roseland, NJ 07068
Telephone:  (973) 994-1700
Facsimile:  (973) 994-1744
jcecchi@carellabyrne.com
ltaylor@carellabyrne.com

41

Richard J. Burke
RICHARD J. BURKE, LLC
1010 Market Street, Suite 650
St. Louis, MO 63101
Telephone:  (314) 621-8647
rich@richardjburke.com

Brian Ruschel
925 Euclid Avenue, Suite 660
Cleveland, OH 44115
Telephone:  (216) 621-3770
Facsimile:  (216) 621-3771
bruschel@aol.com

*Counsel Committee for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of Plaintiffs' Opposition to Defendant LG Electronics USA,

Inc.'s Motion to Dismiss and Supporting Memorandum of Law has been served via ECF on this

28th day of July, 2008 to the following:


James S. Richter
Melissa Steedle Bogad
WINSTON & STRAWN LLP
The Legal Center
One Riverfront Plaza, 7th Floor
Newark, New Jersey 07102
(973) 621-2230
jrichter@winston.com
mbogad@winston.com

James C. Shah
Natalie Finkelman Bennett
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
475 White Horse Pike
Collingswood, NJ 08107
Telephone:  (856) 858-1770
Facsimile:  (856) 858-7012
jshah@sfmslaw.com
nfinkelman@sfmslaw.com
nzipperian@sfmslaw.com

Oren Giskan
Catherine E. Anderson
Darnley D. Stewart
GISKAN SOLOTAROFF & ANDERSON LLP
11 Broadway- Suite 2150
New York, NY 10004
Telephone:  (212) 847-8315
ogiskan@gslawny.com
canderson@gslawny.com
dstewart@gslawny.com

Paul M. Weiss
George K. Lang
FREED & WEISS, LLC
111 West Washington Street, Suite 1331
Chicago, IL 60602
Telephone:  (312) 220-0000
paul@freedweiss.com
george@freedweiss.com

James E. Miller
Patrick A. Klingman
Karen M. Leser-Grenon
SHEPHERD FINKELMAN MILLER &
SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone:  (860) 526-1100
Facsimile:  (860) 526-1120
jmiller@sfmslaw.com
pklingman@sfmslaw.com
kleser@sfmslaw.com

Ronald S. Kravitz
Matthew Borden
LINER YANKELEVTTZ SUNSHINE
& REUENSTREIF LLP
199 Fremont Street, 20th Floor
San Francisco, CA 94105-2255
Telephone:  (415) 489-7700
Facsimile:  (415) 489-7701
rkravitz@linerlaw.com
mborden@linerlaw.com

Michael Boni
BONI & ZACK LLC
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone:  (610) 822-0200
Facsimile:  (610) 822-0206
mboni@bonizack.com

Jonathan Shub
SEEGER WEISS LLP
1515 Market Street, Suite 1380
Philadelphia, PA 19102
Telephone:  (215) 553-7980
jshub@seegerweiss.com

Arthur L. Shingler, III
Hal Cunningham
SCOTT & SCOTT, LLP
600 B. Street, Suite 1500
San Diego, CA  92101
Telephone:  (619) 233-4565
Facsimile:  (619) 233-0508
ashingler@scott-scott.com
hcunningham@scott-scott.com

Beth Kaswan
SCOTT + SCOTT, LLP
29 West 57th Street
New York, NY 10019
Telephone:  (212) 223-6444
Facsimile:  (212) 223-6334
bkaswan@scott-scott.com

Marc Bradley Kramer
LAW OFFICES OF MARC B.
KRAMER, P.C.
150 JFK Parkway, Suite 100
Short Hills, NJ 07078
Telephone:  (973) 847-5924
Facsimile:  (973) 847-6005
marcbkramer@cs.com

Jacqueline Sailer
MURRAY, FRANK & SAILER LLP
275 Madison Avenue, Suite 801
New York, NY 10016
Telephone:  (212) 682-1818
Facsimile:  (212) 682-1892
jsailer@murrayfrank.com

Mark Schlachet
3637 South Green Road
Beachwood, OH 44122
Telephone:  (216) 896-0714
Facsimile:  (212) 514-6406
mschlachet@clevelandnet.com

James E. Cecchi
Lindsey H. Taylor
CARELLA BYRNE BAIN GILFILLAN
 CECCHI STEWART & OLSTEIN, PC
5 Becker Farm Road
Roseland, NJ 07068
Telephone:  (973) 994-1700
Facsimile:  (973) 994-1744
jcecchi@carellabyrne.com
ltaylor@carellabyrne.com

Richard J. Burke
RICHARD J. BURKE, LLC
1010 Market Street, Suite 650
St. Louis, MO 63101
Telephone:  (314) 621-8647

Robert K. Shelquist
LOCKRIDGE, GRINDAL & NAUEN, P.L.L.P.
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401
Telephone:  (612) 339-6900
Facsimile:  (612) 339-0981
rkshelquist@locklaw.com

Brian Ruschel
925 Euclid Avenue, Suite 660
Cleveland, OH 44115
Telephone:  (216) 621-3770
Facsimile:  (216) 621-3771
bruschel@aol.com

46

/s/ Daniel B. Scott
Daniel B. Scott
CHIMICLES & TIKELLIS, LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone:  (610) 642-8500
Facsimile:  (610) 649-3633
danielscott@chimicles.com

47

48