


James C. Shah
Natalie Finkelman Bennett
Nathan C. Zipperian
Shepherd, Finkelman, Miller & Shah, LLP
475 White Horse Pike
Collingswood, NJ 08107
Telephone: (856) 858-1770
Facsimile: (856) 858-7012
jshah@sfmslaw.com
nfinkelman@sfmslaw.com
nzipperian@sfmslaw.com

**Counsel for Plaintiffs and the Class**

**Document Electronically Filed**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE LG FRONT LOADING WASHING MACHINE CLASS ACTION LITIGATION | Case No. 2:08-cv-0051-FSH-MAS |

**PLAINTIFFS' REPLY IN SUPPORT OF OPPOSITION TO PRODUCTION OF RETENTION AGREEMENTS**

Defendant, LG Electronics USA, Inc.'s ("LG") submission amounts to little more than a sleight of hand intended to try to divert the attention of this Court from the real issue here – LG's failure to demonstrate the validity of its improper fishing expedition into irrelevant and non-discoverable fee agreements between Plaintiffs and their counsel. In essence, LG seeks to have this Court enter a ruling that would vitiate long-standing discovery principles that only relevant evidence is discoverable and ignore as an "outlier" the recent ruling of another judge of this Court on this very issue. In furtherance of its efforts, LG mischaracterizes the record, engages in rank speculation, and unpersuasively attempts to distinguish or simply ignore the decisions of a

1

majority of courts that have determined that retention agreements are not relevant. Plaintiffs demonstrate below that, when the incorrect factual basis upon which LG's legal argument is based is exposed, its entire argument implodes.  Indeed, notwithstanding the LG's "high" rhetoric and mischaracterization of the pleadings and discovery in this matter, LG still cannot point to *any* valid reason to compel the production of any retention agreements.

## LG MISREPRESENTED THE FACTS

First, the "facts" upon which LG's argument is based are wrong.  LG did not request the retention agreements.  If it had, LG would certainly have directed the Court's attention to the specific request.  Instead, in the absence of a specific request, LG can only point to a smattering of generic requests, all of which sought information about the Plaintiffs' *pervasive mold problems with LG's washing machines*, including such requests as: "All Documents relating to any Washing Machine or Mold Problem," "All Documents relating to any alleged misrepresentation, omission, or act of concealment by LG USA regarding any Washing Machine or any Mold Problem. (This request includes all Documents relating to the conduct alleged in Complaint ¶¶ 221 and 222.)," "All Documents relating to Your Mold Problem, including Documents sufficient to identify the date on which You first became aware of it," or "All Documents relating to the contemplation of bringing, possibility of bringing, merits of, decision to bring, or actual bringing of this lawsuit, including any Communications involving any Plaintiff on any of those subjects."

With respect to the Request for "All Documents related to any payment of any kind made, or consideration of any kind provided, to any Plaintiff relating to this case or to any other class action case," LG disingenuously failed to point out that all Plaintiffs *already have responded* to

2

this request by stating that *"no such documents exist."*  *See* Plaintiffs' Response to Defendant LG Electronics, USA., Inc., Document Requests ("Plaintiffs' Discovery Responses") at p. 13, Exhibit B to January 8, 2010 Letter from James S. Richter to Judge Shipp, Docket Item No. 122 ("LG Letter") (emphasis supplied).  Finally, as to the only request actually quoted by LG in its letter submission, "All Documents relating to the fees charged or expenses incurred in this case by any attorney, expert, or consultant," even if that vague and ambiguous request could somehow be read to include any document other than those specifically related to expert costs and expenses, it was the subject of timely and proper relevance and privilege objections.

Contrary to LG's position, Plaintiffs did not waive any objections.  In fact, LG's argument conveniently ignores Plaintiffs' General Objections as to relevance, materiality and admissibility, privilege, and the objection to the extent that the requests sought (irrelevant) information beyond the scope of the Federal Rules, which objections were incorporated into *each and every discovery response*, including the few cited by LG.  *See* LG Letter, Exhibit B, Plaintiffs' Discovery Response at pp. 2-5 (General Objections 1-4, 9, 10, 12, 13).

