UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

x

IN RE LG FRONT LOAD WASHING
MACHINE CLASS ACTION LITIGATION

Honorable Faith S. Hochberg, U.S.D.J.

Case No. 2:08-cv-00051-FSH-MAS

Electronically Filed

Return date:  June 6, 2011

x

## DEFENDANT LG USA's OPPOSITION
## TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

OF COUNSEL:

Lawrence R. Desideri
Scott P. Glauberman
Andrew M. Johnstone
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

James S. Richter
Melissa Steedle Bogad
Winston & Strawn LLP
The Legal Center
One Riverfront Plaza, Suite 730
Newark, NJ 07102
(973) 848-7676

Attorneys for Defendant
LG Electronics USA, Inc.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................3

    A.    Front-loading washing machines conserve energy and water .........................3

    B.    LG FLWs are a runaway success. ......................................................3

    C.    Plaintiffs contend that every single FLW ever sold is defective and
unusable ....................................................................................4

        1.    Plaintiffs' allegations vs. actual experiences .................................4

        2.    Plaintiffs' experts ................................................................4

            a.    Gary Wilson ....................................................5

            b.    Chin Yang ......................................................7

        3.    The subjective nature of a claim of bad odor .................................8

    D.    Almost all consumers are happy with their LG FLWs .................................8

        1.    Declarations from happy customers .............................................9

        2.    Extremely low complaint rate ...................................................9

        3.    Consumer survey shows extraordinarily high satisfaction .........................9

    E.    Investigation into Plaintiffs' allegations .............................................10

    F.    Plaintiffs' legal theories and requests for class certification .........................12

STANDARD OF REVIEW ....................................................................................12

    A.    Plaintiffs must prove that each Rule 23 requirement is met, and this Court
must apply a rigorous analysis and resolve all disputes .............................13

    B.    Many of the decisions cited by Plaintiffs do not comply with *HP*. .................13

ARGUMENT ....................................................................................................14

I.    Every class proposed by Plaintiffs violates Rule 23. .........................................14

    A.    The fact that most class members lack injury prevents certification. .................14

    B.    Individual factual issues predominate. ...............................................17

1. Causation is a dominant individual issue for every cause of action .......................................................................................17

    a. Whether there is a defect requires individual proof. ...........................17

    b. Whether a defect caused injury requires individual proof. ...............20

2. Individual factual issues dominate every consumer fraud claim. ..................20

3. Individual factual issues dominate every express warranty claim. ...............22

4. Individual factual issues dominate every implied warranty claim. ................24

5. Individual factual issues dominate every Magnuson-Moss claim..................24

6. Individual factual issues dominate every unjust enrichment claim................25

7. Damages is a dominant individual issue for every cause of action...............25

8. Statutes of limitations create dominant individual issues for every cause of action. ...............................................................................26

C. A class action is not a superior method to adjudicate this controversy.....................27

D. Plaintiffs are not adequate representatives of any class. ...........................................28

E. Plaintiffs are not typical of the class members...........................................................29

F. Class membership is not readily ascertainable............................................................30

II. The nationwide class violates Rule 23. ................................................................................31

A. Each class member's home state's laws governs each of his or her claims. ...............31

1. The New Jersey Product Liability Act .............................................................32

2. Consumer fraud claims.....................................................................................33

    a. The states' consumer fraud laws conflict. ............................................33

    b. Home state law governs each consumer fraud claim. ..........................33

3. Breach of warranty claims................................................................................34

    a. The states' warranty laws conflict........................................................34

    b. Home state law governs each warranty claim. .....................................36

4. Unjust enrichment claims .................................................................................36

|  |  |  | a. | The states' unjust enrichment laws conflict. | 36 |
|  |  |  | b. | Home state law governs each unjust enrichment claim. | 37 |
|  |  | 5. |  | New Jersey law does not apply simply because LG USA's headquarters is in New Jersey. | 38 |
|  | B. |  |  | A nationwide class applying the laws of 50 states would not be manageable. | 39 |
| III. |  |  |  | Any nationwide or state class under New Jersey law violates Rule 23. | 39 |
|  | A. |  |  | No class member has any valid claim under New Jersey law. | 39 |
|  | B. |  |  | Individual factual issues predominate. | 41 |
|  |  | 1. |  | New Jersey Product Liability Act | 41 |
|  |  | 2. |  | New Jersey Consumer Fraud Act claims | 43 |
|  |  | 3. |  | New Jersey warranty claims | 43 |
|  | C. |  |  | Individual factual issues dominate LG USA's defenses. | 44 |
|  | E. |  |  | A class action under New Jersey law would be unmanageable. | 45 |
| IV. |  |  |  | The other proposed state classes violate Rule 23. | 45 |

CONCLUSION

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Agostino v. Quest,*
  256 F.R.D. 437 (D.N.J. 2009) ........................................................................passim

*Amchem v. Windsor,*
  521 U.S. 591 (1997) ........................................................................ 17

*Arabian v. Sony,*
  2007 WL 627977 (S.D. Cal.) ........................................................ 16, 29

*Barbarin v. GM,*
  1993 WL 765821 (D.D.C.)............................................................ 15

*Barnes v. Am. Tobacco,*
  161 F.3d 127 (3d Cir. 1998)........................................................ 26, 44, 45

*Blystra v. Fiber Tech Group, Inc.,*
  407 F. Supp. 2d 636 (D.N.J. 2005) .............................................. 40

*BMW v. Gore,*
  517 U.S. 559 (1996) ...................................................................... 33

*Briehl v. GM,*
  172 F.3d 623 (8th Cir. 1999)........................................................ 15

*Brown v. Philip Morris,*
  228 F. Supp. 2d 506 (D.N.J. 2002) .............................................. 32

*Carey v. Select Comfort,*
  2006 WL 871619 (Minn. Dist. Ct.)............................................... 26

*Carpenter v. BMW of N. Am.,*
  1999 WL 415390 (E.D. Pa.)......................................................... 31

*Cartiglia v. J&J,*
  2002 WL 32155348 (N.J. Super.) ................................................ 41, 43

*Cavanaugh v. Skil,*
  751 A.2d 518 (N.J. 2000).............................................................. 42

*ChampionsWorld v. U.S. Soccer,*
  726 F. Supp. 2d 961 (N.D. Ill. 2010) ........................................... 15

*Chiang v. Veneman,*
  385 F.3d 256 (3d Cir. 2004) .................................................................................... 14

*Christie v. Basic Research,*
  2011 WL 1322986 (N.J. Super.) ............................................................................ 40

*Clark v. Prudential Ins.,*
  2009 WL 2959801 (D.N.J.) .................................................................................... 36

*Clay v. Am. Tobacco,*
  188 F.R.D. 483 (S.D. Ill. 1999) ................................................... 25, 30, 38, 39

*Cleary v. Philip Morris USA,*
  265 F.R.D. 289 (N.D. Ill. 2010) ...................................................................... 25, 29

*Colon v. Passaic County,*
  2009 WL 1560156 (D.N.J.) .................................................................................... 25

*Contino v. BMW,*
  2008 WL 2940515 (D.N.J.) .................................................................................... 40

*Cooper v. Samsung,*
  2010 WL 1220946 (3d Cir.) ......................................................................... 34, 38, 40

*Cosentino v. Philip Morris,*
  1998 WL 34168879 (N.J. Super.) ..................................................................... 41, 42

*Cox v. Sears,*
  647 A.2d. 454 (N.J. 1994) ...................................................................................... 17

*Cunningham Charter v. Learjet,*
  258 F.R.D. 320 (S.D. Ill. 2009) ............................................................................ 15

*Dal Ponte v. Am. Mtg. Express,*
  2006 WL 2403982 (D.N.J.) ............................................................................... 14, 39

*Demmick v. Cellco Partnership,*
  2010 WL 3636216 (D.N.J.) .............................................................................. 31, 34

*Dickerson v. Electrolux*
  (C.D. Cal. 2011) ............................................................................................... 14, 39

*Duquesne Light. v. Westinghouse Elec.,*
  66 F.3d 604 (3d Cir. 1995) .................................................................................... 22

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ............................................................................................... 13

*Elias v. Ungar's Food Prods,*
  252 F.R.D. 233 (D.N.J. 2008) ................................................................................ 35

*Feinstein v. Firestone,*
    535 F. Supp. 595 (S.D.N.Y. 1982) ...................................................................................... 16

*Fink v. Ricoh,*
    839 A. 2d 942 (N.J. Super. 2003) .................................................................................. 34, 43

*Gennari v. Weichert,*
    691 A.2d 350 (N.J. 1997) ............................................................................................ 16, 44

*Georgine v. Amchem Prods.,*
    83 F.3d 610 (3d Cir. 1996) ........................................................................................... 29, 31

*Grimes v. Invention Submission,*
    2005 WL 6042731 (W.D. Okla.) ......................................................................................... 10

*Harris v. Heubel Mat. Handling,*
    2010 WL 3270094 (D. Kan.) ............................................................................................... 10

*Hohider v. UPS,*
    574 F.3d 169 (3d Cir. 2009) ................................................................................................ 15

*Hovsepian v. Apple,*
    2009 WL 5069144 (N.D. Cal.) ............................................................................................ 15

*Hulmes v. Honda Motor Co., Ltd.,*
    960 F. Supp. 844 (D.N.J. 1997) .......................................................................................... 44

*In re Am. Med. Sys.,*
    75 F.3d 1069 (6th Cir. 1996) .......................................................................................... 18, 42

*In re Aqua Dots,*
    270 F.R.D. 377 (N.D. Ill. 2010) .......................................................................................... 36

*In re Bridgestone,*
    288 F.3d 1012 (7th Cir. 2002) .................................................................................. 15, 31, 33

*In re Canon,*
    237 F.R.D. 357 (S.D.N.Y. 2006) ........................................................................................ 16

*In re ConAgra Peanut Butter,*
    251 F.R.D. 689 (N.D. Ga. 2008) .................................................................................... 38, 39

*In re Digitek,*
    2010 WL 2102330 (S.D. W. Va.) ........................................................................................ 38

*In re FleetBoston,*
    253 F.R.D. 315 (D.N.J. 2008) ............................................................................................. 28

*In re Ford,*
    174 F.R.D. 332 (D.N.J. 1997) ........................................................................................ 31, 44

*In re Ford,*
    194 F.R.D. 484 (D.N.J. 2000) ................................................................. 20

*In re Ford Paint,*
    182 F.R.D. 214 (E.D. La. 1998) ........................................................ 21, 42

*In re Ford Van,*
    2011 WL 601279 (D.N.J.) ...................................................................... 36

*In re GM Anti-Lock Brake,*
    966 F. Supp. 1525 (E.D. Mo. 1997) ...................................................... 15

*In re Human Tissue,*
    2010 WL 743922 (D.N.J.) ...................................................................... 30

*In re Hydrogen Peroxide*
    552 F.3d 305 (3d Cir. 2008) ........................................................... passim

*In re Lead Paint Litig.,*
    924 A.2d 484 (2007) ............................................................................... 32

*In re Mercedes-Benz,*
    257 F.R.D. 46 (D.N.J. 2009) ........................................................ 21, 37, 38

*In re Merritt v. Logan,*
    901 F.2d 349 (3d Cir. 1990) ................................................................... 44

*In re Microsoft Xbox 360,*
    2009 U.S. Dist. LEXIS 109075 (W.D. Wash.) ...................................... 16

*In re Neurontin,*
    2011 WL 286118 .................................................................................... 25

*In re Rezulin,*
    210 F.R.D. 61 (S.D.N.Y. 2002) ........................................... 41, 42, 43, 45

*In re Sch. Asbestos Litig.,*
    789 F.2d 996 (3d Cir. 1986) ................................................................... 31

*In re Schering Plough,*
    589 F.3d 585 (3d Cir. 2009) ....................................................... 14, 29, 30

*In re Sears,*
    2007 WL 4287511 (N.D. Ill.) ........................................................... 25, 38

*In re Toyota Motor,*
    2010 WL 4867562 (C.D. Cal.) ............................................................... 40

*In re Vioxx,*
    239 F.R.D. 450 (E.D. La 2006) ............................................................. 39

*In re Whirlpool,*
    2010 WL 2756947 (N.D. Ohio) ............................................................................. 13, 14

*Johansen v. Makita USA,*
    607 A.2d 637 (N.J. 1992) ........................................................................................ 42

*Johnson v. Geico Cas.,*
    673 F. Supp. 2d 255 (D. Del. 2009) ....................................................................... 29

*Jones v. AllerCare,*
    203 F.R.D. 290 (N.D. Ohio 2001) .......................................................................... 30

*Jurado v. Western Gear Works,*
    619 A.2d 1312 (1993) ............................................................................................. 42

*Kalow & Springut v. Commence,*
    2011 WL 773229 (D.N.J.) ...................................................................................... 33

*Kerchner v. Obama,*
    612 F.3d 204 (3d Cir. 2010) ................................................................................... 15

*Kia Motors v. Butler,*
    985 So.2d 1133 (Fla. Ct. App. 2008) ..................................................................... 16

*Kohen v. Pacific Inv.,*
    571 F.3d 672 (7th Cir. 2009) .................................................................................. 17

*LaBelle v. B&W,*
    1999 WL 33591435 (D.S.C.) ................................................................................. 24

*Laney v. Am. Std.,*
    2010 WL 3810637 (D.N.J.) ............................................................................. passim

*Mack Trucks v. BorgWarner Turbo,*
    2011 WL 1045108 .................................................................................................. 40

*Mann v. TD Bank,*
    2010 WL 4226526 (D.N.J.) ........................................................................ 16, 25, 43

*McDarby v. Merck,*
    949 A.2d 223 (App. Div. 2008) .............................................................................. 32

*McWilliams v. Yamaha Motor Corp. USA,*
    780 F. Supp. 251 (D.N.J. 1991), 987 F.2d 200 (3d Cir. 1993) .............................. 32

*Nafar v. Hollywood Tanning,*
    2009 WL 2386666 (3d Cir.) ................................................................................... 33

*Newton v. Merrill Lynch,*
    259 F.3d 154 (3d Cir. 2001) ............................................................................. 27, 28

*Nikolin v. Samsung*,
    2010 WL 4116997 (D.N.J.) .................................................................................... 34, 38

