**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE: LG FRONT LOAD WASHING MACHINE CLASS ACTION LITIGATION | Civil Action No. 08-51(FSH) |

-------------------------------------------------------------------------------------------------------------------

**PLAINTIFFS' BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION TO STRIKE**

-------------------------------------------------------------------------------------------------------------------

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Rd.
Roseland, New Jersey 07068
(973) 994-1700

George K. Lang
Richard J. Burke
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
(312) 220-0000

Jonathan D. Selbin
Jason Lichtman
Mark P. Chalos
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, New York 10013
(212) 355-9500

Co-Counsel for Plaintiff
and the Proposed Class

Oren Giskan
GISKAN SOLOTAROFF
ANDERSON & STEWART
11 Broadway, Suite 2150
New York, New York 10004
(212) 847-8315

James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER &
SHAH, LLP
457 While Horse Pike
Collingswood, New Jersey 08107
(856) 858-1770

Steven A. Schwartz
CHIMICLES & TIKELLIS, LLP
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania
(610) 642-8500

**TABLE OF CONTENTS**

Table of Authorities ..................................................................................................................ii

Introduction ............................................................................................................................1

Argument .................................................................................................................................2

I.      LG-Korea Statements About the Mold Defect Are
        Party Admissions Because LG-USA Adopted Them
        While Collaborating on the Defect ............................................................................2

II.     Plaintiffs' Declarations Do Not Contradict Their Deposition
        Testimony and Are in Any Event Not Subject to The Sham Affidavit Rule ......................8

        a.      Plaintiffs' Declarations Are Not Inconsistent
                With Their Prior Deposition Testimony ...................................................8

        b.      Any Inconsistencies in Plaintiffs Declarations
                Are Not Subject to the Sham Affidavit Doctrine....................................11

III.    LG's Changes to the Design of the FLW are Admissible ...................................12

IV.     Plaintiffs Do Not Rely on Inadmissible Hearsay ...................................................15

V.      Patent Records Are Not Excludable ......................................................................16

VI.     Plaintiffs Will Remove Any Mention of Class Member
        Declarations From Expert Reports...........................................................................18

VII.    The Procter & Gamble & Tonga Washoon Statements
        Are Admissible as Business Records.......................................................................18

        a.      Exhibit 1 is Admissible......................................................................19

        b.      Exhibits 14, 43 and 44 are Admissible ...............................................20

VIII.   Relevant Excerpts of the Plaintiff's Exhibits Were Properly Provided.................22

Conclusion .............................................................................................................................24

## TABLE OF AUTHORITIES

**Cases**

*Agere Sys v. Adv. Enviro Tech*, 602 F.3d 204 (3d Cir. 2010) ................................................ 16

*Baer v. Chase*, 392 F.3d 609 (3d Cir. 2004) ........................................................................... 11

*Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358 (3d Cir. 1992) ............... 3

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) .................................................................... 15

*Cates v. Sears, Roebuck & Co.*, 928 F.2d 679 (5th Cir. 1991) ................................................ 14

*Chase v. General Motors Corp.*, 856 F.2d 17 (4th Cir. 1988) ................................................. 14

*City of Richmond, Virginia v. Madison Mgmt. Group*, 918 F.2d 438 (4th Cir. 1990) ............... 14

*Colida v. LG Electronics, Inc.*, 77 Fed. Appx. 523 (Fed. Cir. 2003) ......................................... 6

*Drennan v. PNC Bank, NA*, 622 F.3d 275 (3d Cir. Pa. 2010) ................................................. 11

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ............................................................... 11

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) ............................................................... 15

*Farrell v. Planters Lifesavers Co.*, 206 F.3d, 271 (3d Cir. 2000) ............................................ 10

*Fisher v Ciba Specialty Chems. Corp.* 238 F.R.D. 273 (S.D. Ala. 2006) ................................ 16

*Force v. ITT Hartford Life & Annuity Ins. Co. (In re Hartford Sales Practices Litig.)*,
  192 F.R.D. 592 (D. Minn. 1999) ......................................................................................... 16

*Fortney v. Schultz*, 2010 U.S. Dist. LEXIS 6644 (W.D. Wis. Jan. 27, 2010) ............................ 10

*Huffman v. Caterpillar Tractor Co.*, 908 F.2d 1470 (10th Cir. 1990) ...................................... 14

*Hulmes v. Honda Motor Co.*, 960 F. Supp. 844 (D.N.J. 1997) ............................................... 22

*In re Air Crash Disaster*, 86 F.3d 498 (6th Cir. 1996) ............................................................ 14

*In re Hydrogen Peroxide*, 552 F.3d 305 (3d Cir. 2008) .......................................................... 15

*Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247 (3d Cir. 2007) ................................... 11

*Kalow & Springut, LLP v. Commence Corp.*, 2011 U.S. Dist. LEXIS 19772 (D.N.J. 2011) ...... 15

*Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318 (3d Cir. 2005) ........................................... 19

*McQueeney v. Wilmington Trust Co.*, 779 F.2d 916 (3d Cir. 1985) ........................................... 3

*Mehl v. Canadian Pacific Railway Ltd.*, 227 F.R.D. 505 (D.N.D. 2005) .................................. 16

*Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*,
 2009 U.S. Dist. LEXIS 103104 (D.N.J. Nov. 5, 2009) ......................................................... 17

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143 (D. Del. 2005) .. 6

*Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578 (W.D. Mich. 2001) ...................................... 16

*Roe v. Operation Rescue*, 123 F.R.D. 500 (E.D. Pa. 1988) ................................................... 15

*Romeo v. UnumProvident Corp.*, 2008 U.S. Dist. LEXIS 10199 (E.D. Pa. Feb. 11, 2008) ......... 10

*Rosario-Guerrro v. Orange Blossom Harvesting, Inc.*, 265 F.R.D. 619 (M.D. Fla. 2010) .......... 23

*Rozier v Ford Motor Co.*, 573 F2d 1332 (5th Cir. 1978) ......................................................... 13

*U.S. Fid. & Guar. v. Baker Material Handling Corp.*, 62 F.3d 24 (1st Cir. 1995) .................... 14

