UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____ x

IN RE LG FRONT LOAD WASHING
MACHINE CLASS ACTION LITIGATION

Honorable Faith S. Hochberg, U.S.D.J.

Case No. 2:08-cv-00051-FSH-MAS

Electronically Filed

_____ x

**DEFENDANT LG USA'S REPLY
IN FURTHER SUPPORT OF ITS *DAUBERT* MOTION
TO EXCLUDE INADMISSIBLE EXPERT TESTIMONY
FROM PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

OF COUNSEL:

Lawrence R. Desideri
Scott P. Glauberman
Andrew M. Johnstone
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

James S. Richter
Melissa Steedle Bogad
Winston & Strawn LLP
The Legal Center
One Riverfront Plaza, Suite 730
Newark, NJ 07102
(973) 848-7676

Attorneys for Defendant
LG Electronics USA, Inc.

**TABLE OF CONTENTS**

INTRODUCTION ………………………………………………………………………… 1

ARGUMENT ……………………………………………………………………………… 2

I.     This Court must scrutinize all of Wilson
and Yang's opinions on which Plaintiffs rely. …………………………………… 2

II.    Wilson's opinions are unreliable and inadmissible. ……………………………… 5

       A.     Wilson did not use a reliable methodology. …………………………… 5

       B.     Industry standard ASSE 1007 undercuts Wilson's opinions. …………… 7

       C.     *Whirlpool* did not address, let alone endorse, Wilson's opinions. …………… 8

       D.     Wilson is not an expert on mold,
mildew, biofilm, or consumer expectations. …………………………… 9

III.   Yang's opinions are unreliable and inadmissible. ………………………………… 9

       A.     Yang is a rebuttal expert with nothing to rebut. ……………………… 9

       B.     Yang did not use a reliable methodology. …………………………… 10

       C.     Plaintiffs wasted any expertise that Yang may have. ………………… 11

CONCLUSION …………………………………………………………………………… 12

-ii-

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re HP*,
 552 F.3d 305 (3d Cir. 2008) ................................................................................................ 9

*In re Whirlpool*,
 2010 WL 2756947 (N.D. Ohio) ................................................................................ 3, 5, 8, 9

*Sanchez v. Abbott Labs*,
 Civil Action No. H-03-1820, 43 (S.D. Tex. 2004) ............................................................. 11

*Wal-Mart v. Dukes*,
 131 S. Ct. 2541 (2011) ...................................................................................................... 1, 3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ..................................................................................................................... 1, 2, 9

Fed. R. Civ. P. 407 .......................................................................................................................... 3

Fed. R. Civ. P. 702 ............................................................................................................... 1, 2, 5, 6

**INTRODUCTION**

Plaintiffs' Opposition concedes that Gary Wilson and Chin Yang never tested a single LG-brand front-load washing machine ("LG FLW") before concluding that millions of them are defective on the theory that their ordinary operation quickly leads all of them to contain mold and bad odors — despite the fact that only a tiny fraction of owners since 2002 have actually experienced any such thing. Rather than defend Wilson and Yang's (lack of) work, Plaintiffs' main argument is that their opinions are "narrow" and "merits opinions" not relevant to class certification. Hence, Plaintiffs spend the first half of the Opposition all but begging this Court not to decide whether Wilson and Yang's opinions are admissible.

After receiving Plaintiffs' Opposition, this Court determined that "before it can rule on the motion for class certification, it must decide the other three pending motions," one of which is LG USA's *Daubert* motion. (DE 219 at 1.) No further response is necessary to rebut Plaintiffs' contention that *Daubert* and Rule 702 may be violated freely during class certification. Moreover, characterizing the challenged opinions as "narrow" or as "merits opinions" cannot protect them.

A review of Plaintiffs' class certification briefs shows that Plaintiffs do in fact rely heavily on Wilson and Yang to supply much of the common evidence that Plaintiffs assert justifies a finding that common issues predominate over individual ones. Plaintiffs cite Wilson and Yang more than two dozen times, including citations to so-called "merits opinions." In any event, even if opinions overlap class certification and merits issues, Rule 23's required "rigorous analysis" frequently "entail[s] some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart v. Dukes*, 131 S. Ct. 2541, 2551 (2011). No rigorous analysis can possibly rely on the inadmissible and unreliable speculations of proposed expert witnesses.

