

One Riverfront Plaza, Suite 730
Newark, NJ 07102-5401
T: +1 (973) 848-7676
F: +1 (973) 848-7650
www.winston.com

**MELISSA STEEDLE BOGAD**
(973) 848-7643
mbogad@winston.com

May 7, 2012

BEIJING

<u>BY ECF AND HAND DELIVERY</u>

Honorable Faith S. Hochberg, U.S.D.J.
United States District Court
Frank R. Lautenberg U.S. Post Office & Courthouse
1 Federal Square
Newark, New Jersey  07101

CHARLOTTE

CHICAGO

GENEVA

HONG KONG

  Re: In re LG Front Load Washing Machine Class Action Litigation
     Civil Action No. 08 CV 51 (FSH)(MAH)

LONDON

LOS ANGELES

MOSCOW

Dear Judge Hochberg:

NEW YORK

NEWARK

  As Your Honor is aware, this firm is counsel to LG Electronics USA, Inc. ("LG USA") in the above-captioned matter.

PARIS

SAN FRANCISCO

  At the April 19, 2012 *Daubert* hearing, the Court asked the parties to confer about inspections of LG front-load washing machines ("LG FLWs") owned by 51 satisfied LG FLW owners who submitted declarations supporting LG USA's opposition to class certification.  Specifically, the Court stated, "The 51 proponents, if they want to look at them, and it was only a month before the close of discovery that it was disclosed, that's not enough time to bar them if it's relevant, if it matters, if those people will let them." (April 19, 2012 Hearing Tr. at 60.)  Since the hearing, LG USA has conferred with Plaintiffs on that issue and has worked on a draft joint letter to those owners requesting the opportunity to disassemble and inspect their machines.

SHANGHAI

WASHINGTON, D.C.

  After spending more time carefully considering the proposed inspections and discussing the issue with its engineering expert Dr. Edward Caulfield, however, LG USA is concerned that the inspections will involve considerable expense and delay ***without*** generating evidence relevant to class certification.  Accordingly, LG USA respectfully requests that the Court enforce the fact discovery deadline (April 29, 2010) and the expert report deadline (December 30, 2010), both of which passed long ago, and not allow these additional inspections.

  ***First***, these inspections will not lead to evidence relevant to the class certification inquiry. In their complaint, Plaintiffs allege that each LG FLW

WINSTON
&STRAWN
LLP

May 7, 2012
Page 2

"accumulate[s] mold, mildew or similar reside," and "produce[s] foul and noxious odor" which makes them "unusable for the ordinary purpose [for] which the Washing Machines" were sold. (Consol. Am. Compl. ¶ 2.) Furthermore, Plaintiffs' expert Dr. Gary Wilson testified that *all* washing machines, including *top*-loading washing machines that everyone agrees are not defective, contain some amount of mold, mildew, or biofilm. (Wilson Dep. at 66.) The only issue, Dr. Wilson testified, is whether each machine produces an odor that its owner perceives to be unpleasant. (Wilson Dep. at 67.)

LG USA submitted declarations from 51 satisfied customers simply as examples of members of Plaintiffs' proposed class who are pleased with their washing machines and have never seen or smelled anything bad in them. (LG USA Opp. to Class Cert. at 9.) Inspecting the LG FLWs owned by these satisfied customers cannot change the fact that those customers are happy with their machines. Whether or not their LG FLWs are inspected, they will remain examples of satisfied customers who have no place in a class action lawsuit. (*Id.* at 14-17.)

***Second***, inspecting these LG FLWs will inevitably and unnecessarily delay this case. The first of the consolidated cases was filed in November 2007, and it is rapidly approaching its fifth birthday. LG USA's initial disclosures, in early 2009, disclosed as witnesses in the case "FLW owners to be identified" on the subject of "Experience with LG-brand FLWs." In April 2010, beginning a month before fact discovery closed, LG USA produced the customer declarations on a rolling basis, as they were received. LG USA also supplemented its initial disclosures with each customer's address and telephone number.

Two years passed. In all that time, Plaintiffs and their experts ***never*** expressed any interest in inspecting these customers' LG FLWs. On the contrary, even after reviewing and considering the customer declarations, Dr. Wilson testified that there were no additional inspections that he wanted to do. (Wilson Dep. at 99-100.) The first time that inspecting these customers' LG FLWs was ever mentioned was at the hearing on April 19.

If the proposed inspections were to go forward, the case would be delayed. The parties would need to conduct the inspections, around the country, and file supplemental expert declarations, *Daubert* briefs, and class certification briefs. The delay could easily be six months or more. That delay would frustrate the Court's intention, as expressed at the April 19 hearing, to move this case forward to conclusion as quickly as possible.

***Third***, the proposed inspections would be costly. LG USA has ample experience with this issue, from having conducted 19 inspections of the named Plaintiffs' FLWs during fact discovery. Each inspection typically lasted four to six hours and involved experts and lawyers for each side. And because the satisfied customers are scattered in 15 different states across the country, from California to Connecticut, travel costs also will be substantial. Based on this experience, LG USA estimates its own costs for any additional inspections will be, at a minimum, $5,000 to $10,000 for each inspection.

For all of these reasons, before the parties jointly contact the satisfied LG FLW owners to ask that they agree to have their machines disassembled and inspected, LG USA respectfully requests that this Court enforce the fact and expert discovery deadlines and not allow further inspections. LG USA would be grateful for the opportunity to discuss this issue briefly at the May 8 hearing.



May 7, 2012
Page 3

        Respectfully submitted,

        s/ Melissa Steedle Bogad

        Melissa Steedle Bogad

cc:    All Counsel (by e-mail)