

**WINSTON & STRAWN LLP**

One Riverfront Plaza, Suite 730
Newark, NJ 07102-5401
T: +1 (973) 848-7676
F: +1 (973) 848-7650
www.winston.com

**MELISSA STEEDLE BOGAD**
(973) 848-7643
mbogad@winston.com

May 7, 2012

**BY ECF AND FEDERAL EXPRESS**

Honorable Faith S. Hochberg, U.S.D.J.
United States District Court
Frank R. Lautenberg U.S. Post Office & Courthouse
1 Federal Square
Newark, New Jersey  07101

> Re:   In re LG Front Load Washing Machine Class Action
>        Litigation
>        Civil Action No. 08 CV 51 (FSH)(MAH)

Dear Judge Hochberg:

As Your Honor is aware, this firm is counsel to LG Electronics USA, Inc. ("LG USA") in the above-captioned matter.  We write in response to Plaintiffs' May 3, 2012 letter submitting as supplemental authority the Sixth Circuit's decision in *Glazer, et al. v. Whirlpool Corp.*, No. 10-4188 (6th Cir. 2012).  For the reasons below, *Whirlpool* does not support Plaintiffs' class certification arguments in this case.

As an initial matter, it is important to note that there actually are two class actions involving front load washing machines ("FLWs") manufactured by Whirlpool.  The other is *Butler v. Sears Roebuck & Co.*, which involves FLWs manufactured by Whirlpool for sale under the Sears brand name Kenmore.  Addressing the same FLWs, the same causes of action, the same evidence, and the same arguments as in *Whirlpool*, Judge Coleman concluded no class could be certified because there had been changes over time to both the design of the FLW and the defendants' knowledge of the alleged mold and odor problem.  "In the court's view, the issues raised by the effect of washer modifications and the extent of Sears' knowledge across multiple product iterations cannot be answered on a basis as wide as the class defined by the plaintiffs' certification motion."  (*Butler* Op. at 10.)  The extent to which any particular Sears FLW was defective and "the extent of [Sears'] knowledge of a continued problem are questions whose answers will differ from model to model."  (*Id.*)  Design changes and LG USA's changing knowledge of reports of mold and odor over time are two of the many reasons that no class should be certified in this case as well.  They are explained in LG USA's Class Certification Opposition (at 17-19, 21) and Class Certification Surreply (14-15).  Indeed, Plaintiffs in this case have *conceded* that these two issues are a substantial

BEIJING
CHARLOTTE
CHICAGO
GENEVA
HONG KONG
LONDON
LOS ANGELES
MOSCOW
NEW YORK
NEWARK
PARIS
SAN FRANCISCO
SHANGHAI
WASHINGTON, D.C.

**WINSTON & STRAWN LLP**

May 7, 2012
Page 2

obstacle to class certification because Plaintiffs have announced they are significantly narrowing their class definition in an unsuccessful attempt to avoid them as well.

Although Plaintiffs' supplemental authority letter claims that "the facts in Whirlpool are substantially identical to the facts here" (May 3, 2012 letter at 1), there actually are many, critical factual differences between *Whirlpool* and this case that render the Sixth Circuit's decision inapposite.

1.  This case involves different washing machines than *Whirlpool*.

2.  Whirlpool received a staggering 1.3 million complaints of possible mold or odor issues from Whirlpool FLW owners. (*Whirlpool* Op. 5.) In contrast, LG USA received less than 20,000 complaints of possible mold or odor issues from LG FLW owners. (LG USA's Class Certification Opposition at Ex. 9.)

3.  The *Whirlpool* plaintiffs claimed that 35% of Whirlpool customers complained of possible mold or odor issues. (*Whirlpool* Op. 7.) LG USA's unrebutted customer complaint data showed that roughly 1% of LG FLW owners complained of possible mold or odor issues. (LG USA's Class Certification Opposition at 9-10, 14-17.)

4.  Whirlpool knew that "numerous consumers complained of breathing difficulties after repair technicians scrubbed [their FLWs]." (*Whirlpool* Op. 4.) There is absolutely no evidence of such complaints involving LG FLWs in this case.

5.  Whirlpool "internally acknowledged its legal exposure." (*Whirlpool* Op. 5.) LG USA has not because, as its customer complaint data and Dr. Maronick's consumer survey show, roughly 99% of LG FLW owners have not experienced the alleged mold or odor issues.

6.  Whirlpool FLWs use "lower temperatures" for water. (*Whirlpool* Op. 4, 12.) That is absolutely not true of LG FLWs, which use the same water temperature as top load washing machines. In fact, some LG FLW models actually are capable of using **higher** temperature water than other washing machines. (LG USA's Class Certification Opposition at Ex. 11, ¶¶ 5-7.)

7.  Whirlpool knew that its "special cleaning cycle … would not remove all residue deposits." (*Whirlpool* Op. 5.) That is not true here. As Dr. Caulfield's testing demonstrated, the Tub Clean cycle available on many LG FLWs effectively cleans machines that have accumulated residue as a result of misuse. (LG USA's Class Certification Opposition at 11, 17-18.)

8.  Whirlpool knew "that traditional household cleaners were not effective treatments" of the mold and odor issues. (*Whirlpool* Op. 5.) Again, that is not true here. Dr. Caulfield's testing shows that bleach effectively cleans machines. (LG USA's Class Certification Opposition at 11, 17-18.)

