**Lieff Cabraser Heimann & Bernstein**
Attorneys at Law

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY  10013-1413
t  212.355.9500
f  212.355.9592

Jonathan D. Selbin
Partner
jselbin@lchb.com

July 25, 2012

Judge Faith S. Hochberg
United States District Court for the District of New Jersey
Martin Luther King, Jr. Federal Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re:  *In Re: LG Front Loading Washing Machine Class Action Litigation*
<u>Civil Action No. 08-51</u>

Your Honor:

I write in response to LG Electronics USA, Inc.'s ("LG") July 23, 2012 letter submitting *Butler v. Sears*, No. 06-cv-7023, *slip op.* 328 (N.D. Ill. Jul. 20, 2012) ("*Butler*"), to respond to that letter's questions and contentions regarding the class definition in this case, and to bring to the Court's attention a number of recent opinions excluding (or giving little weight to) one of LG's experts.

### A.     This Court should decline to follow *Butler*.[1]

Plaintiffs acknowledge the similarity of this case to the Whirlpool cases referenced in Sears' July 25 letter.  *See generally Butler*; *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.* ("*Whirlpool II*"), 678 F.3d 409 (6th Cir. 2012); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.* ("*Whirlpool I*"), 08-md-65000, 2010 U.S. Dist. LEXIS 69254 (N.D. Ohio July 12, 2010).  Plaintiffs, however, respectfully submit that the opinion and reasoning in *Whirlpool I* and *Whirlpool II* – particularly the thorough opinion from the Sixth Circuit – is more persuasive authority than *Butler*.

As an initial matter, the court in *Butler* did not conduct the "rigorous analysis" required by the Third and Seventh Circuits (and Supreme Court).  *See Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 916 (7th Cir. 2011) (quoting *General Telephone Co. v. Falcon*, 457 U.S. 147, 161 (1982)); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting same).  Indeed, *Butler* cited only a single case and only one piece of record evidence.  Of particular note, it discussed neither *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815-16 (7th Cir. 2012), nor the Sixth Circuit's opinion in *Whirlpool II*.  This is so even though the former is the Seventh Circuit's articulation of the proper standard for district courts to apply when evaluating a motion for class certification, and the latter is a

---

[1] Plaintiffs in *Butler*, represented by many of the same counsel here, will be seeking review of that order under Rule 23(f).

Judge Hochberg
May 21, 2012
Page 2

unanimous appellate opinion affirming class certification in a case involving the very same Whirlpool-manufactured washing machines and much of the same evidence.

Far from conducting a rigorous analysis, *Butler* appears to have concluded that common issues did not predominate simply because Sears *contended* that there were differences between various models of washing machines.[2] But the court in *Butler* did not weigh whether Sears' contentions (unsupported by *any* expert or prelitigation evidence) were more likely to be true than Plaintiffs' opposing contentions (supported by both), as the Seventh and Third Circuits require. *See Messner*, 669 F.3d at 815-16; *Hydrogen Peroxide*, 552 F.3d at 309.

Plaintiffs submit that the central reasoning articulated in *Butler* is also fundamentally flawed:

> The subsequent evidence identified by plaintiffs as indicative of knowledge of the continued problem by Sears and Whirlpool is similarly lacking in distinction between various machine models. <u>Each of the documents cited by plaintiffs addresses the group of high efficiency washers as a whole, or their general propensity to develop the mold problem. None addresses the specific effect of any modification in mitigating the impact of that general propensity</u>.

*Butler* at 2-3 (emphasis supplied). This is precisely the opposite conclusion that the *Butler* court should have drawn on the facts of that case (and on the facts of this case): *no evidence distinguishes between various minor modifications at issue in Sears because there is no evidence that any modification actually impacted the underlying defect*.

In other words, absent evidence that the design modifications actually resulted in better (or even different) performance of the machines with respect to the mold problem, it is not necessary to differentiate the models for purposes of ascertaining whether they are defective. In this case, LG's own expert, Dr. Edward Caulfield, testified that the only difference that matters in this sense (i.e., is material) is customer use and maintenance; in particular, how much detergent consumers use. *See* 5/8/12 Hr. Tr. at 11:18-24 ("What we were seeing early on . . . some were showing growth, some were not. . . . Basically, the ones that were overloaded with soap." (question omitted)); *cf. id*. at 9:13-17 ("[T]o be clear, the medium load may only be about a half an inch in the cap. Not a full cap, not two caps. *Like everybody's mother used to do . . . .*" (emphasis added). As the Court summarized Dr. Caulfield's testimony:

> So if your ratio to load size to the amount of detergent is off, you'll have the problem, and if it's not off . . . you won't have the problem. So it's binary. You either do or don't, based on the correlation of load size and the determination of quantity of detergent.

---

[2] The one portion of the record cited by the *Butler* court was a single paragraph of a declaration from a Whirlpool employee enumerating differences between washing machines. That declaration did not assert that any of the differences eliminated the mold problem.

Judge Hochberg
May 21, 2012
Page 3

*Id.* at 64:6-13.  LG, moreover, agrees with this characterization.  *Id.* at 64:20-21 ("To boil it down, I think that's a fine summary.")

