NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| IN RE: FRONT LOADING WASHING MACHINE CLASS ACTION LITIGATION, | CIVIL ACTION NO: 08-51(FSH) <br><br> OPINION <br><br> July 10, 2013 |

**HOCHBERG, District Judge**

This matter comes before the Court upon Plaintiffs' motion for class certification.[1] Defendant opposes class certification and moves to strike evidence relied upon by Plaintiffs in support of its Motion for Class Certification as inadmissible. Defendant has also filed a *Daubert* motion to exclude expert testimony. Plaintiffs have also filed a *Daubert* motion to exclude testimony from Defendant's expert witnesses.

I.  *Background*

Plaintiffs bring the instant action on behalf of themselves and a nationwide class of persons who purchased front-loading automatic washing machines that were marketed and sold by LG, and that allegedly have a common drainage defect that causes the proliferation of mold and mildew, as well as foul odors in the machines and on clothing washed in the machine. More specifically, Plaintiffs allege that all of LG's front load washing machines ("LG FLW" or "FLW") have a common design defect in the dryer drum and/or door gasket that causes water to not fully or properly drain after each wash cycle, and that this remaining water causes the proliferation of mold and mildew. Plaintiffs assert claims against Defendant under the New

---

[1] The Court administratively terminated Plaintiffs' Motion for Class Certification on July 7, 2011 so that it could rule on the three other pending motions and then determine whether new briefing on the Motion for Class Certification was required.

Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, et seq., Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq., for breach of express and implied warranties under New Jersey law, and for unjust enrichment under New Jersey law.  In the alternative, Plaintiffs bring claims for breaches of express and implied warranties, unjust enrichment and consumer fraud and deception under the laws of the states where Plaintiffs reside.

Plaintiffs have moved to certify a nation-wide class of those who purchased LG FLW in the United States and, in the alternative, have moved to certify classes to apply the substantive law of the state where the Plaintiffs reside and/or purchased their LG FLW.  Plaintiffs move to apply New Jersey law to the entire class if certified as a whole, arguing that Defendant's principal place of business is in New Jersey, many members of the class reside in New Jersey, Defendant's alleged misconduct occurred in New Jersey and New Jersey has a significant interest in seeing this matter litigated within the state.

II. DISCUSSION

A. *Daubert Motions*

1. *Legal Standard*

Federal Rule of Evidence 702 provides the relevant legal standard in a *Daubert* motion. Pursuant to Fed. R. Evid. 702,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The United States Court of Appeals for the Third Circuit has determined that Rule 702 "has a liberal policy of admissibility."[2]

Two United States Supreme Court cases, *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999), have further defined the legal standard for expert testimony. The goals of the *Daubert* standard, as established by the Supreme Court, are to determine: 1) whether the expert utilized the scientific method and whether the expert's testimony is based on scientifically valid principles; and 2) whether the expert testimony is relevant to the proposing party's argument.[3]

In *Kumho*, the Court expanded the scope of the *Daubert* standard, explaining that while the Court in *Daubert* directly addressed scientific testimony, the resulting standard was not intended to apply exclusively to scientific testimony. Instead, *Kumho* established that the *Daubert* standard is appropriate for all experts providing specialized knowledge and held that "[t]he trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge."[4] This is true even if the experts are providing experience-based testimony.[5]

To determine if the testimony is reliable, the Third Circuit has established an eight-part test which this Court must consider:

> (1) whether a method consists of a testable hypothesis;
> (2) whether the method has been subject to peer review;

---

[2] *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

[3] *Daubert*, 509 U.S. at 580.

[4] *Kumho Tire Co.*, 526 U.S. at 149.

