# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: LG FRONT LOAD WASHING MACHINE CLASS ACTION LITIGATION | Civil Action No. 08--51(MCA)(LDW) |

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, FOR CERTIFICATION OF SETTLEMENT CLASS, AND FOR PERMISSION TO DISSEMINATE CLASS NOTICE**

---

Jonathan D. Selbin
Jason L. Lichtman
LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Telephone: 212.355.9500

Oren S. Giskan
GISKAN SOLOTAROFF ANDERSON &
    STEWART LLP
11 Broadway, Suite 2150
New York, New York 10004
Telephone:  212.847.8315

James E. Cecchi, Esq.
Lindsey H. Taylor, Esq.
CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO P.C.
5 Becker Farm Road
Roseland, New Jersey 07068-1739
Telephone:  973.994.1700

Steven A. Schwartz
Alison G. Gushue
CHIMICLES & TIKELLIS, LLP
One Haverford Centre
Haverford, PA  19041
Telephone:  610.642.8500

James C. Shah
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER &
    SHAH, LLP
35 East State Street
Media, PA  19063
Telephone: 610.891.9880

*Attorneys for Plaintiffs and the Proposed
Settlement Class*

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ....................................................................................... 1

II.  BACKGROUND ........................................................................................ 2

    A.  Summary of Plaintiffs' Allegations ................................................ 2

    B.  The *LG* Litigation ........................................................................... 3

    C.  Settlement Negotiations and Discovery .......................................... 5

III.  MATERIAL TERMS OF THE SETTLEMENT ...................................... 5

    A.  Class Benefits .................................................................................. 6

    B.  Claims Process ................................................................................ 7

    C.  Class Notice .................................................................................... 7

IV.  LEGAL ARGUMENT ............................................................................... 8

    A.  Preliminary Approval of the Settlement is Appropriate. ............... 8

        1.  A Review of the Applicable Factors Favors Preliminary
            Approval. ............................................................................. 10

    B.  The Settlement Class Should Be Certified ................................... 16

        1.  Numerosity ........................................................................... 17

        2.  Commonality ......................................................................... 17

        3.  Typicality .............................................................................. 18

        4.  Adequacy .............................................................................. 19

        5.  Predominance ....................................................................... 19

        6.  Superiority ............................................................................ 21

    C.  The Court Should Approve the Proposed Form and Method of
        Class Notice. ................................................................................. 23

V.  CONCLUSION ........................................................................................ 24

## TABLE OF AUTHORITIES

**Page**

### CASES

*Amchem Products v. Windsor*,
521 U.S. 591 (1997)................................................................................ 16, 20, 23

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013)...................................................................................... 20

*Baby Neal ex rel. Kanter v. Casey*,
43 F.3d 48 (3d Cir. 1994)................................................................................. 18

*Barel v. Bank of Am.*,
255 F.R.D. 393 (E.D. Pa. 2009)...................................................................... 15

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)............................................................................. 19

*Bernhard v. TD Bank, N.A.*,
2009 WL 3233541 (D.N.J. Oct. 5, 2009)........................................................ 11

*Bredbenner v. Liberty Travel, Inc.*,
2011 WL 1344745 (D.N.J. Apr. 8, 2011) ....................................................... 11

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) .............................................................. 4, 20, 22

*Comcast Corp. v. Behrend*,
133 S.Ct. 1426 (2013) ........................................................................................ 3

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977), *aff'd*, 148 F.3d 283 (3d. Cir. 1998).................... 13

*E.E.O.C. v. Com. of Pa.*,
772 F. Supp. 217 (M.D. Pa. 1991), *aff'd sub nom. Binker v. Com. of Pa.*,
977 F.2d 738 (3d Cir. 1992)............................................................................. 12

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010)............................................................................... 9

*Elias v. Ungar's Food Products, Inc.*,
252 F.R.D. 233 (D.N.J. 2008)........................................................................... 17

*Georgine v. Amchem Prods.*,
83 F.3d 610 (3d Cir. 1996)................................................................................ 22

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975)........................................................................*passim*

*Halley v. Honeywell International, Inc.*,
2016 WL 1682943 (D.N.J. Apr. 26, 2016) ...................................................... 23

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......................................................................... 21

*Hanlon v. Palace Entertainment Holdings, LLC*,
2012 WL 27461 (W.D. Pa. Jan. 3, 2012)........................................................... 9

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Hegab v. Family Dollar Stores, Inc.*,
2015 WL 1021130 (D.N.J. Mar. 9, 2015)..........................................................................21

*Henderson v. Volvo Cars of N. Am., LLC*,
2013 WL 1192479 (D.N.J. Mar. 22, 2013) ........................................................................13

*In re Aetna UCR Litigation*,
2013 WL 4697994 (D.N.J. Aug. 30, 2013) ..........................................................................9

*In re Cardiazem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ....................................................................................19

*In re Cendant Corp. Litigation*,
264 F.3d 201 (3d Cir. 2001)...............................................................................................10

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ..............................................................................14

*In re Cigna Corp. Secs. Litig.*,
2007 WL 2071898 (E.D. Pa. July 13, 2007)......................................................................11

*In re Global Crossing Sec. and ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................................15

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995)....................................................................................8, 9, 10, 11

*In re Heartland Payment Sys, Inc. Customer Data Sec. Breach Litig.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) .............................................................................19

*In re Ikon Office Solutions, Inc.*,
194 F.R.D. 166 (E.D. Pa. 2000).........................................................................................15

*In re Insurance Brokerage Antitrust Litigation*,
282 F.R.D. 92 (D.N.J. 2012)..............................................................................................23

*In re Johnson & Johnson Derivative Litig.*,
900 F. Supp. 2d 467 (D.N.J. 2012) ....................................................................................14

*In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*,
733 F. Supp. 2d 997 (E.D. Wis. 2010).................................................................................7

*In re Mercedes-Benz Antitrust Litigation*,
213 F.R.D. 180 (D.N.J. 2003) ...........................................................................................20