### LG's POSITION HAS NO LEGAL BASIS

LG's legal argument fares no better than the incorrect premise on which it is based.  LG asserts that the retention agreements may be relevant for two reasons: (1) they govern attorneys' fees and expenses and (2) they purportedly bear on the class certification issue of the adequacy of Plaintiffs and their counsel.  Neither argument is correct.  Importantly, LG completely ignores that several leading cases and treatises recognize the majority rule that pre-certification discovery of retainer agreements is rarely appropriate.  *See generally Mitchell-Tracey v. United General*

*Title Ins. Co.*, No. CIV. AMD-05-1428, 2006 WL 149105, at *3 (D. Md. Jan. 09, 2006).[1]

As to the argument that the agreements may be relevant because they govern attorneys' fees, LG does not, because it cannot, even attempt to distinguish the numerous cases cited by Plaintiffs, including the recent opinion of Judge Shwartz, that hold that a request for attorneys' fees in a pleading does *not* make the agreements relevant, as the reasonableness of any fees is determined by the Court,[2] by the usual methods after a judgment.  *See Chandran v. BMW of North America, LLC*, (2:08-cv-02619-KSH-PS (D.N.J.); *Stahler v. Jamesway Corporation*, 85 F.R.D. 85-86 (E.D.Pa. 1979) (court held that the fee agreement was not discoverable and that the "manner in which plaintiff intends to compute the attorney's fees due to her" was not relevant to the issue of adequacy, and was therefore not discoverable.)[3]  The single case cited by LG, *Porter v. Nationscredit Consumer Discount Co.*, No. 03-3768, 2004 WL 1753255, at *2 (E.D.Pa., July 8, 2004), does not establish the relevance of the agreements.  Instead, *Porter* simply holds, based on dicta in the footnote of a Supreme Court opinion and without any analysis, that fee

---

[1] While LG principally distinguishes these cases on the basis that they are from other jurisdictions, LG itself relies on cases, *inter alia*, from Alabama, Georgia and California.  *See* LG Letter, pp. 4-5.

[2] LG's proclamation that, "if Plaintiff wants LG USA to pay their fees and expenses, they must show LG USA the agreements they have made about those fees and expenses," LG Letter at 4, is not supported by any authority at all and, instead, is indicative of the persistent fishing expedition in which LG is engaging.

[3] *See also Robinson v. Duncan*, 255 F.R.D. 300, 303 (D.D.C. 2009) (rejecting defendant's argument that claim for attorney's fees makes plaintiff's fee arrangement with counsel relevant at class stage); *Piazza v. First American Title Ins. Co.*, No. 3:06-cv-765 (AWR), 2007 WL 4287469, at *2 (D. Conn. Dec. 5, 2007) (same); *Sandler v. McGraw-Edison Co.*, 92 F.R.D. 463, 464 (S.D. Ohio 1981) (rejecting notion that request for attorneys' fees if litigation is successful requires production of retainer agreements in a multi-plaintiff, non-class case).

agreements "may be relevant" to the question of attorneys' fees and determined that they were relevant under the specific circumstances of that case, where unlike here, plaintiff had not even provided specific or direct objections to the discovery.

LG's next argument, that the fee agreements are relevant to the issue of the adequacy of 1) class counsel and 2) class representatives, fares no better. LG recognizes, as it must, that arguments as to the adequacy of counsel, inter-class conflict, or bias, *cannot* be based on hypothetical scenarios, rank speculation, innuendo and conjecture. *See Mitchell-Tracey*, 2006 WL 149105, at *2; *Stanich v. Travelers Indemnity Company*, 259 F.R.D. 294 (N.D.Ohio 2009). Nevertheless, LG then proceeds to base its entire argument on precisely such conjecture. To that end, LG points to three instances in which it mischaracterizes the record evidence and misleadingly asserts that a few of the myriad Plaintiffs had limited knowledge of the identity of lead counsel or other attorneys in this matter.[4] LG then unconvincingly concludes that this limited knowledge of the names of all of the counsel means that the agreements somehow "may