*Oshana v. Coca-Cola*,
    472 F.3d 506 (7th Cir. 2006) ........................................................................... 16, 29, 30

*Owner-Operator v. Swift Trans.*,
    2006 WL 2521183 (D. Ariz.) .................................................................................... 15

*P.V. v. Camp Jaycee*,
    962 A.2d 453 (2008) .......................................................................................... 31, 35

*Palmeri v. LG USA*,
    2009 WL 1916324 (D.N.J.) .......................................................................................... 32

*Payne v. Fujifilm*,
    2010 WL 2342388 (D.N.J. 2010) ......................................................................... passim

*Phillips v. Raymond*,
    364 F. Supp. 2d 730 (N.D. Ill. 2005) ....................................................................... 10

*POM Wonderful v. Organic Juice USA*,
    2011 WL 70562 (S.D.N.Y.) ......................................................................................... 10

*Powers v. Lycoming Engines*,
    2009 WL 826842 (3d Cir.) ..................................................................................... 31, 37

*Pratt v. Panasonic*,
    2006 WL 1933660 (N.J. Super.) .............................................................................. 16

*Repola v. Morbark*,
    934 F.2d 483 (3d Cir. 1991) ....................................................................................... 32

*Samuels v. Old Kent Bank*,
    1997 WL 458434 (N.D. Ill.) ..................................................................................... 38

*Sanneman v. Chrysler Corp.*,
    191 F.R.D. 441 (E.D. Pa. 2000) ............................................................................... 28

*Scottsdale v. Weiner*,
    2010 WL 445649 (D.N.J.) ......................................................................................... 44

*Semowich v. R.J. Reynolds*,
    1988 WL 123930 (N.D.N.Y.) ................................................................................... 24

*Sinclair v. Merck*,
    948 A.2d 587 (2008) ........................................................................................... 32, 40

*Skalski v. Elliot Equip.*,
    2010 WL 891582 (D.N.J.) ......................................................................................... 40

*Stearns v. Select Comfort,*
  2010 WL 2898284 (N.D. Cal.) ................................................................. 25

*Strzakowlski v. GM,*
  2005 WL 2001912 (D.N.J.) ..................................................................... 44

*Terrill v. Electrolux,*
  753 F. Supp. 2d 1272 (S.D. Ga. 2010) ..................................................... 14

*Thiedemann v. Mercedes-Benz USA,*
  872 A.2d 783 (N.J. 2005) ........................................................................ 43

*Tietsworth v. Sears,*
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................... 24

*Varacallo v. Mass. Mut. Life Ins.,*
  752 A.2d 807 (N.J. App. 2000) ................................................................ 20

*Voelker v. Porsche Cars,*
  353 F.3d 516 (7th Cir. 2003) .................................................................... 40

*Vulcan Golf v. Google,*
  254 F.R.D. 521 (N.D. Ill. 2008) ............................................................... 37

*Wade v. Armstrong,*
  746 F. Supp. 493 (D.N.J. 1990) ............................................................... 44

*Walsh v. Ford,*
  807 F.2d 1000 (D.C. Cir. 1986) ................................................... 24, 25, 35

*Walus v. Pfizer, Inc.,*
  812 F. Supp. 41 (D.N.J. 1993) .................................................... 15, 40, 41

*Warma Witter Kreisler v. Samsung,*
  2010 WL 1424014 (D.N.J.) ...................................................................... 34

*Weaver v. Chrysler,*
  172 F.R.D. 96 (S.D.N.Y. 1997) ................................................................ 15

*Yocham v. Novartis Pharms. Corp.,*
  2010 WL 3502670, at *4-6 (D.N.J. Aug. 31, 2010) ................................. 32

**STATUTES**

15 U.S.C. § 2301 ........................................................................................ 12

15 U.S.C. § 2302(a)(2) ............................................................................... 23

15 U.S.C. § 2308(2) .................................................................................... 22

15 U.S.C. § 2310(d)(1) ................................................................................................ 15

15 U.S.C. § 2310(e) ...................................................................................................... 25

28 U.S.C. § 2072(b) ..................................................................................................... 15

N.J.S.A. § 2-714(1) ...................................................................................................... 44

N.J.S.A. § 2A:15-5.1 .................................................................................................... 44

N.J.S.A. § 2A:58C-1 .................................................................................................... 32

N.J.S.A. § 2A:58C-1(b)(2) ........................................................................................... 40

N.J.S.A. § 2A:58C-2 .................................................................................................... 42

N.J.S.A. § 12A:2-316 ................................................................................................... 40

N.J.S.A. § 12A:2-607(3)(a) .......................................................................................... 44

## OTHER AUTHORITIES

16 C.F.R. § 701.3(a)(1) ................................................................................................ 23

F.R.C.P. 23 ........................................................................................................... 1, 13, 27

F.R.E. 702 ....................................................................................................................... 4

Restatement (Second) of Conflicts of Laws § 148 ................................................. 33, 36

Restatement (Second) of Conflicts of Laws § 148(1) ............................................. 33, 38

Restatement (Second) of Conflicts of Laws § 148(2) ............................................. 34, 38

Restatement (Second) of Conflicts of Laws § 188 ...................................................... 36

Restatement (Second) of Conflicts of Laws § 221 ...................................................... 37

## INTRODUCTION

Plaintiffs' motion for class certification cannot survive the rigorous analysis that this Court must apply to it. The motion not only fails to establish that Rule 23's requirements are met, it fails even to mention most of the issues pertinent to class certification.

Each proposed class includes everyone in the nation or certain states who purchased an LG-brand front-loading washing machine ("LG FLW"). These classes are comprised *almost entirely* of millions of people who have *never* had a problem with their LG FLWs. Attached to this Opposition are Declarations from 51 LG FLW owners who never experienced the mold or odor that Plaintiffs contend afflicts every LG FLW. LG USA's customer complaint data show there has never been a mold or odor complaint for ███ of LG FLWs — despite Plaintiffs' claim that all suffer from a problem so awful that they do not function as washing machines. An expert survey of LG FLW owners returned ███████████: *99%* are satisfied. Plaintiffs did not cite, and LG USA cannot find, any Rule 23 decision certifying a class comprised almost entirely of happy customers.

As in many cases, an insurmountable obstacle to certification here is the predominance of individual over common issues. There are at least *25* factual issues that must be proved by class members individually, for example whether each: (1) owns an LG FLW that is defective, given that the design has changed over time; (2) has suffered any injury; (3) has claims barred by statutes of limitations; (4) gave reasonably timely notice of the problem; and (5) is barred from recovery because of negligence in installing, using, and/or maintaining the LG FLW. A class cannot be certified when so many important factual issues must be proven separately by each class member.

For any class, Plaintiffs must show that evidence common to the class establishes that all LG FLWs are defective. The "evidence" they present comes largely from two expert witnesses. The first, an engineer, concluded that every LG FLW is defective after spending *three hours* inspecting only *three* LG FLWs hand-picked for him by Plaintiffs' counsel. He never inspected a single happy

1

owner's LG FLW. He never conducted any testing, asserting that the scientific method for some reason does not apply to his work in this case. If anything, the second expert, a microbiologist, did even less work. He spent *10-15 minutes* in a store looking at an LG FLW, the only time he has ever seen one. He conducted no tests, despite having previously been disqualified for failing to test.

LG USA's engineering expert, on the other hand, Dr. Edward Caulfield, spent six months testing eight LG FLWs with real laundry to simulate a full year of use under varying conditions. Caulfield found that when maintained and used as the owner's manual (and detergent bottle) instructs, LG FLWs have no problems; hence they are not defective in design. But when habitually misused and not maintained, they can develop an odor. (Caulfield and his team also inspected *every* Plaintiff's LG FLW, finding tell-tale signs of improper installation, misuse, and/or skipped maintenance for all.) Caulfield then conducted a two-month round of testing on the worst four of his improperly used machines, to determine whether an owner who develops a problem could fix it. This testing showed that the machines' Tub Clean cycle with bleach cures the problem.

The Third Circuit's *Hydrogen Peroxide* decision explains that when faced with conflicting expert testimony, it is this Court's responsibility to assess which testimony is persuasive. LG USA respectfully suggests that opinions based on eight months of extensive tests, plus inspections of every Plaintiff's LG FLW, is more persuasive than opinions based on three hours of looking.

The proposed nationwide class suffers from the additional insurmountable problem that the laws of all 50 states governs it, making a class impossible to manage and a jury impossible to instruct. A proper choice of law analysis, which Plaintiffs did not perform, reveals numerous conflicts in the states' laws on every cause of action, as a result of which each class member's home state's laws governs his or her claims. No federal court has ever tried a case under 50 states' laws, and Plaintiffs suggest no reason for this Court to be the first. This Court should deny Plaintiffs' motion.

2

## BACKGROUND

### A.    Front-loading washing machines conserve energy and water.

Front-loading washing machines ("FLWs") work differently than traditional top-loading washing machines ("top loaders").  (Ex. 5 at 8-9.)[1]  A top loader has a door on top, leading to a vertical drum.  The laundry floats in a large amount of detergent and water, and the machine beats the laundry with paddles attached to a central agitator.  An FLW has a door on the front, leading to a horizontal drum.  A small amount of water and detergent sits in the bottom of the horizontal drum, and, as the drum rotates, paddles on its sides lift laundry and drop it gently into the water.

LG FLWs are efficient.  Less water conserves water and means less energy is needed to heat the water and to move laundry inside the machine.  Every LG FLW has the U.S. government's Energy Star designation, showing it uses at least 50% less water and 30% less energy per load.

This lower water volume requires High Efficiency ("HE") detergent to avoid oversudsing.  (Id. 10-12.)  Excessive detergent or suds may cling to the machine's interior parts and trap debris.  Given that HE detergents are made in different concentrations and are used with laundry loads of varying sizes and soil levels, detergent bottles instruct on the proper amount to use.

FLWs also require user maintenance that differs from top loaders.  (Id. 11-12.)  The owner's manuals instruct each owner to (1) dry the door opening, the gasket that seals the door, and the door glass, (2) clean the detergent dispenser, (3) clean the drain pump filter, and (4) run a hot water cycle or Tub Clean cycle to clean the inside of the machine.

### B.    LG FLWs are a runaway success.

LG USA began selling LG FLWs in January 2002.  All sales are to retailers; LG USA does not sell directly to consumers.  By the time of the Consolidated Complaint (May 2008), LG USA

---

[1]  Citations to Ex. __ are to the exhibits attached to the Declaration of James Richter, filed herewith.  Citations to Br. __ are to Plaintiffs' Brief in support of their motion for class certification.

sold over ▮▮▮▮▮ LG FLWs.  Through April 2011, LG USA sold ▮▮▮▮▮.  (Ex. 10 ¶ 6-7.)

### C.   Plaintiffs contend that every single FLW ever sold is defective and unusable.

This case is one front in a war being waged by plaintiff class action attorneys against the

entire FLW industry.  Cases essentially identical to this one have been filed against Whirlpool,

Sears / Kenmore, Electrolux, Bosch, Miele, and Maytag / Samsung.  (Br. 16 n.8.)  Plaintiffs and

their attorneys seek to declare defective the entire FLW product category.

### 1.   Plaintiffs' allegations vs. actual experiences

Plaintiffs allege that every LG FLW is "unusable" because it was designed to accumulate

mold or mildew,[2] and as a result smells badly.  (Ex. 43 ¶ 2.)  The "foul odors … permeate[]

consumers' homes."  (*Id.* ¶ 111.)  All LG FLWs are "unfit for the ordinary purpose of cleaning

clothing."  (*Id.* ¶¶ 111-12.)  Plaintiffs' Brief begins by repeating their claim that "[e]very" LG FLW

has a "material defect" that "leads to foul odors."

But Plaintiffs' actual experiences do not match their allegations.  Not all Plaintiffs

experience bad odor in their LG FLWs: Burke never experienced it, and Cook and Cook-Sommer

no longer do.  (Ex. 19 at 78; Ex. 20 at 91; Ex. 21 at 111.)  And of the 23 Plaintiffs, only one

(Tretheway[3]) stopped using her LG FLW; the other 22 continue to use them, despite alleging years

ago that LG FLWs are "unusable" and do not clean clothes.  One Plaintiff (Demski) even moved his

LG FLW from Wisconsin to Florida *after* he says he noticed an odor in it.  (Ex. 22 at 25.)

### 2.   Plaintiffs' experts

As explained in LG USA's *Daubert* motion, neither of Plaintiffs' experts satisfies Rule 702.

In any event, even if admissible, "opinion testimony should not be uncritically accepted."  *In re

Hydrogen Peroxide* ["*HP*"], 552 F.3d 305, 323 (3d Cir. 2008).  "Expert opinion … calls for

---

[2]  Plaintiffs do *not* allege any personal injury, or that any mold or mildew was harmful to health.

[3]  Tretheway now uses a Whirlpool FLW (Ex. 37 at 29) — which, ironically, is another FLW that
Plaintiffs, their experts, and their counsel contend is defective and smells badly.

rigorous analysis." *Id.* "[E]xpert opinion may persuade its audience, or it may not." *Id.*

### a.   Gary Wilson

Plaintiffs' first expert, Dr. Gary Wilson is a college lecturer and former employee of LG

USA's competitor Whirlpool. He did almost no work, and yet, opines all LG FLWs are defective in

design because they fail to rinse the machine's interior, especially the tub that holds the washing

drum. (Ex. 52 at 4, 9-10.) Detergent and laundry byproducts build up, and things grow on it. (*Id.*)

He maintains that LG FLWs smell badly even when consumers use the proper type and amount of

detergent, and even when they follow the manual's instructions. (Ex. 53 at 9.) Wilson opines that

all LG FLWs will smell badly within "a matter of months and often only within a few weeks." (*Id.*

9; Ex. 14 at 156-57.)

Wilson did almost no work before reaching his opinions. This case was his first exposure to

LG FLWs. (*Id.* 83.) His engineering work consisted solely of disassembling and inspecting *four*

LG FLWs (*Id.* 107) that were hand-picked for him by Plaintiffs' counsel from owners (one of them

a Plaintiff) already known to be unhappy with their LG FLWs. (*Id.* 195.)

Wilson's inspection of the first three of those LG FLWs took three hours. (*Id.* 85-86; Ex.