*United Nat. Ins. Co. v. Aon Ltd.*, 2008 U.S. Dist. LEXIS 81825 (E.D. Pa. Oct. 15, 2008) ......... 21

*United States v. Kale*, 2010 U.S. Dist. LEXIS 41662 (E.D. Pa. 2010) ...................................... 20

*United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357 (D. Mass 1950) ............................ 4

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) .................................................................... 4

*Walling v. Brady*, 1995 U.S. Dist. LEXIS 10602 (D. Del. 1995) ............................................. 15

**Other Authorities**

Fed.R.Evid. 801, 1972 Advisory Committee Notes to Subdivision (d)(2)(D) ............................. 3

**Rules**

37 C.F.R. § 1.56(a) (2007) ..................................................................................................... 17

ii

Fed.R.Evid. 106 ..................................................................................................... 22
Fed.R.Evid. 407 ................................................................................................ 13, 14
Fed.R.Evid. 604 ..................................................................................................... 23
Fed.R.Evid. 801(d)(2) ........................................................................................ 2, 20
Fed.R.Evid. 803(3) ................................................................................................... 7
Fed.R.Evid. 803(6) ................................................................................................. 22
Fed.R.Evid. 803(8) ................................................................................................. 17

**INTRODUCTION**

The matter presently before the Court is Plaintiff's motion for class certification, not a motion for summary judgment governed by Rule 56.  Yet LG's primary argument in opposition to class certification is directed to the merits of Plaintiffs' claims, that its front loading washer ("FLWs") do not have a design defect that leads to mold and odor problems.  Whether true or not, that position has little to do with whether this case, *i.e.,* the existence of a defect, can be tried based on common evidence.

As part of its opposition to class certification via an attack on the merits, LG seeks to exclude evidence that is appropriately before the Court, namely that all of LG's FLWs have a design defect.  For example, LG seeks to strike translations of its parent company's Korean language documents, not on the grounds that the translations are inaccurate, but that they were not certified to LG's satisfaction. LG also seeks to evade the Court's consideration of evidence from LG's parent with whom LG worked closely on the design and marketing of the machines that are the subject of this lawsuit.  LG's motion to strike is an unnecessary diversion from the Court's task under Rule 23, which is to rigorously evaluate whether this case can be tried with predominantly common evidence.  Sorting out translations is a matter for the pretrial conference, and the connection between LG and its Korean parent is a matter for the jury.  LG's motion to strike is baseless and should be denied.

1

**ARGUMENT**

I.    **LG-Korea Statements About the Mold Defect Are Party Admissions Because LG-USA Adopted Them While Collaborating on the Defect**

Discovery thus far clearly shows that LG-USA and LG-Korea were working as one with regard to the FLWs marketed and sold in the United States. As will be discussed below, they adopted one another's statements, engaged in dialogue about the mold defect for years, and collaboratively sought to address the mold problems and establish domination of the North American market for FLWs, and therefore the statements by both corporations are party admissions. LG nonetheless attempts to shield certain of these admissions by claiming statements in those documents are hearsay. LG's argument fails for several reasons.

First, LG has not asserted that these documents are not its own business records, as challenged exhibits 2, 4, 10, 17, 19, 22-25, 28-36, 48, and 50 are documents which were produced by LG, and which LG concedes (at page 7 of its Brief) were in its possession. These documents were clearly received in the ordinary course of business, making them not hearsay.

Second, LG's possession of those documents demonstrates that it knew of the design defects which are discussed in the documents. Even if these documents were hearsay, which they are not, they would be admissible to prove LG's knowledge of the defects and knowledge of failed attempts at remediation. State of mind is of course an exception to the hearsay rule.

Third, these documents are party admissions under Fed.R.Evid. 801(d)(2), which does not require the words that constitute the admission to flow from the mouth of the party to whom the admission is attributed. Rather, an admission of a party exists when any of the following is found:

(A)    the party's own statement, in either an individual or a representative capacity or

(B)    a statement of which the party has manifested an adoption or belief in its truth, or

(C)    a statement by a person authorized by the party to make a statement concerning the subject, or

(D)    a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or

(E)    a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

The primary basis for concluding that the documents are an admission by a party opponent is admission by adoption, as documents which are created by multiple people, including the employer of the person against whom they are to be admitted, are admissions of a party opponent when they are adopted by the party opponent.  *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 930 (3d Cir. 1985).  The Notes of the Advisory Committee on Rules explain that the test for adoption is a practical one:

> Under established principles an admission may be made by adopting or acquiescing in the statement of another. While knowledge of contents would ordinarily be essential, this is not inevitably so: "X is a reliable person and knows what he is talking about." See McCormick § 246, p. 527, n. 15.  Adoption or acquiescence may be manifested in any appropriate manner. When silence is relied upon, the theory is that the person would, under the circumstances, protest the statement made in his presence, if untrue. The decision in each case calls for an evaluation in terms of probable human behavior.

Fed.R.Evid. 801, 1972 Advisory Committee Notes to Subdivision (d)(2)(D)

LG erroneously concludes that the hearsay rule ought to exclude the Korean statements because it argues that LG-Korea and LG-USA did not have an agency relationship.[1]  But the

---

[1]    In fact, there is an agency relationship.  LG would have the Court adopt an overly-formulaic reading of principles of agency in order to exclude this evidence as hearsay. It is beyond cavil that the statement of a subsidiary may be attributed to its corporate parent, when the subsidiary acts as an agent of the parent. *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1373 (3d Cir. 1992).  If LG-Korea, despite being the parent, acted as the agent of

3

evidence shows that the two corporations were in fact working interdependently on the mold issues for years.  First, the challenged exhibits themselves make clear that LG-Korea and LG-USA were acting together in the North American market.  For example, Exhibit 10 specifically discusses the "North American market" and goals in North America: "Best Quality in North American market, to achieve global top 1 player by 2007."  Exhibit 17 bears the LG USA icon and makes no mention of LG-Korea, and describes consumer surveys undertaken on a city by city basis in the United States ("the result of Home Visit & Sales person interview").  LG claims this is a Korean document, and not a statement of LG, yet on its very face this document appear to demonstrate collaboration between LG-Korea and LG-USA to address the mold problem in the front loading machines.  Exhibit 19 specifically discusses the "LG Electronics North American Service Call Rate."  Exhibits 22-25, 28-36, 48, and 50 show, *inter alia*, that the LG odor defect was confirmed in 2005 on a trip to North America, that LG considered and knew of ameliorative measures attempted by other front loading machine manufacturers, and that LG monitored consumer complaints and the progress of litigation against similar machines.