Plaintiffs also try to defend Wilson and Yang based on their qualifications and past experience, but those do not provide a proper basis to *speculate* about LG FLWs in particular. No

matter where they went to college, and no matter what work experience they have had, Wilson and Yang cannot reliably conclude that all properly used LG FLWs inevitably leave detergent and other debris inside, leading in every case to mold and bad odors, all without ever running even a single wash cycle in a single LG FLW to see if this hypothesis is actually true.

In any event, Plaintiffs overstate their qualifications and experience: neither ever examined or operated an LG FLW prior to this case. And that lack of experience has shown. After receiving LG USA's *Daubert* motion, Plaintiffs hurriedly scheduled inspections of four more of Plaintiffs' LG FLWs for Wilson, in a last-ditch effort to double the number of LG FLWs he inspected. But at two of those four inspections, Wilson and his assistant could not even figure out how to take the machine apart. They failed to disassemble and inspect the area of the machine that Wilson contends is defectively designed. This is not the mark of a person whose towering expertise allows him to reach reliable opinions about a machine's operations without so much as testing a single one.

## ARGUMENT

**I.      This Court must scrutinize all of Wilson and Yang's opinions on which Plaintiffs rely.**

Plaintiffs attempt to shield Wilson and Yang's opinions from review for reliability and admissibility under Rule 702 and *Daubert*, by claiming to have cited the opinions only for a "narrow purpose." (Opp. 3.) That assertion is premised on a fundamental misunderstanding of Rule 23, is factually wrong, and is irrelevant.

Plaintiffs assert that they are narrowly relying on opinions from Wilson and Yang because, in Plaintiffs' view, "only the question of whether the LG FLW's share a common design is relevant for purposes of class certification." (Opp. 12.) Plaintiffs believe that merely *asking* a single common question is enough to win class certification, and they seek to exempt from *Daubert* scrutiny all of Wilson and Yang's opinions subjects other than a supposed "common design."

Plaintiffs' approach to the certification analysis is wrong, as the Supreme Court recently held. In *Wal-Mart v. Dukes*, the Supreme Court emphasized that asking a single common question "is not sufficient to obtain class certification." 131 S. Ct. 2541, 2551 (2011). "What matters … is not the raising of common 'questions' … but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* Even if all LG FLWs were essentially the same in design — they are not, and Wilson has no basis for saying they are — that could not justify certifying a class. As explained in LG USA's class Opposition and Surreply, dozens of important individual questions would remain to be answered for each class member individually, the first of which, for example, is whether each class member even suffered any injury. *Wal-Mart* holds that each class member suffering the same injury is a key certification requirement, *id.* 2553-54; it is a subject on which Wilson has an opinion; and Plaintiffs rely on that opinion. Like all of his opinions, Wilson's baseless speculation that every one of the millions of LG FLWs suffers from mold and bad odors (Opp. 3, 12; Class Reply 13) is subject to *Daubert*.[1]

Plaintiffs also contend that they are narrowly relying on Wilson and Yang's opinions because hearsay statements in another company's documents (a subject of LG USA's Motion to Strike) support the idea that the design of all LG FLWs is identical.[2] (Opp. 9.) But the documents say nothing about whether the design from year to year is the same or not. In fact some of the documents discuss design *changes* that Plaintiffs argue, in violation of Rule 407 (another subject of LG USA's Motion to Strike), show the original design was defective. The design has plainly

---

[1] Plaintiffs also rely on the statement in *Whirlpool* that defenses applicable to individual class members may be ignored for purposes of class certification. (Opp. 20 n.21.) Yet in *Wal-Mart* the Supreme Court rejected that notion in holding that "a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." 131 S. Ct. 2561.

[2] Plaintiffs also make the utterly bizarre claim that LG USA's engineering expert, Edward "Caulfield, for example, provided no opinion on the purported lack of a common design." (Opp. 20.) Caulfield provided *extensive* opinions about the lack of any common design. (Class Opp. 17-19; Class Opp. Ex. 4 at 40-45; Class Opp. Ex. 6 at 5, 10.)

changed over time. (Class Opp. 17-18.) Indeed, Wilson himself admitted one of the LG FLWs he inspected recently was of a "whole different design" than others he had seen. (Ex. C ¶ 6.)

Plaintiffs' assertion that their reliance on Wilson and Yang is "narrow" is in any event belied by their own briefs (as Plaintiffs admit, Opp. 8 n.7). Rather than citing short declarations, Plaintiffs submitted as exhibits, to their class Brief, Wilson's entire opening and rebuttal report and Yang's entire rebuttal report.³ (Exs. 5, 11, 13.) In all, Plaintiffs cite Wilson and Yang more than *two dozen times* in their class briefs, and not only for the "narrow" purpose that they now claim.