9.  Whirlpool developed its own product specifically to clean FLWs and assumed that 50% of Whirlpool FLW owners would need that product. (*Whirlpool* Op. 6.) LG USA did not develop any cleaning product and did not make any such assumptions.

**WINSTON & STRAWN LLP**

May 7, 2012
Page 3

10. Whirlpool did not have an outside engineer conduct scientific testing of its FLWs. By contrast, LG USA retained Dr. Caulfield, who conducted eight months of scientific testing demonstrating LG FLWs do not experience buildup or odor when used and maintained as the owner's manual (and detergent bottle) instruct. (LG USA's Class Certification Opposition at 10-12.)

11. Whirlpool did not challenge Dr. Wilson's opinions under *Daubert* perhaps because he is a former Whirlpool employee. Of course, LG USA moved to exclude Dr. Wilson's opinions here because, unlike LG USA's engineering expert Dr. Caulfield, Dr. Wilson did almost no work in this case and has no reliable methodology for his opinions that all LG FLWs eventually will experience the alleged mold and odor defect.

In addition, there are significant legal differences between *Whirlpool* and this case.

1. As support for the proposition that a class may include uninjured class members, the Sixth Circuit relies on Ninth Circuit and California cases that are not good law in this Circuit, including *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998), *Wolin v. Jaguar*, 617 F.3d 1168 (9th Cir. 2010), *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011), *Montanez v. Gerber Childrenswear, LLC*, 2011 WL 6757875 (C.D. Cal.), and *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011).

In this Circuit, a class comprised overwhelmingly of persons who have not been injured cannot be certified. *See*, *e.g.*, *Sullivan v. DB Investments*, 667 F.3d 273, 298 (3d Cir. 2011) (predominance inquiry focuses on "whether **all** of the class members were harmed by the defendant's conduct.") (emphasis added); *Maloney v. Microsoft Corp.*, 2012 WL 715856, at *6-7 (D.N.J.) (no class: only if the alleged "'defective product *always caused* a certain type of harm,'" could certification be considered; where "the vast majority of [products] showed no signs of a defect," the plaintiff cannot show "that common factual issues predominate over individual ones") (citation omitted; emphasis in original); *Green v. Green Mountain Coffee Roasters*, 2011 WL 6372617, at *8 (D.N.J.) (no class: because there were "members in the putative class who have not yet suffered" any problem, "the putative class includes individuals who do not presently have a claim," and as a result, "common issues of fact do not predominate"); *Nirmul v. BMW of North America*, 2011 WL 5195801, at *4 (D.N.J.) (class member who has no "injury in fact" because his product has not manifested the alleged defect has no claim); *Mahtani v. Wyeth*, 2011 WL 2609857, at *8 (D.N.J.) (no class: when no alleged "defect had manifested in a great majority of the proposed class, common factual issues did not predominate"); *Payne v. Fujifilm*, 2010 WL 2342388, at *5 (D.N.J. 2010) (no class: "alleged class-wide defect [had] not manifested in the great majority of the proposed class"). *See also In re Microsoft Xbox 360*, 2009 U.S. Dist. LEXIS 109075, at *20-21 (W.D. Wash.) (no class: alleged defect "actually manifests itself in fewer than one percent" of products); *Arabian v. Sony*, 2007 WL 627977, at *13 (S.D. Cal.) (no class: no "evidence that a majority of these owners experienced common problems from a common defect"); *In re Canon*, 237 F.R.D. 357, 359 (S.D.N.Y. 2006) (no class: plaintiffs "have not shown that more than a tiny fraction of the [products] in issue malfunctioned for any reason"); *Pratt v. Panasonic*, 2006 WL 1933660, at *10 (N.J. Super. Ct. Law Div.) (no class: "the overwhelming majority of purchasers … have not suffered from the alleged defect"); *Kia Motors v. Butler*, 985 So.2d 1133, 1139 (Fla. Ct. App. 2008) (no class: some products "have performed satisfactorily").

WINSTON
&STRAWN
LLP

May 7, 2012
Page 4

  2. Because the Sixth Circuit did not analyze the predominance requirement at all, *Whirlpool* provides no guidance whatsoever on LG USA's arguments that individual issues predominate over any common issue, which were a major focus of LG USA's Class Certification Opposition (at 17-26). The Sixth Circuit did not address any of those arguments, which, contrary to Plaintiffs' claim, were different than those apparently raised by Whirlpool.

  3. The Sixth Circuit found that causation was not an issue in *Whirlpool* because the company's "design engineers knew the mold problem occurred despite variations in consumer laundry habits and despite remedial efforts …" (*Whirlpool* Op. 13) and because "Whirlpool's own internal documents point to the conclusion that, no matter what consumers did or did not do, the mold problem persisted" (*id.* at 14). Here, Dr. Caulfield's eight months of scientific testing established that that LG FLWs do not experience the alleged defect when maintained and used as the owner's manual (and detergent bottle) instruct. (LG USA's Class Certification Opposition at 10-12.) Unlike in *Whirlpool*, causation is a critical issue in this case. (*Id.* at 17-20.)

  For these reasons, and for the reasons explained in its class certification briefs, LG USA respectfully urges this Court to deny class certification.

           Respectfully submitted,

           s/ Melissa Steedle Bogad

           Melissa Steedle Bogad

cc: All Counsel (by e-mail)