Finally, Plaintiffs respectfully submit that *Butler* erred when it found that Dr. Gary Wilson's testimony was insufficient to establish predominance because he had not considered the impact of any of Sears' purported changes in isolation, but rather concluded that they were ineffective *collectively*.[3]  Given that the changes at issue in Sears (and in this case) were ineffective collectively – as indicated by each defendant's prelitigation documents, Dr. Wilson's expert analysis, and the fact that each defendant continued to modify its machines to try and resolve the mold problem long past the end of the class period – Dr. Wilson did not need to evaluate any particular ineffective change in isolation.  *See Samuel-Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 18-19 (Pa. 2011) (crediting the testimony of an expert who examined only two machines personally, notwithstanding that Defendants asserted thirteen relevant variations of the product); *see also id*. at 23-24 (finding that "warranty data, internal memoranda, and [Defendant's] repeated attempts to make minor . . . modifications, as explained by expert testimony, supported the trial court's finding that [Defendant] was unable to effectively repair the defect . . . ."); *Whirlpool II*, 678 F.3d at 419 (same, citing *Bassett* with approval).

### B.   Plaintiffs' proposed class definition is appropriate.

In its July 23 letter, LG professes confusion as to how Plaintiffs arrived at the proposed class definition in this case.  Plaintiffs selected this definition to include, exclusively, machines that Dr. Wilson examined and determined suffered from a uniform design flaw.  For example, LG contends that a feature called "Tub Clean Plus" sufficiently prevents formation of biofilm.  Because Dr. Wilson has not examined any machines containing the "Tub Clean Plus" feature, Plaintiffs did not believe that machines with this feature could be included in their proposed class definition properly, and Plaintiffs excluded them.

LG's letter also focuses on a feature called "Tub Clean," contending that it defeats predominance.  Not so.  First, Plaintiffs have shown that it is more likely than not that the presence of "Tub Clean" will not impact a jury's verdict at trial; Dr. Wilson *did* examine machines with the "Tub Clean" feature, and he concluded that "Tub Clean" did not remedy the washer's fundamental design defect.[4]  Second, Plaintiffs have demonstrated that testing purporting to show the contrary conducted by LG's expert, Dr. Caulfield, was fatally flawed, both because Dr. Caulfield tested heavy use of the washing machines for six months, rather than regular use of the washing machines over one year, and because he tested the washing machines in unrealistic conditions.  Third, in the unlikely event that LG *later* shows that the "Tub Clean" machines are truly distinct from non "Tub Clean" machines, it would be a simple enough task for a single jury to determine liability for both groups in any event.  *See Bassett*, 34 A.3d at 23-24; *cf. In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 288 F.3d 1012, 1019 (7th Cir.

---

[3] Dr. Wilson is the former Director of Laundry Technology at Whirlpool.  He is also the expert in *Whirlpool I & II*, *Butler*, and this case.

[4] LG apparently reached the same conclusion, as demonstrated by their introduction of "Tub Clean Plus."  *See Bassett*, 34 A.3d at 23-24.

Judge Hochberg
May 21, 2012
Page 4

2002) (finding certification inappropriate in light of 67 *relevant* variations spread among 60 million tires).

      Finally, Plaintiffs note again that LG's own document shows that 4 out of 6 customers have experienced problems with biofilm. (*See* Doc. 183-11.) LG's survey purporting to show the opposite, conducted by Dr. Thomas Maronick, should be excluded under *Daubert* for the reasons articulated in Plaintiffs' briefing on that issue. Indeed, Plaintiffs wish to bring to the Court's attention a number of recent opinions that have excluded, or been strongly critical of, Dr. Maronick. *See New Look Party, Ltd. v. Louise Paris, Ltd.*, No. 11-6433, 2012 U.S. Dist. LEXIS 9539, at *32-33 n.8 (S.D.N.Y. Jan. 11, 2012) (giving Dr. Maronick "no weight" on a particular issue because his conclusions failed to meet the requirements of Rule 702); *Salon Fad v. L'Oreal USA, Inc.*, No. 10-Civ.-5063, 2011 U.S. Dist. LEXIS 103936, at *27 (S.D.N.Y. Sept. 14, 2011) ("Dr. Maronick's survey is riddled with methodological flaws . . . ."); *FTC v. Wash. Data Res.*, No. 8:09-cv-2309, 2011 U.S. Dist. LEXIS 72886, at *8 (M.D. Fla. July 7, 2011) ("[E]xclusion of Maronick's testimony is warranted under both *Daubert* and Rule 403."); *City of Goodlettsville v. Priceline.com, Inc.*, No. 3:08-cv-00561, 2011 U.S. Dist. LEXIS 45597, at *9 (M.D. Tenn. Apr. 27, 2011) ("[T]he opinions expressed in Maronick's report are irrelevant to the issues in this case.").

                                              Respectfully submitted,

                                              Jonathan D. Selbin

JDS:JLL

cc:     All counsel (via ECF & e-mail)

1049156.5