[5] *Id.*

>   (3) the known or potential rate of error;
>   (4) the existence and maintenance of standards controlling the techniques operation;
>   (5) whether the method is generally accepted;[6]
>   (6) the relationship of the technique to methods which have been established to be reliable;
>   (7) the qualifications of the expert witness testifying based on the methodology; and
>   (8) the non-judicial uses to which the method has been put.[7]

*In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir. 1994). This test may be more flexibly applied in cases where the expert testimony is based on experience.[8]

As explained by the Court in *Kumho*, the expert's testimony must be related to the case at hand as well. According to this Court, "[t]he role of the judge with regard to expert testimony is to serve as a gatekeeper, and it is the judge who must decide if an expert's testimony reliably "fits" the case."[9] The party proffering the expert will have the burden to demonstrate that the testimony is admissible, on a preponderance of the evidence standard.[10]

### 2. Defendant's Pending *Daubert* Motion to Exclude Inadmissible Expert Testimony

Plaintiffs have proffered two witnesses: Dr. R. Gary Wilson ("Wilson") and Dr. Chin Yang ("Yang"). Defendant contends that this Court should exclude the opinions of Wilson and

---

[6] The Supreme Court determined, however, that the expert's theory or technique was not required to have "general acceptance" throughout the relevant scientific community. *Daubert*, 509 U.S. at 597.

[7] *U.S. v. Mitchell,* 365 F.3d 215, 235 (3d Cir. 2004).

[8] *Kumho,* 526 U.S. at 141–42.

[9] *U.S. v. Schiff*, 538 F. Supp.2d 818, 834 (D.N.J. 2008) (citing *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d at 748 ("*Daubert* makes clear for the first time at the Supreme Court level that courts have to play a gatekeeping role with regard to experts")).

[10] *Daubert*, 509 U.S. 579.

4

Yang because both allegedly lack a reliable methodology and opine in areas where neither is qualified to serve as an expert witness.[11]

### a. Dr. R. Gary Wilson

Plaintiffs offer Dr. Wilson's testimony in support of class certification to establish that: (1) every LG FLW, regardless of model, year, or platform, shares a materially uniform design because all of them "provide the perfect environment for mold and mildew . . . a humid environment with little ventilation;" and (2) every LG FLW, regardless of model, year, or platform, fails to self clean, which leads to biofilm accumulation that results in foul odors.[12] Wilson Supp. Rep. at 4, 5-6. Dr. Wilson's opinions are intended to demonstrate commonality and predominance[13] in support of Plaintiffs' class certification motion. According to Plaintiffs, the testimony provided by Wilson is mainly experience-based, supplemented by research conducted by Wilson for this litigation.

Defendant argues that Wilson has never designed a front-load washing machine and that before he was retained by Plaintiffs, he had no experience with LG FLWs. Defendant argues that because of his lack of previous experience, Wilson's opinions about LG FLWs are based solely on the work he did in this case. LG claims that Wilson did almost no work in this case because he never tested any LG FLW and inspected just a few LG FLWs. Of the 19 LG FLWs owned by Plaintiffs, Defendant claims that Wilson disassembled and inspected just one and also

---

[11] Specifically, Defendant argues: "Because Wilson and Yang did no work and no testing and instead looked at just a few LG FLWs hand-picked by Plaintiffs' counsel, their opinions flunk the reliability requirement under Federal Rule of Evidence 702 and *Daubert*. Their opinions are in fact only testable hypotheses, but they did no testing and applied no other reliable methodology." Brief in Support of Defendant LG USA's *Daubert* Motion at 2.

[12] The Rule 23 class factors he is being offered to support are commonality and predominance.

[13] To the extent that commonality and predominance overlap with typicality, Dr. Wilson's opinions also are offered in support of that.

inspected three other LG FLWs provided to him by Plaintiffs' counsel. Accordingly, Defendant argues that Wilson's opinions are admissible only if based on testing or some other reliable methodology, and that Dr. Wilson has none.