*In re Merck & Co., Inc. Vytorin ERISA Litigation*,
2010 WL 547613 (D.N.J. Feb. 9, 2010) .......................................................................11, 12

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
148 F.3d 283 (3d Cir. 1998)....................................................................................12, 23, 24

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
962 F. Supp. 450 (D.N.J. 1997) .........................................................................................13

*In re Schering-Plough/Merck Merger Litigation*,
2010 WL 1257722 (D.N.J. March 26, 2012)......................................................................14

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re Sears, Roebuck & Co. Front-Loading Washers Prods. Liab. Litig.*,
No. 06-CV-7023 (N.D. Ill) ................................................................ 4, 20

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ...................................................... 9, 14, 18, 23

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
678 F.3d 409 (6th Cir. 2012), *vacated* 133 S. Ct. 1722 (2013), *reinstated,*
722 F.3d 838 (6th Cir. 2013), *cert. denied* 134 S. Ct. 1277 (2014) .............................. *passim*

*In re Whirlpool Front-Loading Washers Prods. Liab. Litig.*,
No. 1:08-WP-65000 (N.D. Ohio) ........................................................ 4, 20

*Jones v. Commerce Bancorp Inc.*,
2007 WL 2085357 (D.N.J. July 16, 2007) ............................................... 9

*Marcus v. BWW of North America*,
687 F.3d 583 (3d Cir. 2012) ........................................................ 17, 18

*Mullane v. Central Hanover Bank &Trust Co.*,
339 U.S. 306 (1950) .................................................................. 23

*O'Brien v. Brain Research Labs, LLC*,
2012 WL 3242365 (D.N.J. Aug. 9, 2012) .............................................. 22

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........................................................ 13

*Singleton v. First Student Management LLC*,
2014 WL 3865853 (D.N.J. Aug. 6, 2014) ............................................ 10, 12

*Smith v. Professional Billing & Management Services, Inc.*,
2007 WL 4191749 (D.N.J. Nov. 21, 2007) ............................................. 9

*Stewart v. Abraham*,
275 F.3d 220 (3d Cir. 2001) ........................................................ 17

*Sullivan v. DB Invs., Inc.*,
667 F.3d 273 (3d Cir. 2011) ..................................................... *passim*

*Varacallo v. Mass. Mut. Life Ins. Co.*,
226 F.R.D. 207 (D.N.J. 2005) ..................................................... 13, 20

*Wal-Mart Stores, Inc. v. Dukes*,
131 S. Ct. 2541 (2011) .............................................................. 17

*Williams v. First Nat'l Bank*,
216 U.S. 582 (1910) ................................................................. 8

**STATUTES**

28 U.S.C. § 1712(b)(1) ............................................................. 16

**TABLE OF AUTHORITIES**
(continued)

**Page**

**RULES**

Fed. R. Civ. P. Rule 23 .................................................................... 25

Fed. R. Civ. P. Rule 23(a) ........................................................... 19, 21

Fed. R. Civ. P. Rule 23(b)(3) ................................................. 19, 23, 25

Fed. R. Civ. P. Rule 23(c) ................................................................ 28

Fed. R. Civ. P. Rule 23(e) ............................................................ 9, 27

**OTHER AUTHORITIES**

*Manual for Complex Litigation* (Fourth), § 21.632 (2011) ............... 9

Rubenstein, *Newberg on Class Actions* § 3:54 (5th ed. 2015)............ 19

Rubenstein, *Newberg on Class Actions* § 4:25 (4th ed. 2010)............ 20

Rubenstein, *Newberg on Class Actions* § 4:65 (5th ed. 2015)............ 22

Rubenstein, *Newberg on Class Actions* § 4:72 (5th ed. 2015)............ 23

Rubenstein, *Newberg on Class Actions* § 13:14 (5th ed. 2015)........... 10

1300631.6

## I.      <u>INTRODUCTION</u>

In this case, Plaintiffs allege that certain front-loading washing machines sold by Defendant LG Electronics, USA, Inc. ("LG") develop mold and foul odors in the course of ordinary use.   The parties have litigated the case for approximately eight years, including extensive investigation, discovery, expert work, and motion practice.  Discovery has included the production and review of more than 161,000 pages of documents, more than 35 depositions, and more than nine expert reports.

Against this backdrop, Plaintiffs and Defendant have reached agreement on a nationwide settlement ("Settlement") to resolve all mold-related claims.[1]  The Settlement resulted from hard-fought and adversarial negotiations informed by years of hotly-contested litigation.  It provides substantial benefits to the Settlement Class:

- The Settlement Class is composed of all residents of the United States who were the original purchasers of one or more LG-brand front-loading washing machines, for home and not commercial use, between January 1, 2002, and December 31, 2006.

- Class Members who actually experienced a Mold and/or Odor Problem have the option of a cash payment of $35 or a Washer Rebate Certificate worth $105. Prequalified Class Members—those identified in LG's databases by serial number as owning a Class Washer—will receive prepopulated Claim Forms and will be required only to confirm the prepopulated information, confirm their eligibility, and attest under oath that the statements are true and correct.

---

[1].      The Settlement Agreement is attached as Exhibit A to the accompanying Declaration of James E. Cecchi.  Unless otherwise noted, all capitalized terms in this memorandum carry the same meaning as set forth in the Settlement Agreement.  All other exhibits referenced herein are Exhibits to the Cecchi Declaration.

LG has also agreed to pay all costs of notice and claims administration, as well as attorneys' fees and costs, all in addition to the benefits paid to Class Members.

Plaintiffs respectfully submit that—particularly in light of the defense verdict in the factually similar *In re Whirlpool* bellwether trial—this Settlement represents an outstanding result for the Class and falls well within the range of possible approval under Federal Rule of Civil Procedure 23(e). Accordingly, Plaintiffs request that the Court preliminarily approve the Settlement, conditionally certify the settlement class, approve the notice plan, and order notice to the class as soon as practicable.