---

[4] LG's selective, out-of-context, quotes from three depositions are inaccurate, and in any event, do not demonstrate the relevance of the retention agreements. Ms. Boone clearly testified that she was represented by Shepherd, Finkelman, Miller & Shah, but could not recall the name of local counsel. As is clear from the deposition cited by LG, as well as the initial Complaint filed on her behalf by SFMS, through and with her local counsel (a copy of which is attached hereto as Exhibit A), Ms. Boone is not at all unclear about who represents her. LG next asserts that Mr. Harper cannot recall the names of the counsel that filed the *first* suit against LG, but both Mr. and Mrs. Harper, who is handling most of the daily activities in connection with the lawsuit, know and have worked with at least two of the lead counsel firms. *See* Deposition of Jason Harper at 88-89 (attached hereto as Exhibit B); Deposition of Gina Harper at 154-55 (attached hereto as Exhibit C). Finally, despite LG's assertions to the contrary, Ms. Cook-Sommer is well aware of who represents her, and relied on her son, Mark, who is also a Plaintiff, in his choice of law firm after experiencing the same mold problems. *See* Deposition of Paul Cook-Sommer at 144-145, 159 (attached hereto as Exhibit D). In sum, in trying to support its argument, which it cannot do, LG has been forced to present a tortured and inaccurate picture of the deposition testimony of several of the multitude of plaintiffs.

shed light on" counsel's adequacy. This argument has been considered and rejected, however, as courts have found that, although such "evidence" may be relevant to the issue of adequacy, "it does not make the fee ... agreement any more relevant." *Piazza v. First American Title Ins. Co.,* 2007 WL 4287469, at *1; *Mitchell-Tracey*, 2006 WL 149105, at *2 (defendants have not demonstrated that their speculative concerns were sufficient to disqualify plaintiffs or counsel). Tellingly, LG does not cite a single authority to the contrary. Moreover, in the course of the parties' meet and confer proceedings, LG requested a log of all of the retention agreements, which Plaintiffs agreed to provide. Thus, LG will shortly have a list of the dates of the agreements, senders and recipients.

LG's final hypothetical argument is that the agreements bear on Plaintiffs' adequacy because "if, for example, the retainer agreements create incentives for the Plaintiffs tied to the outcome of the case, that creates conflicts..." LG Letter at 5. As set forth above, each of the Plaintiffs have already directly responded to a request for information about the receipt of any incentives based on the case's outcome with a resounding "NO." Thus, LG's position is untenable and the request for retainer agreements should be denied. [5]

## CONCLUSION

For the foregoing reasons and all of the reasons in Plaintiffs' initial submission, it is clear that retainer agreements between Plaintiffs and their counsel are not relevant to class certification and LG's request should be denied.

---

[5]Because the agreements are not relevant, the Court need not reach the issue of privilege. *Mitchell-Tracey*, 2006 WL 149105, at *3, n. 3.

Dated: January 15, 2010                    s/ Natalie Finkelman Bennett
                                          James C. Shah
                                          Natalie Finkelman Bennett
                                          SHEPHERD, FINKELMAN, MILLER
                                          & SHAH, LLP
                                          475 White Horse Pike
                                          Collingswood, NJ 08107
                                          Telephone: 856/858-1770
                                          Facsimile: 856/858-7012
                                          jshah@sfmslaw.com
                                          nfinkelman@sfmslaw.com

                                          Steven A. Schwartz
                                          Alison R. Gabe
                                          CHIMICLES & TIKELLIS, LLP
                                          One Haverford Centre
                                          361 West Lancaster Avenue
                                          Haverford, PA 19041
                                          Telephone: (610) 642-8500
                                          Facsimile: (610) 649-3633
                                          stevenschwart@chimicles.com
                                          arg@chimicles.com

                                          Oren Giskan
                                          Darnley D. Stewart
                                          GISKAN SOLOTAROFF
                                          ANDERSON & STEWART LLP
                                          11 Broadway- Suite 2150
                                          New York, NY 10004
                                          Telephone: (212) 847-8315
                                          ogiskan@gslawny.com
                                          dstewart@gslawny.com

                                          George K. Lang
                                          FREED & WEISS, LLC
                                          111 West Washington Street, Suite 1331
                                          Chicago, IL 60602
                                          Telephone: (312) 220-0000
                                          george@freedweiss.com