15.) After just *three hours* of work, he decided all of the millions of LG FLWs are defective:

> Q. [W]ould it have been enough to disassemble and inspect one LG brand front load
> washing machine in order to conclude that they had all been defectively designed?
>
> A. You know, I could have drawn I think a conclusion at that time, but I wouldn't have
> been as comfortable. After – after tearing down three of them, I was ready to write an
> opinion.
>
> Q. After three, you had full comfort?
>
> A. Right.   (*Id.* 181-82)

Wilson also reviewed photographs of ten other LG FLWs (nine owned by Plaintiffs, one owned by

another unhappy owner) selected for him by Plaintiffs' counsel. (*Id.* 225, 231-32.) Wilson has

*never* seen nine of the 19 LG FLWs owned by Plaintiffs. (*Id.* 223.)

5

Wilson agrees that the amount of buildup in any FLW is influenced by how its owner uses it: the quantity of detergent, the soil in the laundry, whether bleach and/or hot water is used, and whether the door is left open between cycles. (*Id.* 56-62.) But Wilson has no idea how any of the four LG FLWs he disassembled, or the ten he saw in photographs, were installed, used, or maintained. (*Id.* 211-13.) He has ***never*** inspected any LG FLW that does ***not*** have buildup, or a single LG FLW from any owner who was happy with it. (*Id.* 215.)

Wilson did no testing. He has ***never*** tested an LG FLW to determine the effect of (1) improper installation; using (2) non-HE detergent or too much detergent, (3) hot water, (4) bleach, (5) the Tub Clean cycle, or (6) a commercial cleaning product; (7) leaving the door open between wash cycles; or (8) not performing proper maintenance. (*Id.* 252-56.) He has ***never*** tested to determine if mold or odor can be cured after it appears. (*Id.* 251.) He has ***never*** even run a cycle on any LG FLW, except to make sure the four he disassembled were working. (*Id.* 248-249.) He defends these failures on the ground that the scientific method is not "necessary" in this case:

Q. Does the scientific method require hypotheses to be tested by experimentation?

A. Generally. Generally.

Q. Have you consistently applied the scientific method in your ... career as an engineer?

A. When I felt it was -- you know, it was necessary. There are cases where – such as this, where you have a design defect that is in every machine and you know the results of that design defect, so -- and then you've got a population in the field that is experiencing the problem. (*Id.* 247.)

Wilson believes that all washing machines — top loaders and FLWs alike — accumulate buildup. (Ex. 14 at 66.) In his view, "the goal of a proper design ... is to keep the amount of the buildup of detergent, soil, and other byproducts of the wash process from accumulating to the point that they create an odor that's unpleasant to the consumer." (*Id.* 67.)

Wilson believes that the LG FLW's design is just as good as that of every other FLW. (*Id.* 72.) He opines that every FLW sold by Whirlpool and Sears / Kenmore is defective, and he

believes that all Bosch, Samsung, GE, and Maytag FLWs are also defective. (*Id.* 68-71.) He has never seen an FLW, from any company, that in his view was properly designed. (*Id.* 73.)

### b. Chin Yang

Plaintiffs' second expert, Dr. Chin Yang is a microbiologist. He opines that all LG FLWs are defective in design because all develop mold, mildew, bacteria, or biofilm, producing a bad odor. (Ex. 16 at 129.) In his view this occurs no matter how they are used, because they do not dissipate moisture as well as top loaders. (*Id.* 164.) Yang disregards all of the various design changes to LG FLWs over the years because those changes "did not impress me as a microbiologist." (*Id.* 110.) Yang believes that *all* FLWs are inherently defective, including those sold by Whirlpool, Kenmore, and Bosch. (*Id.* 130-131.) Yang is not aware of any FLW that performs any better than the LG FLWs. (*Id.* 130.)

Remarkably, Yang did even *less* work than Wilson. He *never* inspected any LG FLW, and he *never* took from any LG FLW any sample from to be tested for mold, mildew, bacteria, or biofilm. (*Id.* 67, 80.) In his entire life, his experience with LG FLWs totals just *10 or 15 minutes* of looking at one in a store. (*Id.* 81.) Yang's work consisted of reviewing LG USA's expert reports and writing his own report. (*Id.* 49.) He also looked at photos of 14 LG FLWs (13 belonging to Plaintiffs). (*Id.* 66, 69.) He never saw any Plaintiff's LG FLW in person, and he never saw photos of six of them. (*Id.* 71.) Yang concedes he would have to see the inside of each LG FLW to determine if it has mold, mildew, bacteria, or biofilm. (*Id.* at 218-19.) He has not seen each Plaintiff's LG FLW, so there is *no* proof that every Plaintiff has mold, mildew, bacteria, or biofilm. (*Id.* 66, 69.) What's more, he admits that photographs may be ambiguous. (*Id.* 248.)

When asked about testing LG FLWs, Yang testified, "I'd love to." (*Id.* 170-71.) But when asked if it was correct that he never "personally inspected, disassembled or taken samples from any LG front-load washer," he responded, "That's correct, but I want to state this. I was never offered

7

[an] opportunity to either." (*Id.* 80-81.) Yang also ***never*** tested to support his basic premise that water evaporates more quickly from a top loader than from an LG FLW's open door. (*Id.* 131-32.)

### 3. The subjective nature of a claim of bad odor

The problem alleged by Plaintiffs — odor — is a subjective phenomenon that is experienced by different people in different ways. To explain this, LG USA retained Dr. Charles Wysocki, who has spent decades studying individual differences in olfaction (smell). He has a Ph.D. in Psychobiology, he is a member of the Monell Chemical Senses Center (a non-profit scientific institute that researches smell), and he teaches at the University of Pennsylvania. The National Institutes of Health have supported his research into individual differences in odor perception for over 25 years. (Ex. 7 at 3-6; Ex. 8.) Wysocki is the only olfaction expert in this case.

Wysocki explains that each person's olfactory abilities and experiences are different. (Ex. 7 at 12.) Whether a person perceives an odor, and whether the odor is perceived as intense, depends on a variety of factors. It simply is not possible to generalize about the olfactory experiences of all LG FLW owners. Plaintiffs in particular are a group of people who, based on their ages, genders, and other factors, are more likely than the population to be sensitive to odors.

In addition, for any given odor, some people perceive it as pleasant, others as neutral, and others as unpleasant. It is not possible to generalize about the odor preferences of all LG FLW owners. The only way to determine whether a particular LG FLW owner is personally experiencing an intense unpleasant odor from an LG FLW is to ask the owner. (*Id.* 28.)

### D. Almost all consumers are happy with their LG FLWs.

The idea that all LG FLWs are defective, smell badly, and are not useable as washing machines would come as a huge surprise to almost everyone who owns one.

8

### 1.  Declarations from happy customers

The record includes Declarations from 51 happy owners of LG FLWs. (Ex. 1.) LG USA submitted these Declarations as examples of experiences shared by millions of customers. In each one, the owner explains his or her use of the LG FLW and the fact that (s)he has never noticed any mold or bad smell in it. All Declarants would recommend the LG FLW to friends.

Some owners, such as Petrow of Massachusetts, reported they "love" their LG FLWs. Zilnicki of New York added, "I love it ... I recommended it to my mother." LG FLWs were described as "fantastic" (Knight of Florida), "wonderful" (West of California), and "excellent" (Ricci of Florida). Miller of Colorado explained that his LG FLW is "one of the best devices I have ever owned ... I have absolutely no complaints; it's a great machine." These 51 owners know better than anyone their own experiences, which are nothing like those Plaintiffs report.

### 2.  Extremely low complaint rate

LG USA keeps records of its contacts with consumers who report a problem with any of its products, including LG FLWs. These records include some reports of buildup and odor. Given the severity of the alleged problem — foul odors that permeate homes and supposedly make LG FLWs unusable (Ex. 43 ¶ 111) — one expects consumers to report this problem if it occurs. Yet Plaintiffs do not refer to the data at all, beyond a (greatly exaggerated) reference to its existence. (Br. 16 n.8.) The data show that only ▇▇▇▇ of consumers reported a mold or odor issue. (Ex. 9 ¶ 4.)

### 3.  Consumer survey shows extraordinarily high satisfaction

In order to confirm that the customer complaint data accurately reflect consumers' experiences, LG USA retained an expert to conduct a survey. Dr. Thomas Maronick is a Professor of Marketing who was, for nearly 17 years, the Director of Impact Evaluation in the Bureau of Consumer Protection at the FTC, where he designed and implemented over 300 marketing and consumer surveys. Today he teaches the proper methods and procedures for designing and

implementing consumer surveys, including internet-based surveys.   (Exhibit 2 at 1-2; Ex. 3.)[4]
Plaintiffs did not conduct any survey.  Maronick's survey is the only one in this case.

The results: *99%* of owners were very satisfied or satisfied with their LG FLWs.  (*Id.* 16.)
Respondents commented on the LG FLWs' quality ("high quality," "quality is very good!"),
efficiency ("detergent use is less," "energy saver"), and washing ability ("I like the way my clothes
look").  (*Id.* 12.)  The survey found one owner who had an LG FLW with buildup or odor.  (*Id.* 14-
15.)  That means, at the 95 percent confidence level, *no more than 1.47%* of LG FLW owners have
experienced buildup or odor.  (*Id.* 15 & n.6.)  As explained above, the true rate is ████

E.     Investigation into Plaintiffs' allegations

To investigate, LG USA retained Dr. Edward Caulfield, who holds a bachelor's degree in
mechanical engineering (specializing in machine design) and a Ph.D. in theoretical and applied
mechanics.  He is a registered Professional Engineer in two states, he has taught at the university
level, and his decades of engineering work includes design reviews, evaluation, and testing.  (Ex. 4
at 1; Ex. 5.)[5]  Caulfield and his team undertook two investigations: (1) testing LG FLWs, under a
variety of conditions, to determine how odor can develop and be cured, and (2) inspecting every
Plaintiff's LG FLW to apply what he learned during the tests.

Caulfield tested eight LG FLWs: two run properly (using detergent as recommended on the
bottle, and with regular maintenance) and six run improperly (too much detergent, and no regular
maintenance).  (*Id.* 13-15.)  His "initial testing" comprised 24 weeks of 15 loads of real laundry per

---

[4]  Federal courts have held that Maronick is well-qualified to conduct and testify about a consumer
survey.  *POM Wonderful v. Organic Juice USA,* 2011 WL 70562, *4 n.1, *12 (S.D.N.Y.) (stating
that Maronick has "unassailable credentials," and relying on his internet-based consumer survey);
*Grimes v. Invention Submission,* 2005 WL 6042731, *2 (W.D. Okla.) (explaining Maronick's
qualifications and refusing to exclude him as a class certification expert).

[5]  Caulfield has qualified to testify as an expert on numerous occasions.  *Harris v. Heubel Mat.
Handling,* 2010 WL 3270094, at *3 (D. Kan.) (holding "meritless" a challenge to his testing);
*Phillips v. Raymond,* 364 F. Supp. 2d 730, 743, 746 (N.D. Ill. 2005) (holding that Caulfield was
qualified and his "methods and results were discernible, clear, and rooted in real science").

week — approximately one year's worth of household use. (*Id.* 14.) A properly screened olfactory panel of eight people evaluated the machines every week. (*Id.* 15-16.)

These initial tests showed that in machines run according to the owner's manual, detergent and other debris did not accumulate, and odors did not occur. (*Id.* 16-20.) The improperly used machines did accumulate buildup, and smelled worse. (*Id.*) Caulfield concluded that improper use and maintenance causes buildup and odors; owners who follow instructions will not have them. (*Id.* 20.) No inherent defect in the LG FLWs caused any problems. (*Id.* 21.)

Caulfield then conducted "recovery testing" on the worst four machines, to see if consumers could fix the problem. (*Id.*) The machines remained in regular use, but with proper detergent and maintenance, including regular Tub Clean or hot water cycles, plus a commercial cleaner or bleach. (*Id.*) The olfactory panel continued. This "recovery testing" showed that machines in which bleach was used showed extraordinary reductions in buildup and odor. (*Id.* 22-23.) Caulfield concluded that an owner with buildup or odor can remedy it by taking simple steps at home: proper use, proper maintenance, and hot water or Tub Clean cycles with bleach. (*Id.* 23.)

Caulfield applied this knowledge to Plaintiffs' LG FLWs, inspecting all 19 in their homes. (*Id.* 24-39.) He learned, first, that 13 of 19 were improperly installed, so as to allow odors to enter from the sewer. (*Id.* 27.) Second, the drum of 17[6] showed the same buildup Caulfield saw in his tests. (*Id.* 38.) Third, all 19 showed signs of skipped maintenance. (*Id.* 28-39.) Plaintiffs' testimony confirmed these observations: many admitted not reading owner's manuals, not using HE detergent, using too much detergent, improperly using the dispenser, leaving wet laundry in the machine, and skipping maintenance (on 15, no cleaning cycle had ***ever*** been run). (*Id.* 25, 28-33, 47.)

---

[6]  The other two Plaintiffs' LG FLWs, without any notable buildup in the drum, were Burke's and Cook's: machines that do not have a bad odor. (*Id.* 38; Ex. 19 at 78; Ex. 20 at 91.)

In sum, Caulfield concluded: (1) LG FLWs have no design defect, (2) individual factors of installation, use, and maintenance determine whether any particular LG FLW has buildup or odor, and (3) there is no reason to believe that Plaintiffs' improper installation, maintenance, and use —. and resulting buildup and odor — is shared by all other LG FLW owners. (*Id.* 46-52.)

### F.  Plaintiffs' legal theories and requests for class certification

Plaintiffs assert five causes of action: (1) consumer fraud, because the "failure to disclose the odor problems with FLWs was misleading"; (2) breach of express warranty, for "failing to repair or replace those defects and/or defective parts"; (3) breach of implied warranty, because LG FLWs are not "fit for the ordinary purpose for which such goods are used"; (4) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, which repeats their warranty claims; and (5) unjust enrichment, for receiving an unjust benefit. (Br. 1 n.1 & 22-26.)

Consistent with their position that every LG FLW is unusable and permeates the home with bad odors, Plaintiffs ask this Court to certify a nationwide class under New Jersey law of "All persons or entities residing in the United States who purchase[d], not for resale, a[n LG] FLW." (Br. 6; Ex. 43 ¶ 63.) Plaintiffs do not specify any class period. Thus, the nationwide class would includes at least ▮▮▮▮▮ people as of today — and it grows every day.