---

LG-USA for the specific purpose of addressing complaints and developing a redesign to address the mold problem, then regardless of corporate formalities, the LG-Korea statements made in the course of that agency should be admissible.  Any other result would allow any U.S. corporation to evade liability by creation of a foreign parent corporation and asking the parent to do its bidding.  But in many contexts, courts recognize fluidity in the roles of the subsidiary and parent, and the communication between them.  For example, communications between employees of a subsidiary and the parent corporation's counsel may be subject to attorney-client privilege.  *See Upjohn Co. v. United States*, 449 U.S. 383 (1981) (implicitly assuming that managers of foreign subsidiaries and affiliates are employees for the purpose of discussing the attorney-client privilege and work-product issues); *United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357, 359 (D. Mass 1950) (construing the attorney-client privilege to encompass communications from subsidiaries).  Notably, the vicarious admission rule of Federal Rule of Evidence 801(d)(2)(D) does not require that a declarant have authority to bind, *Big Apple* at 1372, but only that the statement was made in the course of the agency relationship.  Here, it is clear from the Lee deposition testimony cited *infra* that the joint efforts to remedy the defects in the FLWs went on for years.  Ex. 1 (Lee Dep.) p. 193, l. 7 to p. 195, l. 23; p. 244 , l. 12 to p. 245  l. 18; p. 247, l. 3 to p. 250  l. 6.

Second, the deposition testimony shows that not only did LG-Korea work with LG-USA to put the FLWs into the stream of United States commerce together, they examined the defective returned machines together.  Ex. 1 (Lee Dep.) p. 193, l. 7 to p.. 195, l. 23.  Hee Jin Lee, Senior Director of Research and Development for LG-USA, explained that LG-USA was actively involved in the LG-Korea attempts to ameliorate the FLW defect, and that he participated in managing that process.  He began working for LG-USA in 2002, *See* Ex. 1 (Lee Dep.) p. 7, l. 16, and continuously communicated with LG-Korea about the mold defect.  *Id.* p. 195, l. 8-18.  LG-USA does not deny the mold problem is discussed in the documents and clearly adopted and acquiesced to the Korean statements about the defect.

LG-Korea, after manufacturing the product and sending it to LG-USA to market and sell to the North American consumer, would then receive the defective products back again from the United States, and test them.  (*See* Ex. 1 (Lee Dep.) at 93, l. 12 to p. 94  l. 14).  Thus, the statements by LG-Korea about the design defects are premised on information received from the United States.  This is all the more reason that the LG-USA defendant did not challenge the statements made about mold problem in the machines sold in the United States, but rather, adopted them as true statements.  Importantly, LG-USA relied upon Korean documents.  Lee explained that as an LG-USA employee, working with LG-Korea on research and development, he often shared and used LG Korea documents. *Id.* p. 244 , l. 12 to p. 245  l. 18.  *See also Id.* p. 247, l. 3 to p. 250  l. 6.

It is clear that each corporation "manifested an adoption or belief in [the] truth" of the statements they made to each other, because it was necessary to so do in order to jointly plan to address the mold defect.  In the statements back and forth, by both LG-USA and LG-Korea, the mold problem is admitted and acknowledged as real.  There is simply no statement offered by

defendant where, after the receipt of a Korean document, LG-USA protests the assertions in the Korean document or denies that there is a mold problem. Quite the opposite. The actions of LG were clear.  LG-USA adopted and acquiesced to the statements of LG-Korea, as part of a continuing discussion about the mold defect.

Having absolutely no evidence to support the fiction that the two corporations acted separately on the mold issues, defendant cites to two inapposite cases. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 144 (D. Del. 2005) concerned subpoena power in the Third Circuit. In *Power Integrations,* LG-USA sought to quash a non-party subpoena that had been served by the plaintiff in a patent infringement suit against the defendant Fairchild concerning a semiconductor transistor device.  LG-USA had informed the plaintiff that it possessed no responsive documents, and the plaintiff insisted that LG-USA also request documents for review from its parent LG-Korea.  In addition to arguing that LG-USA and LG-Korea are separate corporations, LG also argued that the information sought by plaintiff (*i.e.*, what Fairchild-produced semiconductor transistors were in the products made in Korea) would ultimately be too burdensome to produce.  The court also considered the fact that the Third Circuit is not as lenient at the Second Circuit in its interpretation of the meaning of "control" in the context of determining whether an entity can be forced to request documents, and ultimately decided that the plaintiff should have to subpoena LG-Korea directly if it wished to have the document production.

*Colida v. LG Electronics*, *Inc.*, 77 Fed. Appx. 523 (Fed. Cir. 2003) dealt with the LG cell phone business, not the washer business.  In that case the Korean parent corporation was sued for patent infringement by the holder of a cell phone patent, and the plaintiff failed to serve the

Korean company, serving only the LG-USA subsidiary. The case was dismissed for lack of jurisdiction and insufficient service. The court noted:

> … (iv) LG Electronics USA has no relationship to LG Electronics [ sic] cellular telephone business; and (v) LG Electronics USA does not design, make, import, or sell any cellular telephones, including the accused LX 5350 cellular telephone.

*Colida*, 77 Fed.Appx. at 524. The court noted that plaintiff had not pled that the phones in question were sold by the New Jersey corporation after production in Korea, and that if he had, the decision might have been different. *Id*. at 526. This case is clearly distinguishable because it does not concern service of process issues, and furthermore LG-USA is heavily involved in the research, design, and selling of the FLWs. (*See, e.g.,* Ex. 1 (Lee Dep.) p. 193, l. 7 to p. 195, l. 23, and p. 247, l. 3 to p. 250 l. 6.)