For example, Plaintiffs assert they relied on only two opinions from Wilson: (1) all LG FLWs share the same design, and (2) all LG FLWs accumulate mold and bad odors. (*Id.* 3.) But their class certification briefs rely on far more opinions than those. In their Reply alone, Plaintiffs rely on Wilson's opinions about such other topics as whether the Tub Clean cycle that is present on some machines can successfully clean the machine, and whether commercial cleaning products can successfully clean the machine. (Class Reply 4 n.3, 13 n.15.) Plaintiffs also rely on Wilson's opinion that installation, use, and maintenance of the machines is irrelevant. (Class Br. 11, 16; Class Reply 3, 3 n.2, 13.)

Plaintiffs cannot have it both ways. If they are not relying on any of Wilson's other opinions, and if they do not want the Court to rule on the admissibility of those other opinions, then they should withdraw and disavow any reliance on those opinions now. But if they rely on the other opinions, as their certification briefs do, those are subject to review for reliability and admissibility.

Finally, characterizing two of each expert's opinions as being cited for a "narrow purpose" has nothing to do with whether those opinions are reliable or admissible. For example, Wilson opines that every one of the LG FLWs ever sold, from 2002 to the present, suffers from biofilm and

---

³ All of these are *class certification* expert reports. Under the various pretrial orders entered in this case, *merits* experts reports are to be exchanged later. (DE 99 at 3; DE 155, DE 158.)

bad odor.  (Opp. 3, 12; Class Reply 13.)  No matter whether Plaintiffs characterize that opinion as narrow or broad, LG USA is moving to exclude it.  It is based solely on Wilson's disassembly of three machines selected for him by Plaintiffs' counsel, without any testing of any machines at all.  It is not supported by reliable facts and data, much less a reliable methodology.  It is not exempt from Rule 702 and *Daubert* merely because Plaintiffs claim it is narrow.

## II.     Wilson's opinions are unreliable and inadmissible.

### A.     Wilson did not use a reliable methodology.

Plaintiffs do not dispute Wilson did no testing and almost no work before reaching his opinions.  Plaintiffs complain Wilson did "substantially more work than [LG USA] has represented he performed" (Opp. 18), but they refer to time he spent writing his opening report and rebuttal report *after* he already had concluded that all of the millions of LG FLWs are defective.  There is no dispute that Wilson reached those opinions after just *three hours* of inspecting (but never testing) three LG FLWs that Plaintiffs' counsel selected for him.  (*Daubert* Mot. 11-12.)

Unable to defend his work, Plaintiffs fall back on Wilson's experience as the sole basis for his opinions.  (Opp. 13-14.)  But contrary to their spin, his relevant experience is minimal.  Most of his career at Whirlpool was spent on refrigerators and air conditioners (from 1976 to 1984) and then dishwashers (1989 to 1997).  (Class Opp. Ex. 60 at 15; Ex. D at 295-96, 310-11.)  Wilson worked on washing machines for just a few years (1985 to 1988), and they were not FLWs.  (*Id.* 297-300.)  Wilson never designed or tested a FLW; in fact, Whirlpool did not even *sell* FLWs while he worked there.  (*Id.* 19, 324-325.)  And before he was retained for the *Whirlpool* litigation in 2009, Wilson had *never* disassembled a washing machine to look for mold, mildew, biofilm, or odor.  (*Id.* 19-20.)

Wilson's experience with *LG* FLWs in particular is even more limited.  Before he was retained by Plaintiffs just last year, he had zero experience with LG FLWs.  (*Id.* 83.)  He testified that all of his opinions in this case are based on his work on LG FLWs.  (*Id.* 102-03.)  Plaintiffs

make much of Wilson's claim that he "personally disassembled" machines (Opp. 13 n.12), but he disassembled just three LG FLWs before reaching his opinions in this case. (Ex. D at 106-07.). (Opp. Ex. 2.) Then, after LG USA moved to exclude his opinions, Wilson tried to bolster his experience by conducting four additional inspections of LG FLWs selected for him by Plaintiffs' counsel. But those additional inspections actually confirmed his lack of expertise: ***Wilson, a purported washing machine "expert," could not figure out how to take apart two of the four machines he inspected***. (Ex. C ¶¶ 6-7.) In fact, Wilson asked to *destroy* one of the machines so that he could complete his disassembly and inspection. His request to spoliate evidence was rejected. (*Id.* ¶¶ 8-9.)