Dr. Wilson has a Ph.D. in Mechanical Engineering from Case Western Reserve University and a Masters Degree in Mechanical Engineering from the University of Illinois.[14] Wilson is also a Lecturer in the Mechanical Engineering & Engineering Sciences Department at the University of North Carolina. Dr. Wilson worked for Whirlpool for 23years, working with both top-loading washing machines and front-loading machines. When he retired from Whirlpool he was the Director of Laundry Technology.

While there does not appear to be a dispute about Wilson's knowledge of mechanical engineering, the parties disagree about the characterization of Wilson's experience. According to Plaintiffs, Wilson has two decades of experience with designing washing machines but Defendant argues that Wilson has never actually designed a front-loading washer and has spent a majority of his career working on refrigerators, air-conditioners and dishwashers. Defendant further argues that Wilson only worked on Whirlpool washing machines from 1985-1988, and even then the work was not on FLW, making the experience irrelevant.

While Defendant claims Wilson has limited practical work experience with washing machines, it is apparent from some of Defendant's submissions, as well as Dr. Wilson's own characterization of his experience, that he was the director of laundry technology at Whirlpool from 1997-99.Wilson was employed by Whirlpool from 1976 to 1999.

After considering the testimony rendered at the *Daubert* hearing and the record in this matter, the Court will permit the expert testimony of Dr. Wilson. The Court agrees with the

---

[14] Plaintiff's Exhibit 11: Dr. Wilson's Expert Report, 15.

Court in *Butler v. Sears*, No. 06-7023 (N.D. Ill. September 30, 2011), which found on a *Daubert* challenge of Dr. Wilson that:

> The value of Wilson's testimony is not based upon his sampling methods; it is instead based upon his knowledge of washer technology and his understanding of the principles that generally keep machines functionally clean, as well as the extent to which the subject machines depart from those principles. In the court's view, Wilson is clearly qualified to use his knowledge of those principles to offer an opinion, for purposes of a class certification motion, that all front loading high efficiency machines are similarly defective in design. The fact that his opinion does not account for mitigating model changes that do not alter the machines' basic design is relevant to the weight to be assigned to his opinion, but does not indicate that the opinion is inadmissible in support of the certification motion.

*Id.* at 6-7. Dr. Wilson's opinion is based on the extensive experience he has gained during his more than 20 years as an engineer with Whirlpool, his education, his training, his technical expertise, as well as his review and analysis of the FLWs in this and related litigation. The fact that Dr. Wilson has not undertaken his own testing does not disqualify him as an expert for the purposes for which he is proffered.

Wilson is qualified to testify regarding Plaintiffs' theory of the case and Plaintiffs are entitled to attempt to prove their theory of the case, *i.e.*, that Defendant's washing machines contain a common design defect.[15] Accordingly, the Court is satisfied that Dr. Wilson has satisfied Fed. R. Evid. 702 and his expert report will be permitted for purposes of the Motion for Class Certification.

---

[15] Many of Defendant's arguments in support of its *Daubert* motion to exclude the testimony of Dr. Wilson appear to relate to the credibility of Wilson as an expert, a question of fact that is left to a fact-finder, rather than Dr. Wilson's admissibility. Defendant's disagreement with Plaintiffs' theory of the case and with Dr. Wilson's testimony and report goes to the weight the Court will give the expert testimony and not to whether Dr. Wilson is himself qualified to give his expert opinion on Plaintiffs' theory of the case and the LG FLWs.

b. **Dr. Chin S. Yang**

Dr. Yang is a PhD microbiologist who specializes in mycology, the study of fungi, and he has expertise in the identification and growth of fungi. He is employed as the Scientific & Technical Advisor and Senior Consulting Scientist at Prestige EnviroMicrobiology, Inc., a company that specializes in analyzing samples for fungi, mold and bacteria. He has testified regarding the environments inside FLW and microbiology issues associated with FLW in at least three other cases.