## II.     BACKGROUND

### A.     Summary of Plaintiffs' Allegations

Plaintiffs allege that all LG-brand front-loading washers contain a design defect that causes the washers to accumulate mold and bacteria. These washers ("Class Washers") were sold throughout the United States. The Class Washers share common design features including a drum that opens to the front of the machine with a rotational axis that is parallel with the ground.

Plaintiffs' claims relate to something known as biofilm, which can cause noxious odors and ruin laundry (biofilm is a collection of organic and inorganic materials on which bacteria, molds, and fungus feed). In particular, Plaintiffs bring claims against LG for violations of state consumer protection statutes, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., and unjust enrichment. *See* Dkt. 31 (Consolidated Amended Complaint). These claims all relate to the allegation that the Class Washers are defective because they had an undisclosed propensity to accumulate biofilm as a result of the Class Washers' failure to clean themselves, leading to mold, mildew, fungus and odors in the washer.

- 2 -

Plaintiffs do not allege any claims for personal injury or emotional distress. For this reason, the Settlement does not release such claims: the release is tethered to biofilm claims asserted in these cases, and includes all claims related in any way to actually experiencing any Mold and/or Odor Problem with a Class Washer prior to the date on which the Claims Period ends. It does not, however, release any claims of consumers who did not actually experience a Mold and/or Odor problem.

### B.     The *LG* Litigation

On March 24, 2008, this Court consolidated four pending actions against LG pursuant to Rule 42(a). Dkt. 16. Plaintiffs filed their Consolidated Amended Complaint ("CAC") against LG on May 6, 2008. Dkt. 31. In an Order dated February 3, 2009 (Dkt. 86), the Court denied LG's Motion to Dismiss the CAC.

On March 31, 2011, Plaintiffs filed their Motion for Class Certification. Dkts. 181-183. Included in the class certification briefing were a number of *Daubert* motions, both by LG and Plaintiffs, seeking to strike each other's respective expert reports. The Court held hearings on the *Daubert* motions on April 19 and May 8, 2012. On July 10, 2013, the Court ruled on the *Daubert* motions (Dkts. 331-332) and directed Plaintiffs to file a revised class certification motion. Thereafter the Court granted Plaintiffs' Motion to Reopen Discovery in light of *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013), (*see* Dkt. 359), and the parties began additional expert discovery.

During the approximately 8 years that the parties were litigating this case, they engaged in extensive research, investigation, discovery, expert work, and motion practice. Cecchi Decl. ¶ 2. Discovery has included written responses to interrogatories and requests for production, including the production of more than 161,000 pages of documents, more than 35 depositions, and more than nine expert reports. *Id.*

- 3 -

Throughout the course of this litigation, the parties were monitoring, briefing to this Court—and, in Plaintiffs' counsel's case, litigating—parallel actions against other front-loading washing machine manufacturers alleged to have incorporated a similar defect into their washer design. *See In re Whirlpool Front-Loading Washers Prods. Liab. Litig.*, No. 1:08-WP-65000 (N.D. Ohio); *In re Sears, Roebuck & Co. Front-Loading Washers Prods. Liab. Litig.*, No. 06-CV-7023 (N.D. Ill). In both the coordinated *Whirlpool* and *Sears* actions, classes were certified: in *Whirlpool*, the district court certified a class and certification was upheld on appeal, whereas in *Sears*, the district Court certified a class after the Seventh Circuit held it was an abuse of discretion not to certify one. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,* 678 F.3d 409 (6th Cir. 2012), *vacated* 133 S. Ct. 1722 (2013), *reinstated,* 722 F.3d 838 (6th Cir. 2013), *cert. denied* 134 S. Ct. 1277 (2014); *Butler v. Sears, Roebuck & Co.,* 727 F.3d 796 (7th Cir. 2013); *In re Sears* Dkt. 498. In *Whirlpool*, the parties held a three-and-a-half week bellwether trial, resulting in a jury verdict for Whirlpool. *See In re Whirlpool* Dkt. 490 (verdict); Dkt. 491 (final judgment). That verdict and an accompanying costs award were appealed and cross-appealed, with the parties submitting seven briefs in total. The *Whirlpool* and *Sears* actions recently reached a settlement after oral argument in front of the Sixth Circuit, but before a ruling, and with preparations for a second class trial heavily underway in *Sears*. *See In re Whirlpool* Dkt. 545 (Mot. for Prelim. App.).

In short, the instant settlement was reached only after eight years of litigation involving robust, adversarial discovery and vigorous motion practice, and with the benefit of a developing body of law arising from the parallel front-loading washer proceedings. The parties' litigation efforts demonstrate that both sides thoroughly understand the relative strengths and weaknesses of their respective positions.

1300631.6

C.     **Settlement Negotiations and Discovery**

Over the past several years, the parties have engaged in numerous arms-length settlement negotiations, frequently with the assistance of an experienced third-party mediator.  Cecchi Decl. ¶ 3.  Pursuant to the Court's December 2, 2013, and January 2, 2014 Orders (Dkts. 354, 356), the parties attended a settlement conference on July 16, 2013, with the Court and a mediation before Professor Eric Green on January 20, 2014.  During these mediations, the Parties engaged in arm's-length negotiations.  When neither the settlement conference nor the mediation resulted in a settlement, the parties resumed active litigation, including continued expert discovery.

During late 2014, the parties engaged in direct negotiations regarding possible settlement but were again unable to reach an agreement.  Cecchi Decl. ¶ 3.  Additionally, the parties participated in settlement conferences before the Court on July 1 and July 14, 2015.  *See* Dkt. 385 (May 19, 2015 Order) and Dkt. 388 (July 1, 2015 Order).  As a result of those negotiations, the parties reached agreement on the material terms of substantive relief for the Settlement Class.

After the parties reached an agreement on all material terms of the settlement, they began negotiating the amount of attorneys' fees and costs that LG would pay to Class Counsel (subject to Court approval) and the amount of service awards Defendant would pay to the Class Representatives (also subject to Court approval).  Cecchi Decl. ¶ 4.  After settlement conferences on September 4 and October 6, 2015, before Judge Wettre, the parties, with Judge Wettre's assistance, reached agreement on those issues on October 6, 2015.