If New Jersey law does not apply nationwide, Plaintiffs ask for 14 state classes, each governed by its own laws. (Br. 6, 28.) Each state class would include all persons who purchased an LG FLW in that state "for primarily personal, family or household purposes." (Ex. 43 ¶ 64.)

### STANDARD OF REVIEW

Plaintiffs cite the Third Circuit's watershed decision in *Hydrogen Peroxide* but take pains to avoid explaining what it requires. And they cite only two post-*HP* certification decisions from this Circuit. A brief review of *HP* is therefore in order.

**A.    Plaintiffs must prove that each Rule 23 requirement is met, and this Court must apply a rigorous analysis and resolve all disputes.**

Plaintiffs have the burden of proof to show "the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *HP*, 552 F.3d at 316 n.14, 320. "[T]he requirements of Rule 23 must be met, not just supported by some evidence." *Id.* 321. This Court must apply a "rigorous analysis" to determine whether they carried their burden, because an improper certification creates "unwarranted pressure to settle nonmeritorious claims." *Id.* 310, 318.

"Genuine disputes with respect to the Rule 23 requirements must be resolved," for a "district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements." *Id.* 324, 320. "An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes." *Id.* 316.

**B.    Many of the decisions cited by Plaintiffs do not comply with *HP*.**

Plaintiffs rely almost exclusively on pre-*HP* decisions, decisions about settlement classes, and decisions from other Circuits, many of which violate *HP*. Plaintiffs rely most heavily on *In re Whirlpool*, 2010 WL 2756947 (N.D. Ohio), citing it twice in the Brief's first paragraph. That case concerns different legal claims about different FLWs sold by a different company. A district court in the Sixth Circuit certified an Ohio class, and Plaintiffs ask this Court to follow that example.

The district court in *Whirlpool* departed so dramatically from *HP* that in this Circuit it would be summarily reversed. First, *Whirlpool* refused to address any "merits issue," relying upon a quote from the U.S. Supreme Court that Rule 23 does not give "'a court any authority to conduct a preliminary inquiry into the merits of a suit.'" *Id.* *1 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974)). But in *HP*, the Third Circuit required a rigorous analysis of **all** class certification issues, whether or not they overlap with the merits. The Third Circuit explained that "*Eisen* is best understood to preclude only a merits inquiry that is not necessary to determine a Rule 23 requirement. Other courts of appeals have agreed." *HP*, 552 F.3d at 317.

Second, *Whirlpool* did not rigorously analyze the evidence and resolve disputes. Instead, *Whirlpool* simply recited "the plaintiffs' theory" again and again. *Whirlpool*, 2010 WL 2756947, at *3 (referring to "the plaintiffs' theory" three times). Critically, *Whirlpool* relied **solely** on the complaint allegations, which in this Circuit "is mistaken." *In re Schering Plough*, 589 F.3d 585, 600 n.14 (3d Cir. 2009). The district court in *Whirlpool*, moreover, never mentioned any evidence or expert opinions, a violation of *HP*'s requirement that they be rigorously analyzed. Plaintiffs, therefore, invite error, for example by arguing that undisputed evidence "totally ignores the allegations of the complaint." (Br. 17.)

The Sixth Circuit granted immediate review of *Whirlpool*. Proceedings are stayed, and the appeal is briefed. In any event, in this Circuit *HP* governs and *Whirlpool* is irrelevant. Moreover, *Whirlpool* is also an outlier because the other two courts to consider certification in FLW cases have denied it. *Dickerson v. Electrolux*, (C.D. Cal. 2011) (Ex. 57); *Terrill v. Electrolux*, 753 F. Supp. 2d 1272, (S.D. Ga. 2010). This Court should do the same.

Another example of Plaintiffs' reliance on decisions that also do not comply with *HP* is the Brief's citation (at 22) to *Dal Ponte v. Am. Mtg. Express*, 2006 WL 2403982 (D.N.J.), which states (at *4 n.5.) that "consideration of the merits ... is inappropriate at the class certification stage." *HP* held the opposite. 552 F.3d 316. The Brief (at 20) also relies on *Chiang v. Veneman*, 385 F.3d 256 (3d Cir. 2004), a case the Third Circuit expressly "disavowed" because it used a "mistaken" class certification approach and "misstated the law." *Schering*, 589 F.3d at 603, 600 n.14. Plaintiffs' use of these cases and others that do not follow *HP* permeates and undermines their entire Brief.

## ARGUMENT

### I.     Every class proposed by Plaintiffs violates Rule 23.

#### A.     The fact that most class members lack injury prevents certification.

Injury is a required element of every claim: "No injury, no tort is an ingredient of every

14

state's law." *In re Bridgestone*, 288 F.3d 1012, 1017 (7th Cir. 2002).[7] Yet every class Plaintiffs propose here consists almost exclusively of members with no injury: no mold or odor.

If a person with no injury were to sue, the case would be dismissed. Courts are "particularly vigilant in requiring ... injury or damages in products liability cases"; when a plaintiff's product "performs satisfactorily and never exhibits an alleged defect, no cause of action lies." *Briehl v. GM*, 172 F.3d 623, 627-28 (8th Cir. 1999). A person may not sue for an unmanifested defect — a defect that has caused the plaintiff no harm — because to do so would improperly "contemplate indemnity for a potential injury that never, in fact, materialized." *Barbarin v. GM*, 1993 WL 765821, *2 (D.D.C.); *In re GM Anti-Lock Brake,* 966 F. Supp. 1525, 1530 (E.D. Mo. 1997) ("Manifestation of the defect ... is a prerequisite to recovery.") Even if a product has "a tendency" to manifest a defect, a person who "never experienced" it may not sue. *Barbarin*, 1993 WL 765821 at *2.

If you cannot sue on your own, you cannot be a class member. Allowing uninjured persons — especially huge numbers of uninjured persons — to be members of a class violates the Rules Enabling Act, which bars "the use of federal rules of practice and procedure, including the class action mechanism provided by Rule 23, to abridge, enlarge or modify any substantive right." *Hohider v. UPS*, 574 F.3d 169, 185 (3d Cir. 2009); 28 U.S.C. § 2072(b).[8]

Yet Plaintiffs included, in all classes, all purchasers of LG FLWs. (Br. 6.) This ensures that 99% of the members of each class are happy purchasers: people who, even if LG FLWs are

---

[7] *Laney v. Am. Std.*, 2010 WL 3810637, *11 (D.N.J.) (consumer fraud); *ChampionsWorld v. U.S. Soccer*, 726 F. Supp. 2d 961, 972 (N.D. Ill. 2010) (unjust enrichment); *Weaver v. Chrysler*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (breach of warranty); 15 U.S.C. § 2310(d)(1); *Walus v. Pfizer, Inc.*, 812 F. Supp. 41, 42 (D.N.J. 1993) (product liability).

[8] In addition, "[i]t is axiomatic that standing to sue is a prerequisite" to jurisdiction, and "this constitutional mandate requires that [a plaintiff] show, *inter alia*, an injury in fact." *Kerchner v. Obama*, 612 F.3d 204, 207 (3d Cir. 2010). Class members who experience no manifested defect "have no injury and no standing to sue" and therefore may not be a class member. *Hovsepian v. Apple*, 2009 WL 5069144, *6 (N.D. Cal.); *Cunningham Charter v. Learjet*, 258 F.R.D. 320, 325 (S.D. Ill. 2009); *Owner-Operator v. Swift Trans.*, 2006 WL 2521183, *1 (D. Ariz.).

assumed to be defective, have not experienced mold or odor. Plaintiffs "cannot demonstrate that each class member's product manifested the actual defect," which is a requirement for certification. *Laney*, 2010 WL 3810637, \*17. Instead, "countless members" of each class cannot "show any damage." *Oshana v. Coca-Cola*, 472 F.3d 506, 514 (7th Cir. 2006). Class members whose LG FLWs "performed to their entire satisfaction" must be "identified and eliminated from the action." *Feinstein v. Firestone*, 535 F. Supp. 595, 602-03 (S.D.N.Y. 1982).[9]

The lack of mold or odor in most LG FLWs prevents certification because it makes Plaintiffs atypical under Rule 23. *Oshana*, 472 F.3d at 514. It also renders certification inappropriate because injury depends on "individualized facts of each plaintiff," so individual issues dominate common issues. *Laney*, 2010 WL 3810637, \*18.

Nor can Plaintiffs successfully redefine the class. Were they to seek to limit a class to only LG FLW owners with mold or odor, determining who is in the class would require "fact-intensive mini-trials," making certification inappropriate. *Mann v. TD Bank*, 2010 WL 4226526 (D.N.J.), at \*18. It would be especially inappropriate if membership depended on experiencing bad odor, because, as Wysocki explains, the experience of odor is entirely subjective. (Ex. 7 at 28-30.)

Plaintiffs try to dodge the fundamental defect in their certification argument by citing two cases for the idea that an NJ CFA claim requires no injury. (Br. 22.) Both cases, however, clearly state that a private NJ CFA plaintiff can only recover for an "ascertainable loss." *Gennari v.*

---

[9]   *Payne v. Fujifilm*, 2010 WL 2342388, at \*5 (D.N.J. 2010) (no class: "alleged class-wide defect [had] not manifested in the great majority of the proposed class."); *In re Microsoft Xbox 360*, 2009 U.S. Dist. LEXIS 109075, \*20-21 (W.D. Wash.) (no class: alleged defect "actually manifests itself in fewer than one percent" of products.); *Arabian v. Sony*, 2007 WL 627977, \*13 (S.D. Cal.) (no class: no "evidence that a majority of these owners experienced common problems from a common defect"); *In re Canon*, 237 F.R.D. 357, 359 (S.D.N.Y. 2006) (no class: plaintiffs "have not shown that more than a tiny fraction of the [products] in issue malfunctioned *for any reason*"); *Pratt v. Panasonic*, 2006 WL 1933660, \*10 (N.J. Super.) (no class: "the overwhelming majority of purchasers ... have not suffered from the alleged defect"); *Kia Motors v. Butler*, 985 So.2d 1133, 1139 (Fla. Ct. App. 2008) (no class: some products "have performed satisfactorily.")

*Weichert* 691 A.2d 350, 368-69 (N.J. 1997); *Cox v. Sears*, 647 A.2d. 454, 461 (N.J. 1994).

Plaintiffs also rely on *Kohen v. Pacific Inv.*, 571 F.3d 672 (7th Cir. 2009), to argue that a class may include uninjured persons. (Br. 20.) Actually, what *Kohen* holds is that "a class should **not** be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Id.* 677. That is exactly why no class can be certified here.

### B.    Individual factual issues predominate.

Rule 23 requires common issues to predominate over individual issues to ensure that "the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem v. Windsor*, 521 U.S. 591, 623 (1997). "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *HP*, 552 F.3d at 311.

### 1.    Causation is a dominant individual issue for every cause of action

Whether each class member can show a defect caused injury involves a two-part inquiry: (1) is there a defect, and (2) did the defect cause injury? Both parts depend on individual proof.

### a.    Whether there is a defect requires individual proof.

Plaintiffs have no common evidence that the product is defective because there is no single product. LG FLWs have evolved continuously since 2002, changing the "fundamental characteristics" that Plaintiffs contend make them defective, including the sealed environment and use of less water. (Br. 5.) For example, Caulfield's testing shows that Tub Clean cycle, introduced in 2006, prevents (and even reverses) buildup and odor by using more water and a higher spin speed to clean the machine. (Ex. 4 at 41.) Wilson **agrees** that if Tub Clean cycle works, LG FLWs are not defective. (Ex. 14 at 162.) But Wilson never ran or tested Tub Clean. (*Id.* 255-56.) He cannot say that LG FLWs with Tub Clean are defective.[10]

---

[10]   Plaintiffs also are wrong that LG FLWs do not use sufficiently hot water (Br. 5), unlike other washers. (Ex. 11 ¶¶ 5-7.) LG FLWs are no different than other washers in their use of hot water.

Caulfield analyzed other design changes, including the addition of (1) a gasket drain hole; (2) an antimicrobial gasket; (3) a door spray hose; (4) a magnetic door plunger; (5) Wash/Rinse Optimizer (which adds extra water if it senses too much detergent); (6) Allergiene cycle; and (7) Tub Clean + cycle. (Ex. 4 at 40-45.) LG FLWs with these changes do not share the alleged fundamental characteristics of all FLWs (Br. 5) because they are *not* sealed between washes and can use *more* water during Tub Clean. (*Id.*) Wilson did not test or analyze these changes; his opening report almost entirely ignores them. Also, because Wilson inspected just four LG FLWs, none made after February 2007, he has never even *seen* most of the design changes. Asked if he knows that all LG FLWs are the same, Wilson testified, "Of course not." (Ex. 14 at 183-84.)

Because of the design changes over time, determining whether each LG FLW is defective requires individual proof. *In re Am. Med. Sys.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("the products are different, [so] each plaintiff has a unique complaint"); *Laney*, 2010 WL 3810637, *17 (same).

In fact, there is no competent common proof that *any* LG FLW is defective. Plaintiffs rely mainly on Wilson, but he did no testing and just three hours of work before concluding all LG FLWs are defective. The contrast between the work done by Wilson and Caulfield is staggering:

|  | Caulfield | Wilson |
|---|---|---|
| **Testing of LG FLWs** | Eight months of testing: (1) 8 LG FLWs and actual laundry, simulating a year of ordinary use, to determine what causes odor, and (2) 4 LG FLWs, to determine if odor, once present, can be eliminated. (Ex. 4 at 13-23.) | None. (Ex. 14 at 251-256.) |
| **Inspection of FLWs** | Inspected (1) eight LG FLWs used in testing, and (2) 19 LG FLWs, belonging to every Plaintiff. (Ex. 4 at 24-25.) | Inspected four LG FLWs chosen by Plaintiffs' counsel. (Ex. 14 at 106-07.) |
| **Installation of Plaintiffs' FLWs** | Inspected every home to determine if properly installed. (Ex. 4 at 26-27.) | None. (Ex. 14 at 107.) |
| **Review of Plaintiffs' circumstances** | Reviewed and considered Plaintiffs' deposition testimony, interrogatory responses, and complaint allegations. (Ex. 4 at 24-39.) | None. (Ex. 14 at 104-06.) |

18

|  | Caulfield | Wilson |
|---|---|---|
| **Photos of Plaintiffs' FLWs** | Took detailed photos of all 19. (Ex. 4 at 24-25, 56-61.) | Took photos of 1 and saw photos of 9 from Plaintiffs' counsel. (Ex. 14 at 225, 231; Ex. 15.) |
| **Review owner's manuals** | Yes. (Ex. 4 at 10-12, 40-45.) | No. (Ex. 14 at 110.) |
| **Analyze design changes** | Extensive analysis of design changes and their impact on the alleged fundamental characteristics of LG FLWs. (Ex. 4 at 40-45.) | Mentions and dismisses just two design changes in opening report. (Ex. 52 at 13.) |

*HP* explains that "[e]xpert opinion with respect to class certification ... calls for rigorous analysis." 552 F.3d at 323. "Resolving expert disputes ... is always a task for the court — no matter whether a dispute might appear to implicate the 'credibility' of one or more experts." *Id.* 324. That dispute should be resolved in Caulfield's favor.