Here, unlike *Power Integrations* and *Colida*, LG-USA and LG-Korea have been working together to develop, import, market and sell the machines in the United States. Defendant admits LG-Korea developed the patent applications and supplied the washing machines to LG-USA, and LG-USA then marketed and sold them to the United States market, and the evidence shows that they worked as one to attempt to address the design defect.[2] Therefore, the statements challenged by the defendant are not hearsay, but are party admissions.

---

[2]     Even if, *arguendo*, it were appropriate to use trial evidentiary standards at this juncture, and even if the hearsay rule did apply, and even if the LG-Korea entity was found to be acting wholly independently from LG-USA – which it was not – then the exception of Fed.R.Evid. 804(b) for statements against interest would apply to the statements which tend to show that LG-Korea was facing and considering civil liability risks in North America. In addition, because these documents describe LG's plans and designs on the North American market, they qualify under the exception to the hearsay rule for "statement[s] of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design….)" Fed.R.Evid. 803(3).

## II.    Plaintiffs' Declarations Do Not Contradict Their Deposition Testimony and Are in Any Event Not Subject to The Sham Affidavit Rule

In connection with Plaintiffs' class certification motion, in lieu of appending hundreds of pages of deposition excerpts, Plaintiffs submitted declarations from proposed class representatives to summarize Plaintiffs' experiences with their LG FLW's.[3]   Plaintiffs' deposition testimony is not only consistent with their subsequent declarations, but any inconsistencies that may exist are not governed by the "sham affidavit" doctrine, which only applies in the summary judgment motion context, not the class certification motion context, and in any event does not stand for the proposition that plaintiffs' declarations should be disregarded, as LG suggests.

### a.    Plaintiffs' Declarations Are Not Inconsistent With Their Prior Deposition Testimony

LG argues that Plaintiffs' sworn statement that they purchased their washing machines "in part because it was advertised as an efficient appliance" is contradicted by certain Plaintiffs' testimony that they could not recall specific LG washing machine advertisements at the time of their deposition. On its face, this argument does not identify a direct inconsistency, and LG's attempt to invent inconsistency range from the ridiculous to the inaccurate to the unfair. For example, LG cites Plaintiff Ashe's testimony that he reviewed "circulars" from Best Buy and Home Depot in an apparent attempt to distinguish "circulars" from "advertisements," (Opp. Appx. E pg. 1) LG cites Plaintiff Boone's testimony that she couldn't "recall" the advertisements she saw, (Opp. Appx. E at 1), when she later testified that she *did* rely on representations from advertising and on the washer itself, Ex. 2 (Pl. Dep. Chart) ¶A); LG cites Plaintiff L. Grosso's

---

[3]    Unlike *Coyle v. Hornell Brewing Co., et al.*, Case No. 08-cv-2797 (D.N.J. May 26, 2011), in which Plaintiffs submitted declarations for the purpose of changing a date that was already firmly established in earlier filings, Plaintiffs in the instant case are not attempting to change prior testimony by declaration.

8

testimony that she did not make the purchase decision to get the FLW, ignoring that her husband, Plaintiff G. Grosso, testified to researching the machines prior to purchase, Ex. 2 (Pl. Dep. Chart) at ¶ A). *See* Ex. 2 (Pl. Dep. Chart) ¶A. By ignoring the substance of plaintiffs' declarations, that plaintiffs purchased purportedly efficient machines, focusing on "inconsistencies" because a plaintiff did not use the exact same word in their deposition and declaration, LG ignores the substance of plaintiffs' testimony, whether it might be in depositions or a declaration, that they each understood these machines were efficient (from circulars, in-store materials, sales representatives, consumer reports, online information, HE detergent requirements, markings on the washing machine itself, and other forms of advertising), and that this factored into their purchase decision. *See* Ex. 2 (Pl. Dep. Chart) ¶A. As such, Plaintiffs' declarations are not inconsistent with their deposition testimony.

Similarly, LG's argument that Plaintiffs' sworn testimony that "they read the original complaint in my case before it was filed" is untrue for Plaintiffs who were added via the amended complaint is beyond absurd.[4] It is irrelevant to any class certification issue whether a plaintiffs actually read the complaint before it was filed. There is no requirement that a class representative actually read the complaint in order to be adequate. Indeed, there is no question but that each of the plaintiffs is familiar with the claims which have been asserted in this action and are willing and able to serve in the capacity as a class representative. Likewise, LG's

---

[4]     LG's even making an issue of whether a Plaintiff saw the "original complaint" before it was filed is another word game designed to divert the Court's attention from the real issues before it. The phrase "original complaint" is not a defined term, and for some of the Plaintiffs, the consolidated amended complaint *was* the original complaint for them. Furthermore, the cited testimony concerning Plaintiffs' review of the complaints does not support LG's arguments; at worst, the testimony reveals uncertainty as to when Plaintiffs first saw the complaint(s), Ex. 2 (Pl. Dep. Chart) ¶C, and in other circumstances, is directly contradicted by testimony selectively omitted by Defendants demonstrating that Plaintiffs reviewed and/or assisted their attorneys with the complaint(s) prior to their filing.

attempts to discredit Plaintiffs' declarations regarding when they "approximately" first experienced mold or odor by comparing it to deposition testimony that, for most plaintiffs, occurred *years* after the incidents in question is similarly unconvincing. *See* Ex. 2 (Pl. Dep Chart) ¶B. Some of the alleged discrepancies are illusory or trivial. For example, the Harpers' deposition testimony references the date of *use*, whereas the declaration references the date of *purchase*, and there was a short delay between purchase and use – any remaining alleged discrepancy is most certainly covered by the use of the word "approximately" in the declaration. *See* Pl. Dep Chart ¶B. Other purported inconsistencies identified by the Defendant are trivial and easily explained by obvious typographical errors (such as states, dates, and blanks)[5]. *See* Ex. 2 (Pl. Dep Chart) ¶B; *Fortney v. Schultz*, 2010 U.S. Dist. LEXIS 6644 (W.D. Wis. Jan. 27, 2010)(denying motion to strike affidavit based on a typographical error); *Romeo v. UnumProvident Corp.*, 2008 U.S. Dist. LEXIS 10199 (E.D. Pa. Feb. 11, 2008)(describing typographical date error in affidavit as inconsequential). At bottom, Plaintiffs' declarations are consistent with their deposition testimony (and as demonstrated in the attached chart), and none of the trivial inconsistencies identified by Defendants' demonstrate the sort of *direct* and meaningful contradiction that would support a motion to strike. *Farrell v. Planters Lifesavers Co.*, 206 F.3d, 271, 284 (3d Cir. 2000).