In response to LG USA's point that Wilson conducted no testing, Plaintiffs protest that *Daubert* and Rule 702 do not require testing as a prerequisite for admitting every expert opinion. (Opp. 6-13.) LG USA never made that claim. Instead, LG USA argued that experts must base their opinions on testing or some other reliable methodology. (*Daubert* Mot. at 12.) Wilson did neither. Wilson admits that at some point misuse will cause even a properly designed FLW to accumulate residue, mold, and bad odor (Ex. D at 166, 175), but he admits he has no idea whether the few LG FLWs he inspected were subject to that sort of misuse because he "didn't think he needed" to ask about it and "didn't think it was relevant." (*Id.* 195-96, 212-13.) Likewise, Wilson claims that design changes to LG FLWs were ineffective, but he has never even seen many of the design changes because he did not bother to inspect any LG FLWs made in the last four years. (Ex C ¶ 4; Ex. D at 184.) Worst of all, he inspected just a few machines that were selected for him by Plaintiffs' counsel explicitly because those machines had experienced a problem. Wilson has never seen an LG FLW owned by one of the millions of owners who has never experienced a problem. (*Daubert* Mot. 12-15.) None of these things are consistent with a reliable methodology.

Plaintiffs also defend Wilson's opinions by falsely claiming he "relied properly upon …

results in the field" and "the laboratory in the field." (Opp. 15, 19.) Wilson did refer to "the field" at his deposition, but he did not even know the results of what happened there:

> Q. Do you know what percentage of LG USA's customers have complained about mold, odor, or a related problem?
>
> A. No.
>
> Q. Do you know whether the rate at which customers have complained to LG USA about mold, odor, or other related problems is higher or lower than any other company that makes front load washers has received?
>
> A. I'm not -- I don't know.            (Ex. D at 108-110.)

If anything, "the results in the field" prove that the vast majority of LG FLW owners have not experienced the problem Wilson alleges, so Wilson cannot use "the field" to prove that every owner experienced a problem or that every machine is defective. Wilson ignored this evidence.

### B. Industry standard ASSE 1007 undercuts Wilson's opinions.

To try to bolster Wilson, Plaintiffs now repeatedly point to industry standard ASSE 1007 as requiring that "a washing machine should 'provide a means of flushing all surfaces exposed to wash water.'" (Opp. 3, 12, 20.) ASSE 1007 Section 4.2 states:

> <u>Flushing Means</u> - The washer or washer-dryer shall provide a means of flushing all surfaces exposed to wash water so as to remove such water remaining after use of the machine except for that remaining in the sump, discharge conduits and pump.

(Opp. Ex. 3A, § 4.2.) Wilson did not mention ASSE 1007 in his expert reports or in his supplemental declaration. In fact, at his deposition, Wilson admitted that he was not even aware of any applicable government or industry standards:

> Q. Is that requirement, to your knowledge, that appliances self-clean stated in any government regulation?
>
> A. No. Not that I'm aware of.
>
> Q. Are you aware of the requirement of self-cleaning being published as part of any industry standard?
>
> A. Not that I'm aware of, no.     (Ex. D at 140-41.)

What's more, ASSE 1007 defines a specific testing procedure that must be used to

determine whether a machine satisfies the standard on which Plaintiffs are suddenly relying:

> Allow the washer or washer-dryer to proceed through its shortest complete cycle of operation and collect the last cup (236.6 ml) of water discharged. Any visible water difference between the sample of discharge water and the sample of the original fill water observed through glass containers when held side-by-side and viewed in ordinary identical light indicates failure of the washer or washer-dryer to be self-cleaning as required in 4.2.

(Opp. Ex. 3A, § 5.7.5.) Wilson admitted he has *never* performed such testing on an LG FLW:

> Q. Have you ever collected the last cup of water discharged from an LG brand front load washing machine after a wash cycle and compared it side by side with water used to fill the machine in order to determine whether there is any visible color difference between the two?
>
> A. No.                    (Ex. D at 255.)

It is difficult to imagine how Wilson's opinions could be made more reliable by an industry standard unknown to him, which prescribes a test he did not perform. If anything it highlights just how unreliable his opinions are.

In fact, LG FLWs do satisfy ASSE 1007's self-cleaning requirement. Wilson conceded that LG FLWs are certified by Underwriters Laboratories, meaning they meet UL's standards. (Ex. D at 217.) Those standards include ASSE 1007, which is expressly incorporated into UL's standards for washing machines, promulgated at UL 2157. (Ex. F at 19, 54.)