Plaintiffs offer Dr. Yang's testimony for the proposition that LG's FLW "provide an ideal environment for Biofilm growth" in part because they contain "spaces for trapping moisture and nutrients" and for the proposition that "[t]he trend of using a lower washing machine temperature increases the risk of microbes surviving laundering." Dr. Yang is offered primarily as a rebuttal expert.[16] He analyzed the "mold and fungi testing data collected by LG's experts and concluded that the testing was not performed in conformity with the lab's standard operating procedure, [and] that the testing did not include tests for bacteria, a major odor-causing component of biofilm." His testimony also would support Dr. Wilson's and Plaintiffs' theory of the case, *i.e.*, that a common design defect has caused the proliferation of mold and mildew. Defendant maintains that Dr. Yang's opinions fail the reliability test of *Daubert* because Dr. Yang hasn't conducted any testing, and in fact, hasn't done anything but look at photographs.

After considering the record, the Court will permit the testimony of Dr. Yang. Dr. Yang's opinions are based on his education and experience as a mycologist, as well as the

---

[16] For example, Dr. Yang is introduced to rebut the expert opinion of Dr. Caulfield, one of LG's experts. Dr. Caulfield ran certain tests where he accelerated the rate at which laundry was done in an effort to mimic the way Plaintiffs were using their machines and in an attempt to demonstrate that doing laundry the "right" way would not cause the proliferation of mold. Dr. Yang is introduced by Plaintiffs to opine that accelerated testing cannot accelerate mold growth because it takes a certain amount of time for mold to grow.

8

significant number of articles he has researched and written in this field and his analytic experience. Dr. Yang can rely on the testing done by other experts and opine as to whether their methods of testing would mimic the growth of mold in the real world. As a microbiologist who specializes in mycology, he certainly is qualified to look at photographs and opine on whether what he is looking at is biofilm, mold, mildew, fungi or bacteria. He is qualified to opine with respect to how mold grows, the types of environments that mold typically grows in and whether it might exist even if you cannot see it. Dr. Yang does not need to have conducted his own testing to rebut Dr. Caulfield's opinion that the machines he tested had no mold in them and that he had done his testing in a way that mimicked the way Plaintiffs should have been using their LG FLWs. Accordingly, Defendant's *Daubert* challenge to Dr. Yang is denied and he will be permitted to rebut the expert testimony of Dr. Caulfield for class certification purposes.

### 3.   Plaintiffs' Pending *Daubert* Motion to Exclude Inadmissible Expert Testimony

Defendant has proffered three witnesses: Dr. Charles J. Wysocki ("Wysocki"), Dr. Edward M. Caulfield ("Caulfield") and Dr. Thomas Maronick ("Maronick"). Plaintiffs argue that the Court should exclude all three opinions, contending that Wysocki's opinion fails the "fit" aspect of the *Daubert* test, and that both Caulfield's and Maronick's opinions fail to fit and are unreliable.

#### a.   Dr. Charles J. Wysocki

Defendant offers Dr. Wysocki for the purpose of helping the Court determine whether it is proper to assume that every LG FLW owner experienced an intense bad smell from the machine, and explain why it is improper to reach such a conclusion. Dr. Wysocki opines: (1) that each person's olfactory abilities and experiences are different; (2) whether a person perceives an odor, whether it is perceived as pleasant or unpleasant, and whether it is perceived

9

as intense, depends on a variety of factors that vary from person to person; and (3) it is therefore not possible to generalize about the olfactory experiences of all LG FLW owners.

According to Defendant, Wysocki is "one of the world's leading experts on individual difference in olfaction." A member of Monell Chemical Senses Center, the only independent, non-profit scientific institute dedicated to the research of smell and taste, Wysocki has his Ph.D. in psychobiology from Florida State University and has also been a teacher at the University of Pennsylvania. He has spent decades studying individual differences in olfaction. The National Institutes of Health have supported his research into individual differences in odor perception for over 25 years.