III.    <u>**MATERIAL TERMS OF THE SETTLEMENT**</u>

Plaintiffs seek preliminary approval of the Settlement on behalf of the following Settlement Class:

all residents of the United States who were the original purchasers of one or more LG-brand front-loading washing machines, for home and not commercial use, between January 1, 2002 and December 31, 2006.[2]

Excluded from the Settlement Class are

(1) LG USA; (2) retailers, wholesalers, and other individuals or entities that purchased the Washers for resale; (3) the United States government and any agency or instrumentality thereof; (4) the judge to whom this case is assigned and any member of the judge's immediate family; and (5) Settlement Class Members who timely and validly opt to exclude themselves from the Settlement Class.

The Settlement Class includes approximately 780,000 members.

### A.    Class Benefits

The Settlement provides substantial economic benefits to the Class.  Class Members who actually experienced a Mold and/or Odor problem may elect between (a) a cash payment of $35 (made via check or direct card payment) or (b) a rebate of $105 off the bona fide price paid for a new LG-brand front-loading washing machine, in addition to any other available promotion, rebate, or discount.  Ex. A, Settlement at IV.B.  LG also agreed to pay for the reasonable costs of notice and claims administration and $4,000 service awards to each Class Representative.  *Id.* at VII.B.  Finally, Class Counsel will seek an award of (and Defendants agree not to oppose), up to $5,775,000 in attorneys' fees and costs.  *Id.* at VIII.  That amount represents a steep discount on the actual time and costs expended by Class Counsel litigating these cases, which is estimated to total more than $10,000,000.  Cecchi Decl. ¶ 4.  The other terms of the Settlement are in no way contingent on Class Counsel's fee request.  LG will pay administration costs, incentive awards, and attorneys' fees and costs in addition to (not part of) the benefits that LG is providing Class Members as part of the Settlement.

---

[2]    Mold and/or Odor Problems means the accumulation of bacteria, mold, mildew, fungi, or Biofilm, and/or any odor in any way related to such accumulation.

### B.    Claims Process

Any Class Member identified by serial number in LG's warranty and customer service databases as owning a Class Washer is a Prequalified Class Member.  LG will make available to the Settlement Administrator its warranty registration and customer service databases to facilitate identification of potential Class Members.  Similarly, Class Counsel shall provide LG and the Settlement Administrator a list of Class Members who contacted Class Counsel in writing or provided a declaration prior to the Preliminary Approval date regarding a Mold and/or Odor Problem and who provided the serial number of their Washer.  Ex. A, Settlement at IV.H.  There are approximately 10,000-20,000 Prequalified Class Members.

Prequalified Class Members will only need to confirm their names, addresses, and email addresses, check several eligibility boxes on the Claim Form, and e-sign the Claim Form attesting under oath that the statements are true at correct.  Ex. A, Settlement at Ex. C (claim forms).  Non-Prequalified Class Members also have a straightforward Claim Form, in addition to the information provided by Prequalified Class Members, they need only provide a photograph of the Washer's serial number (or, in the case of Class Members who no longer own the Washer, some other proof-of-purchase).  Ex. A, Settlement at II.C.5; *cf. In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1010 (E.D. Wis. 2010) (concluding that "requiring class members to include serial numbers on their claim forms was reasonable").  Non-Prequalified Class Members who experienced a problem with Mold and/or Odor will likewise have to state so under oath.

### C.    Class Notice

Within 30 days of the Court's entry of an Order granting preliminary approval, the Settlement Administrator will send, by first-class mail, a copy of the Settlement Notice to every Class Member who can reasonably be identified in LG's warranty and customer service

- 7 -

databases.  Ex. A, Settlement at VI.B & Ex. E (postcard notices).  The Settlement Administrator will also send the Settlement Notice via email to every Class Member whose email address can be reasonably identified from LG's and Class Counsel's records.  *Id.* at VI.B & Ex. F (email notice).  The Settlement Administrator will take commercially reasonably steps to update both mail and email addresses.  The emailed notices will advise Class Members if they are Prequalified Class Members.  *Id.*  The Settlement Administrator will also provide additional notice to facilitate participation by Class Members.  *Id.* at VI.D; *see also* Ex. I, S. Weisbrot Decl. ¶ 24.  Class Members may submit claims for 120 days following the entry of an order granting preliminary approval of the Settlement.  Ex. A, Settlement at II.D.

The Settlement Administrator will establish a Settlement Website that will provide information sufficient to inform Class Members of the essential terms of this Agreement and the procedure for objecting to or excluding themselves from the Settlement.  *Id.* at II.AA, IV.K.  The website will also provide an easy-to-use Claims Form and associated instructions for submitting a claim for compensation on-line.  *Id.* at II.AA.  As previously stated, LG has agreed to pay all costs of notice and settlement administration on top of the benefits paid to the Class.  *Id.* at IV.D.

## IV.    LEGAL ARGUMENT

### A.    Preliminary Approval of the Settlement is Appropriate.

Where parties propose to resolve class action litigation through settlement, they must obtain court approval.  Fed. R. Civ. P. 23(e); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 296 (3d Cir. 2011) (en banc).  This said, "[c]ompromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  This is "particularly [true] in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."  *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d

- 8 -

Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged").  "The strong judicial policy in favor of class action settlement contemplates a circumscribed role for the district courts in settlement review and approval proceedings. This policy also ties into the strong policy favoring the finality of judgments and the termination of litigation. Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010).  The proposed Agreement here meets all the requirements for preliminary approval by this Court.

"Review of a proposed class action settlement is a two-step process: preliminary approval and a subsequent fairness hearing."  *In re Aetna UCR Litigation*, 2013 WL 4697994, at *10 (D.N.J. Aug. 30, 2013).  This procedure safeguards class members' due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See In re GMC*, 55 F.3d at 785; *Hanlon v. Palace Entertainment Holdings, LLC*, 2012 WL 27461, at *5 (W.D. Pa. Jan. 3, 2012) (explaining that at the preliminary approval phase, the "court must only 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms'" (quoting *Manual for Complex Litigation* (Fourth), § 21.632 (2011))).  "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Aetna UCR*, 2013 WL 4697994, at *10.  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  *Id.*; *see also Smith v. Professional Billing & Management  Services, Inc.*, 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007); *Jones v.  Commerce Bancorp Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007)

("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient.").