Besides Wilson, Plaintiffs also cite design changes (Br. 11-15, 17), patent applications (*id.* 5, 7, 13 n.7), and documents (*id.* 5, 7-10) to argue that LG FLWs are defective, but those materials cannot help Plaintiffs. All are inadmissible, as explained in LG USA's Motion to Strike, and should be ruled out of the case for that reason alone. In addition, the patent applications refer to a generic "drum type washing machine"; they are not about LG FLWs in particular and do not mention LG FLWs. (Ex. 11 ¶¶ 8-13.) Nor do the patent applications even suggest that all drum type washing machines develop odor; instead, they describe inventions intended to remedy any failure to rinse that may occur due to misuse. (*Id.*)

Likewise, none of the other documents Plaintiffs cite evidence of defect. They merely acknowledge that machines may accumulate buildup and odor if not properly installed, used, and maintained; that this issue was taken seriously; and that various approaches for dealing with the issue were considered. (Ex. 11 ¶¶ 17-24; Ex. 58 ¶¶ 8-11.)

### b.   Whether a defect caused injury requires individual proof.

Even if a defect existed here, which it does not, Plaintiffs must still show it caused injury on a class-wide basis. Even if alleged defect has manifested itself, individual issues of causation must be adjudicated. *Laney*, 2010 WL 3810637, *16-18; *Payne*, 2010 WL 2342388, *5-6; *In re Ford*, 194 F.R.D. 484, 496 (D.N.J. 2000). This, Plaintiffs cannot do.

It would be wrong to assume an alleged defect causes all odors. As Caulfield discovered, many Plaintiffs' LG FLWs are improperly installed, allowing wastewater back into the machine and potentially causing odor. (Ex. 4 at 27.) Some Plaintiffs' LG FLWs also had unique problems, including leaks and drainage issues, that can cause odor. (*Id.* 34-35.) And some Plaintiffs leave wet laundry in the machine for extended periods after a wash, which can cause odors. (*Id.* 30.) Wilson agreed that doing so is their fault. (Ex. 59 at 345.)

Each LG FLW also must be examined individually to determine whether misuse caused the problem. Many Plaintiffs did not read the manual, ignored its instructions, used the wrong detergent, and/or used too much detergent, which may cause buildup and odor. (*Id.* 25-28.) Most Plaintiffs also failed to conduct proper maintenance: wiping down the gasket, cleaning the soap dispenser, cleaning the drain pump filter, and running cleaning cycles. (*Id.* 30-34.) Caulfield showed that proper use and maintenance prevent buildup and odor. (*Id.* 13-20.)[11]

### 2.   Individual factual issues dominate every consumer fraud claim.

Plaintiffs' consumer fraud claims are based not on any affirmative misrepresentation, but on "whether [LG USA's] failure to disclose the odor problems with FLWs was misleading." (Br. 23.)

---

[11] Plaintiffs suggest (at 23) causation may be presumed under *Varacallo v. Mass. Mut. Life Ins.*, 752 A.2d 807 (N.J. App. 2000). But *Varacallo* addressed class certification under New Jersey's state class action rules, which "liberally allow class actions," and *Varacallo* held that "[i]rrespective of whether the trial court may be required to deal with individual claims of reliance, causation and/or damages, the predominance factor has been met and class actions have been approved in this State where the court has found a common core of operative facts and the plaintiffs are seeking 'to redress a common legal grievance.'" *Id.* 814-15. That is not proper under *HP* or Rule 23.

Given that one cannot disclose something before it is known, Plaintiffs assert that the issue is "what LG [USA] knew and when did it know it." (*Id.*)

Even if Plaintiffs' incorrect characterizations of documents (Br. 11-14) is believed, LG USA's knowledge of customers' experiences changed markedly from time of the first purchases in 2002 to the most recent purchases in 2011. Even Wilson admits LG USA's knowledge built over time: he claims LG USA did not know of the alleged defect until 2004, two years after the machines went on sale in the U.S. (Ex. 52 at 14.) In order to prove that LG USA should have disclosed something, each class member would have to prove what LG USA knew at the time (s)he purchased an LG FLW. A "significant individual inquiry is required to determine what [the defendant] knew" at the time of each transaction. *Agostino v. Quest*, 256 F.R.D. 437, 476-77 (D.N.J. 2009). This fact distinguishes the only case Plaintiffs cite. (Br. 23.) There, the defendant knew *throughout* the entire class period a simple fact it failed to disclose. *In re Mercedes-Benz*, 257 F.R.D. 46, 48 (D.N.J. 2009). Here, there was no one fact that LG USA learned on one day. LG USA's knowledge of the experiences of a tiny percentage of customers built over time.

The knowledge of each class member also requires individual proof. Deception is a key ingredient in all suits seeking damages for consumer fraud; Plaintiffs allege that LG USA's "failure to disclose the odor problems with FLWs was misleading." (Br. 23.) Whether a particular class member was actually deceived depends on what else the consumer knew about FLWs or LG FLWs. *In re Ford Paint*, 182 F.R.D. 214, 222 (E.D. La. 1998) (different class member "knowledge of potential problems [means] a class wide finding on this issue ... would be improper.").

There are many sources of information about FLWs. Some class members may have read news articles about FLWs. Others may have spoken with friends or family who own FLWs. Some may have read articles this lawsuit. Depending on what each class member read, heard, and understood, (s)he may or may not have been deceived. It is an individual issue.

21

Another source of information that differs for each class member is the LG FLW owner's manuals, which changed over time. Older manuals do not mention odor; later manuals do. Plaintiff Figueroa purchased in February 2005, and her manual says nothing about odor. (Ex. 50.) Plaintiff Cook purchased in November 2007, and his manual cautions that a musty odor may result from incorrect detergent use or failing to perform maintenance. (Ex. 51 at 31.) These differences in the manual, and hence in each class member's knowledge, are additional individual issues.

### 3.  Individual factual issues dominate every express warranty claim.

Every breach of express warranty claim is dominated by at least seven individual factual issues. First, the warranty (Ex. 12) requires that the LG FLW "prove[] to be defective in material or workmanship ... during the warranty period," which for the parts at issue here is one year. In order to come within the warranty period, each class member must have had an actual problem during the first year; in other words, any defect must have manifested by then.[12] "[T]ime-limited warranties do not protect buyers against hidden defects [that] typically are not discovered until after the expiration of the warranty period." *Duquesne Light. v. Westinghouse Elec.*, 66 F.3d 604, 616 (3d Cir. 1995).[13] Given that 99% of owners, dating back to 2002, have no mold or odor within a year of purchase, they have no warranty claim. Applying the warranty period requires individual proof.

Second, the warranty only covers an LG FLW "under normal use," and it excludes "[d]amages or operating problems that result from misuse, abuse, ... [or] improper installation." Even Wilson agrees that "[i]f the customer is way overdosing with a non-HE detergent, then I think that, you know, it's the customer's problem." (Ex. 14 at 171.) As explained in Caulfield's report, Plaintiffs, unlike the overwhelming majority of (99%) of LG FLW owners, all misused their LG

---

[12]  This is also true of any implied warranty, which the warranty limits "**IN DURATION TO THE EXPRESS WARRANTY PERIOD**" of one year. *See* 15 U.S.C. § 2308(2).

[13]  Even if LG USA provides courtesy service to some owners after the warranty period expires, that neither changes the warranty's terms nor alters the required proof for a claim of breach. *Id.*

FLWs, some of which were even installed improperly in a way that can cause odors. Proving normal use requires individual evidence.

Third, the warranty excludes damages and problems that result from operating the LG FLW "contrary to the requirements o[r] precautions" of the owner's manual. Caulfield's tests show that following the owner's manual prevents mold and odor. Many Plaintiffs admitted not even reading the manual. Showing compliance with the manual requires individual proof.

Fourth, the warranty only covers "the original purchaser." *See also* 15 U.S.C. § 2302(a)(2), 16 C.F.R. § 701.3(a)(1). The classes, however, include "all purchasers," including people who bought used machines. Whether a class member is the original purchaser requires individual proof.

Fifth, asserting a warranty claim requires contacting LG USA. Until a customer contacts LG USA, the warranty cannot be breached. Yet millions of class members never contacted LG USA. The same is true of some Plaintiffs: Grosso, Franko, Cook-Sommer, Ashe, and Burke did not contact LG USA before suing. (Ex. 25 at 120, 124, 127; Ex. 24 at 93; Ex. 21 at 151; Ex. 17 at 141-42; Ex. 19 at 80.) Whether a particular owner's warranty was breached requires individual proof.

Sixth, some class members contacted LG USA and received satisfactory service in the form of repair, replacement, or refund. Plaintiff Cook received a free service visit and now the problem "has gone away almost entirely." (Ex. 20 at 91.) Whether each class member received satisfactory service from LG USA is yet another individual issue.

Last, the warranty excludes damages resulting from "commercial use," yet the class definition includes all "persons or entities" who purchase an LG FLW. (Br. 6.) The class definition thus includes commercial purchasers (such as laundromats, landlords, etc.). Whether each class member's LG FLW was used for commercial purposes cannot be proved by common evidence.

### 4. Individual factual issues dominate every implied warranty claim.

Plaintiffs claim that bad odor renders LG FLWs "not fit for the ordinary purpose of cleaning clothes and other articles." (Ex. 43 ¶ 111.) They attribute the odor to fundamental characteristics not just of *LG* FLWs, but of *all* FLWs: sealed environment, less water, and interior crevices. (Br. 5.)

But an implied warranty claim must assert that "the specific product deviates so far in quality from a typical example of such a product that it cannot be said to constitute a 'fair average' representation of that type of product." *LaBelle v. B&W*, 1999 WL 33591435, *11 (D.S.C.). *By definition*, the *entire* FLW product category cannot be below average. Wilson and Yang admit LG FLWs are designed just as well as other FLWs (Ex. 14 at 73; Ex. 16 at 130), so they cannot be unmerchantable. *Semowich v. R.J. Reynolds*, 1988 WL 123930, *3 (N.D.N.Y.) (if a defect is "shared by all [products] and is not unique to defendant's [product]," the plaintiff has no claim).

Moreover, even if Plaintiffs could assert an implied warranty claim, individual issues dominate it. Whether a particular LG FLW is unfit to wash laundry requires evidence about that machine. (As the customer Declarations (Ex. 1) show, many customers have no such problem.) Even Plaintiffs themselves do not behave as though their machines are unfit: 18 of their 19 machines are still in use. *See Tietsworth v. Sears,* 720 F. Supp. 2d 1123, 1142 (N.D. Cal. 2010) (to show a washing machine is unmerchantable, plaintiff must stop using it). One Plaintiff, Demski, even moved his supposedly unusable LG FLW to Florida after he said it developed a bad odor, and used it to replace a (non-defective) top loader in his new house! (Ex. 22 at 24-25.) Proving whether each LG FLW is unmerchantable is an individual issue.

### 5. Individual factual issues dominate every Magnuson-Moss claim.

All Magnuson-Moss claims are dominated by the same individual issues as the state-law warranty claims. *Walsh v. Ford*, 807 F.2d 1000, 1009, 1012 (D.C. Cir. 1986). In addition, Plaintiffs may not bring a Magnuson-Moss *class* claim, because they did not all give LG USA a

24

reasonable opportunity to cure any breach and also notify LG USA "that they are acting on behalf of the class." *Id.*; 15 U.S.C. § 2310(e). The failure of all of "the named plaintiffs" to do this bars a Magnuson Moss class claim. *Stearns v. Select Comfort*, 2010 WL 2898284, *10-12 (N.D. Cal.).

**6.   Individual factual issues dominate every unjust enrichment claim.**

Though states' unjust enrichment laws vary widely, the claim always requires the defendant to receive an unjust benefit to the plaintiff's detriment. *Clay v. Am. Tobacco*, 188 F.R.D. 483, 500 (S.D. Ill. 1999). This requires an inquiry into the circumstances of each class member's individual purchase. *Id.* 501; *In re Sears*, 2007 WL 4287511, *9 (N.D. Ill.).

There can be no detriment to plaintiff if plaintiff is not injured, and injury requires individual proof. *Mann*, 2010 WL 4226526, *18; *Cleary v. Philip Morris USA*, 265 F.R.D. 289 at 292-93 (N.D. Ill. 2010). 99% of LG FLW owners have no mold or odor, and a person-by-person approach must be used to determine which owners could be injured and which are not. Thus, because "there is no systemic way for determining who the proper plaintiffs are ... [i]ndividual issues will ... predominate" for unjust enrichment claims. *Mann*, 2010 WL 4226526, *18.

In addition, each class definition includes "all purchasers" of LG FLWs, including people who buy used machines. Yet purchasers of used machines cannot possibly confer a benefit on LG USA; a used sale takes the place of a new sale. Thus, each class member must prove individually whether (s)he purchased a new or used machine.

**7.   Damages is a dominant individual issue for every cause of action.**

Every cause of action seeking damages requires — damages. Certification is appropriate only if there is a "viable method ... to prove damages on a classwide basis." *In re Neurontin*, 2011 WL 286118, *10 (Hochberg, J.). It must be "judicially recognized and commonly accepted." *Id.* Yet Plaintiffs have no method (Br. 20), because damages is unique for each person. *Colon v. Passaic County*, 2009 WL 1560156, *3 (D.N.J.).