In our case, as in *Jimenez* and *Baer*, the affidavits "did not claim to raise a new or distinct matter, but rather explained certain aspects of … deposition testimony."  The sham doctrine is inapplicable here, the plaintiffs have not given contradictory testimony, and therefore the defendant's arguments should be rejected in their entirety.

---

[5]      For example, in the Zimmermans' declarations, the date on which they first experienced Mold Problems was omitted. Similarly, the Mansello declaration mistakenly indicates he is purporting to represent the state of Florida – a clear typo when viewed in context of the rest of the declaration.

10

     **b.**    **Any Inconsistencies in Plaintiffs Declarations Are Not Subject to the Sham Affidavit Doctrine.**

Under the "sham affidavit doctrine", a party cannot introduce an affidavit which contradicts his prior deposition testimony to create a genuine issue of fact to defeat summary judgment. *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 251-53 (3d Cir. 2007). This underlying rationale for the "sham" rule does not fit the context of a motion for certification, where the applicable standard is not whether plaintiff has shown there are material facts in dispute on the merits, but rather, whether the Rule 23 requirements have been met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974)(at motion for class certification stage "the court cannot conduct a preliminary inquiry into the merits of a suit"), *Drennan v. PNC Bank, NA*, 622 F.3d 275, 294-295 (3d Cir. Pa. 2010)("it remains true that in determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action . . . but rather whether the requirements of Rule 23 are met.") The "sham" doctrine is not applicable outside of the context of summary judgment motion practice. The Third Circuit has limited the "sham affidavit doctrine" is narrowly limited to those circumstances when a party tries to "create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict." *See Baer v. Chase*, 392 F.3d 609, 624-625 (3d Cir. 2004). The Third Circuit takes a flexible approach in applying the "sham" doctrine, and does not reject all contrary affidavits.

     A Court cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition and … a genuine issue can exist by virtue of a party's affidavit even if it conflicts with earlier testimony of the party's deposition … In reversing the summary judgment order, it held that the subsequent affidavit was in fact not a "sham," as the defendant's affidavit did not claim to raise a new or distinct matter, but rather explained certain aspects of his deposition testimony that caused confusion. …. The court additionally relied on the fact that the affidavit could not be said to constitute a reformulation of the

defendant's general defense nor was it at odds with the general theory he put forth in the deposition. ..

*Id.* (internal citations omitted)

Further, even if the "sham affidavit doctrine" were to apply, not all differences between deposition testimony and subsequent declarations constitute "shams." The Third Circuit cases make clear that a party has an opportunity to explain discrepancies between testimony and affidavits, and if a reasonable explanation exists, the "sham" doctrine should not be applied:

> [T]his Court and other courts of appeals have adopted a more flexible approach [to the sham affidavit doctrine]. We observed in Baer that not all contradictory affidavits are necessarily shams. Instead, we stated that, "[w]hen there is independent evidence in the record to bolster an otherwise questionable affidavit, courts generally have refused to disregard the affidavit." Such corroborating evidence may establish that the affiant was "understandably" mistaken, confused, or not in possession of all the facts during the previous deposition.. We have also held that an affiant has the opportunity to offer a "satisfactory explanation" for the conflict between the prior deposition and the affidavit. When a party does not explain the contradiction between a subsequent affidavit and a prior deposition, it is appropriate for the district court to disregard the subsequent affidavit and the alleged factual issue in dispute as a "sham," therefore not creating an impediment to a grant of summary judgment based on the deposition.

*Jiminez* 503 F.3d at 254 internal citations omitted).

### III.   LG's Changes to the Design of the FLW are Admissible

LG's attempt to exclude evidence of design changes as remedial measures is inconsistent with its primary defense that there is no defect and there is no mold and odor problem with its FLWs, as well as its class certification argument that the changes in the machines create individual issues.  If there is no defect, what was LG remedying? For this, and other reasons discussed below, evidence of these design changes should not be stricken.

Plaintiffs contend that a better design, one that would retard biofilm development and prevent the mold problem, was feasible and could have been utilized by defendants when they first marketed their product to consumers.  Defendants dispute this, and because that fact is in

dispute, defendant's redesign campaign is admissible.  Here, defendants argue that the mold problem was experienced "by a minute portion of … customers because of their misuse." (Defendant's brief at page 4).  Defendants dispute the very fact that the design changes were remedial.  They cannot use Fed.R.Evid. 407 as a sword and a shield, both claiming that they made no remedy of any design defect and that their remedy is inadmissible.  By claiming that the consumers caused mold problems by their own malfeasance, the clear implication is that no different design was feasible to prevent this.  Because defendants have put the feasibility of any precautionary design measures in dispute, those changes in design must be admissible.

The design changes may also be used to impeach the defendant's claims that only a minute portion of customers were affected by the mold problems.  Plaintiffs may argue that the fact defendant made widespread and major changes to design, to affect more than a minute portion of their customers, belies any notion that only a few people had mold issues.

The design changes may also be used to show defendant's knowledge of the defect, which is an element of plaintiff's claims under the New Jersey Consumer Fraud Act, and is in dispute.  Evidence of subsequent measures is "admissible to … show knowledge of dangerous condition."  *Rozier v Ford Motor Co*., 573 F2d 1332, 1343 (5th Cir. 1978).

Although Rule 407 precludes the use of subsequent remedial measures as proof of negligence or product defect, the timing of the remedial measure is key.  The Notes of Advisory Committee on the 1997 amendments to Fed.R.Evid. 407 explain this aspect of the rule:

> First, the words 'an injury or harm allegedly caused by' were added to clarify that the rule applies only to changes made after the occurrence that produced the damages giving rise to the action.  Evidence of measures taken by the defendant prior to the 'event' causing 'injury or harm' do not fall within the exclusionary scope of Rule 407 even if they occurred after the manufacture or design of the product.