### C. *Whirlpool* did not address, let alone endorse, Wilson's opinions.

Plaintiffs assert that the *Whirlpool* decision was "based, in part, upon Dr. Wilson's opinions" and that it "rejected" challenges to Wilson's opinions. (Opp. 5.) That is false. The *Whirlpool* decision does not suggest the court relied on Wilson's opinions or rejected challenges to them; *Whirlpool* did not rule on any *Daubert* motion against Wilson. *In re Whirlpool*, 2010 WL 2756947 (N.D. Ohio).[4] In fact the decision does not even mention Wilson or in any way analyze his work or opinions. And *Whirlpool* certainly does not conduct the "rigorous analysis" that the Third

---

[4] In the Kenmore FLW litigation in Illinois, which concerns FLWs made by Whirlpool, a *Daubert* motion was filed against Wilson. The court heard argument on the motion on August 1, 2011.

Circuit has held that "[e]xpert opinion … calls for." *In re HP*, 552 F.3d 305, 322 (3d Cir. 2008). For all of those reasons, *Whirlpool* offers no assistance to Wilson or Plaintiffs.

    **D. Wilson is not an expert on mold, mildew, biofilm, or consumer expectations.**

Plaintiffs stubbornly insist they should be permitted to rely on Wilson as an expert on mold, mildew, biofilm, and consumer expectations (Opp. 21), but they do not dispute Wilson himself ***admits*** he is not an expert in these areas. (*Daubert* Mot. 19-20.) Based on his lack of education, training, and experience, as well as his own admission that he is "not an expert" on those subjects (*e.g.*, Ex. D at 278), Wilson should not be permitted to offer those opinions.

**III. Yang's opinions are unreliable and inadmissible.**

    **A. Yang is a rebuttal expert with nothing to rebut.**

Plaintiffs did not disclose Yang as an opening expert whose opinions would help Plaintiffs establish the Rule 23 certification requirements. Instead, Plaintiffs disclosed him only as a rebuttal expert to criticize the work done by LG USA's experts. That is why his first and only expert report in this case is a rebuttal expert report. (Class Opp. Ex. 54.)

Plaintiffs stress this fact in their Opposition (at 23): "Dr. Yang is offered as a ***rebuttal*** expert." Yang's main task was to criticize the work done by Henry Shotwell, an expert working on mold and related issues. But LG USA did not rely on Shotwell or his work in connection with class certification in any way whatsoever. Thus there is nothing for Yang to rebut on those subjects. For this reason alone, his opinions about mold, mildew, biofilm, and the environments in which they grow should be entirely excluded from consideration with class certification.

That leaves Yang's opinions in mechanical engineering, olfaction, and consumer surveys. Plaintiffs essentially concede that he has no expertise in those areas, but they argue that his opinions do not fall in those areas. (Opp. 25.) That is absurd. LG USA's experts Caulfield, Thomas Maronick and Charles Wysocki, all of whom Yang criticizes, do not offer mold opinions, yet Yang

devotes **sixteen pages** of his rebuttal report to criticizing their work, methodology, and conclusions. (*See, e.g.*, Class Opp. Ex. 54 ¶¶ 92, 96, 97, 100, 104, 111, 122, 131, 134, 135, 137.)

For instance, Yang criticizes Caulfield for running tests in which the door of the LG FLWs was left ajar between wash cycles. In the opinion of Yang the mycologist, it is dangerous to leave the door ajar. (*Id.* ¶ 132.) This opinion has nothing whatsoever to do with mold, mildew or biofilm, the areas of Yang's supposed expertise. As another example, Yang asserts that "it is difficult to asses the statistical validity and reasonableness of [Maronick's] survey based on 201 respondents in four different groups." (*Id.* ¶ 97.) Nothing in Yang's education, training, or experience remotely qualifies him to offer such opinions about consumer surveys, and this Court should strike them along with all of his non-mold/mildew/biofilm opinions.

      **B.**      **Yang did not use a reliable methodology.**

Yang opines that ***all*** of the millions of LG FLWs ever sold will develop mold, mildew, biofilm, and bad odors, based solely on his review of just a few LG FLWs that experienced problems. (*Daubert* Mot. 15-16.) Astoundingly, Wilson out-worked him: Yang just looked at a few ***photos*** in a case about unpleasant ***odor***. (*Id.* 16.) The only LG FLW he ever saw in person was brand new, in a store. (Ex. E at 82.)