Plaintiffs do not contend that Dr. Wysocki lacks the education or experience to testify as an expert witness for Defendant. Instead, Plaintiffs contend that Defendant presents Dr. Wysocki as an expert on the basis of the scientific tests he conducted for this proceeding and that Dr. Wysocki should be excluded because these scientific tests fail to meet the *Daubert* criteria.

According to Plaintiffs, there are five reasons why Dr. Wysocki should not be allowed to testify as to the Rule 23 criteria Plaintiffs must establish to certify their class, including:

1. There is no linkage or fit between Dr. Wysocki's opinion and the facts of the case;
2. Dr. Wysocki makes no effort to relate his knowledge to the facts;
3. Dr. Wysocki admits having no idea whether his opinions would be helpful to the case;
4. Dr. Wysocki has not tested the Plaintiffs' ability to smell; and
5. Dr. Wysocki has not tested the FLW to see what odorants existed.

Defendant argues that Dr. Wysocki was not required to show these things, as he was there to offer his opinions about olfactory abilities and experience among all people generally.

Essentially, Dr. Wysocki supports Defendant's argument that there can never be a class certified on the basis of odors, as there is too much variation among people's abilities to smell.

The Court will permit the testimony of Defendant's olfaction expert, Dr. Wysocki. He is proffered by Defendant in an effort to attempt to defeat Plaintiffs' arguments regarding commonality and typicality. The Court accepts Defendant's proposition, via Dr. Wysocki, that people smell things differently. For many of the same reasons that the Court will permit Dr. Wilson for Plaintiffs, the Court will permit Dr. Wysocki for Defendant.

Clearly, the parties have divergent theories of the case. Plaintiffs believe that LG's FLWs have a common design defect and Defendant believes that because everyone has a different sense of smell, the commonality prong of class certification cannot be met. The Court will honor each party's right to demonstrate its theory of the case through its expert that supports its theory. From the record before the Court as well as the *Daubert* hearing, it is evident that Dr. Wysocki has the educational and practical expertise to opine that the class cannot satisfy the commonality prong because different people smell different things differently. The Court finds that there is a fit between Dr. Wysocki's opinion and the facts of this case and he has satisfied the *Daubert* analysis.

### b. Dr. Thomas Maronick

Defendant offers Dr. Maronick to challenge Plaintiffs' assertion of predominance in support of their class certification motion. To assess whether the problems asserted by Plaintiffs were widespread, LG retained Dr. Maronick to conduct an internet-based consumer survey to determine the incidence of problems among the population of LG FLW owners and the overall satisfaction or dissatisfaction with the machines. Plaintiffs argue that Dr. Maronick's survey evidence should be excluded because it is not the result of any scientific or otherwise reliable

testing. Plaintiffs also challenge his methodology. Plaintiffs assert that while he conducted an internet-based opinion poll, no controls were put in place to ensure that respondents were representative of anything. Therefore, Plaintiffs assert that Dr. Maronick's survey is not reliable and should therefore be excluded under *Daubert*.

Dr. Maronick is a Professor of Marketing at Towson University in Maryland, where he teaches "the proper methods and procedures for designing and implementing consumer surveys, including internet-based surveys," and is the Director of Impact Evaluation in the Bureau of Consumer Protection at the FTC where he has gained experience designing and implementing over 300 marketing and consumer surveys. Dr. Maronick has written numerous articles relating to consumer and internet surveys and has frequently qualified as an expert witness in litigation.

The Court will not permit the testimony of Dr. Maronick because it is just too unreliable to be of help in deciding class certification. Dr. Maronick only asked highly general questions. For example, He never asked "does your machine smell?" or any other similar question of that nature designed to elicit a response that would have indicated whether or not the survey responders had the same mold and odor issues as Plaintiffs. Dr. Maronick also cannot say much of anything about who answered his internet survey. It is unclear whether the people who took the survey were paid or otherwise rewarded to take it. There is no way of knowing how many people Dr. Maronick surveyed. In his survey results, he included identical answers to questions even when they were open-ended because he had no way of knowing if they were from different individuals. Dr. Maronick can't say for sure whether any survey-takers actually owned LG FLWs. Identifying data was not requested, such as serial number or other criteria tending to establish that the survey responder really owned the product. Defendant is taking an inferential leap by arguing that this survey leads to an inference that the survey-takers never smelled any

mold in their machines just because they indicated during the survey that they were happy with their machines, without any specific query about smell, when that could easily have been asked. For all of these reasons, the Court finds that Dr. Maronick's opinion does not satisfy Fed. R. Evid. 702. His opinion is not helpful in deciding class certification.