"An initial 'presumption of fairness for the settlement is established if the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Cendant Corp. Litigation*, 264 F.3d 201, 232 n. 18 (3d Cir. 2001)); *In re Gen. Motors Corp.*, 55 F.3d at 785. While consideration of the requirements for final approval is unnecessary at this stage, it is important to consider the final approval factors at the preliminary approval stage in order to identify any issues that could impede final approval. *Singleton v. First Student Management LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014). Those factors are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975). All of the relevant factors weigh in favor of the Settlement proposed here[3]. The proposed Agreement is fair, adequate, and reasonable. Therefore, this Court should preliminarily approve the Settlement and certify a Settlement class.

### 1.    A Review of the Applicable Factors Favors Preliminary Approval.

This Settlement is the product of eight years of litigation, and numerous arms-length negotiations. *See* Rubenstein, *Newberg on Class Actions* § 13:14 (5th ed. 2015) ("The primary

---

[3].    It is premature to consider the second *Girsh* factor, the reaction of the class to the Settlement, since it has not yet been presented to the Class.

procedural factor courts consider in determining whether to preliminarily approve a proposed settlement is whether the agreement arose out of arms-length-noncollusive negotiations.").

The Settlement negotiations plainly occurred at arm's length.  The parties participated in numerous settlement conferences before the Court and before Judge Wettre, as well as a mediation with Professor Green.  Cecchi Decl. ¶ 3.  These negotiations were comprehensive, often spirited.  Between the formal mediation sessions, the Parties engaged in numerous one-on-one exchanges with the mediator regarding their respective positions, as well as communication between the Parties in an attempt to find common ground on potential settlement terms.  *Id.*  The participation of a mediator in this case is further assurance that the settlement is the result of arms-length negotiations.  *See Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("Participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties.") (internal quotation marks omitted); *see also Bernhard v. TD Bank, N.A.*, 2009 WL 3233541, at *2 (D.N.J. Oct. 5, 2009) (finding that the standards for preliminary approval were met where the settlement was the product of "serious negotiation" between counsel and conducted pursuant to mediation by a retired judge); *In re Cigna Corp. Secs. Litig.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) ("[I]t is clear that negotiations for the settlement occurred at arm's length, as the parties were assisted by a retired federal district judge who was privately retained and served as mediator.").

The third *Girsh* factor requires the Court to "consider the 'degree of case development that Class Counsel have accomplished prior to Settlement,' including the type and amount of discovery already undertaken."  *In re Merck & Co., Inc. Vytorin ERISA Litigation,* 2010 WL 547613, at *7 (D.N.J. Feb. 9, 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank*

*Prod. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995)) "In short, under this factor the Court considers whether the of amount of discovery completed in the case has permitted 'counsel [to have] an adequate appreciation of the merits of the case before negotiating.'"  *Merck ERISA*, 2010 WL 547613, at *7 (alteration in original) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)).  This factor weighs in favor of approval of the Settlement.

As more fully described above, the parties commenced and conducted exhaustive discovery on all relevant issues.  Between them, the parties took more than 35 depositions, produced more than nine expert reports, and exchanged written responses to interrogatories and requests for production, including the production of more than 161,000 pages of documents. Plaintiffs also vetted and retained several experts in connection with this action, including experts capable of inspecting and analyzing the defective washing machines at issue in the litigation and calculating the monetary damages suffered by the Class.  This discovery and analysis greatly informed Plaintiffs' approach to settlement negotiations and enabled them to seek and obtain the above-described benefits to Class Members.

The fourth, fifth and sixth *Girsh* factors (risks of establishing liability, damages and maintaining the class action through trial) are appropriately considered together for purposes of preliminary approval.  *Singleton*, 2014 WL 3865853, at *6.   As is set forth more fully in the Background section above, there are considerable risks in establishing liability and damages—as evidenced by the defense verdict in the recent Whirlpool front-loading washers trial—which weigh in favor of settlement.  Counsel's judgment that the settlement is fair and reasonable is entitled to great weight.  *See E.E.O.C. v. Com. of Pa.*, 772 F. Supp. 217, 219-20 (M.D. Pa. 1991), *aff'd sub nom. Binker v. Com. of Pa.*, 977 F.2d 738 (3d Cir. 1992) ("[T]he court's intrusion upon

what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, *taken as a whole*, is fair, reasonable and adequate to all concerned." (emphasis in original) (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)); *see also Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness."); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 543 (D.N.J. 1997) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (court is "entitled to rely upon the judgment of experienced counsel for the parties")), *aff'd*, 148 F.3d 283 (3d. Cir. 1998).

Class Counsel and LG's counsel are experienced and well-respected attorneys in, among other fields, products liability class action litigation, having been involved in the litigation and resolution of several of the seminal cases in the field. *See* Exs. C-G (firm resumes). Their judgment that the settlement is fair and reasonable should weigh in favor of preliminary approval.

The seventh *Girsh* factor is neutral. LG certainly has assets to pay more than it is offering toward the Settlement. However, the fact that a defendant *can* pay more does not make an otherwise reasonable settlement unreasonable. *See Henderson v. Volvo Cars of N. Am., LLC*, 2013 WL 1192479, at *11 (D.N.J. Mar. 22, 2013) ("Plaintiffs acknowledge that 'there is currently no indication that Volvo here would be unable to withstand a more significant judgment,' but 'to withhold approval of a settlement of this size because it could withstand a greater judgment would make little sense where the [settlement agreement] is within the range of reasonableness and provides substantial benefits to the Class.'") (citing cases where settlement

was approved despite defendants' ability to withstand a greater judgment); *In re Johnson & Johnson Derivative Litig.*, 900 F. Supp. 2d 467, 484 (D.N.J. 2012) ("But even assuming there are sufficient funds to pay a greater judgment, the Third Circuit has found that a defendant's ability to pay a larger settlement sum is not particularly damaging to the settlement agreement's fairness as long as the other factors favor settlement") (internal quotations and citations omitted).