Plaintiffs claim their damages stem from purchasing an LG FLW worth less than they paid. (Br. 24.)[14]  But they have no common proof.  Even if their theory is correct, the amount would vary widely.  A person with *no* mold or odor has zero damages.  *Carey v. Select Comfort*, 2006 WL 871619, *1-4 (Minn. Dist. Ct.) (dismissing for lack of damages because a bed "uniquely susceptible to mold" had none).  Potential damages of a person *with* mold or odor would vary widely. Someone who got many good years out of an LG FLW before experiencing mold or odor has much lower damages (if any at all) than someone who experienced it two months after purchase. Plaintiffs themselves demonstrate the point.  Some Plaintiffs seek a 100% refund (Ex. 30 at 100; Ex. 31 at 145); others seek only a repair (Ex. 21 at 157; Ex. 28 at 136.)  Damages requires individual proof.

Also, some class members have extended warranties from retailers but failed to invoke them, thus failing to mitigate damages.  Plaintiff Scalise, for example, never made a claim under her extended warranty.  (Ex. 36 at 78.)  Showing mitigation of damages requires individual proof.

### 8.    Statutes of limitations create dominant individual issues for every cause of action.

Assessing whether each class member's claim is timely under the applicable statute of limitations will require determining (1) the length of the statutory period, (2) what event starts the clock (it is sometimes discovery of the problem, which is an individual factual issue), and (3) whether the lawsuit was filed in time.  This cannot possibly be accomplished with proof common to the class.  As the Third Circuit held, "we believe that determining whether each class member's claim is barred by the statute of limitations raises individual issues that prevent class certification." *Barnes v. Am. Tobacco*, 161 F.3d 127, 149 (3d Cir. 1998).

---

[14]  Some Plaintiffs also claim that they might have purchased a different FLW.  (Ex. 17 at 193; Ex. 39 at 170.)  This will not help establish damages, even individually, for their own experts opine that *all* FLWs are defective in exactly the same way.

## C.     A class action is not a superior method to adjudicate this controversy.

A class action is not a superior method to "fairly and efficiently" adjudicate this controversy. Fed. R. Civ. P. 23(b)(3). A key factor in evaluating superiority is "the likely difficulties in managing a class action." *Id.* 23(b)(3)(D); *Newton v. Merrill Lynch*, 259 F.3d 154, 191 (3d Cir. 2001). Here, "the need for individualized inquiry into actual injury" would be a "mind-boggling undertaking." *Newton*, 259 F.3d at 191. And that is only one of the numerous time- and evidence intensive factual issues that are unique to each class member. The others, as explained above, include whether *each* class member, *individually*:

(2) owns an LG FLW that is defective in design, given that the design changed over time;

(3) had an injury caused by the alleged defect;

(4) is barred from asserting one or more causes of action by the statute of limitations;

(5) purchased an LG FLW at a time when LG USA had sufficient knowledge of an alleged problem to trigger a duty to disclose it;

(6) was deceived by LG USA's alleged omission, given the particular class member's own knowledge from other sources;

(7 – 14) is barred from recovering under the express warranty because of (a) failure to experience a problem during the warranty period, (b) misuse, (c) improper installation, (d) not following the owner's manual, (e) commercial use, (f) not being an original purchaser, (g) failing to contact LG USA to invoke the warranty, and (h) having already received a satisfactory repair, replacement, or refund;

(15) has an LG FLW that actually fails to clean laundry;

(16) has stopped using the LG FLW;

(17) suffered a unjust detriment because of actual problems with the LG FLW;

(18) purchased a used LG FLW;

(19) has damages, and in what amount; and

(20) failed to mitigate damages.

Plaintiffs simply ignore manageability. They argue a class is superior because members will not bring individual claims. (Br. 27.) That answer, however, misses the point. Whether or not members would ever sue LG USA — keeping in mind, of course, that 99% of class members are *happy* with their LG FLWs — the only way for this case to proceed as a class action is to ignore all

27

of the individual factual issues that determine whether each class member has any right to recovery at all.  Doing this would "excus[e] plaintiffs from proving the essential elements of their cause of action," and the Third Circuit prohibits cutting that corner. *Newton*, 259 F.3d at 191; *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 455 (E.D. Pa. 2000).  This Court should not certify any class.

### D.     Plaintiffs are not adequate representatives of any class.

This Court must "carefully scrutinize" Plaintiffs to determine whether they possess the necessary "forthrightness" to represent absent class members. *In re FleetBoston*, 253 F.R.D. 315, 329 (D.N.J. 2008).  That quality is lacking here, proved by the Declarations that all Plaintiffs (but one) submitted with their Brief, all under "under penalty of perjury."

*Every* declaration contains false statements, shown in detail in Appendix E.  They can be grouped into four categories.  First, each Declaration (¶ 3) states that Plaintiff purchased an LG FLW "in part because it was advertised as an efficient appliance."  But many Plaintiffs testified they never saw or could not remember any LG FLW advertisement.  For example, Plaintiff Olejniczak testified that she did not "review any advertisements."  (Ex. 33 at 27.)

Second, each Declaration (¶ 4) states when the Plaintiff first noticed mold and odor.  Many of those statements are false.  Plaintiff Scalise, for example, stated in her original complaint (Ex. 44 ¶ 18), in the consolidated complaint (Ex. 43 ¶ 20), and in her deposition (Ex. 36 at 49, 62-63) that she first noticed mold and odor *one year* after her purchase.  But her Declaration now swears she first experienced mold and odor within "*several months*" of her purchase, and she first saw mold *2 ½ years* after her purchase.  (Scalise Decl. ¶ 4 (emphasis added).)

Third, each Declaration (¶ 7) states that the Plaintiff "read the original complaint in my case before it was filed."  Yet many Plaintiffs *did not have* an original complaint; they only joined the case when the consolidated complaint was filed.  Each Declaration (¶ 7) also states that the Plaintiff "read the consolidated complaint before it was filed."  Yet many Plaintiffs testified they did *not*

read the consolidated complaint before it was filed. For example, Plaintiff Scalise testified that she had "never seen" it prior to her deposition. (Ex. 36 at 153.)

Fourth, three Plaintiffs — Edward Manzello of New York, and Jonathan and Carolyn Zimmerman of North Carolina — swear (¶ 2) that they are a "proposed class representative for a Florida sub-class." But they have no connection to Florida.

Either Plaintiffs were not truthful in their sworn depositions or Declarations, or did not bother to read their sworn Declarations before signing them. It does not matter. The point is that Plaintiffs have proven that they cannot "adequately fulfill [their] fiduciary responsibilities to class members." *Johnson v. Geico Cas.*, 673 F. Supp. 2d 255, 279 (D. Del. 2009). Plaintiffs will not "serve the necessary role of checking the otherwise unfettered discretion of counsel in prosecuting the suit," *Arabian*, 2007 WL 627977, *7, so they are not adequate class representatives.

### E.    Plaintiffs are not typical of the class members.

Typicality requires Plaintiffs to have the same injury as the class members, to ensure that all claims are aligned. *Georgine v. Amchem Prods.*, 83 F.3d 610, 631-32 (3d Cir. 1996). If many class members have no injury, Plaintiffs are not typical. *Oshana*, 472 F.3d at 514; *Cleary*, 265 F.R.D. at 293. Almost all LG FLW owners have no mold or odor, so Plaintiffs are atypical.

In addition, Caulfield's testing and inspections of Plaintiffs' LG FLWs proves Plaintiffs misused their machines, making them subject to unique defenses that do not apply to class members who did not. Because Plaintiffs' claims are subject to these defenses, which are "likely to become a major focus of the litigation," they are not typical. *Schering*, 589 F.3d at 598.

Finally, it is undisputed that every person's perception of smell is subjective and different, and that Plaintiffs are (compared to the population) likely to be atypically sensitive to smells. (Ex. 7 at 28-30.) Any odor injury to Plaintiffs is "personal and specific" to them and prevents "any finding of similarity with regard to their claims, let alone the claims of numerous other unnamed plaintiffs."

*In re Human Tissue*, 2010 WL 743922, *2 (D.N.J.); *Jones v. AllerCare.* 203 F.R.D. 290, 301 (N.D. Ohio 2001) ("differing reactions" to a product defect means plaintiffs' claims are not typical).

### F. Class membership is not readily ascertainable.

The proposed nationwide class consists of "All persons or entities residing in the United States who purchases, not for resale, a FLW." (Br. 6; Ex. 43 ¶ 63.) The proposed state classes consist of class members who purchased FLWs "for primarily personal, family, or household purposes" in each state. (Br. 3 n.3; Ex. 43 ¶ 64.) Both definitions are incomplete and ambiguous, making it impossible to determine who is actually in the class, which violates the rule that a class definition under Rule 23 must be sufficiently definite and must consist of individuals that are "indeed identifiable as a class." *Oshana*, 472 F.3d at 513.

First and fundamentally, there is no class period. The class definitions include all past, present, and future purchasers, such that "a new set of plaintiffs would be added to the class each day." *Clay,* 188 F.R.D. at 490; *Schering*, 589 F.3d at 603. Without a class period, "[a]t no time during this case would the exact membership of this class be ascertainable." *Clay*, 188 F.R.D. at 490 (trying to certify a class without a class period is like "trying to nail smoke to a wall—it can't be done"); *Schering*, 589 F.3d at 603. That is exactly what Plaintiffs try to do here.

Second, the definitions are ambiguous in their use of purchasing as the criteria for membership. For example, if someone buys a house that already has an LG FLW inside, is that person a purchaser and therefore a class member? (Does it matter whether the LG FLW inside the house is new (placed there by the builder) or used (used by the prior owner)?) As another example, is a *former* owner, who purchased an LG FLW three years ago and sold it a few days later (perhaps by selling his or her house) a class member? The class definitions do not answer these and other questions about class membership, making it impossible to tell who is in the class. This Court cannot certify an indefinite class, so Plaintiffs' motion should be denied.

## II.     The nationwide class violates Rule 23.

This Court must first determine what states' laws apply. *Powers v. Lycoming Engines*, 2009 WL 826842, at *2 (3d Cir.).  As the movants, Plaintiffs must "credibly demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles,'" *id.* *3, because "[n]o class action is proper unless all litigants are governed by the same set of legal rules." *Bridgestone*, 288 F.3d at 1015.  "[T]he dictates of state law may not be buried under the vast expanse of a federal class action." *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1007 (3d Cir. 1986).  If states' laws are different, "the district judge would face an impossible task of instructing a jury." *Powers*, 2009 WL 826842, *6; *In re Ford*, 174 F.R.D. 332, 349 (D.N.J. 1997).

Courts routinely refuse to certify a nationwide class under state law.  "[W]arranty, fraud, or products-liability suits may not proceed as nationwide classes." *Bridgestone*, 288 F.3d at 1015.  In fact, "[n]o federal court ha[s] ever tried a class action [applying] the laws" of all 50 states. *Ford*, 174 F.R.D. at 349; *Carpenter v. BMW of N. Am.*, 1999 WL 415390, *6 n.11 (E.D. Pa.) (same).  Courts in this District routinely refuse to certify nationwide classes under state law.[15]

Plaintiffs' Brief (at 2) asks for certification of a nationwide class "under New Jersey law" — only if New Jersey law applies to consumers nationwide.  Plaintiffs do ***not*** ask for a nationwide class if many states' laws apply.  Thus, their request "turns on whether the law of a single state … should be applied." *Powers*, 2009 WL 826842, *3.

### A.     Each class member's home state's laws governs each of his or her claims.

This Court "must apply an individualized choice of law analysis to each plaintiff's claims," using New Jersey's choice of law rules. *Georgine*, 83 F.3d at 627.  The first step is to determine whether there is a conflict between the substance of the potentially applicable laws. *P.V. v. Camp*

---

[15] *See, e.g.*, *Laney*, 2010 WL 3810637, *23; *Demmick v. Cellco Partnership*, 2010 WL 3636216, at *15 (D.N.J.); *Payne*, 2010 WL 2342388, *10; *Agostino*, 256 F.R.D. at 466-67.

*Jaycee*, 962 A.2d 453, 460 (2008). The second step is to determine which state has the "most significant relationship" with the dispute and parties. *Agostino*, 256 F.R.D. at 461.

### 1.   The New Jersey Product Liability Act

The most glaring conflict is the fact that under New Jersey law, Plaintiffs may only assert a product liability claim and an express warranty claim. All of their other claims are preempted . That is an obvious conflict with the laws of other states, most of which do not automatically bar claims for consumer fraud, breach of implied warranty, and unjust enrichment.

New Jersey's Product Liability Act ("NJ PLA") provides "one unified, statutorily defined theory of recovery for harm caused by a product." *In re Lead Paint Litig.*, 924 A.2d 484, 503 (2007). Where a plaintiff complains of harm from a product, only NJ PLA and express warranty claims may be asserted. 2A:58C-1(b)(3) & -2. This ban applies "irrespective of the theory underlying the claim." 2A:58C-1(b)(3); *Sinclair v. Merck*, 948 A.2d 587, 596 (2008). Plaintiffs complain about LG FLWs, so the NJ PLA bars their other claims.[16] Judge Greenaway's decision in a recent  nationwide class action about allegedly defective LG refrigerators is right on point. He held the NJ PLA creates "a clear conflict." *Palmeri v. LG USA*, 2009 WL 1916324, at *5 (D.N.J.).

For a product liability claim, the laws of a plaintiff's home state govern if the product was bought and used and caused injury there. *Yocham v. Novartis Pharms. Corp.*, 2010 WL 3502670, *4-6 (D.N.J.). The presence of the defendant's offices in New Jersey cannot overcome the relationship between the plaintiff's home state and the dispute. *Id.* New Jersey law cannot apply to class members in other states. That alone should end the conflicts of law analysis.

---

[16]   *Sinclair*, 948 A.2d at 595-96; *McDarby v. Merck*, 949 A.2d 223, 278-79 (App. Div. 2008); *Brown v. Philip Morris*, 228 F. Supp. 2d 506, 524 (D.N.J. 2002); *Repola v. Morbark*, 934 F.2d 483, 489-95 (3d Cir. 1991); *McWilliams v. Yamaha*, 780 F. Supp. 251, 262 (D.N.J. 1991); *Walus*, 812 F. Supp. at 42.