13

The Notes cite *Chase v. General Motors Corp.*, 856 F.2d 17, 21-22 (4th Cir. 1988), which explains that the key date is when the consumer experienced harm, not when they bought the product:

> The change in the brake design of the Citation occurred in July 1980, some two or three months after the plaintiffs' car was manufactured and sold to them. That was a "measure" which was "taken" before the "event" mentioned in Rule 407. So Rule 407 does not exclude evidence with respect to that change. On retrial, the plaintiffs are perfectly free to explore the July 1980 change in the braking system and the reasons for it if such change might tend to be evidence of negligence, or if such evidence is otherwise admissible under the law of strict liability as it exists in West Virginia.

*Id. See also In re Air Crash Disaster*, 86 F.3d 498, 531 (6th Cir. 1996) (holding that Rule 407 does not apply to post-manufacture, pre-accident measures); *U.S. Fid. & Guar. v. Baker Material Handling Corp.*, 62 F.3d 24, 27 (1st Cir. 1995) (same); *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 686 (5th Cir. 1991) (same); *City of Richmond, Virginia v. Madison Mgmt. Group*, 918 F.2d 438, 460 (4th Cir. 1990) (same); *Huffman v. Caterpillar Tractor Co.*, 908 F.2d 1470, 1481 (10th Cir. 1990) (same).

The changes to the LG washer design which were made during the class period will not be excludable under Fed.R.Evid. 407 because they are pre-incident remedial measures for many members of the class. The attempts at remediation of the design defects occurred from 2003 to the present. Members of the class experienced harm after those dates and continue to experience harm.

For those members of the class who may have experienced mold problems prior to the dates of the design changes, the design changes may be introduced to prove issues other than negligence. Although Rule 407 generally precludes the use of subsequent remedial measures as proof of negligence, the rule also provides: "This rule does not require the exclusion of evidence

of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment."

Finally, we note that LG claims elsewhere in its brief that LG-Korea was acting completely independently of LG-USA when it developed design changes and applied for patents to address the mold problem.  LG cannot have it both ways; LG cannot claim that LG-Korea and LG-USA acted together as one when making remedial design changes, but were wholly separate when making admissions about design defects.  If it were true that LG-Korea was a completely separate actor, the defendant's argument that the design changes were LG-USA's "subsequent remedial measures" are made in bad faith, as Rule 407 does not apply to changes made by a third party.  In any event, the design changes are pre-incident remedial measures not precluded by Rule 407, and are otherwise admissible against the defendants.

## IV.    Plaintiffs Do Not Rely on Inadmissible Hearsay

Defendants cite no case which stands for the proposition that the rigorous evidentiary rules of trial are to be applied by courts examining class certification motions.[6]  The Third Circuit has instructed that each Rule 23 component must be satisfied in order for a court to certify a class, *In re Hydrogen Peroxide*, 552 F.3d 305, 310 (3d Cir. 2008), but has not held that a full evidentiary hearing must be held in lieu of accepting affidavits and pleadings.  *Kalow & Springut, LLP v. Commence Corp.*, 2011 U.S. Dist. LEXIS 19772, *9 (D.N.J. 2011) ("Indeed,

---

[6]    At the class certification motion stage, courts frequently examine pleadings and affidavits, which may contain hearsay.  See *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (relying on complaint's allegations in considering appeal of denial of class certification); *Walling v. Brady*, 1995 U.S. Dist. LEXIS 10602 (D. Del. 1995)("The Court does not necessarily find any of the facts outlined above to be true, but considers the facts placed before it in pleadings and affidavits as accurate for the limited purpose of deciding the motion for class certification. *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975) (for purposes of class certification motion, court takes factual allegations in complaint as true); *Roe v. Operation Rescue*, 123 F.R.D. 500, 502 (E.D. Pa. 1988) (relying on pleadings and affidavits for purposes of class certification.))

Plaintiff is not obligated to prove its case at this stage.")   Federal Rules of Evidence are not stringently applied at class certification stage because of preliminary nature of such proceedings. *Fisher v Ciba Specialty Chems. Corp*. 238 F.R.D. 273 (S.D. Ala. 2006). *See also Force v. ITT Hartford Life & Annuity Ins. Co. (In re Hartford Sales Practices Litig.),* 192 F.R.D. 592, 597 (D. Minn. 1999)("On a motion for class certification, the evidentiary rules are not strictly applied and courts will consider evidence that may not be admissible at trial."); *Rockey v. Courtesy Motors, Inc.,* 199 F.R.D. 578, 582 (W.D. Mich. 2001)(same); *see generally Mehl v. Canadian Pacific Railway Ltd.,* 227 F.R.D. 505, 508-09 (D.N.D. 2005) (ruling on class certification motion without evidentiary hearing and noting that expert opinions offered by both sides should receive appropriate weight in class certification analysis).

The sole case cited by defendant, *Agere Sys v. Adv. Enviro Tech*, 602 F.3d 204, 232 (3d Cir. 2010) is irrelevant.  *Agere* did not involve a class certification motion at all, did not hold that hearsay should be excluded at the class certification stage, and merely reiterated the general rule on hearsay in the context of an appeal of a judgment.

## V.     Patent Records Are Not Excludable

LG seeks to exclude evidence of the defect which is properly considered in the context of class certification.  It seeks to exclude public records of the U.S. Patent and Trademark Office which demonstrate that there was a mold defect in the LG FLWs.  These patents, taken together with the evidence of discussions between LG-Korea and LG-USA, corroborate LG's admission of knowledge of the defect.