Plaintiffs cite Yang's self-serving claim that he tell whether a spot is mold, fungi, mildew, bacteria, biofilm, or none of those based solely on photos. (Opp. 23-24.) But Plaintiffs ignore Yang's admission that he cannot always tell whether a particular machine has mold, mildew, or biofilm based solely on photos. (Ex. E at 248.) Testing is the only way to be sure, as Yang himself has said in past cases.

Plaintiffs assert that in past cases Yang merely opined that testing is necessary to confirm the ***absence*** but not the presence of microbial growth. (Opp. 24.) That is not true. He wrote, "Only proper sampling by a competent consultant, testing performed by a reputable and credible

mycologist, as well as expert comparison and interpretation can determine whether interior surfaces are contaminated by fungal spores or not." (*Daubert* Mot. Ex. A at 3.) And he proved it in this case. When shown pictures for a machine he had not previously examined (it belonged to Plaintiff Cook), Yang could not tell whether or not it contained mold, mildew, or biofilm, and of course he could not smell it through a photo. (Ex. E at 246-49.) Thus he had no idea whether Plaintiff Cook's machine has mold, mildew, biofilm, or bad odor.

On that showing, neither Plaintiffs nor Yang can explain how he is able to opine reliably that ***millions*** of LG FLWs that he has never seen, even in photos, all contain mold, mildew, or biofilm. The few machines he examined in photos all come from people known to have experienced problems (selected for him by Plaintiffs' counsel), rather than the 99% of LG FLWs owners who have not. Yang has no reliable methodology for asserting that all LG FLWs will develop mold, mildew, biofilm, and bad odors. His opinions should be excluded. (*See* Mot. Ex. B, *Sanchez v. Abbott Labs*, Civil Action No. H-03-1820, at 43-44 (S.D. Tex. 2004) ("Dr. Yang's opinions are also unreliable and not relevant because they are not based on sufficient facts or data. Dr. Yang did not conduct any testing on the allegedly harmful or defective product.").)

        **C.**      **Plaintiffs wasted any expertise that Yang may have.**

Plaintiffs dwell at length on Yang's supposed expertise, leading with his work as the Scientific and Technical Advisor and Senior Consulting Scientist at Prestige EnviroMicrobiology, Inc. (Opp. 3.) They explain that Prestige is "a company that routinely analyzes samples for fungi, bacteria and other environmental microbes." (*Id.*)

In other words, ***Yang works for a company that conducts laboratory tests samples for mold, bacteria, and similar microbial growths***. He makes a living from such testing. But that is the one skill he did ***not*** put to use in this case. This Court will recall from LG USA's Motion (at 16-17) that Yang testified, "I'd love to," when asked if he wanted to test LG FLWs. He was "never

offered the opportunity" to test, and he thinks he may have asked Plaintiffs' counsel for permission to test and was refused. Having hired an experienced tester and refused to allow him to test, Plaintiffs should not be heard to claim that his great experience allows him to give opinions not produced by any reliable methodology such as testing.

## CONCLUSION

LG USA respectfully urges this Court to grant LG USA's *Daubert* Motion.

Dated: August 5, 2011

WINSTON & STRAWN LLP
Attorneys for Defendant
LG Electronics USA, Inc.

By: s/ James S. Richter

Lawrence R. Desideri
Scott P. Glauberman
Andrew M. Johnstone
Winston & Strawn LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600

James S. Richter
jrichter@winston.com
Melissa Steedle Bogad
mbogad@winston.com

## CERTIFICATION OF SERVICE

I hereby certify that on August 5, 2011, copies of the foregoing Reply in Further Support of LG USA's *Daubert* Motion to Exclude Inadmissible Expert Testimony from Plaintiffs' Motion for Class Certification and supporting documents were electronically filed and served by electronic mail upon the following:

Steven A. Schwartz
Alison R. Gabe
CHIMICLES & TIKELLIS
361 West Lancaster Avenue
Haverford, Pennsylvania 19041

Oren Giskan
GISKAN SOLOTAROFF ANDERSON & STEWART, LLP
11 Broadway – Suite 2150
New York, New York 10004

Paul M. Weiss
George K. Lang
Richard J. Burke
FREED & WEISS, LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602

James C. Shah
Natalie Finkelman Bennett
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
475 White Horse Pike
Collingswood, New Jersey 08107

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

                                                          s/ James S. Richter
                                                            James S. Richter

Dated:  August 5, 2011