### c. Dr. Edward M. Caulfield

Defendant proffers Dr. Caulfield for class certification purposes to show there is no uniform design defect in the machines, but rather, that the improper use and maintenance of Plaintiffs' washing machines caused the buildup and odors. He opines that owners who follow instructions will not have them.[17] Dr. Caulfield is a mechanical engineer with a Ph.D. in theoretical and applied mathematics, is a registered Professional Engineer in two states, taught at a university level, and has decades of engineering work experience which includes design reviews, evaluations, and testing.

Plaintiffs contend that Dr. Caulfield's testing does not fit the issues of the case because it does not accurately reflect ordinary use of the LG FLWs. Plaintiffs also maintain that Caulfield's test is unreliable because it does not test what it purports to test. For example, Caulfield offers no objective criteria to support his premise that, when testing whether mold and/or smells develop in the FLW, 15 loads per week for 24 weeks is equivalent to 7.5 loads per week for 52 weeks (the same total number of loads that an average household runs in a year).

The arguments made by Plaintiffs are generally substantive disagreements with the timing choices in his testing process, which can be tested on cross examination. They do not disqualify him as an expert. Although Caulfield chose to perform a test, rather than rely on his extensive knowledge, experience and education, his tests are relevant to the matter at hand. The

---

[17] Defendants maintain that use is therefore an individual factor for every member of the class. Additionally, they argue that this also relates to typicality.

13

Court recognizes that Dr. Caulfield changed the typical actual usage of washing machines by shortening the span of usage time. This is a factor that goes to the weight the Court will afford Dr. Caulfield's opinion, and not to its admissibility. The Court will consider Dr. Caulfield's testimony for what it is worth. Although Dr. Caulfield's testimony might be stronger had he actually ran his test over a year-long period, doing 7.5 loads per week like the average household, this factor goes to weight and not admissibility. Accordingly, the Court finds that Dr. Caulfield's opinion could be helpful to the Court in determining whether class certification is appropriate in this action.[18]

        B.     *Pending Motion to Strike Inadmissible Evidence in Plaintiffs' Motion for Class Certification*

Defendant has moved to strike alleged inadmissible evidence included within Plaintiffs' Motion for Class Certification. This alleged inadmissible evidence can be grouped into five separate categories. These groups consist of: 1) evidence already stricken from the case; 2) declarations Plaintiffs submit in support of their motion that contradict sworn deposition testimony; 3) subsequent remedial design changes presented to prove a design defect; 4) inadmissible hearsay statements made by other companies; and 5) incomplete, uncertified translations.

        **1.**     **Evidence Already Stricken From This Case**

Defendant argues that Plaintiffs have included three expert reports within their motion for class certification which make references to declarations that have already been deemed inadmissible by Judge Shipp because they were disclosed by Plaintiffs after the close of discovery. Plaintiffs concede that references to the declarations in the reports were inadvertently

---

[18] Because Dr. Caulfield admits he doesn't know if the machines contained mold or not he will not be able to opine as to that.

included and will be removed.  However, this issue does not end here as Defendant asks the Court to strike all of Plaintiffs' expert reports due to the references to the declarations.

It does not appear that Plaintiffs acted in bad faith in including this evidence; rather, it was simply a matter of inadvertence.  Therefore, the Court will not strike the entirety of the expert reports.  However, Plaintiffs are cautioned that when they re-file their motion for class certification, they cannot rely on evidence previously stricken from the case; Plaintiffs, as well as their experts, must comply with Court orders.  Accordingly, Defendant's motion to strike the full reports is denied.