The final two *Girsh* factors "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538.  As this Court has often explained, "according to *Girsh*, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth *Girsh* factor) and a range in light of all the attendant risks of litigation (the ninth factor)." *In re Schering-Plough/Merck Merger Litigation*, 2010 WL 1257722, at *12 (D.N.J. March 26, 2012).  To do so, a Court considers "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing . . . compared with the amount of the proposed settlement." *Warfarin*, 391 F.3d at 538 (citation omitted).  Additionally, in conducting this evaluation, the Court should keep in mind "that settlement represents a compromise in which the highest hopes for recovery are yielded in exchange for certainty and resolution and [courts should] guard against demanding to[o] large a settlement based on the court's view of the merits of the litigation." *Johnson & Johnson*, 900 F. Supp. 2d at 484-85 (alteration in original) (internal quotations and citations omitted).

Recognizing that a settlement, by definition, involves Class Members receiving less than the full value of their claims, courts have commonly approved settlements that provide far less than the full value of the class's claims.  *See, e.g.*, *Warfarin*, 391 F.3d at 538-39 (approving a 33% settlement value); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350-51

(S.D. Fla. 2011) (approving a settlement for between 9% and 45% value); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 460-61 (S.D.N.Y. 2004) (approving a settlement that was "not rich in comparison to the vast damages Plaintiffs claim to have suffered").

This Settlement offers substantial benefits to Class Members.  Class Members may elect to receive a $35 cash payment or a rebate of $105 off the purchase of a new LG washing machine.

Plaintiffs' damages experts conducted economic analyses and calculated three measures of Class Member damages:  (1) $279, the difference between what consumers were willing to pay for a washing machine that requires special mold-related maintenance compared to an identical one that does not; (2) $279, the difference between the price at which LG sold its washers and the price at which LG would have been able to sell its washers had it disclosed the mold-related requirements; and (3) $235, the cost of mitigation throughout the life of the product.  Ex. B, 4/23/15 Knittel Rep. at ¶¶ 54-65.

The $35 cash payment and $105 rebate provided for by the Settlement compare favorably to what Plaintiffs could recover if they prevailed at trial.  The value of the rebate option for Class Members is equal to approximately 38% of the high damages estimate ($105/$279) and 45% of the low estimate ($105/$235).  The value of the cash payment for Class Members is equal to approximately 13% of the high damages estimate ($35/$279) and 15% of the low estimate ($35/$235).  This is well within the range of settlements commonly approved by Courts.  *See, e.g.*, *Barel v. Bank of Am.*, 255 F.R.D. 393, 402 (E.D. Pa. 2009) (approving a settlement with a value of 52% of the low end of the damages range and 5.2% of the high end); *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approving a settlement that ranged from 5.2% to 36.4% of the potential recovery).

Finally, Class Counsel's fee request is a reasonable one.  Where fees do not come out of the benefits to the Class Members, the Class Action Fairness Act of 2005 provides that "any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action."  28 U.S.C. § 1712(b)(1).  Class Counsel have agreed to seek no more than $5,775,000 in combined attorneys' fees and expenses, a fraction of the actual time and costs spent litigating this case over the past eight years.  Cecchi Decl. ¶ 4.  They reached this agreement only after reaching agreement on all other material terms of the Settlement and did so under the supervision of Judge Wettre.  Ex. A, Settlement at VIII.C.  The Settlement is in no way contingent upon attorneys' fees.  *Id.*

## B.   The Settlement Class Should Be Certified.

Courts may certify class actions for the purposes of settlement only.  *See, e.g.*, *Amchem Products v. Windsor*, 521 U.S. 591, 620 (1997).  When certifying a settlement-only class, the Court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620.  However, all of the other requirements of Rule 23 must be satisfied when satisfying a settlement class.  *Id.*  Plaintiffs respectfully submit that this Court should preliminarily certify the Settlement Classes under Rules 23(a) and 23(b)(3).

In this case, all of the requirements of Rule 23(a) and Rule 23(b)(3) are readily met.  Rule 23(a)   requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions

affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that their joinder before the Court would be impracticable." "[G]enerally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Marcus v. BWW of North America*, 687 F.3d 583, 595 (3d Cir. 2012). Here, the Class is estimated to include hundreds of thousands Class Members and so numerosity is satisfied. *Stewart v. Abraham*, 275 F.3d 220, 226–28 (3d Cir. 2001). *See, e.g.*, *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 242 (D.N.J. 2008) (numerosity satisfied with class of "at least tens of thousands" of members); *see also In re Whirlpool*, 722 F.3d at 852 (numerosity satisfied where thousands of allegedly defective washers were shipped into the state).

### 2. Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." Importantly, "Rule 23(a)(2)'s commonality requirement does not require identical claims or facts among class member[s]." *Marcus*, 687 F.3d at 597 (citation and internal quotation marks omitted). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227 (quotation marks and emphasis omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (explaining that, for commonality to be satisfied, the answer to the common question must help "drive the resolution" of the litigation) (citation and quotation marks omitted).

Applying these principles, it is evident that the commonality requirement of Rule 23(a)(2) is easily met here because Plaintiffs allege that the different models that make up

the Class Washers share the same defects, and that LG was aware of those defects.  *See* Dkt. 182

(Plaintiffs' Brief in Supp. of Mot. to Certify Class) at 19-26 (discussing common issues); *see*

*also In re Whirlpool*, 722 F.3d at 855 (commonality satisfied where proof will produce "a

common answer about whether the alleged design defects in the [front-loading washers]

proximately caused mold or mildew to grow in the machines").