2.    **Consumer fraud claims**

a.    **The states' consumer fraud laws conflict.**

The numerous conflicts in the consumer fraud laws of the 50 states are obvious and significant. The Supreme Court has held that the states' laws do not protect consumers "in a uniform manner." *BMW v. Gore*, 517 U.S. 559, 569 (1996). "[C]onsumer protection laws vary considerably," and "courts must respect these differences rather than apply one state's law to sales in other states with different rules." *Bridgestone*, 288 F.3d at 1018.

The "Third Circuit has advised that ... actual conflicts exist between the NJ CFA and the consumer protection laws of other states." *Kalow & Springut v. Commence*, 2011 WL 773229, at *11 (D.N.J.); *Nafar v. Hollywood Tanning*, 2009 WL 2386666, *4 (3d Cir.) ("actual conflicts exist"). Court after court has recognized the exact same thing. (App. A, § A.)

Eight examples of the conflicts, set out in detail in App. A, include the fact that (1) only some states allow a private cause of action for damages. Among those states that do, some but not all require (2) the plaintiff to have relied on the statement or omission; (3) notice by the plaintiff of a violation; (4) ill intent by the defendant; (5) ascertainable loss by the plaintiff; and/or (6) purchase for household (not commercial) use. In addition, (7) the measure of damages varies: some states only allow actual damages, some allow treble damages, some require treble damages, and some allow variable punitive damages. Finally, (8) the statutory limitations periods vary widely, from one year to six years, and start running at different times.

b.    **Home state law governs each consumer fraud claim.**

The most significant relationship test for fraud-related claims requires this Court to apply § 148 of the Restatement (Second) of Conflicts of Laws. Plaintiffs do not mention § 148. Under § 148(1), if false statements were made and received in the state where plaintiff acted on them, its law governs. *Agostino*, 256 F.R.D. at 462-63. Any possible false statement here was made and

33

received — or any omitted statement should have been made and received — in each member's home state. Thus, each member's home state's laws govern. *Laney*, 2010 WL 3810637, *22; *Payne*, 2010 WL 2342388, *8; *Agostino*, 256 F.R.D. at 463.

Plaintiffs may argue that § 148(2) governs. It applies if false statements were made in a different state than where the plaintiff acted on them. There is no evidence of that here, but under § 148(2) home state law would still govern. It specifies the following factors: where (1) plaintiff acted on the statements; (2) plaintiff received them; (3) defendant made them; (4) parties reside or are incorporated; (5) tangible thing is situated; and (6) plaintiff rendered performance.

Factors 1-3 and 5-6 point solely to each Plaintiff's home state, where each Plaintiff received any misstatement (or should have received any omitted statement), bought and paid for the LG FLW, and where it remains today. Factor 4 alone is mixed: each person lives in his or her home state, and LG USA is incorporated in Delaware and does business in Illinois, New Jersey (headquarters), and Alabama (customer service center). (Ex. 55 ¶ 29; Ex. 56 ¶ 7; Ex. 9 ¶ 14.) Thus the § 148(2) factors plainly favor home state law. As the Third Circuit held, a consumer who lives in a state where a product was "marketed, purchased, and used" cannot sue under New Jersey's consumer fraud act, because the plaintiff's home state "bears the most significant relationship" to the claim. *Cooper v. Samsung*, 2010 WL 1220946, *4 (3d Cir.).[17]

### 3.    Breach of warranty claims

#### a.    The states' warranty laws conflict.

"[S]tate laws regarding breach of express and implied warranty ... differ greatly" and "are in conflict." *Payne*, 2010 WL 2342388, at *9. Numerous decisions agree. (App. B, § A.) Seven examples, set out in detail in App. B, include the fact that only some states require (1) privity for an

---

[17] *Nikolin v. Samsung*, 2010 WL 4116997, *4 (D.N.J.); *Demmick*, 2010 WL 3636216, *5; *Warma Witter Kreisler v. Samsung*, 2010 WL 1424014, *4 (D.N.J.); *Fink v. Ricoh*, 839 A.2d 942 at 987 (N.J. Super. 2003).

implied warranty claim; (2) privity for an express warranty claim; and (3) a purchaser to give notice to a seller before asserting a warranty claim. (In states requiring notice, what constitutes proper notice also differs.) In addition, only some states allow (4) a seller to disclaim or modify implied warranties; (5) a seller to limit an implied warranty's duration; and (6) punitive damages. Finally, (7) statutes of limitations vary from 3 to 10 years and begin running at different times.

The five cases Plaintiffs cite in support of their claim that state warranty laws do not conflict (Br. 24-25) do not help them. *Realmuto* and *Dupler* do not mention conflicts of laws. In *Elias v. Ungar's Food Prods.*, the parties did not identify any state law differences. 252 F.R.D. 233, 239 (D.N.J. 2008). And *Prudential* and *P.V.* did not involve warranty claims.

Plaintiffs argue that express warranty claims are "tailor made for certification because they require only proof of warranty and a breach." (Br. 24.) That is not accurate. Although warranty claims always require proof of warranty and breach, they are not the same in all other respects. "Limiting the analysis to the existence" of a few basic "elements ... completely ignores variations among the states in several relevant areas." *Agostino*, 256 F.R.D. at 468.

For implied warranty claims, Plaintiffs concede that privity creates a conflict. (Br. 25.) They attempt to evade it by excluding from their nationwide class people who bought LG FLWs in privity states. (*Id.* 6 n.5 & 25.) But their only explanation of each state's law is a citation to a 16-year-old article. (*Id.*) This leads them to argue that states such as Tennessee, California, and Ohio do not require privity, which App. B shows is wrong.

Plaintiffs do not mention any other difference in the implied warranty laws. They simply assert that all laws are "uniform" because all are based on the Uniform Commercial Code. (Br. 25.) Yet "the Uniform Commercial Code is not uniform," and its lack of uniformity defeats requests for a nationwide warranty class. *Walsh*, 807 F.2d at 1016.

35

### b.     Home state law governs each warranty claim.

The most significant relationship test for warranty claims requires this Court to apply Restatement § 188. *Agostino*, 256 F.R.D. at 464. Plaintiffs never mention § 188. Applying § 188, courts routinely hold that each plaintiff's home state's laws govern warranty claims about a product originally sold by a New Jersey defendant. *Payne*, 2010 WL 2342388, *10. Under § 188, "prospective class members' home states each have the most significant relationship" for warranty claims. *Id.; Clark v. Prudential Ins.*, 2009 WL 2959801, at *20-21 (D.N.J.).

Section 188 uses the following factors: the place of (1) contracting; (2) negotiation; (3) performance; (4) the subject matter; and (5) the parties' domicile, residence, nationality, incorporation, and business. Here, the first four factors point solely to the state where each Plaintiff lives, purchased an LG FLW, and used it. (In addition, the warranty here states that the recipient may have "other rights that vary from state to state" (Ex. 12), which shows an expectation that warranty claims would be governed by each owner's home state's laws. *Laney*, 2010 WL 3810637, *22 (D.N.J.).) The fifth § 188 factor alone is split, as explained above. Only a fraction of one factor points to New Jersey, so home state law governs.

### 4.     Unjust enrichment claims

#### a.     The states' unjust enrichment laws conflict.

States "set different standards for ... unjust enrichment claims." *In re Ford Van*, 2011 WL 601279, *5 (D.N.J.). Unjust enrichment "varies too much from state to state to be amenable to national or even to multistate class treatment." *In re Aqua Dots,* 270 F.R.D. 377, 386 (N.D. Ill. 2010). Numerous other decisions agree. (App. C, § A.)

Five examples of the conflicts, set out in detail in App. C, include the fact that only some states require: (1) a direct conferral of a benefit, and/or (2) the defendant to have a wrongful intent. In addition, only some states allow an unjust enrichment claim: (3) when there is a contract

36

governing the relationship, and/or (4) if there is an adequate remedy at law. Finally, (5) the statutes of limitations vary from two to six years and begin running at different times.

Plaintiffs cite (at 26) just one case — *Mercedes Benz*, 257 F.R.D. 46 (original decision), 267 F.R.D. 113, 119 (D.N.J. 2010) (motion to reconsider) — for the idea that there are no conflicts between the states' unjust enrichment laws. The original decision, with cites to two cases and no analysis, found no conflicts. The two cases were *Agostino*, 256 F.R.D. at 463-64, which cited *Powers*, 245 F.R.D. at 231, and *Powers* itself, which was overturned on appeal with these comments about the analysis on which Plaintiffs now rely: "We are also doubtful that the first step in the choice-of-law analysis [whether there are conflicts] was fully explored by the Court." *Powers*, 2009 WL 826842, *4 n.1; *Vulcan Golf v. Google*, 254 F.R.D. 521, 533 (N.D. Ill. 2008) (disagreeing with the *Powers* district court's decision). Plaintiffs have no good authority.

### b.      Home state law governs each unjust enrichment claim.

The most significant relationship test for unjust enrichment claims requires this Court to apply Restatement § 221. *Powers,* 2009 WL 826842, *5. Plaintiffs also do not mention § 221. Section 221 specifies these factors: the place where (1) the parties' relationship was centered; (2) the defendant received the benefit from the plaintiff; (3) the act of enrichment occurred; (4) the parties reside, do business, or are incorporated; and (5) the physical thing is located. *Id.*

Factors (1) and (2) are inapplicable. Each class member bought an LG FLW from a retailer, not LG USA. There is no direct sales relationship between LG USA and any Plaintiff; any benefit was given to a retailer in each Plaintiff's home state. (And LG USA's customer service center is in Alabama.) Factors (3) and (5) plainly favor home state law. The purchase took place there, and the LG FLW is located there. And factor (4), just as for the other causes of action, is a wash. Taking these factors together, home state law must govern each unjust enrichment claim.[18]

---

[18]   *In re Digitek*, 2010 WL 2102330, at *10 (S.D. W. Va.); *In re ConAgra Peanut Butter*, 251

### 5. New Jersey law does not apply simply because LG USA's headquarters is in New Jersey.

Rather than apply the proper Restatement test to each cause of action, Plaintiffs argue that because LG USA carries on ordinary corporate functions at its headquarters in New Jersey, New Jersey law must apply to every claim in the nation. (Br. 21-22.) They are wrong. Under Restatement § 148(1), the location of headquarters is not even a factor, and under §§ 148(2), 188, and 221, it is only a fractional part of one of five or six factors that favor home state law. Plaintiffs want headquarters to be the only factor, but under the Restatement it is not.

The vast majority of the cases that analyze this question hold that New Jersey headquarters does **not** give New Jersey the most significant relationship to a claim that arises from the purchase and use of a product in another state. As shown by all of the cases cited in App. D, this is true whether the claim is consumer fraud, breach of warranty, or unjust enrichment.

Plaintiffs again rely on a lone outlier, *Mercedes*, 257 F.R.D. 46, to argue that New Jersey has the most significant relationship. (Br. 21.) But *Mercedes* is not good law on this point. In the Third Circuit, *Mercedes* has been cited only once to support applying New Jersey law to other states — and the citation was in a ***dissenting*** opinion. *Cooper*, 2010 WL 1220946, *4 (Ambro, J., dissenting). The Third Circuit majority opinion in *Cooper* **rejected** the central holding of *Mercedes* and held instead that a claim about a product "bears the most significant relationship with … the state in which [the product] was marketed, purchased, and used." *Id.* *4.

Nor has *Mercedes* proved more persuasive elsewhere: no decision cites *Mercedes* for the idea that one state's law applies to products sold in other states. In this District, several decisions have explicitly disagreed with *Mercedes*. *Agostino*, 2010 WL 5392688, *7, 9; *Nikolin*, 2010 WL

F.R.D. 689 at 697 (N.D. Ga. 2008); *Sears,* 2007 WL 4287511, *10; *Clay*, 188 F.R.D. at 497, 500; *Samuels v. Old Kent Bank*, 1997 WL 458434, *13 (N.D. Ill.) (applying law of plaintiffs' home state, not defendant's headquarters)

4116997, *4; *Laney*, 2010 WL 3810637, *21 (same).  As a result, *Mercedes* is not good law.

The only other decision Plaintiffs cite (at 22) is *Dal Ponte* 2006 WL 2403982, *1.  But it applied the old "government interest" choice of law test, rather than the current "most significant relationship" test.  *Id.* *5.  In addition, *Dal Ponte* did not analyze choice of law for warranty or unjust enrichment claims.  Finally, *Dal Ponte* involved meaningful contacts with New Jersey, including direct consumer contacts with the defendant in New Jersey.  *Id.* *7.  Thus, Plaintiffs fail to cite a single viable case applying New Jersey law to purchases of products in other states.

### B.   A nationwide class applying the laws of 50 states would not be manageable.

As explained above, Plaintiffs do not even attempt to argue that this Court should certify a nationwide class governed by 50 states' laws.  Managing such a class would be impossible: it would require applying, to millions of class members, dozens of permutations of conflicting state law requirements.  It would violate predominance and superiority.[19]  It would also mean that Plaintiffs are neither adequate nor typical.  *In re Vioxx*, 239 F.R.D. 450, 460 (E.D. La 2006) (New Jersey law).  For these reasons, no federal court has ever conducted a class trial applying every state's laws.  Plaintiffs offer no reason for this Court to be the first.

### III.   Any nationwide or state class under New Jersey law violates Rule 23.

### A.   No class member has any valid claim under New Jersey law.

There is no reason to certify a class if its members have no claims.  No class member here has any valid claim under New Jersey law.  At the outset, the NJ PLA bars claims other than for violation of the NJ PLA and breach of express warranty.  Thus, no class member has any claim

---

[19]   *Dickerson v. Electrolux.*, (C.D. Cal. 2011) (Ex. 57) (holding, in a FLW case, that it "is not manageable to hold one trial involving seven separate states' consumer protection and warranty laws); *Laney*, 2010 WL 3810637, *23; *Payne*, 2010 WL 2342388, *10; *Agostino*, 256 F.R.D. at 467-68; *Clay*, 188 F.R.D. at 501; *ConAgra*, 251 F.R.D. at 698-700.

under New Jersey law for the consumer fraud, breach of implied warranty,[20] or unjust enrichment claims actually pleaded in the Consolidated Complaint.[21]

Any NJ PLA claim in this case would fail. Plaintiffs sued because their LG FLWs have buildup or odor — in other words because their LG FLWs are damaged. But the NJ PLA only allows recovery for "physical damage to property, *other than to the product itself*." N.J.S.A. § 2A:58C-1(b)(2) (emphasis added). When a plaintiff complains about a product, but seeks recovery for an injury that is nonrecoverable under the NJ PLA, the plaintiff has no claim. *Sinclair*, 195 N.J. at 64-66; *Walus,* 812 F. Supp. at 45. For that reason, no class should be certified under the NJ PLA.