Exhibits 8 and 12 are public records of the U.S. Patent and Trademark Office concerning washers that are the subject of this suit.  Notably, patent applications are particularly trust-worthy statements because "patent applicants and other individuals substantively involved in the

16

prosecution of a patent are held to the highest standards of honesty and candor.  *See* 37 C.F.R. § 1.56(a) (2007).  Breach of the duty of candor and good faith during the patent application process can render a patent unenforceable."  *Novartis Pharms. Corp. v. Teva Pharms. USA, Inc.*, 2009 U.S. Dist. LEXIS 103104 (D.N.J. Nov. 5, 2009).  Patent applications must additionally be accompanied by an oath of affirmation.  37 C.F.R. § 1.51 and § 1.63.  However Exhibit 8 is not a patent application; it is a document entitled "United States Patent Application Publication" which is a public record of the U.S. Patent and Trademark Office. (Exhibit 8).  The document states on its sixth page, "[t]he present disclosure relates to subject matter contained in priority Korean Application No. 10-2007-0093295, filed on Sep. 13, 2007, which is herein expressly incorporated by reference in its entirety."  Exhibit 8 is thus a report by the Patent Office which publishes the information received by the federal agency, in accordance with the activities of the agency.   See http://www.uspto.gov/patents/process/index.jsp describing the patent process, in which the successful applicant pays a publication fee prior to agency publication.

Federal Rule of Evidence 803(8) defines the "public records and reports" which are not excludable, as follows:

> Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

The government publication clearly falls within the "public records and reports" rule. Likewise, Exhibit 12 is a very similar publication by the World Intellectual Property Organization, International Bureau, "published under the Patent Cooperation Treaty" which also

satisfies the rule because it is a record of a public agency setting forth the receipt and review of a

patent application.

## VI.   Plaintiffs Will Remove Any Mention of Class Member Declarations From Expert Reports

First, LG seeks to strike Plaintiffs' expert reports that reference declarations collected

from 281 putative class members who experienced mold and odor problems.  Inclusion of this

version of the expert reports was inadvertent and plaintiffs' will file with the Court the versions

that do not reference the declarations.[7]  While Plaintiffs will remove reference to the excluded

affidavits, plaintiffs do not concede that the Court should rely on LG's false assertion that there

is no mold problem. Those declarations were from hand-picked customers, collected under

circumstances which LG has refused to share, without plaintiffs being able to test what other

information it collected from other customers at the same time.  Under the circumstances, LG's

declarations should be given no evidential weight.

## VII.   The Procter & Gamble & Tonga Washoon Statements Are Admissible as Business Records

In addition to challenging the admissibility of documents of LG's parent company, LG

Korea, LG also challenges three other documents cited in Plaintiffs' class certification brief on

the basis that they are "out of court statements by other companies." (Def. MTS Br. at 5.)

Defendants' challenges to these documents have no merit.

---

[7]      LG moved to preclude Plaintiffs' experts from considering these declarations on the grounds that the disclosure of these declarations to LG was untimely. Magistrate Judge Shipp agreed and this Court affirmed.  Plaintiffs then revised their expert reports to delete reference to the declarations. Plaintiff's counsel and collected over 275 declarations from thousands of class member who contacted them, which complained of the same mold problem, to both cross-examine defendant's experts and to provide to our experts. However, LG touts its 51 declarations as conclusive evidence there is no mold problem, when it knows otherwise. That was the very reason why Plaintiffs collected their declarations in the first instance.

a.   **Exhibit 1 is Admissible**

LG challenges the admissibility of Exhibit 1, a Korean-language presentation from LG's files concerning testing results of the use of antibacterial materials on the gasket of FLWs, on the basis that the document was not written by LG. This document, along with an LG Korea document that concludes that injection of antibacterial in the door gasket of LG FLWs was not effective, were cited by Plaintiffs as evidence that LG concluded that the use of antibiotic materials in the door gasket were not effective. [8] Exhibit 1 is a document that was in LG's possession and provided to Plaintiffs by LG in response to Plaintiffs' discovery requests. According to LG, the document was produced from the files of Jung Hoon Kang, an employee of LG USA and/or LG Korea during the relevant time periods. (Opp. Ex. 11 at ¶¶ 2, 3, 14.) Mr. Kang admits that the document was one of the files located on his laptop computer as an employee of LG USA.   *Id.* at 15. As such, the circumstances of its production to Plaintiffs strongly suggest that the document is what it is purported to be – a document kept in the ordinary course of LG USA's business.   *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 329 (3d Cir. 2005) ("in particular the fact that it was produced by Lexington pursuant to discovery requests, we believe that there is a sufficient foundation for a jury to determine that this document is what it is purported to be").[9]   Despite its business record status, LG further attempts to skirt its admissibility by claiming that it was not prepared by LG, but by a vendor named Tonga Washoon, Inc. *for* LG, and is therefore hearsay. That LG was not the scrivener of the document

---

[8]      LG's argument that this document cannot be offered to establish what "LG….concluded" is irrelevant, Def. MTS Br. at 5, as Plaintiffs' citation to this document occurred in a string cite along with an LG Korea document that supports the quoted statement. (Plaintiffs' Class Certification Brief. at 14-15.)

[9]      Mr. Kang further admits that the document related to his work as a Research Engineer for LG Korea prior to moving to LG USA. *Id.* at ¶15. As explained supra, documents of LG Korea that relate to the Mold Problem (as this document does) are admissible, and Mr. Kang's admission that the document related to his work further  cements its status as a business record.

does not disqualify it as a business record.  *United States v. Kale*, 2010 U.S. Dist. LEXIS 41662, at *28-29 (E.D. Pa. 2010). LG obviously manifested an adoption or belief in its truth.  *See* Fed.R.Evid. 801(d)(2)(B).  Thus, Exhibit 1 is admissible.

> **b.      Exhibits 14, 43 and 44 are Admissible**

LG also challenges the admissibility of three properly-authenticated business records produced by Procter & Gamble ("P&G").  The challenges to these documents are completely unfounded, as they were properly authenticated as business records maintained in the ordinary course of business at P&G, and P&G's Rule 30(b)(6) witness provided testimony agreeing with and/or attesting to the accuracy of the portions of these documents cited in Plaintiffs' class certification motion.