## 2. Sworn Deposition Testimony and Declarations

Defendant argues that in support of their motion for class certification, every Plaintiff but one has submitted a declaration and that most of these declarations contradict Plaintiffs' deposition testimony.  The statements within the declarations giving rise to the instant motion pertain to:  purchase as a result of advertisement, the date at which Plaintiffs first noticed mold and odor, and review of the original complaint.  Plaintiffs respond to Defendant's claims by arguing that the declarations are consistent and are really just clarifications.  Assuming arguendo that the declarations were inconsistent, Plaintiffs argue that the "sham affidavit doctrine" is not applicable here.

According to the United States Court of Appeals for the Third Circuit, the sham affidavit doctrine states that "a party may not create a material issue of fact to defeat summary judgment by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."  *Baer v. Chase*, 392 F.3d 609, 624 (3d Cir. 2004).

This Court is not currently facing a summary judgment motion, a clear aspect of the sham affidavit rule as explained by the Third Circuit in *Baer*, but rather a motion to certify a class.

Therefore, a sham affidavit doctrine argument is not currently appropriate and does not require the Court to disregard the Plaintiffs' disputed declarations.

Moreover, the inconsistencies that do exist do not rise to the level of sham pleadings.  *See Cottrell v. Zagami, LLC*, 2010 U.S. Dist. LEXIS 63371 (D.N.J. June 23, 2010).  In *Cottrell*, the defendants argued that even if the plaintiff was not subject to the sham affidavit doctrine because the case was not yet at the summary judgment stage, the court should have refused to accept sham pleadings.  *Id.* at * 19.  Because the inconsistencies were "not so outlandish as to be facially false" nor were they indicative of gamesmanship, the *Cottrell* court found it could not declare that the plaintiff had submitted sham pleadings.  *Id.* at * 19-20.

Here, the inconsistencies complained of by Defendant seem to pertain to differences in interpretation.  Defendant finds the phrase "advertised as an efficient appliance," to mean all Plaintiffs viewed an advertisement, while Plaintiffs intended the phrase to mean that Plaintiffs were aware at some point in the buying process that LG marketed the appliances as efficient.  In the same vein, Defendant argues that all Plaintiffs did not view the original complaint, as some joined after the complaint had been amended, while Plaintiffs argue they intended to convey that all Plaintiffs viewed *their* original complaint, where the amended complaint was the original complaint for some Plaintiffs.   Finally, the issues with the dates appear to be mainly clerical errors.

The Court finds that the small differnces between the declarations and the depositions, if any, do not appear to be facially false as to be sham pleadings.  Accordingly, Defendant's motion to strike Plaintiffs' declarations pursuant to the sham affidavit doctrine is denied.  However, Plaintiffs are directed to correct the clerical errors with respect to the dates.  The Court notes that there was really no objective basis for invoking these doctrines screaming "sham" and asks both

16

sides to tone down the rhetoric and file only motions that are genuinely based on the circumstances. Any further waste of court time on groundless motions will risk sanctions, and all parties are now on notice.

### 3. Remedial Design Defects

Federal Rule of Evidence 407 states that:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or – if disputed – proving ownership, control or the feasibility of precautionary measures.

The Court is well aware of what is, and is not, permitted by Rule 407 and will be mindful of the appropriate purposes when ruling on the class certification motion. Plaintiffs will be permitted at trial to introduce evidence of remedial design defects only in a manner consistent with Rule 407, *i.e.*, Plaintiffs will not be able to use the evidence for any purpose barred by Rule 407 and can introduce the evidence for purposes consistent with the last sentence of Rule 407, with a proper limiting instruction. These rulings will be made at trial.