### 3.     Typicality

Rule 23(a)(3) requires that the class representatives' claims be "typical of the claims . . .

of the class."  As the Third Circuit explained:

> The typicality inquiry is intended to assess whether the action can be efficiently
> maintained as a class and whether the named plaintiffs have incentives that align
> with those of absent class members so as to assure that the absentees' interests
> will be fairly represented.

*Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 56-58 (3d Cir. 1994); *see also Marcus,* 687 F.3d

at 598 ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives

rises to the claims of the class members, factual differences will not render that claim atypical if

it is based on the same legal theory as the claims of the class.") (citation and quotation marks

omitted).

Here, the typicality requirement is met because the Class Representatives suffered the

same alleged injury—the defective product—as the other Class Members.   Furthermore,

variations in state laws do not impact the typicality analysis.  *See Sullivan*, 667 F.3d at 304

("state law variations are largely 'irrelevant to certification of a settlement class'") (quoting

*Warfarin II,* 391 F.3d at 529).  The common-law and consumer-protection claims asserted in this

case "are recognized in some form in all jurisdictions and therefore available for all class

members. . . . Despite possible state-by-state variations in the elements of these claims, they arise

from a single course of conduct by [LG] and a single set of legal theories."  *In re Heartland*

- 18 -

*Payment Sys, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1055 (S.D. Tex. 2012) (internal question marks omitted); *see also In re Cardiazem CD Antitrust Litig.*, 218 F.R.D. 508, 519 (E.D. Mich. 2003) (finding class representatives adequate "to prosecute claims under the laws of other states").

### 4.  Adequacy

Rule 23(a)(4) requires that the named representatives "will fairly and adequately protect the interests of the class."  The adequacy inquiry "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class."  *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted); *see also* Rubenstein, *Newberg on Class Actions* § 3:54 (5th ed. 2015).  Here, each plaintiff owns the same allegedly defective product as the absent Class Members do and suffered the same injuries, and so their interests are fully aligned with all other Class Members.

Second, class counsel must be adequate under Fed. R. Civ. P. 23(g).  That requirement is satisfied here because Class Counsel have extensive experience in prosecuting complex product defect cases such as this one.  *See* Ex. C, Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. Law Firm Resume; Ex. D, Chimicles & Tikellis LLP Law Firm Resume; Ex. E, Lieff Cabraser Heimann & Bernstein, LLP, Law Firm Resume; Ex. F, Giskan, Solotataroff, Anderson & Stewart LLP Law Firm Resume; Ex. G, Shepherd, Finkelman, Miller & Shah, LLP Law Firm Resume.  Any doubt on this score is dispelled by the vigorous manner in which Class Counsel have litigated this case for the past eight years.

### 5.  Predominance

In order to satisfy Rule 23(b)(3)'s requirement that common questions of law and fact predominate, "the predominance tests asks whether a class suit for the unitary adjudication of

- 19 -

common issues is economical and efficient in the context of all the issues in the suit." *Sullivan*, 667 F.3d at 297 (quoting Rubenstein, *Newberg on Class Actions* § 4:25 (4th ed. 2010)).   The touchstone of predominance is whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 597.   The rule, however, "does *not* require a plaintiff seeking class certification to prove that every element of her claim is susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (internal quotation marks and alterations omitted).   Rather, predominance is determined by whether "the efficiencies gained by class resolution of common issues are outweighed by individual issues." *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 231 (D.N.J. 2005); *In re Mercedes-Benz Antitrust   Litigation*, 213 F.R.D. 180, 186 (D.N.J. 2003) (predominance requires that "common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members").

Common issues predominate here.   The key question posed in this case—whether LG's washing machines are defective and whether LG was aware of the defects—are common ones. If resolved in one stroke, those issues would substantially advance the litigation.   Indeed, both the Sixth and Seventh Circuits have found that common issues predominate in classes alleging similar defects in washing machines manufactured and sold by other companies. *See Butler*, 702 F.3d at 359; *In re Whirlpool*, 678 F.3d at 409.

Unlike the single-state classes originally certified in *Whirlpool* and *Sears*, the Settlement Class here is nationwide.   However, particularly in the settlement context, differences in state law do not defeat predominance. *See Sullivan*, 667 F.3d at 299-302 (3d Cir. 2011) (explaining that "as long as a sufficient constellation of common issues binds class members together, variations in the sources and application of applicable laws will not foreclose class certification")

(internal quotation marks omitted).  Because "the defendant's conduct was common as to all of the class members," common issues predominate despite "idiosyncratic differences" between state laws. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-23 (9th Cir. 1998) (finding predominance satisfied where class members brought claims under "local variants of a generally homogenous collection of causes which include products liability, breaches of express and implied warranties, [] 'lemon laws, [and] state consumer protection laws").

Indeed, the District Court overseeing the *In re Whirlpool* front-loading washers litigation recently certified a nationwide biofilm settlement class against Defendants Whirlpool and Sears. Ex. H, *In re Whirlpool* Preliminary Approval Order (Dkt. 551).  In doing so, the Court specifically found that common issues "predominate over any questions affecting only individual members for settlement purposes." *Id.* at 4.

### 6.    Superiority

Finally, Rule 23(b)(3) requires that a showing that a "class action is superior to other available methods for fair and efficient adjudication of the controversy."  Relevant considerations include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23.

A class action suit is superior to any other form of adjudication because it provides the best way of managing and resolving the claims at issue here.  The superiority requirement asks the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  *Hegab v. Family Dollar Stores, Inc.*, 2015 WL 1021130, at *4 (D.N.J. Mar. 9, 2015) (quoting *Georgine v. Amchem Prods.*, 83 F.3d

610, 632 (3d Cir. 1996)).  The class action mechanism is superior to its alternatives, particularly

with respect to settlements, because it ensures that the claims of the absent class members will be

resolved efficiently.  *O'Brien v. Brain Research Labs, LLC*, 2012 WL 3242365, at *9 (D.N.J.