Nor does any class member have a valid express warranty claim. The warranty applies only to an LG FLW that "proves to be defective in material or workmanship." (Ex. 12.) That is a warranty that the proper materials were used for each part (material) and that the machine was crafted or assembled with the proper degree of skill (workmanship). (Ex. 6 at 9; Ex. 13 at 74.) There is no claim here of any defect of material or workmanship. (*Id.*; Ex. 14 at 138, 162.) Plaintiffs' claim is for design defect, and a materials and workmanship warranty does not cover it. *Cooper,* 2010 WL 1220946, *2; *Contino v. BMW*, 2008 WL 2940515, *4 (D.N.J.).[22]

Plaintiffs' only argument for warranty coverage is that LG USA's Rule 30(b)(6) witness for

---

[20]   The implied warranty claim also fails because the written warranty conspicuously disclaimed it—"**THIS WARRANTY IS IN LIEU OF ANY OTHER WARRANTY … INCLUDING WITHOUT LIMITATION, ANY WARRANTY OF MERCHANTABILITY**" (Ex. 12.)—as authorized under New Jersey law. N.J.S.A. § 12A:2-316; *Skalski v. Elliot Equip.*, 2010 WL 891582, *5 (D.N.J.) (conspicuously disclaimed implied warranty "cannot stand").

[21]   The unjust enrichment claim also fails because no class member conferred a benefit directly on LG USA: all bought from retailers. When "the purchase was through a retailer," there is "no relationship conferring any direct benefit on [defendant] through [plaintiff's] purchase," and the plaintiff has no unjust enrichment claim. *Cooper*, 2008 WL 4513924, *10 (D.N.J.). In addition, where unjust enrichment is based on a failure to disclose, as here. it may not be asserted as a separate cause of action. *Blystra v. Fiber Tech Group, Inc.*, 407 F. Supp. 2d 636, 645 n.11 (D.N.J. 2005); *Christie v. Basic Research*, 2011 WL 1322986 (N.J. Super.).

[22]   *Mack Trucks v. BorgWarner Turbo*, 2011 WL 1045108, *4 (E.D. Penn.); *In re Toyota Motor*, 2010 WL 4867562, *26 (C.D. Cal.); *Voelker v. Porsche Cars*, 353 F.3d 516, 527 (7th Cir. 2003).

warranty topics supposedly "admitted that odor complaints resulting from Mold Problems are [a] covered warranty item." (Br. 15, 24.) For several reasons, Plaintiffs are wrong. First, the testimony they cite does not state that odor complaints are covered by the warranty. Second, the witness repeatedly denied that odor complaints are covered under the warranty. (Ex. 13 at 215, 217, 219, 222-23.) Third, the scope of the warranty is a legal question to be resolved by this Court, not something for a fact witness to interpret. At the deposition, Plaintiffs' counsel repeatedly insisted, "I'm not asking you for a legal conclusion" (*id.* 73), but Plaintiffs are now going back on his word and attempting to use a fact witness to make an invalid legal point.

### B.   Individual factual issues predominate.

Even if any class member had a viable cause of action, individual factual issues would predominate, a class trial would be unmanageable, and certification would violate Rule 23.

### 1.   New Jersey Product Liability Act

As explained above, the NJ PLA bars several claims, putting itself in their place. Claims under the NJ PLA are "ordinarily not appropriate for class treatment." *In re Rezulin,* 210 F.R.D. 61, 65 (S.D.N.Y. 2002). Product liability claims "raise a host of individual issues." *Id.* 66. Thus, "all relevant Courts of Appeals, and the bulk of relevant district court decisions have rejected class certification in products liability cases." *Id.* 65. All three cases to consider class certification under the NJ PLA have come to the same conclusion, and denied certification. *Id.*; *Cosentino v. Philip Morris,* 1998 WL 34168879, *10 (N.J. Super.); *Cartiglia v. J&J,* 2002 WL 32155348, *21 (N.J. Super.). That is because the NJ PLA requires proof specific to each class member on five issues.

The first issue is the need for individual proof of buildup or odor in each LG FLW. The NJ PLA does not authorize recovery for a product "that is and has been working normally." *Walus,* 812 F. Supp. at 44. It does not allow a claim "that a normally functioning product might fail at some unknown time." *Id.* Thus, facts specific to each class member, involving the member's

testimony and/or a disassembly and inspection of the machine (Ex. 14 at 187; Ex. 16. at 137), is needed to determine whether it has any buildup or odor. Roughly 99% do not.

The second issue is the need for individual proof of the design of each LG FLW. The design changed in important ways over the years. Whether any particular LG FLW is defective depends on that particular LG FLW's features. *Cosentino,* 1998 WL 34168879, \*10 (no class when different models used); *Laney,* 2010 WL 3810637, \*17 (individual issues predominate if different versions of the product have modifications); *Am. Med.,* 75 F.3d at 1085 (where "products are different, each plaintiff has a unique complaint"); *Ford Paint,* 182 F.R.D. at 220 (same).

The third issue is the need for individualized proof about the state of the art in FLW design at the time each person bought his or her LG FLW. Under the NJ PLA, a product is not defective if it is state of the art.[23] *Cavanaugh v. Skil,* 751 A.2d 518, 520 (N.J. 2000). The proof for a plaintiff who purchased in 2002 would be different than the proof for a plaintiff who purchased in 2010. The changes in design of the LG FLWs over time further complicates this analysis. To determine whether a particular LG FLW was up to the state of the art at a particular time requires comparing each class member's particular LG FLW to the state of the art prevailing at the time it was made.

The fourth issue is the need for individualized proof about each person's own installation, use, and maintenance. The NJ PLA requires proof that the product (instead of something else) caused harm, N.J.S.A. 2A:58C-2, which is plainly an individual issue in light of Caulfield's testing showing that properly used LG FLWs have no problems. *Johansen v. Makita USA,* 607 A.2d 637, 646 (N.J. 1992) (plaintiff's (mis)use must be evaluated). This "necessarily dissolves into a myriad of individualized causation inquiries." *Rezulin* 210 F.R.D. at 66. In addition, whether a design is defective is determined by the risk-utility test, *Jurado v. Western Gear Works,* 619 A.2d 1312, 1318 (1993), which considers each person's own use of the product. A "tedious individual investigation"

---

[23] Wilson and Yang admitted that ***all*** LG FLWs are state of the art. (Ex. 14 at 73; Ex. 16 at 131.)

would be required to apply the risk-utility test to "many variables," such as installation, use, and maintenance, each of which differ among class members. *Cartiglia*, 2002 WL 32155348, *22.

The fifth issue is the need for individualized proof about the warnings actually provided. The treatment of odor issues in the manuals changed over time, and news articles about FLW odor issues appeared at various times. Given that not all class members received the same information, certification is inappropriate. *Cartiglia*, 2002 WL 32155348, *21; *Rezulin*, 210 F.R.D. at 67.

### 2.   New Jersey Consumer Fraud Act claims

Even if Plaintiffs could assert a NJ CFA claim, predominant individual factual issues preclude certification. The NJ CFA requires each plaintiff to establish an "ascertainable loss" with evidence proving "an actual loss." *Thiedemann v. Mercedes-Benz USA,* 872 A.2d 783, 792 (N.J. 2005). There is no classwide proof of loss. 99 percent of class members are happy with their LG FLWs. Thus, "proof of 'ascertainable loss' will inescapably involve individualized factual issues," precluding class certification. *Mann*, 2010 WL 4226526, *17, *Fink*, 839 A.2d at 990.

Plaintiffs argue that ascertainable loss occurs when a consumer "doesn't get what he paid for." (Br. 23, citing *Union Ink.*) But even after *Union Ink,* a loss to be actionable "still must be objectively ascertained and is not defined by the subjective wants of plaintiffs." *Thiedemann*, 872 A.2d at 790. "[C]ertainly implied in the concept of ascertainable loss is that it is quantified and measurable." *Id.* 793. The Supreme Court also cautioned that the "mere fact that [a] ... defect arises does not establish ... an actual and ascertainable loss" to the purchaser. *Id.* 794. A "hypothetical" or "speculative" asserted loss in value due to a "defect" is not enough: without expert testimony "that the resale market ... had been skewed by the 'defect,'" there is no proof of ascertainable loss. *Id.* 795. Here, there is no such testimony.

### 3.   New Jersey warranty claims

Even if Plaintiffs could assert New Jersey express and implied warranty claims, dominant

individual factual issues preclude certification. For any warranty claim, each class member "must within a reasonable time after he discovers or should have discovered any breach notify the seller." N.J.S.A. §§ 12A:2-607(3)(a), 2-714(1). Even if this lawsuit itself constitutes proper notice (it does not), "whether this notice-by-suit was provided within a reasonable time," *Strzakowlski v. GM*, 2005 WL 2001912, *3 (D.N.J.), is an individual question for each class member requiring proof about when each person "discovers or should have discovered any breach." That individual issue makes certification inappropriate. *Ford*, 174 F.R.D. at 347.

### C. Individual factual issues dominate LG USA's defenses.

Two of LG USA's universal defenses present dominant individual factual issues. The first is statutes of limitations. (Ex. 55 at 52.) The limitations period begins running (1) for NJ CFA, upon discovery, (2) for breach of warranty, upon delivery, (3) for unjust enrichment, upon the occurrence of the wrong, with possible application of the discovery rule. (Apps. A, B, C.) For NJ PLA, it begins running when the plaintiff knew or should have known (s)he sustained an injury. *Wade v. Armstrong*, 746 F. Supp. 493, 499 (D.N.J. 1990). Thus, each class member's limitations period will begin running on, and expire on, a different day. Some claims could be timely, some will be barred, and this must be determined for each class member and claim individually. It "raises individual issues that prevent class certification." *Barnes*, 161 F.3d at 149.

The second defense is comparative negligence. (Ex. 55 at 52.) If a plaintiff is more than 50 percent responsible for an injury, (s)he cannot recover; and if responsible by under 50 percent recovers proportionately less. N.J.S.A. § 2A:15-5.1. The New Jersey Supreme Court applies these "principles of fault, regardless of the label affixed to the action." *Scottsdale v. Weiner*, 2010 WL 445649, *7 (D.N.J.). Thus, comparative negligence applies to all of Plaintiffs' causes of action.[24]

---

[24] *In re Merritt v. Logan*, 901 F.2d 349, 364-65 (3d Cir. 1990) (breach of warranty); *Gennari v. Weichart Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (NJ CFA); *Hulmes v. Honda Motor Co., Ltd.*, 960 F. Supp. 844, 861 (D.N.J. 1997) (NJ PLA).

Assessing each class member's role in any injury would of course require analyzing numerous individual factual issues, most importantly the person's installation, use, and maintenance. Each class member's comparative negligence cannot be proved with common proof, so certification is inappropriate. *Barnes*, 161 F.3d at 143; *Rezulin*, 210 F.R.D. at 67.

### E. A class action under New Jersey law would be unmanageable.

As explained above, whether a class action would be manageable is the key factor in evaluating superiority. A class under New Jersey law suffers from all of the same manageability problems as does any class in this case, explained above. And it suffers from *even more* problems on top of those. *Additional* individual factual issues that face any class under New Jersey law, beyond the 20 issues explained in section I. B., include whether each class member (21) owns an LG FLW with a state-of-the-art design, (22) was sufficiently warned, (23) suffered an ascertainable loss, (24) gave notice of the problem within a reasonable time, (25) is partially responsible for any injury, so as to limit or bar any recovery. No case in which all of those issues require individual proof can be managed as a class action. This Court should not certify any New Jersey law class.

### IV. The other proposed state classes violate Rule 23.

Plaintiffs ask to certify classes in 13 other states but do not even attempt to explain why certification is appropriate under those states' laws. Plaintiffs simply collect random class decisions in a "State-by-State Legal Citation Chart." (Br. 29.) They make no attempt to compare those cases to this case, or to offer any arguments about this case in particular. Whether or not a class in some other case could ever be appropriate, Plaintiffs failed to meet their burden of showing that one is appropriate *here*. Citing "an arguably similar case in which certification was granted does not ease the burden on a plaintiff to demonstrate that the requirements of Rule 23 have been met," *Agostino*, 256 F.R.D. at 458, and here Plaintiffs make no attempt to carry the burden at all.

## CONCLUSION

For the foregoing reasons, LG USA respectfully urges this Court to deny Plaintiffs' Motion for Class Certification.

WINSTON & STRAWN LLP
Attorneys for Defendant
LG Electronics USA, Inc.

Dated: May 13, 2011      By:     s/ James S. Richter
                                         James S. Richter
                                         jrichter@winston.com
                                         Melissa Steedle Bogad
                                           mbogad@winston.com

Lawrence R. Desideri
Scott P. Glauberman
Andrew M. Johnstone
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

## CERTIFICATION OF SERVICE

I hereby certify that on May 13, 2011, copies of the foregoing Defendant LG USA's

Opposition to Plaintiffs' Motion for Class Certification and supporting documents were

electronically filed and served by electronic mail upon the following:

Steven A. Schwartz
Alison R. Gabe
CHIMICLES & TIKELLIS
361 West Lancaster Avenue
Haverford, Pennsylvania 19041

Oren Giskan
GISKAN SOLOTAROFF ANDERSON & STEWART, LLP
11 Broadway – Suite 2150
New York, New York 10004

Paul M. Weiss
George K. Lang
Richard J. Burke
FREED & WEISS, LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602

James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
475 White Horse Pike
Collingswood, New Jersey 08107

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

I certify that the foregoing statements made by me are true.  I am aware that if any of the

foregoing statements are willfully false, I am subject to punishment.

s/ James S. Richter
James S. Richter

Dated: May 13, 2011