The first document, Exhibit 14, is a presentation made by a P&G research and development team to a P&G Vice President exploring the feasibility of creating a product to clean mold and mildew from washing machines (and frontloaders in particular).  (Fitzgerald Tr. at p. 250. l. 3 to p. 252, l. 4)  P&G's 30(b)(6) witness, Noelle Fitzgerald, properly authenticated the document as a business record and established her ability to testify to its contents by testifying that (a) she had seen the document in the regular course of business; (b) she had ultimate responsibility for its publication; (c) she wrote a good portion of it (and reviewed and approved the remainder); and (d) she strived to make it as accurate as possible. (Ex. 3 (Fitzgerald Tr.) at  p. 250, l.3 to p. 257, l.9).  Furthermore, Ms. Fitzgerald testified to writing and/or agreeing with *every single statement* on Exhibit 14 that Plaintiffs cited in their class certification brief. (*Id.* at  p. 254, l.11 to p256, l8). As a twenty-year P&G Employee and current Associate Director for P&G's Alliance Innovation Team, with direct involvement in the development of the washing machine cleaner that is the subject of the document, Ms. Fitzgerald was amply qualified to

authenticate it, and her authentication was not challenged at the deposition. (*Id.* at p. 27, l.1-16; p. 250, l3 to p.251, l.16). Since the statements referenced in Plaintiffs' class certification brief are supported both by the business record itself as well as by sworn testimony from the individual responsible for its creation, there can be no doubts as to its admissibility.

The remaining two documents, Exhibits 43 and 44, are emails between members of a P&G research team involved in the development of Tide Washing Machine Cleaner. Based upon P&G-sponsored studies, LG's FLWs experienced Mold Problems at an unacceptably high rate. (Plaintiffs' Class Certification Brief at 16, n 8).  Ms. Fitzgerald authenticated these documents by testifying that (a) she saw these emails in the normal course of business, (b) that she had knowledge of the subjects and studies discussed in them; and (c) that she agreed with the statements contained in the emails, and/or that the emails were accurate portrayals of the studies referenced therein (Ex. 3 (Fitzgerald Tr.) p. 202, l. 16 to p. 211, l.16; p. 223, l.7 to p. 228, l.22. This more than satisfies the light requirements for authentication.  *United Nat. Ins. Co. v. Aon Ltd.*, 2008 U.S. Dist. LEXIS 81825, at *4-5 (E.D. Pa. Oct. 15, 2008)("The burden of authentication is light.  . . .The proponent can authenticate evidence in a variety of ways including testimony by a witness with direct knowledge of the evidence's authenticity or by pointing to distinctive characteristics that, under the circumstances, suggest reliability.").

LG further argues that since these emails summarize the statements of consumers, they are inadmissible hearsay. (LG Motion to Strike Brief  at 6). Based on this logic, the entire expert report of Defendants' expert Maronick is also inadmissible hearsay, as it too summarizes the responses of consumers.[10] To claim that hearsay within a properly authenticated business record

---

[10]    Furthermore, P&G's survey data was based on feedback from actual, identifiable respondents (focus group participants and P&G employees), as opposed to Maronick's anonymous web survey.

is inadmissible, Defendant must claim that the source of information or the method or circumstances of preparation indicate lack of trustworthiness. Fed.R.Evid. 803(6);   *Hulmes v. Honda Motor Co.*, 960 F. Supp. 844, 856 (D.N.J. 1997). Given that P&G's expert testified that P&G has a technical center called "Consumer Village" for the specific purpose of consumer research, Tr. At 224:6-18, that certain of the referenced "consumers" were actually *employees* of P&G, 204:12-209:7, and that P&G employees are often surveyed in connection with P&G's projects, (Ex. 3 (Fitzgerald Tr.) p.126, l. 8-19), Defendants cannot reasonably claim that this information is untrustworthy.[11]

## VIII.   Relevant Excerpts of the Plaintiff's Exhibits Were Properly Provided

It is appropriate for a party to provide the Court with selected portions of testimony and evidence in support of a motion, and the Fed.R.Evid. 106 rule of completeness is not applicable to exhibits. The Rule applies when evidence is introduced, and states "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  If the defendant wishes to provide the Court with alternative exhibits which contain more of the text of the documents provided in discovery, LG is free to do so.

If the Court prefers certified translations of the exhibits to plaintiff's motion, plaintiff will provide certified translations.  We note however, that the Florida case cited by LG is inapposite, and focused on translated attestations by putative plaintiffs rather than exhibits, and held that

---

[11]    In any event, Ms. Fitzgerald provided testimony consistent with the referenced portion of Exhibits 43 and 44 and based on her knowledge of the studies referenced therein that five of the 10 LG FLW's used by P&G employees had residue on the basket and drum, and that participants in LG's focus group experienced odors and/or residue in their washing machines. These are the only statement s from these documents cited by Plaintiffs in their class certification motion.

"although it is unclear the exact authentication needed for declarations in support of class certification," the attestations provided were sufficient.  *Rosario-Guerrro v. Orange Blossom Harvesting, Inc.*, 265 F.R.D. 619, 624 (M.D. Fla. 2010).  The case did not hold that Fed.R.Evid. 604 applies to class certification.  The commentary to Rule 604 explains that it generally applies at trial: "If the interpreter's skill in language is helpful to the Judge and jury, and the interpreter has expertise in translating the relevant languages, then the interpreter qualifies as an expert. An interpreter willing to take an oath or affirmation to make a true translation can assist the Court and jury in the trial process."

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the defendant's motion to strike be denied in its entirety.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiffs


BY:   /s/ James E. Cecchi
      JAMES E. CECCHI

DATED:  June 24, 2011

George K. Lang                         Oren Giskan
Richard J. Burke                       GISKAN SOLOTAROFF
FREED & WEISS LLC                      ANDERSON & STEWART
111 West Washington Street, Suite 1331 11 Broadway, Suite 2150
Chicago, Illinois  60602               New York, New York  10004
(312) 220-0000                         (212) 847-8315

Jonathan D. Selbin                     James C. Shah
Jason Lichtman                         Natalie Finkelman Bennett
Mark P. Chalos                         SHEPHERD, FINKELMAN, MILLER &
LIEFF CABRASER HEIMANN &               SHAH, LLP
BERNSTEIN, LLP                         457 While Horse Pike
250 Hudson Street, 8th Floor           Collingswood, New Jersey 08107
New York, New York 10013               (856) 858-1770
(212) 355-9500
                                       Steven A. Schwartz
                                       CHIMICLES & TIKELLIS, LLP
                                       One Haverford Centre
                                       361 West Lancaster Avenue
                                       Haverford, Pennsylvania
                                       (610) 642-8500


Co-Counsel for Plaintiff
and the Proposed Class

24