### 4. Hearsay Statements

Defendant argues that the motion for class certification impermissibly relies on inadmissible hearsay statements made by other companies. Defendant relies on one case, *Agere Sys. v. Adv. Enviro Tech.*, 602 F.3d 204, 232 (3d Cir. 2010), in support of this proposition. However, as Plaintiffs aptly point out, *Agere* did not involve class certification and did not hold that documents containing hearsay should be stricken during class certification.

The Federal Rules of Evidence are not stringently applied during class certification and courts may consider evidence that might later be ruled inadmissible at trial. *See*, *e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (court's determination of class certification is based upon "tentative findings, made in the absence of established safeguards" and explaining that class certification is "of necessity ... not accompanied by the traditional rules and procedures applicable to civil trials"); *Lujan v. Cabana Mgmt., Inc.*, No. 10-755, 2011 WL 317984, *4 (E.D.N.Y. Feb. 1, 2011); ("courts frequently consider hearsay in deciding whether to issue class notice"); *Hayden v. Freightcar Am., Inc.*, No. 07–201, 2008 WL 375762, at *2 (W.D.Pa. Jan.11, 2008) (evidence proffered in support of a motion to certify a class need not be admissible at trial); *Vinson v. Seven Seventeen HB Phila. Corp.*, No. 00–6334, 2001 WL 1774073, at *20 n. 28 (E.D.Pa. Oct.31, 2001) ("On a motion for class certification, the evidentiary rules are not strictly applied and courts will consider evidence that may not be admissible at trial."); *In re Hartford Sales Practices Litig.*, 192 F.R.D. 592, 597 (D. Minn. 1999) ("On a motion for class certification, the evidentiary rules are not strictly applied and courts will consider evidence that may not be admissible at trial."). In addition, at the class certification stage, courts often examine pleadings as well as affidavits, containing hearsay. *See Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985); *Roe v. Operation Rescue*, 123 F.R.D. 500, 502 (E.D. Pa. 1988).

Plaintiffs may rely on the challenged documents which may or may not contain hearsay in support of their class certification motion. The Court recalls that at least some of the documents complained of were produced by parent or affiliate companies of LG and as such, may be admissions and not constitute hearsay at all. The Court notes that it is rather hard for LG to argue that documents from its parent company are inherently unreliable.

### 5. Translations

Defendant argues that Plaintiffs' motion papers have taken out of context and mischaracterized statements in all of the Korean-language documents. Defendant essentially maintains that Plaintiffs failed to comply with the Federal Rules of Evidence because: (1) Plaintiffs often attach to their motion only selected pages of a document, rather than the complete document in violation of Fed. R. Evid. 106's rule of completeness; (2) Plaintiffs never translate the entire document to provide its complete context and content also in violation of Fed. R. Evid. 106's rule of completeness; and (3) Plaintiffs do not provide any certified translations in violation of Fed. R. Evid. 604.

A party may provide the Court with excerpted portions of testimony and evidence in support of its motion and LG is free to provide the Court with the full exhibits to provide context of the documents and corrected translations if it wishes to do so. For key disputes about translation, certified translations will be required.

To save time, the Court asks the parties to meet and confer and provide the Court with a joint translation and joint set of the relevant portions of the documents sought by both sides by July 16, 2013. If agreement cannot be reached, the Court will refer the parties to a Special Master and will cost-shift if it determines that either side acted inflexibly or unreasonably.

### III. CONCLUSION

For the reasons stated above, Defendant's motion to exclude Plaintiffs' experts Dr. Wilson and Dr. Yang is denied. Plaintiffs' motion to exclude Defendant's experts Dr. Caulfield and Dr. Wysocki also is denied. However, Plaintiffs' motion to exclude Defendant's expert Dr. Maronick is granted. Defendant's motion to strike inadmissible evidence is denied. An appropriate Order shall issue.

<u>s/ Faith S. Hochberg</u>
**Hon. Faith S. Hochberg**, **U.S.D.J.**