Aug. 9, 2012) (finding superiority because, *inter alia*, "denying certification would require each

consumer to file suit individually at the expense of judicial economy").  Moreover, where

individual claims are small, "a class action is almost automatically superior to alternative forms

of adjudication[.]"  Rubenstein, *Newberg on Class Actions* § 4:65 (5th ed.).

Consideration of judicial economy and prompt resolution of claims underscore the

superiority of the class action in this case.  By contrast, compensation resulting from litigation is

highly uncertain and may not be received before lengthy, and costly, trial and appellate

proceedings are complete.  In addition, the Settlement obviously removes the overwhelming and

redundant costs of individual trials.  *See Sullivan*, 667 F.3d at 310-12.

The superiority requirement is also met here because each owner's damages are likely too

small to justify bringing an individual action.  *See Butler*, 702 F.3d at 362 ("A class action is the

more efficient procedure for determining liability and damages in a case such as this, involving a

defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one

of them large enough to justify the expense of an individual suit."); *In re Whirlpool*, 678 F.3d at

421 ("[T]he class action mechanism is the superior method to resolve these claims fairly and

efficiently . . . since class members are not likely to file individual actions because the cost of

litigation would dwarf any individual recovery."); Ex. H, *In re Whirlpool* Preliminary Approval

Order (Dkt. 551) at 4 ("A nationwide class action for settlement purposes is superior to other

available methods for the fair and efficient adjudication of this controversy.").

Manageability concerns, moreover, while "by [] far, the most critical concern in determining whether a class action is a superior means of adjudication," Rubenstein, *Newberg on Class Actions* § 4:72 (5th ed. 2015), are irrelevant in the settlement context.  *See Amchem*, 521 at 620.  In particular, because the class is proposed for settlement, manageability concerns presented by variances in state law do not defeat a finding of superiority.  *See Sullivan*, 667 F.3d at 303-04 ("Because we are presented with a settlement class certification, we are not as concerned with formulating some prediction as to how variances in state law would play out at trial, for the proposal is that there be no trial.  As such, we simply need not inquire whether the varying state treatments of [the] claims at issue would present the type of insuperable obstacles or intractable management problems pertinent to certification of a litigation class." (internal quotation marks, citations, and alterations omitted)).  Simply put, state law variations are largely "irrelevant to certification of a settlement class."  *Warfarin II*, 391 F.3d at 529.

**C.    The Court Should Approve the Proposed Form and Method of Class Notice.**

Before granting final approval to a class action settlement, the Court must "direct notice in a reasonable manner to all class members who would be bound" by the settlement.  Fed. R. Civ. P. 23(e)(1).  The notice should be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Halley v. Honeywell International, Inc.*, 2016 WL 1682943, at *17 (D.N.J. Apr. 26, 2016) (quoting *Mullane v. Central Hanover Bank &Trust Co.*, 339 U.S. 306, 314 (1950)).  In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class.  *In re Insurance Brokerage Antitrust Litigation*, 282 F.R.D. 92, 109 (D.N.J. 2012) (quoting *Prudential*, 148 F.3d at 306).

1300631.6

The proposed notice program satisfies due process and Rule 23.  As discussed above, the notice plan provides for direct, individual notice via either email or mail based on a search of LG's databases and Class Counsel's records for addresses.  *See* Fed. R. Civ. P. 23(c)(2) (explaining that individual notice should be provided to all members who can be identified through reasonable effort).  The notice plan also includes prominent nationwide publication notice in high-circulation magazines, and four weeks of internet publication notice with an expected 26,500,000 impressions.  *See Prudential*, 148 F.3d at 297 (approving notice where notice was disseminated via individual mailing to Class Members identified in the defendant's data files, and also by publication).

The Settlement Notice itself also satisfies due process and Rule 23.  *See* Ex. A, Settlement Agreement Exs. E-G (notices); *see also Prudential*, 148 F.3d at 328 (approving notice that "provided all of the required information concerning the class members' rights and obligations under the settlement, [] detailed the procedure for opting out, entering an appearance, and filing objections, [] notified the [class members] that if they did not opt out of the class, they would be bound by the settlement[, and] explained the nature of the claims").

V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court

1.    preliminarily approve the Settlement Agreement;

2.    certify the Rule 23(b)(3) Settlement Class (defined on Page 6 above);

3.    appoint Carella, Byrne, Cecchi, Olstein, Brody & Agnello, Lieff Cabraser Heimann & Bernstein, Chimicles & Tikellis, Giskan Solotaroff Anderson & Stewart and Sheperd, Finkelman, Miller & Shah as Settlement Class Counsel;

4.    appoint Angeion Group as the class action administrator;

5.    order notice of the Settlement to be provided to members of the Settlement Class;

- 24 -

6.      enter the proposed schedule (described in the Proposed Preliminary Approval

Order and Proposed Scheduling Order, Ex. A, Settlement at Exs. B & D) or

another schedule, for notice, opt-out deadlines, objections deadlines, and dates for

final approval briefing and hearing.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO P.C.
Attorneys for Plaintiffs


By:____/s/ James E. Cecchi_____
        JAMES E. CECCHI

Dated:  May 25, 2016

Jonathan D. Selbin
Jason L. Lichtman
LIEFF CABRASER HEIMANN &
  BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013-1413
(212) 355-9500

Steven A. Schwartz
Alison G. Gushue
CHIMICLES & TIKELLIS, LLP
One Haverford Centre
Haverford, PA  19041
Telephone:  (610) 642-8500

Oren S. Giskan
GISKAN SOLOTAROFF ANDERSON &
  STEWART LLP
11 Broadway, Suite 2150
New York, New York 10004
Telephone:  (212) 847-8315

Steven A. Schwartz
Alison G. Gushue
CHIMICLES & TIKELLIS, LLP
One Haverford Centre
Haverford, PA  19041
Telephone:  (610) 642-8500

James C. Shah
Nathan C. Zipperian
SHEPHERD, FINKELMAN, MILLER &
  SHAH, LLP
35 East State Street
Media, PA  19063
Telephone: (610) 891-9880

*Attorneys for Plaintiffs and the Proposed Settlement Class*

- 26 -